**BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP**
JONATHAN D. USLANER (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3481

*Counsel for Lead Plaintiff Oklahoma
Firefighters Pension and Retirement System*

[Additional counsel appear on signature page.]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLAZING EMPLOYERS AND GLAZIERS' UNION LOCAL #27 Pension And Retirement Fund, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>IRHYTHM TECHNOLOGIES, INC. et al.,<br><br>Defendants. | Case No. 3:24-cv-706-JSC<br><br>CLASS ACTION<br><br>**LEAD PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR JUDICIAL NOTICE**<br><br>Date: April 24, 2025<br>Time: 10:00 a.m.<br>Dept.: Courtroom 8, 19th Floor<br>Judge: Hon. Jacqueline Scott Corley |

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff respectfully objects, in part, to Defendants' Request for Judicial Notice In Support Of Defendants' Motion To Dismiss Second Amended Complaint (ECF No. 52, "RJN").[1]

## I.    STATEMENT OF ISSUES TO BE DECIDED

Whether the Court should take judicial notice and/or incorporate by reference Defendants' Exhibits A-T.

## II.    INTRODUCTION

In their Motion to Dismiss and RJN, Defendants have set forth an alternate reality that is divorced from the facts alleged in Plaintiff's Complaint. They wave away the FDA's repeated condemnations about the undisclosed limitations of the Zio AT, asserting, among other things, that the FDA's concerns were really a matter of "verbiage," that the Zio AT's transmission limit was hit so rarely as to be a non-issue, and that iRhythm's ex-CEO's description of a "high-risk" patient should be the standard against which their statements 2-3 years later should be judged. In search of support for such a counter-factual narrative, Defendants ask the Court to accept as true cherry-picked lines from extrinsic material beyond the four corners of the Complaint.

In *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018), the Ninth Circuit forcefully criticized the "concerning pattern" of defendants in securities class actions misusing "judicial notice" and "incorporation-by-reference" to improperly present a skewed version of the "facts" at the pleading stage. *Id.* Defendants here have succumbed to the exact "alluring temptation" the Ninth Circuit cautioned against. Their "unscrupulous use of extrinsic documents to resolve competing theories against the complaint" is improper and must not be credited. *Id*; *Rollins v. Dignity Health*, 338 F. Supp. 3d 1025, 1031, 1033 (N.D. Cal. 2018) (denying requests for judicial notice because "Defendants repeatedly do what *Khoja* forbids—ask the Court to take judicial notice of documents that they then use as a basis to challenge the factual averments in the complaint").

---

[1] Unless otherwise noted, citations to "¶_" are to the Second Amended Complaint (ECF No. 43); emphasis is added; and internal citations, alterations, and quotations are omitted.  References to "Mot." are to Defendant's Motion to Dismiss the Second Amended Class Action Complaint (ECF No. 51).

For these reasons, and as set forth more fully below, the RJN should be granted *only* to the extent that Defendants seek to demonstrate the existence of matters of public record. To the extent Defendants seek to use this material to assert supposed facts that are inconsistent with the Complaint's allegations, the RJN must be denied.

## III.    LEGAL STANDARDS

"In reviewing a motion to dismiss pursuant to Rule 12(b)(6), [a court] must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Tr. v. United Bhd. of Carpenters*, 768 F.3d 938, 945 (9th Cir. 2014). A "factual determination by the court is inappropriate" in the context of Rule 12(b)(6). *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 950 (9th Cir. 2005). As a general rule, courts "may not consider facts outside the complaint when deciding a motion to dismiss without converting it into a summary-judgment motion." *HomeLight, Inc. v. Shkipin*, 2022 WL 16528142, at *1 (N.D. Cal. Oct. 28, 2022).

There are two narrow exceptions to this rule. *First*, a court may take "judicial[] notice [of] a fact that is not subject to reasonable dispute" if that fact "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Judicial notice is a "narrow exception" that "is not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment." *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 995 (S.D. Cal. 2005). "[A] court cannot take judicial notice of disputed facts," and even when a document is "susceptible to judicial notice," that still "does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja*, 899 F.3d at 999. *See also United States v. Corinthian Colls.*, 655 F.3d 984, 998-99 (9th Cir. 2011) ("[W]e may not, on the basis of evidence outside of the Complaint, take judicial notice of facts favorable to Defendants that could reasonably be disputed.").

