QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
Kristin Tahler (Bar No. 261908)
kristintahler@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000

Christopher Porter (admitted *pro hac vice*)
chrisporter@quinnemanuel.com
700 Louisiana Street, Suite 3900
Houston, TX 77002
Telephone: (713) 221-7000

Jesse Bernstein (admitted *pro hac vice*)
Brenna Nelinson (admitted *pro hac vice*)
Amy Shehan (admitted *pro hac vice*)
jessebernstein@quinnemanuel.com
brennanelinson@quinnemanuel.com
amyshehan@quinnemanuel.com
295 5th Avenue
New York, NY 10016
Telephone: (212) 849-7000

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

GLAZING EMPLOYERS AND GLAZIERS'
UNION LOCAL #27 PENSION AND
RETIREMENT FUND, on behalf of itself and all
others similarly situated,

Plaintiff,

v.

IRHYTHM TECHNOLOGIES, INC., et al.,

Defendants.

Case No. 3:24-cv-706-JSC

**DEFENDANTS' REPLY IN SUPPORT OF THEIR REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Date: April 24, 2025
Time: 10:00 a.m.
Location: Courtroom 8, 19th Floor
Before: Hon. Jacqueline Scott Corley

## I.    **INTRODUCTION**

Plaintiff's Opposition (Dkt. 68) ("OJN") to Defendants' Request for Judicial Notice In Support Of Defendants' Motion to Dismiss the Second Amended Complaint (Dkt. 52) ("RJN") confirms that the Court should grant Defendants' RJN in its entirety.

***First***, Plaintiff lodges no objection to the Court's consideration of Exhibits A, D, E, F, G, H, I, L, M, O, P, R, and T and the Wayback Machine link in footnote 3 (the "Link") of Defendants' Motion to Dismiss ("Motion" or "Mot."). OJN at 3. Because Plaintiff does not oppose Defendants' request for judicial notice and/or incorporation by reference of these exhibits, Defendants' RJN should be granted as to Exhibits A, D, E, F, G, H, I, L, M, O, P, R, and T and the Link.[1]

***Second***, Plaintiff does not dispute that the Court can take judicial notice of Exhibits B, C, J, K, N, Q, and S or find that those exhibits were incorporated by reference. Instead, Plaintiff's objections are based on its theory that Defendants invite the Court to consider these exhibits for improper purposes. OJN at 3. Because Defendants do not offer Exhibits B, C, J, K, N, Q, and S for improper purposes, each of Plaintiff's arguments fails for the reasons outlined below.

## II.    **ARGUMENT**

### A.    **Exhibit B**

The Court should find that iRhythm's September 1, 2022 response to the FDA's 2022 Form 483 (Exhibit B) is incorporated by reference. Plaintiff's Second Amended Complaint (Dkt. 43) ("SAC") quotes from and extensively references Exhibit B. *See, e.g.*, ¶¶ 10, 108-11, 114, 126, 132, 158, 160, 166, 186; *see also* OJN at 8 (admitting that "Exhibit B is referenced in Plaintiff's Complaint"). In addition, Plaintiff specifically relies on Exhibit B in an effort to establish scienter—a necessary element of Plaintiff's claims. ¶¶ 108-110 (devoting an entire subsection within its scienter allegations to iRhythm's September 1, 2022 response to the FDA's 2022 Form 483); *see also* Dkt. 66 ("Opposition" or "Opp.") at

---

[1] *See, e.g.*, *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1001 n.4 (N.D. Cal. 2014) (granting request for judicial notice in part because plaintiffs failed to timely object to or oppose the request); *R.S. Coppola Tr.-Oct. 19, 1995 v. Nat'l Default Servs.*, 2022 WL 2753512, at *1 (D. Nev. 2022) (deeming plaintiffs' declination to object to request for judicial notice as plaintiffs having consented to the court granting defendants' request for judicial notice); *Murphy v. Precision Castparts Corp.*, 2020 WL 4040827, at *1 n.1 (D. Or. 2020) (granting "unopposed requests for judicial notice"); *see also Diamond v. Corizon Health, Inc.*, 2016 WL 7034036, at *4 (N.D. Cal. 2016) (Corley, J.) (failure to respond results in concession).

