QUINN EMANUEL URQUHART
& SULLIVAN, LLP
Kristin Tahler (Bar No. 261908)
kristintahler@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000

Christopher Porter (*pro hac vice*)
chrisporter@quinnemanuel.com
700 Louisiana Street, Suite 3900
Houston, TX 77002
Telephone: (713) 221-7000

Jesse Bernstein (*pro hac vice*)
Brenna Nelinson (*pro hac vice*)
Amy Shehan (*pro hac vice*)
jessebernstein@quinnemanuel.com
brennanelinson@quinnemanuel.com
amyshehan@quinnemanuel.com
295 5th Avenue
New York, NY 10016
Telephone: (212) 849-7000

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| GLAZING EMPLOYERS AND GLAZIERS' UNION LOCAL #27 PENSION AND RETIREMENT FUND, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>IRHYTHM TECHNOLOGIES, INC., and QUENTIN BLACKFORD,<br><br>Defendants. | Case No. 3:24-cv-706-JSC<br><br>**DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date: October 9, 2025<br>Time:   10:00 a.m.<br>Location: Courtroom 8, 19th Floor<br>Before: Hon. Jacqueline Scott Corley |

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT ............................................................................................................................... 2

I.    PLAINTIFF CANNOT OVERCOME THE MORE COMPELLING INFERENCE ............ 2

II.   THE TIMING STATEMENTS FAIL AS A MATTER OF LAW ....................................... 5

      A.    Plaintiff Cannot Plead Scienter As To The Transmission Limit ............................... 5

      B.    Plaintiff Cannot Plead Scienter As To The "Lag Time" ........................................... 8

      C.    Plaintiff Does Not Plead Loss Causation For The "Lag Time" ................................. 9

III.  THE HIGH-RISK STATEMENTS FAIL AS A MATTER OF LAW ................................. 10

IV.   THE ACCURACY STATEMENTS FAIL AS A MATTER OF LAW .............................. 13

CONCLUSION ........................................................................................................................... 15

DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*In re Apple Inc. Sec. Litig.*,
678 F. Supp. 3d 1147 (N.D. Cal. 2023) .................................................................. 11

*Aramic LLC v. Revance Therapeutics, Inc.*,
2024 WL 1354503 (N.D. Cal. 2024) ................................................................ 4, 8

*In re Bofl Holding, Inc. Sec. Litig.*,
977 F.3d 781 (9th Cir. 2020) ............................................................................. 9

*Buttonwood Tree Value Partners, LP v. Sweeney*,
2012 WL 13026910 (C.D. Cal. 2012) .............................................................. 7

*Chen v. Lyft, Inc.*,
762 F. Supp. 3d 909 (N.D. Cal. 2025) ............................................................. 13

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
880 F. Supp. 2d 1045 (N.D. Cal. 2012) ........................................................... 7

*Curry v. Yelp Inc.*,
875 F.3d 1219 (9th Cir. 2017) ........................................................................... 15

*Dolly v. Gitlab Inc.*,
2025 WL 2372965 (N.D. Cal. 2025) ................................................................ 9

*Espy v. J2 Global, Inc*
99 F.4th 527 (9th Cir. 2024) ........................................................................ 10, 11

*Fire & Police Pension Ass'n of Colo. v. Abiomed Inc.*,
778 F.3d 228 (1st Cir. 2015) .................................................................. 2, 3, 4, 13

*In re GeoPharma, Inc. Sec. Litig.*,
411 F. Supp. 2d 434 (S.D.N.Y. 2006) .............................................................. 8

*In re Hansen Nat'l Corp. Sec. Litig.*,
527 F. Supp. 2d 1142 (C.D. Cal. 2007) ........................................................... 8

*In re Intel Corp. Sec. Litig.*,
2023 WL 2767779 (N.D. Cal. 2023) ................................................................ 4

*In re Jones Soda Co. Sec. Litig.*,
393 F. App'x 507 (9th Cir. 2010) ..................................................................... 12

*Maguire Fin., LP v. PowerSecure Int'l, Inc.*,
876 F.3d 541 (4th Cir. 2017) ................................................................. 13, 14, 15

DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS

*Mehta v. Ocular Therapeutix, Inc.*,
   955 F.3d 194 (1st Cir. 2020) ............................................................................... 13

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
   540 F.3d 1049 (9th Cir. 2008) ......................................................................... 9, 10

*In re Nektar Therapeutics Sec. Litig.*,
   34 F.4th 828 (9th Cir. 2022) ............................................................................ 9, 10

*Nguyen v. Endologix, Inc.*,
   962 F.3d 405 (9th Cir. 2020) ................................................................ 5, 6, 11, 15

*Pardi v. Tricida, Inc.*,
   2024 WL 1056013 (N.D. Cal. 2024) ....................................................................... 3

*Patel v. Axesstel, Inc.*,
   2015 WL 631525 (S.D. Cal. 2015) .......................................................................... 3

*Plaksin v. Newsight Reality, Inc.*,
   2020 WL 1651995 (C.D. Cal. 2020) ..................................................................... 11

*In re Plantronics, Inc. Sec. Litig.*,
   2022 WL 3653333 (N.D. Cal. 2022) ....................................................................... 4

*Plumley v. Sempra Energy*,
   847 F. App'x 426 (9th Cir. 2021) ........................................................... 12, 13, 14, 15

*In re Rigel Pharms., Inc. Sec. Litig.*,
   2010 WL 8816155 (N.D. Cal. 2010) ..................................................................... 11

*In re Rigel Pharms., Inc. Sec. Litig.*,
   697 F.3d 869 (9th Cir. 2012) .......................................................................... 11, 15

*In re Segue Software, Inc. Sec. Litig.*,
   106 F. Supp. 2d 161 (D. Mass. 2000) ...................................................................... 7