*Second*, "a defendant may seek to incorporate a document into the complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Khoja*, 899 F.3d at 1002. "Unlike judicial notice," while "a court may assume [an incorporated

document's] contents are true for purposes of a motion to dismiss under Rule 12(b)(6) . . . it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Id.* at 1003; *Angelucci v. Mayorkas*, 2021 WL 4523690, at \*3 (S.D. Cal. Oct. 4, 2021) (recognizing the Ninth Circuit's "admonition against resolving factual disputes at the pleading stage" through documents incorporated by reference in the complaint).

## IV.    ARGUMENT

In the RJN, Defendants ask the Court to exceed the narrow exceptions to the rule against consideration of facts outside the complaint. Specifically, Defendants ask the Court to take notice of self-serving, extrinsic statements to "present their own version of the facts at the pleading stage" that directly contradict Plaintiff's well-pled allegations. *See Khoja*, 899 F.3d at 999. While Plaintiff does not concede that consideration of any of the 21 extrinsic sources Defendants present in their RJN is appropriate, Plaintiff specifically objects to the improper use of Exhibits B, C, J, K, N, Q, and S to draw factual inferences directly disputed by the Complaint.

### A.    Documents Not Cited In The Complaint

Defendants request to rely on certain documents that are not cited anywhere in the Complaint, including certain pre-Class Period investor call transcripts and the clinical reference manual for the Zio AT. While the Court is permitted to consider these documents for the limited proposition that certain information was public, "a court cannot take judicial notice of disputed facts contained in such records." *Bhangal v. Hawaiian Elec. Indus., Inc.*, 2024 WL 4505465, at \*6 (N.D. Cal. Oct. 15, 2024). As set forth below, with respect to certain documents for which Defendants request judicial notice, Defendants are improperly seeking to "present[] their own version of the facts at the pleading stage." *Id*. Their motion should be rejected for these limited purposes.

**Exhibits J and K** are, respectively, the Company's earnings call transcript from the first quarter of 2019, and a transcript of the June 25, 2019, BMO Capital Markets Prescription for Success Healthcare Conference. Neither of these exhibits are referenced in the Complaint, meaning the incorporation-by-reference doctrine is inapplicable. *Khoja*, 899 F.3d at 1002.

*First*, Defendants ask the Court to take judicial notice of Exhibit J to contradict Plaintiff's allegations that Defendants misleadingly marketed the Zio AT to "high-risk" patients despite knowing that the device's limitations could prevent it from notifying such vulnerable patients' healthcare providers of even life-threatening arrhythmias. ¶¶73-74, 87-95, 203-12.[2] Exhibit J is a transcript from an iRhythm earnings call that pre-dates the start of the Class Period by over two years. In this call, the speakers were two executives (ex-CEO Kevin King and ex-CFO Matthew Garrett) that were replaced by Defendants Blackford and Day prior to the start of the Class Period.

Defendants cite to this transcript for the proposition that "iRhythm did disclose a definition of 'high risk' to investors: 'men over 55 and women over 65' who have '1 of the risk factors, or 2 of the risk factors associated with diabetes, hypertension, sleep apnea, and things of that nature.'" Mot. at 7 (citing Ex. J at 9). Defendants further conclude based on King's statement that "'high risk' bears no relationship to whether a patient has 'life-threatening heart conditions,'" (*id.*) which Defendants contend the Complaint alleges. *Id.* Notably, the Complaint does *not* allege that "high risk" is the same as "has a life-threatening heart condition," and King was not discussing "high risk" in connection with the Zio AT. Nonetheless, Defendants improperly attempt to rely on Mr. King's statement about what supposedly constitutes a "high-risk" patient for the truth of the matter asserted and to argue that this extrinsic definition of "high-risk" undermines Plaintiff's allegations.

*Second*, Defendants ask the Court to take judicial notice of Exhibit K to dispute Plaintiff's allegations that Defendants' statements that iRhythm offered products "across the risk spectrum," and that the Zio AT provided "continuous monitoring 'across' the entire end of the depicted 'spectrum of care,'" were false and misleading because the device's limitations made it inappropriate and even dangerous for those on the "high-risk" end of the spectrum. ¶¶206, 209, 212.

Exhibit K is yet another pre-Class Period transcript. Defendants appear to be citing to the following passage by ex-CEO Kevin King:

---

[2] This allegation is directly corroborated by another pre-Class Period Statement by Mr. King in Exhibit K, where he explained that the Zio XT and AT are appropriate for "14 different arrhythmia classes … some of [which] *are life-threatening*." D.Ex. K at 2.

So millions of patients each year are faced with symptoms that could be indicative of a heart rhythm disorder. Those symptoms are generally dizziness, palpitations, loss of consciousness, anxiety, chest pain, etc. And it's the role of a physician to really try to figure out what is going on here.