2-3, 5, 7, 19, 21-22 (relying on iRhythm's September 1, 2022 response to the FDA's 2022 Form 483 to oppose the Motion). It is hard to imagine what is required to incorporate a document by reference if the SAC's extensive reference to and reliance on Exhibit B does not suffice. *Cf. Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018) ("extensively," in this context, means "more than once").

The cases Plaintiff cites are distinguishable. OJN at 9. In *Khoja*, unlike here, "the [c]omplaint did not refer to any of the[] documents extensively enough to warrant incorporation on that ground alone" and "Khoja's claims did not arise from" the at-issue documents. *Id.* at 1006. In *Longo v. OSI System, Inc.*, the defendants admitted the documents they asked the court to incorporate by reference were not cited in the complaint. 2020 WL 3124221, at *1 (C.D. Cal. 2020). And in *Dfinity USA Research LLC v. Bravick*, the complaint made "no direct mention" of the emails to be incorporated by reference in the complaint and "at best refer[red] once, indirectly, to each email by alleging that Dfinity 'contacted' Mr. Bravick on two dates." 2023 WL 2717252, at *3 (N.D. Cal. 2023). Here, as explained above, both Plaintiff and Defendants admit Exhibit B is cited throughout the SAC, and it is clear from the SAC and Plaintiff's Opposition to the Motion that Plaintiff relies on quotes from Exhibit B to establish scienter. *See Pardi v. Tricida, Inc.*, 2024 WL 1056013, at *4 (N.D. Cal. 2024) (finding exhibits incorporated by reference because the complaint "explicitly and repeatedly refers to excerpts of the[] exhibits to support its claims"). The Court should thus deem Exhibit B incorporated by reference into the SAC.

Plaintiff nonetheless argues the Court should not consider Exhibit B because Defendants improperly rely on Exhibit B to insert their own version of events. OJN at 8-9. Not true. Defendants' citation to Exhibit B is necessary to provide the Court with context the SAC intentionally (and misleadingly) omits. In the SAC, Plaintiff selectively plucks quotes from Exhibit B, frames those quotes in a manner that benefits Plaintiff's narrative, and self-servingly omits portions of Exhibit B that provide important context and undermine Plaintiff's claims. That is exactly the type of artful pleading by plaintiffs the incorporation-by-reference doctrine is aimed at stopping: The incorporation-by-reference "doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja*, 899 F.3d at 1002; *see also Beveridge v. City of Spokane*, 2021 WL 3082003, at *2 (9th Cir. 2021) (the incorporation-by-

DEFENDANTS' REPLY IN SUPPORT OF THEIR REQUEST FOR JUDICIAL NOTICE

reference doctrine "is intended to prevent plaintiffs from surviving a motion to dismiss by selecting only portions of documents that support their claims" (quotation marks omitted)); *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1058 n.10 (9th Cir. 2014) (a document may be "consider[ed] . . . in its entirety" where plaintiffs "rel[ied] on portions of it in their complaint").

For example, Plaintiff repeatedly emphasizes iRhythm "admitted" the transmission limit posed a "hazardous situation." *E.g.*, ¶¶ 109, 114, 126, 158, 160, 212; Opp. at 2, 19-20, 22. But Plaintiff plucked that quote out of critical context that changes its meaning:

> The hazardous situation of a max transmission design constraint potentially leads to a delayed notification of ECG findings until the final report is posted with all findings from the wear period. The exception would be the population where the physician responded to iRhythm Customer Care communication to send a second patch prior to the max limit being reached.

Ex. B at R36. The full quote explains that the "hazardous situation" Plaintiff heavily relies on for its claims occurs only when the transmission limit is hit (which happens, on average, for 1.67% of Zio AT devices, Ex. B at R40) *and* only when the HCP fails to respond to iRhythm's multiple attempts at outreach and does not replace the Zio AT prior to the limit being reached. *Id.*; *see also* Ex. B at R32-R33; Mot. at 12. This context is particularly relevant where Plaintiff asserts claims for securities fraud, because the "particular information [that] was available to the stock market" impacts the issues of falsity and scienter. *See In re Intel Corp. Sec. Litig.*, 2019 WL 1427660, at *6 (N.D. Cal. 2019) (emphasis omitted).