*Sgarlata v. PayPal Holdings, Inc.*,
   409 F. Supp. 3d 846 (N.D. Cal. 2019) .................................................................... 7

*Sneed v. Talphera, Inc.*,
   2025 WL 2406424 (9th Cir. Aug. 20, 2025) ...................................................... 2, 4, 6

*South Ferry LP, No. 2 v. Killinger*,
   542 F.3d 776 (9th Cir. 2008) ................................................................................. 15

*Stocke v. Shuffle Master, Inc.*,
   615 F. Supp. 2d 1180 (D. Nev. 2009) ................................................................... 13

*Strezsak v. Ardelyx Inc.*,
   2024 WL 1160900 (N.D. Cal. 2024) ..................................................................... 14

DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS

*Veal v. LendingClub Corp.*,
    423 F. Supp. 3d 785 (N.D. Cal. 2019) ............................................................................ 3

*In re Vicor Sec. Litig.*,
    2025 WL 1616537 (N.D. Cal. 2025)................................................................................ 5

*Webb v. SolarCity Corp.*,
    884 F.3d 844 (9th Cir. 2018)............................................................................................ 1

*In re Worlds of Wonder Sec. Litig.*,
    35 F.3d 1407 (9th Cir. 1994).......................................................................................... 13

*Wozniak v. Align Tech., Inc.*,
    850 F. Supp. 2d 1029 (N.D. Cal. 2012) ......................................................................... 10

*Yescas v. McCourt*,
    2023 WL 4629596 (S.D. Cal. 2023) ................................................................................ 9

<u>**Statutes / Rules**</u>

15 U.S.C. § 78u-4(b)(2) ........................................................................................................ 14

Fed. R. Civ. P. 12(h)(2) ........................................................................................................... 2

Fed. R. Civ. P. 12(c)................................................................................................................. 2

Fed. R. Civ. P. 9(b).................................................................................................................. 9

DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS

**PRELIMINARY STATEMENT**

"The bar set by *Tellabs* is not easy to satisfy: It requires that [Plaintiff] plead an inference of scienter that is cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Webb v. SolarCity Corp*., 884 F.3d 844, 855-56 (9th Cir. 2018).  Plaintiff's Opposition demonstrates that Plaintiff cannot meet this high bar, and instead exposes its case as a house of cards built on impermissibly stacked inferences rather than well-pled facts.

To start, Plaintiff's Opposition ignores the elephant in the room:  how Plaintiff can possibly sustain securities fraud claims where those claims are based on information that was in the public domain throughout the Class Period.  Rather than take this deficiency head on—because it cannot—Plaintiff resorts to brazen and conclusory mischaracterizations of iRhythm's disclosures and the motivation behind those disclosures that are unsupported by even a single allegation in the Complaint.  But Plaintiff's self-serving descriptions of the updated Zio AT label that disclosed the transmission limit as "the bare minimum," "begrudging," and "half-hearted" cannot overcome the Ninth Circuit's clear mandate that there can be no scienter where a defendant discloses precisely what the plaintiff alleges was concealed.  There is no scienter for the Timing Statements and the High-Risk Statements.

Plaintiff's Opposition does not adequately defend scienter for Plaintiff's only other basis for the Timing Statements—the alleged "four-hour lag time."  Rather than point to a single allegation supporting an inference that Defendants both knew about and intended to defraud investors as to the lag time, Plaintiff disclaims reliance on the lag time, instead claiming that the FDA's entire investigation is the basis for its fraud claims.  Plaintiff's attempt to compensate for its lack of scienter allegations by rewriting its Complaint through its Opposition should be rejected.

Plaintiff's arguments as to the Accuracy Statements suffer from the same deficiencies. Plaintiff asks this Court to draw the impermissible inference that Defendants knew about accuracy issues with the CCT reports (based on complaints Plaintiff does not allege Defendants ever received), believed there was a significant issue with the accuracy of those reports, and made statements that they knew were inconsistent with this knowledge.  The PSLRA does not permit such stacked inferences to be drawn where there is not a single fact to support them.

Defendants' Motion should be granted, and the Complaint should be dismissed with prejudice.

DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS

# ARGUMENT

Acknowledging that it has no real response to the gaping hole in its scienter allegations, Plaintiff does not respond to Defendants' scienter arguments as to each category of misstatements. Instead, Plaintiff seeks to do away with those categories entirely in hopes that it can confuse the Court by burying its lack of particularized allegations in ill-pled generalities. But this approach only underscores the deficiencies in Plaintiff's Complaint. Plaintiff's arguments fail.[1]

## I.   PLAINTIFF CANNOT OVERCOME THE MORE COMPELLING INFERENCE

"A strong inference [of scienter] arises only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Sneed v. Talphera, Inc.*, 2025 WL 2406424, at *6 (9th Cir. 2025). Here, the ***only*** inference to be drawn from the Complaint is that as soon as the FDA raised concerns with iRhythm's Zio AT disclosures, iRhythm worked in good faith to address those concerns and, among other remedial measures, updated its label to specifically disclose the transmission limit. *See Fire & Police Pension Ass'n of Colo. v. Abiomed Inc.*, 778 F.3d 228, 245 (1st Cir. 2015) (finding no scienter and crediting defendant's "argument that it was not involved in a scheme to defraud investors but rather in finding a solution amenable to the FDA while meeting its need to market its products"). There logically can be no inference of scienter where Defendants have disclosed the very subject of the alleged fraud. Mot. 18-19; *see, e.g.*, *Sneed*, 2025 WL 2406424, at *7 ("This alternative explanation is more probable because [defendants] likely did not intend to defraud investors by concealing the REMS and its restrictions…while simultaneously disclosing that information in myriad contexts."). Unsurprisingly, Plaintiff does not cite a single case finding a strong inference of scienter where a product label made the precise disclosures plaintiff claimed were concealed from investors.