***There are about 14 different arrhythmia classes that can be diagnosed with Zio. Some of them are quite benign and some of them are life-threatening.*** So we have to differentially diagnose ***between the benign versus the malignant or high acuity ones***.

In the US there are about 5.5 million tests done per year and they are divided up into three traditional categories prior to Zio. One was Holter monitors. Holter monitors have been around since 1960, fairly inexpensive and effective tool. They're about 62% to 63% of that 5.5 million.

Event monitors are a [second] class. They are a little bit longer in duration but only capture short periods of time. ***And then Mobile Cardiac Telemetry is the last version, which is really used for high acuity patients***. ***And our Zio XT and our Zio AT products cover that entire spectrum of the 5.5 million tests***.

D.Ex. K at 2 (emphasis added). Defendants rely on King's statements to argue that the alleged "spectrum of care" statements are not misleading, because "as iRhythm has explained, they refer to the ability of Zio devices to provide both interim wear-time reports as well as comprehensive, end-of-wear reports—an ability which Plaintiff cannot dispute." Mot. at 8, n.6. Plaintiff does, in fact, dispute the ability of Zio devices to provide interim wear-time reports. Thus, Defendants again attempt to rely on Mr. King's pre-class period statement about the Zio AT's purported capabilities for the truth of the matter asserted, and to argue that Defendants' statements about the "spectrum of care" were accurate.

The Court should not take judicial notice of these documents for the purposes set forth by Defendants. As an initial matter, because these statements were made years before the Class Period began, Exhibits J and K are irrelevant. *Ferreria v. Funko Inc.*, 2021 WL 880400 at *8 (C.D. Cal. Feb. 25, 2021) (denying request for judicial notice for defendant's "SEC forms for quarters or years outside the Class Period" as "not relevant" as well as those that "contain [no] alleged false or misleading statement" and do not "form the basis of any claims raised by Plaintiff").

Furthermore, "[t]he truth of the content [of public documents], and the inferences properly drawn from them … is not a proper subject of judicial notice under Rule 201." *Gerristen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1032 (C.D. Cal. 2015); *see also Khoja*, 899 F.3d at 1003

("Submitting documents not mentioned in the complaint to create a defense is nothing more than another way of disputing the factual allegations in the complaint, but with a perverse added benefit: unless the district court converts the defendant's motion to dismiss into a motion for summary judgment, the plaintiff receives no opportunity to respond to the defendant's new version of the facts."); *Maiman v. Talbott*, 2010 WL 11421950, at *7 (C.D. Cal. Aug. 9, 2010) (crediting plaintiffs' argument that statements contained in defendants' SEC filings should not be accepted as "true," particularly "in a securities fraud action—since the truth of the contents of the SEC reports is typically central to the dispute").

If the Court does notice these documents, they can only be noticed for the fact that Defendants made these statements, and not for the truth of the matter asserted or for the purpose of resolving factual disputes. *Karri v. Oclaro, Inc.*, 2020 WL 5982097, at *4 (N.D. Cal. Oct. 8, 2020) (considering documents filed with the SEC, but declining to take "judicial notice of any disputed facts"); *In re Splunk Inc. Sec. Litig.*, 592 F. Supp. 3d 919, 930 (N.D. Cal. 2022) ("Because the truth of the matters asserted in these documents is subject to a reasonable dispute, however, the Court will take judicial notice of the statements in these documents, but not for the truth of the matters asserted therein or for the purpose of resolving factual disputes.").

**Exhibits Q and S** are iRhythm's Clinical Reference Manuals ("CRM") for the Zio AT, dated April 11, 2018, and April 20, 2020, respectively. Defendants mischaracterize Plaintiff's allegations to suggest that Plaintiff "extensively relies" on the CRMs in the Complaint. RJN at 2, 6 (citing ¶¶15, 71, 103, 115). This is wrong. The allegations cited by Defendants merely reference the FDA's conclusions about iRhythm's improper "labeling" of the Zio AT (¶¶15, 71, 103, 115). Plaintiff nowhere references or relies on, obliquely or otherwise, the CRMs, nor do the CRMs form the basis of Plaintiff's claims. This is a far cry from the requirement that a document be referenced "extensively" to be eligible for incorporation-by-reference. *See Khoja*, 899 F.3d at 1002 (The "mere mention of the existence of a document is insufficient to incorporate the contents of a document"). Because neither of these exhibits are in any way referenced in the Complaint, the incorporation-by-reference doctrine is inapplicable. *Id*.