Further, Plaintiff ignores that "[o]nce a document is deemed incorporated by reference, the *entire* document is assumed to be *true* for purposes of a motion to dismiss, and both parties—and the Court—are free to refer to any of its contents." *In re NVIDIA*, 768 F.3d at 1058 n.10 (emphases added); *see also Reckstin Fam. Tr. v. C3.ai, Inc.*, 718 F. Supp. 3d 949, 966 (N.D. Cal. 2024) (same). Given that Exhibit B is incorporated by reference, *see supra* at 1-2, the entirety of Exhibit B, including the above quote, "is assumed to be true for purposes of [Defendants'] motion to dismiss," *In re NVIDIA*, 768 F.3d at 1058 n.10.[2]

---

[2] The Court need not worry about *Khoja*'s proposition that "it is improper" to accept the truth of matters asserted in incorporated documents "only to resolve factual disputes against the plaintiff's well-pled allegations in the complaint," 899 F.3d at 1014, because (1) Plaintiff does not allege *any* facts supporting how frequently the transmission limit was hit, Reply at 5, so there is no "factual dispute[]" to resolve and

For these reasons, the Court should find that Exhibit B is incorporated by reference into the SAC and consider Exhibit B for its truth when resolving Defendants' Motion.

**B.     Exhibits C and N**

Exhibits C and N are letters from the FDA to iRhythm concerning the Zio AT's 510(k) clearance. The Court can consider Exhibit C under the incorporation-by-reference doctrine because the SAC repeatedly references Exhibit C. *See, e.g.*, ¶¶ 51, 53, 212; *see also* OJN at 9 (admitting that "Exhibit C is referenced in the Complaint"). The Court can take judicial notice of both Exhibits C and N, as "courts have specifically held that the FDA's approval letters for medical devices are subject to judicial notice." *Eidson v. Medtronic, Inc.*, 981 F. Supp. 2d 868, 879 (N.D. Cal. 2013); *see also Erickson v. Bos. Sci. Corp.*, 846 F. Supp. 2d 1085, 1089 (C.D. Cal. 2011) (taking judicial notice of FDA approval letters); *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (affirming judicial notice of FDA 510(k) clearance letter).

Plaintiff's sole argument against the Court's consideration of Exhibits C and N is that Defendants improperly use those Exhibits to dispute Plaintiff's allegation that the Zio AT was not an MCT by arguing that one of the Zio AT's predicate devices (the Medtronic SEEQ MCT) was an MCT. OJN at 9-10. This argument fails.

*First*, Defendants do not cite Exhibit C to dispute any of Plaintiff's allegations. In fact, the discussion Plaintiff cites from Defendants' Motion does not even cite Exhibit C, *see* OJN at 9 (citing Mot. at 13), and Exhibit C itself makes no mention of the Zio AT's predicate devices, *see* Ex. C, so Defendants could not rely on it for that purpose. Given that Plaintiff's argument does not apply to Exhibit C, Plaintiff has set forth no basis for the Court not to consider Exhibit C.[3]

*Second*, Defendants cite Exhibit N not to dispute any of Plaintiff's allegations, but rather to provide

---

(2) *Khoja* did not involve a situation such as this where the incorporated document provides **additional** facts omitted from the complaint that "fatally undermine[]" the plaintiff's claims, *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

[3] In fact, Defendants only cite to Exhibit C to note that the FDA's 510(k) clearance states the Zio AT "is not intended for use on critical care patients." Mot. at 2 (citing Ex. C at 3). To the extent the Court decides it cannot consider Exhibit C, that same disclosure is made in the Link and Exhibits O, Q, S, and T. *See* Ex. O ("Zio XT and Zio AT are contraindicated for critical care patients."); Ex. Q at 9 ("This device is not intended for use in critical care patients[.]"); Ex. S at 9 (same); Ex. T at 3 ("It is not intended for use on critical care patients."); Mot. at 2 n.3 (same). And Plaintiff does not object to the Court's consideration of Exhibit O, Exhibit T, or the Link. OJN at 3.