Plaintiff's attempt to discredit this non-fraudulent inference is deficient for the primary reason that Plaintiff does not explain what the fraudulent inference is. What did Defendants lie about? And

---

[1] And despite Plaintiff's repeated suggestion, as is clear from the face of the papers, the Court has not "already considered—and rejected—the arguments set forth in Defendants' 12(c) Motion." Opp. 8. As the Court noted, the operative versions of the Zio AT label during the Class Period were not before the Court when it assessed Defendants' motion to dismiss. Dkt. 77 at 14. Rule 12(c) specifically permits raising "any issues not raised in a previous motion." Fed. R. Civ. P. 12(h)(2).

DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS

why?  In other words, Plaintiff asks this Court to infer that Defendants sought to defraud the market, despite the fact that Defendants knew that (1) the Zio AT label disclosed the transmission limit, (2) Defendants directed the market to that label, and (3) the market knew about iRhythm's ongoing discourse with the FDA.  Faced with these undisputed facts, Plaintiff fails to explain any supposed motive for this apparent fraud.  *See, e.g.*, *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 818 (N.D. Cal. 2019) (no scienter where "there are no allegations of motive to commit fraud.").

Plaintiff contends iRhythm "disclosed the bare minimum" to "explain away the financial impact of the remedial measures," Opp. 30, but does not explain how the label's detailed disclosure is "the bare minimum" or how **honestly disclosing** the financial impact of iRhythm's response to the FDA's concerns is somehow fraudulent.  Plaintiff appears to suggest that Defendants should be penalized for being honest with the market, Opp. 24, but that is precisely what investors expect public companies to do.  Defendants' disclosures are thus not comparable to those in *Patel v. Axesstel, Inc.*, 2015 WL 631525, at *13 (S.D. Cal. 2015), where the court found the defendants only "came clean when Axesstel's cash position was so poor that they likely had no other choice."  Opp. 23.  Nor can Plaintiff effectively distinguish *Pardi v. Tricida, Inc.*, 2024 WL 1056013, at *12 (N.D. Cal. 2024), where the court found that defendant—like here—"specifically directed the market to information disclosing the location of the trials" and "later highlighted the Lancet publication on an earnings call" which "cuts against an inference of scienter."

Plaintiff further argues that iRhythm "downplay[ed]" the FDA's concerns, Opp. 9, but omits that iRhythm told the market that "communications and discussions [with the FDA] are continuing at this time," and "FDA observation responses, field action or corrections and the 806 process **can be unpredictable and can present regulatory and commercial risks and uncertainties** relating to matters including product labeling, the scope and approach of the correction, and/or customer and patient perception of our technologies and services," Dkt. 51-8 at 73.  *See Abiomed*, 778 F.3d at 244 ("Under plaintiffs' theory of the case, Abiomed should have affirmatively admitted widespread wrongdoing rather than stating that the outcome of its regulatory back-and-forth with the FDA was uncertain. That would be a perverse result[.]").  Honest disclosures **weaken** the inference of scienter; they do not bolster it.  *See id.* at 243.

Plaintiff argues that iRhythm's disclosures cannot be credited because whether those disclosures were "adequate is a disputed fact issue," Opp. 29, but Plaintiff misses the point: The fact that Defendants provided the allegedly omitted information—even if imperfectly or inadequately—eliminates the inference that they had an intend to defraud investors. Regardless, an issue does not become disputed just because Plaintiff says so.[2] As evidenced by Plaintiff's ***inability to cite a single paragraph*** of the Complaint in making this argument, there are ***no allegations*** that undermine the adequacy of the label's description of the transmission limit, that the updates to the Zio AT label were insufficient or that the FDA reached such a conclusion, that Defendants resisted complying with the FDA, or that Defendants did anything other than work cooperatively with the FDA to mitigate the FDA's concerns. *See, e.g.*, *In re Intel Corp. Sec. Litig.*, 2023 WL 2767779, at *20 (N.D. Cal. 2023) (finding no scienter and declining to credit "inference [that] rests on several assumptions unsupported by the allegations of the complaint"), *aff'd*, 2024 WL 1693340 (9th Cir. 2024). Plaintiff's baseless assertion that "the FDA clearly found the CAN and label changes to be insufficient," Opp. 9, has no support in the Complaint or in reality. Indeed, the label's disclosure about the transmission limit remained the same throughout the Class Period, *see* Dkts. 88-3, 88-4, 88-5, 88-6, suggesting it addressed the FDA's concerns. Regardless, Plaintiff forgets that "this case is not about whether or not [D]efendants violated the FDCA or FDA regulations. It concerns alleged violations of securities law." *Abiomed*, 778 F.3d at 246; *Sneed*, 2025 WL 2406424, at *6 ("[S]ecurities law[s]…and FDA regulations…[have] disparate audiences [that] require different sets of information and in different formats."); *Aramic LLC v. Revance Therapeutics, Inc.*, 2024 WL 1354503, at *14 (N.D. Cal. 2024) ("[A]lthough evidently Revance's Form 483 Response did not satisfactorily address the FDA's concerns, Defendants' misreading of what the FDA required does not show [scienter]."). That is precisely why the Ninth Circuit recently held that "[j]ust because the FDA requires disclosure of specific instructions to healthcare providers does not make the omission

---

[2] Plaintiff's reliance on *In re Plantronics, Inc. Sec. Litig.*, 2022 WL 3653333 (N.D. Cal. 2022) is flawed. There, the court concluded that "reasonable minds could differ as to what the disclosures in question revealed" where defendants did not explicitly disclose their channel stuffing practices. Here, reasonable minds could not differ: the label clearly disclosed the existence of the limit and the effect of that limit on transmissions during wear. Mot. 7, 9-10.

DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS

of that information relevant for investors." *Sneed*, 2025 WL 2406424, at *6.