Defendants further improperly request that the Court take notice of Exhibits Q and S to disprove several of Plaintiff's allegations. **First**, Plaintiff alleged that doctors and patients were unaware that the registration requirement would result in the device's failure to transmit arrhythmia data, and that Defendants' statements about the Zio AT's "timely" and "near real-time" transmissions of arrhythmia data were accordingly misleading. ¶¶6, 94, 202. Defendants attempt to rely on Exhibits Q and S to suggest that doctors and patients were made aware of this onerous registration requirement, and accordingly the market could not have been misled. Mot. at 2, 4.

**Second**, Plaintiff alleged that Defendants' statements about the timing of transmissions, as well as the Zio AT's appropriateness for "high-risk" patients, were false because Defendants omitted that the transmission and registration limits rendered the Zio AT unable to transmit arrhythmia data once triggered. ¶¶103-07, 212. Defendants attempt to rely on Exhibits Q and S to argue, instead, that iRhythm warned doctors that the device was not appropriate for "critical care" patients and that the market thus cannot have been misled. Mot. at 3, 8-9, 11.

Defendants cannot, as they do here, use judicial notice to invite the Court to "resolve competing theories against the complaint," which "risks premature dismissals of plausible claims that may turn out to be valid after discovery." *Khoja*, 899 F.3d at 998. Defendants' counter-factual narrative—namely, that Defendants purportedly disclosed information related to the issues identified by the FDA and former employees, and so their statements could not be misleading— are based on these dense, technical documents. Notably, even these documents Defendants hand-selected do not mention that the device's "known design constraint" would render it functionally equivalent to the lesser Zio XT (which was appropriate for "low-risk" patients). ¶¶54-56, 69, 109, 200-02; *see Khoja*, 899 F.3d at 1000 (judicial notice is also inappropriate where the substance of a document "is subject to varying interpretations, and there is a reasonable dispute as to what [it] establishes").

## B.   Documents Referenced In The Complaint

While "mere mention of the existence of a document is insufficient to incorporate the contents of a document, the document is incorporated when its contents are described and the document is integral to the complaint." *Bhangal*, 2024 WL 4505465, at *6. However, even if a

document is referenced in the Complaint, "incorporation-by-reference doctrine does not override the fundamental rule that courts must interpret the allegations and factual disputes in favor of the plaintiff at the pleading stage." *Khoja*, 899 F.3d at 1014. Plaintiff objects to Defendants' improper reliance on the incorporation-by-reference doctrine with respect to three documents.

**Exhibit B** is Defendant Blackford's written response to the FDA's 2022 Form 483. Unlike Exhibits J, K, Q, and S, Exhibit B is referenced in Plaintiff's Complaint, and was issued during the Class Period. While Plaintiff does not dispute that this document is referred to in the Complaint, Defendants rely on it for improper purposes.

*First*, Defendants rely on Exhibit B to contradict Plaintiff's allegations concerning the Zio AT's registration requirement. For example, Plaintiff alleged that the FDA discussed the fact that missing patient registration information, including information that was "not necessary to allow matching of data to a specific patient" such as "pending billing or insurance information," led to missed arrhythmias. ¶95. As set forth above, Plaintiff also alleged that neither healthcare providers nor their patients were notified when registration errors would result in the device's failure to transmit arrhythmia data. ¶¶6, 94. But Defendants explicitly attempt to rely on Exhibit B for the truth of Defendant Blackford's claim that the registration requirement was merely "the HCP's prescription order for monitoring services," (Mot. at 2, 4) and that when such registration is incomplete, iRhythm "contacts the account within 24 hours." Mot. at 4.

*Second*, Defendants cite to Exhibit B to contradict Plaintiff's allegations concerning the frequency with which the transmission limit was reached. *See, e.g.*, ¶¶116 (FDA finding that the limit was hit "more often than expected" which "introduce[d] a nonconformance"), 212 ("[T]he transmission limit is exceeded more than rarely[:] [] this introduces a nonconformance because the device is unable to transmit ECG information for monitoring."). Specifically, Defendants cite to Exhibit B for Defendant Blackford's claim that "it is rare for the[] transmission limit[] to be reached." Mot. at 3.

*Third*, Defendants cite to Exhibit B to contradict Plaintiff's allegations that neither patients nor healthcare providers were notified when the transmission limit was hit. ¶¶70, 178. Specifically, Defendants rely on Exhibit B for Defendant Blackford's claim that "when a patient nears and

reaches the transmission limit, the HCP is notified," and that in each instance of a patient complaint cited in the 2022 Form 483, iRhythm "reached out to the HCP to offer a replacement patch when the patient hit the transmission limit." Mot. at 4.