critical context.  "*Khoja* [] did not eradicate the rule that alleged false statements must be analyzed in context."  *In re Eventbrite, Inc. Sec. Litig.*, 2020 WL 2042078, at *7 (N.D. Cal. 2020) (quotation marks omitted); *accord In re Dermtech, Inc. Sec. Litig.*, 2024 WL 4941026, at *2 (S.D. Cal. 2024) (taking judicial notice of an exhibit because it provides "appropriate context for assessing Plaintiff's allegations").  According to the FDA's website, "[a] 510(k) is a premarket submission made to [the] FDA to demonstrate that the device to be marketed is as safe and effective, that is, substantially equivalent, to a legally marketed device."[4]  Given that the 510(k) clearance process requires "substantial[] equivalen[ce]," the fact that one of the Zio AT's predicate devices (the Medtronic SEEQ MCT) was also an MCT provides necessary context for the Court in assessing the plausibility of Plaintiff's allegations regarding the falsity of the MCT Statements.

### C.   Exhibits J and K

The Court should take judicial notice of Exhibit J, a transcript of iRhythm's Q1 2019 earnings call, and Exhibit K, a transcript of the June 25, 2019 BMO Capital Markets Prescription for Success Healthcare Conference.  Courts regularly take judicial notice of transcripts of earnings calls and conference calls. *See, e.g.*, *Sneed v. AcelRx Pharms., Inc.*, 2022 WL 4544721, at *3 (N.D. Cal. 2022) ("transcripts of earnings calls … are proper subjects of judicial notice"); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1058 (N.D. Cal. 2012) (similar); *Waterford Twp. Police v. Mattel, Inc.*, 321 F. Supp. 3d 1133, 1143 (C.D. Cal. 2018) (similar); *In re Extreme Networks, Inc. Sec. Litig.*, 2018 WL 1411129, at *10 (N.D. Cal. 2018) (taking judicial notice of transcripts of conference calls).

Plaintiff first objects to the Court's consideration of Exhibits J and K on the basis that they are "irrelevant" since those transcripts are from calls that took place before the Class Period began.  OJN at 5.  Despite Plaintiff's urging otherwise, there is no rule that information from outside the Class Period is automatically "irrelevant."  In fact, many courts have said the opposite.  *See, e.g.*, *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 171 n.13 (3d Cir. 2014) ("Pre-class period statements may be used to ascertain the falsity and materiality of the challenged statements."); *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001) (holding that "[p]re-class data is relevant," as "[a]ny information that sheds

---

[4]   *See*   https://www.fda.gov/medical-devices/premarket-submissions-selecting-and-preparing-correct-submission/premarket-notification-510k.

light on whether class period statements were false or misleading is relevant").[5]  Moreover, the SAC reveals the relevance of information outside the Class Period by its inclusion of pre-Class Period allegations, *see, e.g.*, ¶¶ 8, 90, 159, and post-Class Period developments, *see* ¶¶ 154-56.

Plaintiff's reliance on *Ferreira v. Funko Inc.* is inapt.  OJN at 5.  In *Ferreira*, the court denied the defendant's request for judicial notice of "***SEC forms*** for quarters or years outside the Class Period" because those documents were "not relevant to the Court's analysis."  2021 WL 880400, at *8 (C.D. Cal. 2021).  Exhibits J and K are call transcripts, not an SEC form.  Regardless, the court provided no explanation for why such documents were "not relevant" to that individual court's analysis.  *See id.* Separately, the *Ferreira* court denied the defendant's request for judicial notice of an earnings call transcript because that transcript did not "contain any alleged false or misleading statement" and did "not form the basis of any claims raised by [the p]laintiffs."  *Id.*  A document need not contain a false or misleading statement to be judicially noticed, and the *Ferreira* court's latter explanation appears to be based on the incorporation-by-reference doctrine which permits a court to consider a document if, for example, "the document forms the basis for the plaintiff's claim."  *AliveCor, Inc. v. Apple Inc.*, 592 F. Supp. 3d 904, 912 (N.D. Cal. 2022).  Here, Defendants seek the Court's consideration of Exhibits J and K pursuant to the doctrine of judicial notice, not the incorporation-by-reference doctrine.  *See* RJN at 4.