Plaintiff resorts to self-serving editorialization and unsupported characterizations about Defendants' disclosures. Plaintiff asserts that Defendants disclosed "various facts" about the transmission limit and that those descriptions were "the bare minimum" and "half-hearted," Opp. at 29-30, but those characterizations that are contradicted by the label itself. Plaintiff does not plead with particularity what, if anything, was still concealed from investors following the updated label. The one suggestion Plaintiff does make—that iRhythm did not disclose "the full scope of the harm" because it did not disclose the two pre-Class Period deaths, Opp. 13—fails under Ninth Circuit precedent. *See Nguyen v. Endologix, Inc.*, 962 F.3d 405, 417 (9th Cir. 2020) (scienter is not created by "case report about a single patient" because "the complaint provides no details on the circumstances…or why this case report should have alerted [defendants] to a broader problem"). And to the extent Plaintiff suggests iRhythm was required to disclose every complaint or adverse event (an assertion which has no basis in law), *see* Opp. 13, Plaintiff misrepresents that Defendants "received scores of customer complaints" concerning the transmission limit during the Class Period, Opp. 6. Plaintiff's Complaint does not allege that iRhythm received ***even a single complaint*** about the transmission limit during the Class Period. The ***only*** such complaints Plaintiff pleads were those referenced in the 2022 Form 483 that iRhythm received ***before*** the Class Period.

At bottom, the Complaint is "rife with conclusory allegations about Defendants' knowledge and intent in making the" alleged misstatements. *In re Vicor Sec. Litig.*, 2025 WL 1616537, at *7 (N.D. Cal. 2025). But "[o]nce such conclusions are set aside, the remaining allegations in the [C]omplaint fail plausibly to aver that Defendants acted with scienter." *Id.*

## II.    THE TIMING STATEMENTS FAIL AS A MATTER OF LAW

### A.    Plaintiff Cannot Plead Scienter As To The Transmission Limit

As explained in the Motion, that iRhythm updated its label to disclose the precise information that is the subject of the alleged fraud makes a finding of scienter impossible. Mot. 16. There is not a single fact pled in the Complaint that is consistent with an intent to defraud. To the contrary, the pleadings demonstrate that iRhythm disclosed the transmission limit ***no less than four times*** between July and November 2022. Plaintiff's unsupported and self-serving description of these disclosures

as an attempted "get-out-of-jail-free card" does not suffice.  Opp. 23.

*First*, Plaintiff all but ignores that iRhythm updated its label in September 2022 in response to the FDA's concerns.  In fact, Plaintiff's only rebuttal is the unsupported assertion that the disclosure of the transmission limit in the updated label is "vague (at best)."  Opp. 22.  But Plaintiff does not allege that the language in the updated label was inadequate.  Nor could it.  Beginning on September 26, 2022, every version of the Zio AT label during the Class Period contained an explicit disclosure of the transmission limit and its effect on the Zio AT's functionality:

> **The Zio AT patch has a maximum threshold of transmitting 100 Patient-Triggers and 500 Auto-Triggers** during wear, **after which point the device no longer transmits for whichever trigger limit has been reached.** If this occurs, unless a patch is promptly replaced when the patient is approaching a maximum transmission limit, **there will be time during the wear period in which transmissions of that type are captured but not transmitted**, and information will not become available until the final report.

Mot. 7-8.  Plaintiff's attempt to downplay the significance of this disclosure by referring to it as "labeling fine print," Opp. 23, is belied by the disclosure itself and irrelevant in any case given the Ninth Circuit's mandate that "[w]e expect reasonable investors to read an entire document, including the fine print."  *Sneed*, 2025 WL 2406424, at *6.  At bottom, Plaintiff cannot plead scienter where Defendants disclosed in the label the very information that Plaintiff claims was the subject of Defendants' alleged fraud.  Mot. 18-19; *e.g.*, *Nguyen*, 962 F.3d at 417 ("plaintiff is hard-pressed to build a fraud case" where defendant disclosed what plaintiff alleged was concealed).

*Second*, Plaintiff claims the updated label "does not add anything" to the scienter analysis because similar language is in the CAN, Opp. 22, which this Court previously incorporated by reference, Dkt. 77 at 8.  That argument is a red herring.  Defendants never made a scienter argument based on the CAN.  In any case, Plaintiff does not explain how it equates the one-time distribution of the CAN to iRhythm's permanent updates to the Zio AT label.  The Ninth Circuit is clear that there cannot be scienter where Defendants disclosed the subject of the fraud.  Mot. 18-19.

*Third*, Plaintiff's focus on the adequacy of iRhythm's November disclosures exposes Plaintiff's inability to respond to the label itself.  *See* Opp. 22-23.  In any event, contrary to Plaintiff's assertion, Defendants did not "quietly disclose" anything.  *See* Opp. 23.  Mr. Blackford told investors **during an earnings call** that iRhythm had "voluntarily issued a customer advisory notice," and

directed investors to the updated Zio AT label, which included "updated language related to the precautions in the Zio AT [label] as it relates to…auto trigger transmission limits." ¶¶ 11, 124; Dkt. 88-7 at 5; *see also* Dkt. 51-8 at 73; ¶ 112 (label update "involve[d] additions and modifications to the Zio AT labeling precautions ***relating to the device's maximum transmission limits***"). By November 4, 2022, iRhythm had disclosed the transmission limit ***no less than four times***. Mot. 16.