*Finally*, Plaintiff alleged that Defendants "silent[ly] acknowledge[d] that the Zio AT was, indeed, not for high-risk patients" when they "quietly scrubbed references to the Zio AT's intended use by 'high-risk' patients from its website," which demonstrated Defendants' scienter. ¶¶167-68. But Defendants rely on Exhibit B to suggest that the Company was merely "sort[ing] through [] 'verbiage' issues with the FDA" when it removed this language, and thus was not demonstrative of the scienter inference. Mot. at 4, 20.

Defendants' misuse of the incorporation-by-reference doctrine to create factual defenses to Plaintiff's allegations must not be credited. Defendants are improperly attempting to exploit a carefully crafted corporate document—which was constructed to provide a defense to the FDA's findings—to contradict the well-pled allegations in the Complaint. *Longo v. OSI Sys., Inc.*, 2020 WL 3124221, at *1 (C.D. Cal. Mar. 11, 2020) (documents "cannot be incorporated by reference because they are being used to support a defense to the well-pled allegations in the complaint"); *Dfinity USA Rsch. LLC v. Bravick*, 2023 WL 2717252, at *3 (N.D. Cal. Mar. 29, 2023) (declining to incorporate by reference because it "would merely create a defense to the [c]omplaint's allegations by disputing the factual allegations"); *Khoja*, 899 F.3d at 1006 (holding that the district court improperly incorporated documents purportedly refuting the plaintiffs' scienter arguments).

**Exhibits C and N** include a letter from the FDA to iRhythm setting forth its 510(k) clearance for the Zio AT (the "510(k) Clearance"). Like Exhibit B, Exhibit C is referenced in the Complaint.[3] Defendants attempt to use Exhibits C and N for an improper purpose. Specifically, Defendants ask the Court to accept as true their assertion, based on Exhibits C and N, that "one of the Zio AT's FDA-cleared predicate devices, the Medtronic SEEQ MCT, was also an MCT with common characteristics to the Zio AT." Mot. at 13. Thus, Defendants improperly dispute Plaintiff's factual allegation that the Zio AT was not an MCT, that the FDA did not clear the Zio

---

[3] Although Exhibit N is not referenced in the Complaint, it includes the same 510(k) Clearance contained in Exhibit C.

AT as an MCT, and that it was misleading of Defendants to represent to investors that the Zio AT was an MCT. ¶¶71-72, 128, 223. Defendants' argument requires the Court to accept as true their claim that (1) the Medtronic SEEQ MCT was similar to the Zio AT and (2) the Medtronic SEEQ MCT itself was properly labelled an MCT. As stated above, the Ninth Circuit expressly forbids assuming "the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Khoja*, 899 F.3d at 1003. Because Defendants ask the Court to do exactly that here—assume the truth of the assertion that the Zio AT's *non-primary* predicate device was an MCT, which conflicts directly with Plaintiff's allegations concerning the FDA's conclusion that the Zio AT was ***not an MCT***—their request must be denied.

## V.    CONCLUSION

For all the reasons stated above, Defendants' RJN should be granted only to the extent that such extrinsic material is offered to show certain statements were made, not that the contents were true, and the RJN should otherwise be denied. Moreover, wherever documents incorporated-by-reference are used to dispute the well-pled facts in the Complaint, the Complaint must control.

Dated:  January 29, 2025                              Respectfully submitted,

                                                                   **BERNSTEIN LITOWITZ BERGER**
                                                                   **& GROSSMANN LLP**

                                                                   */s/ Katherine M. Sinderson*
                                                                   JOHN J. RIZIO-HAMILTON (*pro hac vice*)
                                                                   (johnr@blbglaw.com)
                                                                   KATHERINE M. SINDERSON (*pro hac vice*)
                                                                   (katiem@blbglaw.com)
                                                                   THOMAS Z. SPERBER (*pro hac vice*)
                                                                   (thomas.sperber@blbglaw.com)
                                                                   BRITTNEY BALSER (*pro hac vice*)
                                                                   (brittney.balser@blbglaw.com)
                                                                   1251 Avenue of the Americas
                                                                   New York, NY 10020
                                                                   Tel:    (212) 554-1400
                                                                   Fax:    (212) 554-1444

                                                                   JONATHAN D. USLANER (Bar No. 256898)
                                                                   (jonathanu@blbglaw.com)
                                                                   2121 Avenue of the Stars, Suite 2575
                                                                   Los Angeles, CA 90067
                                                                   Tel:    (310) 819-3470

                                                                   *Counsel for Lead Plaintiff Oklahoma Firefighters*
                                                                   *Pension and Retirement System*