Next, as to Exhibit J, Plaintiff argues Defendants rely on a statement therein "about what supposedly constitutes a 'high-risk' patient for the truth of the matter asserted and to argue that extrinsic definition of 'high-risk' undermines Plaintiff's allegations."  OJN at 4.  That is an inaccurate description of Defendants' use of Exhibit J.  In Exhibit J, iRhythm's former CEO Kevin King disclosed a definition of "high risk" to investors:  "men over 55 and women over 65" who have "1 of the risk factors, or 2 of the risk factors associated with diabetes, hypertension, sleep apnea, and things of that nature."  Ex. J at 9; Mot. at 7.[6]  Defendants do not offer Exhibit J for the truth of the matters asserted therein.  Rather, Defendants submit Exhibit J to show what was disclosed to the public.  *See* Mot. at 7 (arguing that Plaintiff

---

[5] As explained further below, these two transcripts are particularly relevant because they bear on whether the High-Risk Statements are false or misleading.

[6] Unlike the earnings call transcript in *Khoja* where the defendant informed investors that "continuing doing the Light Study unchanged was not an option" and that "the Light Study is ongoing," 899 F.3d at 1000, reasonable people could not debate what King's statement disclosed.

DEFENDANTS' REPLY IN SUPPORT OF THEIR REQUEST FOR JUDICIAL NOTICE

claims the High-Risk Statements are false but does not define "high risk," meanwhile iRhythm disclosed a definition of "high risk" to investors); *Wochos v. Tesla, Inc.*, 2018 WL 4076437, at *2 (N.D. Cal. 2018) (taking judicial notice of earnings call transcript "for the sole purpose of determining what representations [defendant] made to the market"); *Sylebra Cap. Partners Master Fund Ltd. v. Everbridge, Inc.*, 2024 WL 2107383, at *2 (C.D. Cal. 2024) (taking judicial notice of earnings and conference call transcripts for the purpose that defendants "made the statements in these transcripts to the market"); *see also Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999) ("We take judicial notice that the market was aware of the information contained in the news articles submitted by the defendants."). Notably, Plaintiff does not appear to object to the use of Exhibit J for that purpose.  *See* OJN at 6 ("If the Court does notice [Exhibits J and K], they can only be noticed for the fact that Defendants made these statements[.]").

Lastly, as to Exhibit K, Plaintiff argues Defendants rely on a passage in Exhibit K "to dispute Plaintiff's allegations that Defendants' statements that iRhythm offered products across the risk spectrum[] and that the Zio AT provided continuous monitoring across the entire end of the depicted spectrum of care[] were false and misleading."  OJN at 4 (quotation marks omitted).  Defendants submit Exhibit K to provide the Court with appropriate context on what information was available about the "spectrum of care" and "risk spectrum" to the market:  During that conference, iRhythm's former CEO Kevin King told investors (1) "[t]here are about 14 different arrhythmia classes that can be diagnosed with [the] Zio [service]," (2) "there are about 5.5 million tests done per year" to detect arrhythmias in the United States, and (3) "our Zio XT and our Zio AT products cover that entire spectrum of the 5.5 million tests." Ex. K at 2; *see In re Dermtech*, 2024 WL 4941026, at *2 (taking judicial notice of an exhibit because it provides "appropriate context for assessing Plaintiff's allegations"); *Chi. & Vicinity Laborers' Dist. Council Pension Fund v. Amplitude, Inc.*, 2025 WL 82206, at *1 (N.D. Cal. 2025) (granting request for judicial notice of conference call transcripts because judicial notice is appropriate "for the purpose of determining what information was available to the market").[7]

---

[7] Plaintiff claims it "dispute[s] the ability of [the] Zio devices to provide interim wear-time reports," OJN at 5, but Plaintiff itself alleged in the SAC that the Zio XT did not provide interim wear-time reports while the Zio AT did.  *Compare* ¶ 2 (explaining the Zio XT's end-of-wear report), *with* ¶ 170 (referring to the Zio AT's "final reports" and "wear-time reporting").  *See also* Reply at 2.