*Fourth*, Plaintiff argues that iRhythm's update to the Zio AT label (and the CAN) to disclose the transmission limit was "hardly voluntary" and meant to "pacify the FDA" and therefore does not undermine an inference of scienter. Opp. 8-9, 23-24.[3] As an initial matter, whether iRhythm's updated label was voluntary or involuntary is irrelevant. It does not change the fact that as of September 2022, it is illogical to suggest that Defendants sought to defraud investors about information that was disclosed. But even were Defendants' motive for updating the Zio AT label relevant, Plaintiff sets forth ***no facts*** supporting its characterization of iRhythm's label updates as involuntary. *See id.* Nor can Plaintiff credibly characterize iRhythm's removal of "high risk" from the Zio AT website—which it did in compliance with the FDA—as an admission of scienter. Opp. 19-20. Adopting Plaintiff's argument would mean a defendant's ***compliance*** with the FDA is a basis for securities fraud. But if compliance with the FDA raises a strong inference of scienter, that would place companies in an impossible position, forced to choose between compliance with the securities laws and compliance with FDA regulations. *Cf. In re Segue Software, Inc. Sec. Litig.*, 106 F. Supp. 2d 161, 170 (D. Mass. 2000) ("To reflexively punish a company for correcting its earning statements when subsequent events disclose errors in the originals would create a perverse incentive for management to conceal mistakes, thereby defeating a core purpose of the securities laws.").

The same perverse incentive arises with Plaintiff's bizarre suggestion that iRhythm only disclosed the CAN to "excuse the Company's financial performance." Opp. 23-24. As explained *supra* at 3, this speculation has no support in the Complaint. *See Sgarlata v. PayPal Holdings, Inc.*, 409 F. Supp. 3d 846, 859 n.7 (N.D. Cal. 2019) (argument that "[d]efendants intentionally disclosed

---

[3] *Buttonwood Tree Value Partners, LP v. Sweeney*, 2012 WL 13026910 (C.D. Cal. 2012) supports Defendants, not Plaintiff. Opp. 30. The court found that "revealing information ***to regulators*** can hardly be characterized as voluntary, and allowing private auditors access to records is a far cry from distributing those records to the [] public." 2012 WL 13026910, at *1.

-7-                                                    Case No. 3:24-cv-706-JSC

DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS

only some of the bad news before making the full disclosure so as to soften the negative reaction from the public" is "not pled in the [complaint]" and "appears to be based on speculation only").

*Finally*, Plaintiff claims that Defendants advance a truth-on-the-market defense. Opp. 24. Wrong. That defense applies where "a defendant's failure to disclose material information may be excused where the information was made credibly available to the market by other sources." *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1066 n.6 (N.D. Cal. 2012). Defendants do not make such an argument, nor can Plaintiff cite to any portion of Defendants' Motion that makes such an argument. Instead, Plaintiff latches onto Defendants' reference to November 2022 analyst reports about the transmission limit and labeling updates. Opp. 24. Plaintiff misses the point. Where analysts were **publicly reporting on** the transmission limit, there is no credible argument that Mr. Blackford intended to deceive as to the transmission limit. *See In re GeoPharma, Inc. Sec. Litig.*, 411 F. Supp. 2d 434, 448 (S.D.N.Y. 2006) ("it is difficult to find strong circumstantial evidence of recklessness" where information was "reasonably available to the public").

### B.     Plaintiff Cannot Plead Scienter As To The "Lag Time"

Without the transmission limit, Plaintiff's only remaining basis for the falsity of the Timing Statements is the supposed "lag time," but Plaintiff does not plead scienter for the lag time either.

*First*, Plaintiff's accusation that Defendants "ignore the Court's Order" is baseless, Opp. 25, as this Court did **not** analyze whether Plaintiff adequately alleged that Mr. Blackford had scienter **as to the lag time**. To that end, Plaintiff's regurgitation of the reasons this Court found that Mr. Blackford knew about the **transmission limit** and thus had scienter as to the Timing Statements on that basis is a red herring. *See id.* In fact, Plaintiff's Opposition underscores that none of Plaintiff's allegations, nor this Court's decision, addressed whether Mr. Blackford even knew about the alleged "lag time," let alone had an intent to defraud investors about the "lag time." *See, e.g.*, *Aramic*, 2024 WL 1354503, at *14 ("None of the facts alleged in the FAC relate to the Defendants' state of mind.").

*Second*, Plaintiff's efforts to bury its lack of scienter allegations in generalizations about iRhythm's 2022 Form 483 response fail. Opp. 25. To start, that Mr. Blackford "signed" iRhythm's response is insufficient to establish scienter. *E.g.*, *In re Hansen Nat'l Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1159 (C.D. Cal. 2007) (signatures do not give rise to a strong inference of scienter, and a

contrary holding would "eviscerat[e] the pleading requirements for scienter"). No number of allegations about Mr. Blackford's involvement in iRhythm's response would suffice to plead scienter as to the lag time in any case because ***nowhere*** does Plaintiff allege that the 2022 Form 483 so much as mentioned any lag time (because it did not). Plaintiff's reliance on the 2022 Form 483 response lays bare Plaintiff's inability to point to any allegations that create a cogent and compelling inference of Mr. Blackford's scienter as to the lag time. *See Dolly v. Gitlab Inc*., 2025 WL 2372965, at \*14 (N.D. Cal. 2025) ("Even if Individual Defendants had knowledge of all of the company's operations, Plaintiff has not identified any particularized facts that Individual Defendants knew that would undermine the truth of any challenged statement.").

*Third*, unable to defend either the transmission limit or the lag time as a basis for falsity of the Timing Statements, Plaintiff makes the bold argument that the Timing Statements are not false for either of those reasons, rather "based on the full scope of the issues found by the FDA in its investigation and set forth in the Form 483." Opp. 25. Plaintiff's desperate and nonspecific attempt to re-plead the basis for its securities fraud claims cannot be credited. *See Yescas v. McCourt*, 2023 WL 4629596, at \*3 (S.D. Cal. 2023) ("If Plaintiff seeks to clarify the factual allegations as stated in his Complaint, the appropriate avenue to do so is to seek leave to file an amended complaint.").

*Finally*, Plaintiff asks this Court to excuse its lack of scienter allegations as to the lag time based on the "abundance of other facts" in the Complaint—none of which relate to the lag time.[4] *See* Opp. 26. The PSLRA does not allow for such a concession. *See Metzler Inv. GMBH v. Corinthian Colls., Inc*., 540 F.3d 1049, 1072 (9th Cir. 2008) ("[T]he sheer volume of alleged false statements and claims supporting scienter do not overcome the lack of specificity that the PSLRA requires.").