**D.    Exhibits Q and S**

The Court should find that Exhibits Q and S (the Zio AT Clinical Reference Manual ("CRM") dated April 11, 2018 and April 20, 2020, respectively) are incorporated by reference.  The CRM is a central part of the Zio AT labeling.  *See, e.g.*, Ex. F (referring to the "Zio AT System Clinical Reference Manual" and "Important Information Pamphlet for Zio AT System" as the "Zio AT System labeling precautions"); Ex. B (similar).[8]

Plaintiff claims it does not reference or rely on the CRM.  OJN at 6.  Not so.  The SAC refers to Zio AT's labeling more than twenty times, *see, e.g.*, ¶¶ 12, 15, 31, 71, 103, 111-12, 115-16, 126, 128-29, 131-32, 137, and devotes a section to alleging iRhythm's November 4, 2022 disclosure of a "labeling correction" was corrective, ¶¶ 129-33.  Additionally, iRhythm's September 1, 2022 response to the 2022 Form 483 (Exhibit B), which the SAC extensively quotes from and relies on, *see supra* at 1-2, cites the CRM, *see, e.g.*, Ex. B at R29, R67.

Plaintiff also asserts that the CRM does not form the basis of its claims.  OJN at 6.  Wrong again. Plaintiff must establish the at-issue statements were false or misleading, *Bhangal v. Hawaiian Elec. Indus.*, 2024 WL 4505465, at *9 (N.D. Cal. 2024), and to do so Plaintiff relies on the FDA's Warning Letter that, according to Plaintiff, "found that iRhythm had been committing ***labeling*** violations," ¶ 116 (emphasis added).  Plaintiff, for example, alleges that "the Warning Letter concluded that the Zio AT was 'misbranded,' because the ***labeling for the device***—claiming to provide 'near-real time monitoring for high-risk patients'—was untrue," ¶ 71 (emphasis added), and relies on that exact allegation in the Opposition to argue the High-Risk Statements were misleading, *see* Opp. at 12.  For these reasons, Plaintiff incorrectly states neither Exhibit Q nor Exhibit S "are in any way referenced" in the SAC.  OJN at 6.[9]  *See Moore v. EO Prods., LLC*, 2023 WL 6391480, at *2 (N.D. Cal. 2023) ("complete label" was "incorporated by reference into the complaint" where the "label is referenced in the complaint" and "forms the basis of

---

[8] Exhibit F specifically refers to the "ALB0031.07" version of the CRM (which is Exhibit S) and the "ALB0034.03" version of the Important Information Pamphlet (which is Exhibit T).  *See* Ex. S at 42; Ex. T at 24.

[9] In a similar vein, Plaintiff's reliance, OJN at 6, on *Khoja*'s proposition that the "mere mention of the existence of a document is insufficient to incorporate the contents of a document," 899 F.3d at 1002, is ineffective here, as Plaintiff refers to the Zio AT labeling more than twenty times, actively relies on the Zio AT labeling for elements of its claims, and thus goes beyond a "mere mention" of the Zio AT labeling.

DEFENDANTS' REPLY IN SUPPORT OF THEIR REQUEST FOR JUDICIAL NOTICE

[the plaintiff's] claims"); *Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1113 n.1 (N.D. Cal. 2013) ("packaging labels" for twelve products were "appropriate for judicial notice" because the complaint "specifically references and quotes" them); *Husain v. Campbell Soup Co.*, 747 F. Supp. 3d 1265, 1272 n.1 (N.D. Cal. 2024) (taking judicial notice of the "entirety of the Product's labeling because it is incorporated by reference and relied upon in the amended complaint").

Plaintiff argues that Defendants submit Exhibits Q and S to improperly provide a "counter-factual narrative" to Plaintiff's allegations (1) that the registration requirement was not disclosed to healthcare providers ("HCPs") and patients and (2) that the High-Risk and Timing Statements were false in light of the transmission limit. OJN at 7. That argument fails.