**C.     Plaintiff Does Not Plead Loss Causation For The "Lag Time"**

In their Motion, Defendants showed that ***none*** of the seven corrective disclosures relate to the alleged "lag time." Mot. 21. Plaintiff argues in response that the DOJ subpoena "concerned" the lag time and cites ¶ 134, which states that "[the DOJ] subpoena [] sought communications and other

---

[4] Plaintiff disclaims any reliance on FE 3 to establish scienter as to the lag time, Opp. 25-26 & n.5, but the FE 3 allegations are the ***only*** ones that relate to the lag time at all, ¶¶ 75-76. Those allegations do not establish scienter for Mr. Blackford, let alone as to the purported lag time. Mot. 25-26.

DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS

documents concerning…that the Zio Systems were failing to timely transmit patient cardiac data to physicians for review after the occurrence of a cardiac event." Opp. 31. This argument fails.

The Ninth Circuit "require[s] securities fraud plaintiffs to allege that the defendant lied about 'the very facts' causing the plaintiffs' losses." *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 838 n.6 (9th Cir. 2022); *see also In re Bofl Holding, Inc. Sec. Litig.*, 977 F.3d 781, 797 n.6 (9th Cir. 2020) (corrective disclosures are "deficien[t]" when they are "not tethered to any actionable misstatement"). That the DOJ subpoena sought documents about the Zio systems' alleged "fail[ure] to timely transmit patient cardiac data," ¶ 134, does not reveal to the market that "it took four hours for any arrhythmia events transmitted from the Zio AT to show up in a queue for technicians' review," ¶ 75, *see Wozniak v. Align Tech., Inc.*, 850 F. Supp. 2d 1029, 1046 (N.D. Cal. 2012) ("[N]one of the alleged comments…mentions ClinAdvisor in any manner. In the absence of any such allegation, or other allegation showing the market became aware of the alleged fraud, plaintiff has not adequately alleged loss causation."). The Ninth Circuit's decision in *Espy v. J2 Global, Inc.* is instructive: The plaintiff alleged that the defendant concealed the underperformance of two assets, and the court held that a report did not qualify as a corrective disclosure because it did "not identify either of these assets" and thus "could not have revealed information correcting the omission that is the basis for Espy's action." 99 F.4th 527, 541-42 (9th Cir. 2024). This Court should similarly hold that because the disclosure about what documents the DOJ subpoena sought does not identify the "lag time," it could not have revealed information correcting this basis for the Timing Statements.

Nor can this Court to draw an inference that the market understood the DOJ subpoena to be a revelation of the alleged "lag time." As the Ninth Circuit explained with respect to loss causation, "while the court assumes that the facts in a complaint are true, it is not required to indulge unwarranted inferences in order to save a complaint from dismissal." *Metzler*, 540 F.3d at 1064. At best, only a "tenuous" connection exists between the alleged "lag time" and the DOJ subpoena. Such a "tenuous" connection is insufficient as a matter of law. *E.g.*, *Nektar*, 34 F.4th at 839. Because Plaintiff fails to plead loss causation, the "lag time" cannot support Plaintiff's claim as to the Timing Statements.

## III.    THE HIGH-RISK STATEMENTS FAIL AS A MATTER OF LAW

Defendants' Motion made clear that the two remaining High-Risk Statements (¶¶ 210-11)

should be dismissed for lack of scienter in light of iRhythm's express disclosures in the Zio AT label throughout the Class Period—which this Court noted it did not have at the time it evaluated Defendants' motion to dismiss, *see* Dkt. 77 at 14.[5]

Plaintiff's entire theory as to why the High-Risk Statements are allegedly fraudulent is that high-risk patients are those who need timely data transmission and the Zio AT was not appropriate for that population ***because of the transmission limit***. *E.g.*, ¶ 3 ("iRhythm sold investors on the Zio AT's near real-time transmission capabilities for high-risk patients, who needed the kind of timely data transmission capabilities that the Zio AT supposedly provided."). Accordingly, for Plaintiff's theory to work, Defendants need to have concealed the transmission limit. But in the Zio AT label beginning in September 2022 and throughout the Class Period, Defendants disclosed both the existence of the transmission limit ***and*** its impact on the Zio AT's functionality. Mot. 16-17 (citing labels). The labels similarly disclosed that the Zio AT was not "intended for use in critical care patients because the reporting timeliness is not consistent with life-threatening arrhythmias." Mot. 23. These disclosures negate any inference of scienter as to the remaining High-Risk Statements for the reasons explained in Defendants' Motion and above. Mot. 19; *supra* at 5-6; *e.g.*, *Espy*, 99 F.4th at 538 (no scienter where defendant "disclosed significant detail in its 2017 proxy statement" and plaintiff "does not explain why the information that was left out…compels a strong inference of scienter"); *Nguyen*, 962 F.3d at 417; *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 885 (9th Cir. 2012). Further fatal to a finding of scienter, Plaintiff pleads no allegations suggesting that Defendants knew these disclosures were not sufficient to explain that the Zio AT is inappropriate for patients who need timely data transmission.[6] *In re Rigel Pharms., Inc. Sec. Litig.*, 2010 WL 8816155, at *12 (N.D.

---

[5] Plaintiff claims the Court sustained the statement in ¶ 208. Opp. 21-22. Not so. The Court evaluated the statement in ¶ 208 under a subheading titled "Across the Spectrum of Care," explicitly cited ¶ 208 as a "spectrum of care statement[]" that is "too vague to be actionable," and dismissed the "spectrum of care statements"—referring to ¶¶ 208-09. *See* Dkt. 77 at 15, 28.