Regarding the registration requirement, Defendants may use Exhibits Q and S to create a dispute with Plaintiff's conclusory allegations. *Id.* (citing ¶¶ 6, 94, 202). The Ninth Circuit in *Khoja* held that it is improper for courts to assume the truth of matters asserted in incorporated documents if such assumptions only serve to dispute facts stated in a ***well-pleaded*** complaint, 899 F.3d at 1003, but "*Khoja* does not prevent a defendant from using the doctrines of judicial notice or incorporation by reference to create factual disputes with a plaintiff's ***conclusory*** allegations," *In re Eventbrite*, 2020 WL 2042078, at *7 (emphasis in original). Accordingly, Plaintiff's conclusory allegations that iRhythm acted "without any notice to" to HCPs, ¶ 6, and "made no effort" and "repeatedly failed" to notify HCPs and patients of the registration requirement, ¶¶ 94, 202, can be properly disputed at the motion-to-dismiss stage by Exhibits Q and S, which were publicly available during the Class Period and warned that "registration errors may result in limited functionality or erroneous ECG reporting. Utmost caution should be applied to ensure that patient registration is accurate and complete," Ex. Q at 5; Ex. S at 5.[10] Beyond that, it is appropriate to consider Exhibits Q and S "for the purpose of determining what information was available to the market." *Chi. & Vicinity Laborers'*, 2025 WL 82206, at *1; *see also In re Dermtech*, 2024 WL 4941026, at *2 (taking judicial notice of an exhibit because it provides "appropriate context for assessing Plaintiff's allegations").

---

[10] To the extent the Court decides it cannot consider Exhibits Q and S, that same warning appears in Exhibit B, Exhibit T, and the Link. *See* Ex. B at R67; Ex. T at 5; Mot. at 2 n.3 (iRhythm website from 11/30/2021). Plaintiff does not object to the Court's consideration of Exhibit T and the Link. OJN at 3.

DEFENDANTS' REPLY IN SUPPORT OF THEIR REQUEST FOR JUDICIAL NOTICE

As to the falsity of the High-Risk and Timing Statements, Plaintiff misunderstands the purpose for which Defendants submit Exhibits Q and S.  To start, nearly identical language was available on iRhythm's website during the Class Period.  *See, e.g.*, Mot. at 8 (quoting Exhibit Q, Exhibit S, ***and*** iRhythm's November 30, 2021 website all warning that the Zio AT should not be used "for patients with known history of life threatening arrhythmias" and "when real-time or in-patient monitoring should be prescribed").  And, notably, Plaintiff does not object to the Court's consideration of iRhythm's website from November 30, 2021.  *See* OJN at 3 (not objecting to the Link).  But Defendants do not offer a "competing theor[y]," *id.* at 7, rather a valid consideration for the Court in assessing falsity of the High-Risk and Timing Statements, given that Exhibits Q and S were publicly available to investors and informed their understanding of how the Zio AT operated.  Plaintiff is not permitted to allege the High-Risk and Timing Statements are false and then ignore other publicly available information that is unhelpful to their falsity narrative.  *See In re Dermtech*, 2024 WL 4941026, at *2 (taking judicial notice of an exhibit because it provides "appropriate context for assessing Plaintiff's allegations").

## III.    **CONCLUSION**

The Court should grant Defendants' RJN in its entirety and consider Exhibits A through T and the Link in ruling on the Motion.

DATED: March 10, 2025

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Kristin Tahler*

Kristin Tahler (Bar No. 261908)
kristintahler@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000

Christopher Porter (admitted *pro hac vice*)
chrisporter@quinnemanuel.com
700 Louisiana Street, Suite 3900
Houston, TX 77002
Telephone: (713) 221-7000

Jesse Bernstein (admitted *pro hac vice*)
Brenna Nelinson (admitted *pro hac vice*)
Amy Shehan (admitted *pro hac vice*)

jessebernstein@quinnemanuel.com
brennanelinson@quinnemanuel.com
amyshehan@quinnemanuel.com
295 5th Avenue
New York, NY 10016
Telephone: (212) 849-7000

*Attorneys for Defendants*

DEFENDANTS' REPLY IN SUPPORT OF THEIR REQUEST FOR JUDICIAL NOTICE