[6] Plaintiff suggests this argument is appropriate for the jury, Opp. 29, but is unable to support that argument with on-point caselaw. The defendants in *In re Apple Inc. Sec. Litig.*, 678 F. Supp. 3d 1147 (N.D. Cal. 2023), did not dispute that Cook knew information that made his statement false, which is not the case here. And *Plaksin v. Newsight Reality, Inc.*, 2020 WL 1651995, at *5-6 (C.D. Cal. 2020) is not even a securities case; it addresses whether an employer's decision to terminate an employee for cause was made in good faith.

Cal. 2010) (no allegations that "Defendants actually believed that the side effects they characterized as more mild and disclosed in October 2008 were actually not mild and should have been disclosed with the initial [] results.").[7]  Plaintiff has no response to iRhythm's disclosures, so it ignores them—and thus concedes that those disclosures negate scienter for the High-Risk Statements.

Plaintiff also has no credible response to Defendants' argument that Plaintiff pleads ***no facts*** establishing that Defendants used the phrases "most at-risk" (¶ 210) and "more acute" (¶ 211) with an intent to defraud.  Opp. 20-21; Mot. 23.  To adequately allege scienter, Plaintiff must plead specific contemporaneous statements or conditions that demonstrate Defendants knew or were deliberately reckless of the false and misleading nature of the "most at-risk" and "more acute" statements when made.  *In re Jones Soda Co. Sec. Litig.*, 393 F. App'x 507, 509 (9th Cir. 2010).  There is nothing in the Complaint tying the language "most at-risk" and "more acute" to an intent to defraud.  Plaintiff pleads no allegations showing that the FDA ever said "most at-risk" and "more acute" are improper ways to describe the Zio AT patient population, that "most at-risk" and "more acute" are synonymous with "high risk," or that, even if it did, Defendants agreed and made the statements anyway.

Instead of taking Defendants' arguments on, Plaintiff claims that the Court already rejected this argument.  Opp. 21.  Plaintiff is wrong.  The footnote that Plaintiff cites in the Court's Opinion is an explanatory footnote noting that the Court "uses the term high-risk as shorthand for all alleged statements the parties" refer to as the High-Risk Statements.  *Id.* (citing Dkt. 77 at 11 n.3).  Defendants did not make this argument in their motion to dismiss (as is evident from Plaintiff's failure to cite to Defendants' brief), and the Court has not addressed this issue.

The most Plaintiff musters is a bald assertion that "Defendants knew full well" that "most at risk and more acute was misleading in the same way that…high risk was misleading," Opp. 27, but Plaintiff fails to support that statement with any citations to the Complaint or any explanation as to how Defendants "knew full well" their statements were misleading.  *See, e.g.*, *Plumley v. Sempra*

---

[7] The statements set forth in ¶¶ 210-11 were made in January and February 2023—many months before iRhythm received the Warning Letter in May 2023 (¶ 115)—so the Warning Letter cannot establish scienter for the two remaining High-Risk Statements.  Further, the Warning Letter was made public immediately, so it cannot contribute to an inference of scienter, *see* Opp. 15, because there was nothing in it that was concealed from investors.

DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS

*Energy*, 847 F. App'x 426, 430 (9th Cir. 2021) (rejecting "wholly conclusory" scienter arguments that defendants knew certain information). The same is true for Plaintiff's brazen argument that Mr. Blackford continued to use this language "when he thought the FDA was not watching." Opp. 20. Setting aside that Plaintiff cannot support this characterization with any allegations, Plaintiff undermines its own assertion in the very next paragraph when it claims that "by no later than August 2022, Blackford was aware that the FDA was scrutinizing the Company's handling of patient complaints." *Id.* Of course, Plaintiff does not explain how Mr. Blackford at once "thought the FDA was not watching" and "was aware the FDA was scrutinizing" iRhythm. To be clear, iRhythm disclosed that it was "in ongoing communication with the FDA" as to the 2022 Form 483, Dkt. 51-8 at 73, further refuting Plaintiff's attempt to concoct an inference of scienter out of rhetoric. *See Mehta v. Ocular Therapeutix, Inc.*, 955 F.3d 194, 207-08 (1st Cir. 2020). Indeed, plaintiff's "view of a statement is not itself evidence of the speaker's state of mind." *Maguire Fin., LP v. PowerSecure Int'l, Inc.*, 876 F.3d 541, 548 (4th Cir. 2017); *see also Abiomed*, 778 F.3d at 244 (the "focus" is "on the allegations…, not on plaintiffs' characterization of those allegations").

## IV.    THE ACCURACY STATEMENTS FAIL AS A MATTER OF LAW

Once again, Plaintiff's Opposition underscores the Complaint's lack of a single allegation establishing Mr. Blackford's scienter as to the Accuracy Statements. Plaintiff's scienter theory as to the remaining Accuracy Statements (¶¶ 226-31) rested on FE 3 (¶ 232) and the complaints identified in the 2024 Form 483 (¶ 169). However, Plaintiff now admits that any allegations attributed to FE 3 are irrelevant to the Court's assessment of scienter. Opp. 10, 25, 26 n.5. And Plaintiff has set forth no facts alleging Mr. Blackford received *a single one* of the complaints identified in the 2024 Form 483, let alone that he viewed the complaints as an issue. *See, e.g.*, *Plumley*, 847 F. App'x at 430; *Chen v. Lyft, Inc.*, 762 F. Supp. 3d 909, 919 (N.D. Cal. 2025) ("Plaintiff's reliance on the fact that the Misstatement would have been…called to [Defendants'] attention is conclusory and does not address Defendants' mental state").[8] *Plumley* is on point: the Ninth Circuit found no inference of scienter

---

[8] The Court should ignore Plaintiff's vague assertion that it has "more than adequately pled" Blackford's "access to contrary information," Opp. 28-29, because Plaintiff *never* identifies what that purported "contrary information" is. *See, e.g.*, *Stocke v. Shuffle Master, Inc.*, 615 F. Supp. 2d 1180,

where the complaint "[did] not show when Defendants learned of the complaints," "nor is it clear from the [complaint] when Defendants allegedly became aware of the mounting complaints and how that timing related to their ongoing public statements." 847 F. App'x at 430. That those precise allegations are missing from Plaintiff's Complaint mandates the same result here.

Recognizing that its house of cards is crumbling, Plaintiff pivots. Plaintiff now argues that iRhythm's *2022* Form 483 response—which on its face had nothing to do with the accuracy of the Zio AT, let alone the accuracy of the CCT reports—somehow establishes that Mr. Blackford received the 4,000 complaints referenced in the *2024* Form 483 and thus believed his Accuracy Statements were false but made those statements anyway. Opp. 27-28. This argument fails for several reasons.

*First*, Plaintiff conflates two discrete issues. The 2022 Form 483 and iRhythm's response thereto had ***nothing*** to do with the accuracy of CCT reporting—and if it did, Plaintiff's Complaint certainly does not allege as much. Dkt. 43-1 (no reference to CCT reporting); Dkt. 51-3 at 32 (discussing, at most, the types of reports CCTs generate). Mr. Blackford's involvement in the 2022 Form 483 response cannot create scienter concerning an issue that the 2022 Form 483 did not address.

*Second*, Plaintiff asks this Court to infer that because Mr. Blackford participated in the 2022 Form 483 response—which did not address the alleged CCT reporting accuracy issues (or any accuracy issues)—that he received the complaints referenced in the 2024 Form 483, reviewed them, believed there were serious issues with the accuracy of the CCT reports that rendered his statements false, and made those statements anyway. Simply, Plaintiff's argument "stack[s] inference upon inference in an attempt to satisfy the PSLRA's pleading standard." *Maguire*, 876 F.3d at 548. Such inferences are not permitted. "A securities fraud plaintiff must 'state with particularity *facts* giving rise to a strong inference that the defendant acted with the required state of mind.'" *Id.* (quoting 15 U.S.C. § 78u-4(b)(2)). "[S]tacking inference upon inference," as Plaintiff suggests this Court should, "violates the [PSLRA's] mandate that the strong inference of scienter be supported by facts, not other inferences." *Id.*; *accord Strezsak v. Ardelyx Inc.*, 2024 WL 1160900, at *5 (N.D. Cal. 2024) (plaintiff

1188 (D. Nev. 2009) (no allegations "that Defendants had information contrary to what was projected in their press release statements. Without such specifics, the Court cannot ascertain whether there is any basis to the allegations that Defendants had actual or constructive knowledge" of adverse facts.").

DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS

"[did] not provide the Court with sufficient alleged facts to support these inferences").

*Third*, Plaintiff dismisses the requirement in *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 783 (9th Cir. 2008) that Plaintiff "bridge the gap" between the complaints and Mr. Blackford's knowledge. But courts in the Ninth Circuit require that securities fraud plaintiffs plead far more than a defendant's "access to contrary information" and "focus on the topic at issue." Opp. 28-29; *S. Ferry*, 542 F.3d at 784 ("Where a complaint relies on allegations that management had an important role in the company but does not contain additional detailed allegations about the defendants' actual exposure to information, it will usually fall short of the PSLRA standard."); *Rigel Pharms.*, 697 F.3d at 885 (no scienter where defendant "knew there was a contrary effect," but "Plaintiff points us to no allegations that [any] defendants believed that they made false or misleading statements relating to a contrary effect or that Defendants believed that they were [making] misrepresent[ations]"); *Plumley*, 847 F. App'x at 430; *Curry v. Yelp Inc.*, 875 F.3d 1219, 1228 (9th Cir. 2017) (no scienter where "[n]one of the allegations forms a nexus between the wrongful behavior and Individual Defendants' knowledge."); *Nguyen*, 962 F.3d at 417 (no scienter based on allegations of "stream of complaints" and "a general concern that these reports supposedly caused" because "the complaint does not plead any details about these reports that would demonstrate a strong inference of scienter in [defendant's] later statements about FDA approval"). Plaintiff does not meet this Ninth Circuit standard.

*Finally*, Plaintiff blatantly mischaracterizes iRhythm's response to the 2022 Form 483: iRhythm stated it would "review the Zio AT risk management files (Hazard Analysis and FMEAs)," Dkt. 51-3 at 20, 162, not that it was "committed to reviewing future complaints," Opp. 28. iRhythm agreed to review the Zio AT risk management file because its risk management process had "undergone a major enhancement effort" right before the 2022 FDA inspection, so the file was not yet "fully updated to the new process at the time of the FDA investigation." Dkt. 51-3 at 16. In any event, iRhythm's promise to review the Zio AT risk management file in response to the 2022 Form 483 regarding the transmission limit is not indicative of an intent to defraud investors as to the accuracy of CCT reporting of arrhythmia data, i.e., the purported basis for the Accuracy Statements.

## CONCLUSION

For these reasons, the Court should grant Defendants' Motion for Judgment on the Pleadings.

DATED: September 5, 2025

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Christopher Porter*

Kristin Tahler (Bar No. 261908)
kristintahler@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000

Christopher Porter (*pro hac vice*)
chrisporter@quinnemanuel.com
700 Louisiana Street, Suite 3900
Houston, TX 77002
Telephone: (713) 221-7000

Jesse Bernstein (*pro hac vice*)
Brenna Nelinson (*pro hac vice*)
Amy Shehan (*pro hac vice*)
jessebernstein@quinnemanuel.com
brennanelinson@quinnemanuel.com
amyshehan@quinnemanuel.com
295 5th Avenue
New York, NY 10016
Telephone: (212) 849-7000

*Attorneys for Defendants iRhythm Technologies, Inc. and Quentin Blackford*

DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS