**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
JONATHAN D. USLANER (Bar No. 256898)
jonathanu@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3470

*Counsel for Lead Plaintiff Oklahoma
Firefighters Pension and Retirement System*

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLAZING EMPLOYERS AND GLAZIERS' UNION LOCAL #27 PENSION AND RETIREMENT FUND, on behalf of itself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> IRHYTHM TECHNOLOGIES, INC., et al., <br><br> Defendants. | Case No. 3:24-cv-706-JSC <br><br> CLASS ACTION <br><br> [~~PROPOSED~~] **STIPULATED PROTOCOL FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION ("ESI PROTOCOL")** |

Lead Plaintiff Oklahoma Firefighters Pension and Retirement System and Defendants iRhythm Technologies, Inc. and Quentin Blackford, by and through their respective undersigned counsel, hereby stipulate and agree to the following Stipulated Protocol for Discovery of Electronically Stored Information ("ESI Protocol").

## I.    PURPOSE

This ESI Protocol will govern discovery of electronically stored information ("ESI") and hard copy documents in this case as a supplement to the Federal Rules of Civil Procedure, the Local Rules of the U.S. District Court for the Northern District of California (the "Local Rules"), including its Guidelines for the Discovery of Electronically Stored Information ("ESI

Guidelines"), the individual rules, standing orders, and procedures of the Honorable District Court Judge Jacqueline Scott Corley, and any other applicable orders and rules.

**II.    COOPERATION**

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout this matter consistent with this Court's ESI Guidelines.

**III.    GENERAL PROVISIONS**

1.    Unless otherwise agreed or directed by the Court, each Party will bear the costs to process and review its own documents according to this ESI Protocol.

2.    Nothing in this ESI Protocol shall be construed to affect the discoverability or admissibility of any document. All objections to the discoverability or admissibility of any documents are preserved and may be asserted at any time in accordance with the applicable Federal Rules of Evidence, Federal Rules of Civil Procedure, and/or Local Rules or Individual Rules of this Court.

**IV.    DEFINITIONS**

1.    Action: means the above-referenced action.

2.    Document: has the meaning ascribed to it in Federal Rule of Civil Procedure 34(a)(1)(A). The term "Document" shall include Hard-Copy Documents and ESI as defined herein.

3.    Email: means electronic messages sent or received asynchronously via messaging applications, including, but not limited to, Microsoft Outlook or Google Gmail.

4.    ESI: an abbreviation of "electronically stored information," which has the meaning ascribed to in Federal Rule of Civil Procedure 34(a)(1)(A).

5.    Extracted Text: means text extracted from a Native Format file and includes at least all headers, footers, document body information, and any hidden text, if available. The extracted text shall contain the content of any hypertext markup language ("HTML") present in the Native Format file, specifically including (but not limited to) the full anchor and target text of any Hyperlinks, as defined herein. The extracted text must not include text of characters that were not part of the text of the original Native Format file, including but limited to, Bates Numbers and

Endorsements (except in the cases of redactions).

6.    Hard-Copy Document: means Documents existing in paper form at the time of collection.

7.    Hash Value: means the unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the data set. The most commonly used algorithms, known as MD5 and SHA, will generate numerical values so distinctive that the chance that any two data sets will have the same Hash Value, no matter how similar they appear, is less than one in one billion. "Hashing" is used to guarantee the authenticity of an original data set and can be used as a digital equivalent of the Bates stamp used in Hard-Copy Document productions.

8.    Hyperlink: means an HTML link from an electronic Document to another electronic Document, typically activated by clicking on a highlighted word or image on the screen, and includes both the "anchor" text (i.e., the ordinarily visible, clickable text of the hyperlink, often presented in blue in the linking document) and the "target" text (i.e., the ordinarily invisible hypertext containing the Uniform Resource Locator ("URL") for the location of the linked document).

9.    Instant Messages: means real-time communications sent via chat client, short messaging service ("SMS"), Multimedia Messaging Service ("MMS"), or Rich Messaging Service ("RMS"), including but not limited to: Slack, Microsoft Teams, Google Talk, Google Chat, Google Hangouts, Skype, Facebook Messenger, Instagram Messenger, Line, Wire, Signal, Telegram, Snapchat, Wickr, Discord, WhatsApp, WeChat, Bloomberg Messenger, or any proprietary instant messaging system.

10.    Load File: means an electronic file that is used to import all required production information into a document database, including, if available, document images, Extracted Text or OCR text, Native Format files where required by this ESI Protocol, and Metadata, as well as information indicating document breaks, and document relationships such as those between an Email or Instant Message and its attachments, and a document and information related to embedded content.

11. Metadata: means (i) structured information about ESI that is created by the file system or application that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file, embedded in the Document or Email and sometimes modified through ordinary business use; (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system; (iii) information, such as Bates Numbers, created during the course of processing Documents or ESI for production; and (iv) information collected during the course of collecting Documents or ESI, such as the name of the Media device on which it was stored, or the custodian or non-custodial data source from which it was collected. Metadata of the ESI describes, *inter alia*, the characteristics, origins, usage, and validity of the collected ESI.

12. Native Format: means the format of ESI in the application in which such ESI was originally created.

13. OCR: means the optical character recognition technology used to read Hard-Copy Documents or electronic images of Documents and output such Documents to a searchable text format.

14. Producing Party: means any Party or Third Party in the Action that produces Documents.

15. Protective Order: means the [Proposed] Stipulated Protective Order entered in this Action on September 29, 2025, as amended by any subsequent order(s) of the Court.

16. Privileges: means the attorney-client privilege, attorney work product doctrine, or any other applicable privileges or protection from disclosure (each a "Privilege").

17. Receiving Party: means a Party in the Action to whom Documents are produced.

18. Responsive Document: means any Document that is responsive to any discovery request or subpoena served on the Producing Party in the Action and which the Producing Party has agreed or been ordered to produce, subject to the limitations set forth in the Federal Rule of Civil Procedure and/or Court order.

19. Tagged Image File Format or TIFF: refers to the CCITT Group IV graphic file

format for storing bit-mapped images of ESI or Hard-Copy Documents.

20.    Third Party: Any other person/entity other than a Party to this Action.

## V.    LIAISON

The Parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The Parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

## VI.    PRESERVATION AND IDENTIFICATION OF POTENTIALLY RELEVANT INFORMATION AND ESI

The Parties acknowledge that they have an obligation to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody, or control. The Parties have discussed their preservation obligations and needs in connection with negotiating this ESI Protocol and agree that preservation of potentially relevant ESI will be reasonable and proportionate.

Relatedly, the Parties agree to meet and confer to identify: the time frame for ESI that is necessary to be preserved; the names and number of custodians (along with any relevant information regarding job title and dates of employment in the relevant role) whose ESI should be preserved; and/or the sources that may possess ESI from which the producing Parties plan to collect documents in response to any Federal Rule of Civil Procedure 34 request for production.

Nothing in this ESI Protocol shall affect the Parties' respective preservation obligations imposed by rule or law.

## VII.    SEARCH

The Parties may use advanced search, analytical, and retrieval technologies like predictive coding, generative AI or other technology-assisted review ("TAR") in order to prioritize the review of or the grouping of documents requested or returned from the use of search terms, date ranges, electronic sources, or other filters as agreed to between the Parties. The Parties do not need to

disclose the use of TAR or generative AI solely for the purposes of sorting or prioritizing documents for review. The Parties will meet and confer if a party wishes to use advanced search, analytical, and retrieval technologies such as predictive coding or other TAR to exclude from production any documents returned from search protocols agreed to between the Parties. This is an iterative process whereby the Parties agree to revisit, reevaluate, and refine these processes as needed to ensure validity and completeness.

Relatedly, the Producing Party, to the extent search terms are used, will, upon request, undertake reasonable efforts to provide search term reports that, after global family-level de-duplication, indicate the "hit" count of documents and documents including family per search term, the unique hit count per search term, and the total number of unique documents that hit on the search term list as a whole. If the producing Party believes that such search term reports are not reasonably practicable, the producing Party shall meet and confer with the requesting Party to explain the basis of that belief and explore the feasibility and appropriateness of any alternative search term report.

## VIII.    PRODUCTION FORMATS FOR ESI

### A.    Production Format Generally

The Parties will produce documents originating as ESI in TIFF format, with the exception of spreadsheets, presentation files, audio, video files, and other files that lose significant information and meaning if produced as an image, which shall be produced in Native Format. ESI shall be produced with extracted text, along with the below listed metadata fields, where reasonably available. Text must be extracted directly from the native electronic file unless the document was redacted, an image file, or a hard copy file. In these instances, a text file created using optical character recognition (OCR) will be produced in lieu of extracted text. If an original document contains color, it need not be produced in color in the first instance. However, the producing Party will honor reasonable requests for a color image, if color is necessary to understand the meaning or content of the document. Color documents should be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image. Original document orientation shall be maintained (*i.e.,* portrait to

portrait and landscape to landscape). TIFFs/JPGs will show any and all text and images, including track changes where applicable, that would be visible to the reader using the native software that created the document. For example, TIFFs/JPGs of email messages should include the BCC line. If the image does not accurately reflect the document as it was kept in the usual course of business, including all comments, edits, tracking, etc., it shall be identified as such and the Parties agree to meet and confer in good faith on production format options. Embedded files shall be produced as attachments to the document that contained the embedded file, with the parent/child relationship preserved. The embedded files will be marked with a "YES" in the load file under the "EMBEDDED" metadata field. The Parties agree logos need not be extracted as separate documents as long as they are displayed in the parent document. Compressed file types (e.g., .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted. The Parties will provide a standardized load file compatible with Relativity (i.e., an .OPT or .LFP file). The Parties agree not to degrade the searchability of documents as part of the document production process.

**B.    Metadata**

Each of the Metadata and coding fields set forth below that can reasonably and technically be extracted or generated from a Document shall be produced for that Document. To the extent that metadata below does not exist or is not reasonably accessible or available for any documents produced, nothing in this Order shall require any Party to extract, capture, collect, or produce such data, with the exception of the following fields, if available: (a) BegBates; (b) EndBates; (c) BegAttach; (d) EndAttach; (e) All Custodians; (f) Redacted (Y/N); and (g) Confidentiality. Metadata shall be provided in a Concordance-format delimited file with a .DAT file extension and ASCII 020 and 254 delimiters for column break and text qualifier. The first line shall be the header with field names, and each subsequent line shall contain the fielded data for each Document. The Parties also agree that every production of previously unproduced Documents, the Metadata field values for each Metadata field header will be mapped to the same Metadata field source, unless otherwise agreed in writing. For redacted items which were originally ESI, all non-privileged metadata fields will be provided and will include all non-privileged, non-redacted data. Redacted

documents shall be identified as such in the load file provided with the production. With respect to ESI, data in the load file will include the following metadata fields or their equivalents (when reasonably available):

| Field Name | Description |
|---|---|
| BEGDOC | Begin Document Bates number |
| ENDDOC | End Document Bates number |
| BEGATTACH | Begin Bates number of family unit |
| ENDATTACH | End Bates number of family unit |
| CUSTODIAN | Individual from whom the document originated |
| ALL CUSTODIANS | Name of the agreed-upon custodians, in addition to the primary custodian, from whose files the item would have been produced if it had not been de-duplicated |
| FROM | Author of the email message |
| TO | Recipient(s) of the email message |
| CC | Recipient(s) of "Carbon Copies" of the e- mail message |
| BCC | Recipient(s) of "Blind Carbon Copies" of the email message |
| DOCUMENT SUBJECT | Subject field extracted from the metadata of the native file |
| EMAIL SUBJECT | Subject field extracted from the metadata of an email file |
| DOCUMENT TITLE | The title of a document |
| DOCUMENT AUTHOR | Author field extracted from the metadata of the native file |
| FILE EXTENSION | File extension of a document |
| CREATED DATE_TIME | Date file was created (MM/DD/YYYY HH:MM:SS) |
| LAST MODIFIED DATE_TIME | Date document was last modified  (MM/DD/YYYY HH:MM:SS) |
| EMAIL SENT DATE_TIME | Date email was sent  (MM/DD/YYYY HH:MM:SS) |
| EMAIL RECEIVED DATE_TIME | Date email was received  (MM/DD/YYYY HH:MM:SS) |

| DATE_TIME APPOINTMENT START | Start date of calendar appointment entry (MM/DD/YYYY HH:MM:SS) |
|---|---|
| DATE_TIME APPOINTMENT END | End date of calendar appointment entry (MM/DD/YYYY HH:MM:SS) |
| LAST EDITED BY | Name of the last person to edit the document from extracted metadata |
| TIMEZONE | Time zone used to process the data |
| PGCOUNT | Number of pages in a document (image records) |
| FILE SIZE | File size in bytes |
| FILE TYPE | File Type: email, image, spreadsheet, presentation, etc. |
| MD5 HASH | Unique identifier of the file |
| FILEPATH | Original file path to the source location of the native file in original environment |
| FILE NAME | Original name of the file or subject of email, including file extension |
| CONFIDENTIALITY | User-generated field that will indicate confidentiality pursuant to the Protective Order (i.e., CONFIDENTIAL). Otherwise, blank. |
| EMBEDDED | YES if applicable. Otherwise, blank. |
| REDACTED | YES if applicable. Otherwise, blank. |
| TECHNICAL ISSUE | YES where slip sheet reads "Technical issue—file cannot be processed." Otherwise, blank. |
| TEXTLINK | Contains Path to .TXT files |
| NATIVELINK | Contains Path to native files |
| PARTICIPANTS | The name of each participant of a text or chat message |
| VOLID | Production volume name |

### C.    Reproduction in Native Format

The Parties further agree that to the extent any Party seeks production in native format of specifically identified ESI produced originally in TIFF form for good cause shown, the producing Party shall respond reasonably and in good faith to any such request.

## IX.    MISCELLANEOUS PROVISIONS

### A.    Bates Numbering

The Parties shall assign a Bates number to individual pages of TIFF documents and a Bates number to each document produced in native format. Bates numbers shall be unique across the entire document production and sequential within a given document. All volumes of production shall be identified by the same Bates prefix and a numerical sequence.

### B.    De-Duplication and Document Families

The Parties will perform de-duplication of ESI within and across custodians according to MD5 or SHA-1 hash values at a family level and will produce only a single copy of identical ESI, except where de-duplication would break up document families. The custodian associated with the first copy of a document processed will be considered the primary custodian for that document (the custodian who will be used as the basis for determining which other collected documents are duplicates). The producing Party shall produce an "All Custodians" metadata field with each production as specified in Section VIII.B above which lists every custodian or source who or which possessed a duplicate document. If the Parties de-duplicate ESI, they shall provide custodian associations in a semi-colon delimited field that includes duplicate custodian name information. If additional documents are produced after substantial completion of document discovery, the producing Party shall produce an overlay that provides an updated "All Custodians" field at the time new productions are made. At any time, however, if a producing Party has not provided current "All Custodians" data and a receiving Party believes in good faith that "All Custodians" data is necessary for a scheduled deposition, filing deadline, or other case event, the receiving Party shall inform the producing Party of such belief and request updated "All Custodians" data, and the producing Party shall, upon such request, produce updated "All Custodians" data sufficiently in advance of that event.

If there are any handwritten notes, or any other markings, on a document, it shall not be considered a duplicate. Any document that contains an alteration, marking on, or addition to the original document shall be treated as a distinct version, and shall be produced as such. These alterations include, but are not limited to, handwritten notes, electronic notes/tabs, edits,

highlighting or redlining. If such markings/alterations are made in color, the documents must, to the extent reasonably practicable, be produced in color as originally intended.

### C.    Embedded Documents

Where reasonably feasible, non-image embedded ESI documents (e.g., a spreadsheet embedded within a word processing document or an audio file in a PowerPoint presentation) will be extracted, produced as independent document records, and related back to the respective top level parent document (e.g., standalone file, email message, etc.) via the BEGDOC and ENDDOC fields referenced in Section VIII.B. Related embedded documents will be produced within a continuous Bates range. The Producing Party shall inform the Requesting Party of the methodology it intends to use prior to any production, and shall use reasonable efforts to ensure that the same methodology is utilized throughout its production(s).

### D.    ESI Not Required

The Parties agree that the following ESI does not require preservation, collection, review, or production because they are either not reasonably accessible or because the remote possibility of additional relevant information existing in not reasonably accessible sources is substantially outweighed by the burden and cost of preservation, collection, review, and production, provided, however, that nothing herein shall prevent a Party from subsequently requesting that Documents from the sources identified below be preserved and produced if specific facts demonstrate a particular need for such Documents that justifies the burden of preservation and retrieval:

1.    Deleted, shadowed, damaged, residual, slack, fragmented, or other data only accessible by forensics;

2.    Random access memory (RAM), temporary files, or other ephemeral data that is difficult to preserve without disabling the operating system;

3.    On-line access data such as temporary Internet files, history, cache, cookies, and the like;

4.    Data stored on photocopiers, scanners, and fax machines;

5.    Data in metadata fields that are frequently updated automatically, such as last-opened dates;

6.      Data maintained or duplicated in any electronic backup system for the purpose of system recovery or information restoration, including, but not limited to, system recovery backup tapes or other media, continuity of operations systems, and data or system mirrors or shadows, if such data are routinely purged, overwritten, or otherwise made not reasonably accessible in accordance with an established routine system maintenance policy;

7.      Server, system, or network logs;

8.      Data remaining from systems no longer in use that is unintelligible on the systems in use;

9.      Video surveillance data; and

10.     Email, calendars, and contact data sent to or from mobile devices (e.g., iPhone, iPad, Android, and Blackberry devices), provided that a copy of all such electronic data is saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

**E.      Original Documents**

Nothing in this ESI Protocol shall eliminate or alter any Party's obligation to retain original and Native Format copies of Documents, including associated metadata, of all ESI preserved for and produced in the litigation and/or original versions of all Hard Copy Documents preserved for and produced in the litigation. Nothing in this section alters a Party's obligation to retain data pursuant to the Federal Rule of Civil Procedure and/or Court Order. Each Party reserves the right to request to inspect such original documents of the opposing Party or Parties if reasonably necessary due to issues of legibility of all or any part of the production copy, and such request shall not be unreasonably denied.

**F.      Preservation of Parent-Child Relationships**

The Parties agree that if any part of an Email or its attachments is responsive, the entire family of Email and attachments will be produced, except any family members that must be withheld or redacted on the basis of privilege, immunity or privacy laws and subject to the producing party's use of de-duplication as outlined in this ESI Protocol. The Parties shall preserve parent-child relationships (the association between an attachment and its parent document). The Parties will provide a BEGATTACH and ENDATTACH for each produced attachment in the load

file. If any member of a responsive, partially privileged document "family" (e.g., an email attachment) is withheld as Privileged, then the producing Party shall produce a one-page slipsheet TIFF image stating, "Withheld for Privilege," and bearing a unique Bates number that is immediately after the Bates numbers assigned to the other members of the family.

### G.  Redaction

The Parties will produce redacted documents in TIFF format with corresponding searchable OCR text and associated metadata for the documents, ensuring the redacted content is fully protected from disclosure. To the extent spreadsheets contain redacted text, the Parties may provide a copy of the native file with redactions in lieu of TIFF format. For redacted items that were originally ESI, all metadata fields noted in this ESI Protocol that do not contain Privileged or protected information will be provided and will include all non-redacted data. If, during the course of discovery, the Parties identify other kinds of information that a Party has a reasonable basis for redacting, the Parties will meet and confer regarding same before such redactions are made.

### H.  Phasing

When a party propounds discovery requests pursuant to Federal Rule of Civil Procedure 34, the parties agree to meet and confer concerning the phased production of ESI.

### X.  DOCUMENTS PROTECTED FROM DISCOVERY

Pursuant to Federal Rule of Evidence 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

### XI.  PRIVILEGE LOG AND TREATMENT OF PRIVILEGED MATERIALS

The parties agree that certain privileged communications or documents need not be included on a privilege log: (1) communications regarding litigation holds or preservation, document collection, or document review in this or any litigation; and (2) communications with litigation counsel in this matter concerning this matter that post-date the filing of the Amended

Complaint (ECF No. 36). The parties agree that privilege logs will be provided within 30 days of substantially completing document production.

For any document withheld in its entirety or produced but redacted, the producing party will produce privilege/redaction logs in Excel format or any other format that permits electronic sorting and searching. Documents shall be logged individually and shall not be logged on the family level. For document families in which fewer than all of the documents are withheld as privileged or protected, the privilege log entry for the withheld document(s) shall identify the Bates number of the produced family member. The producing party and the receiving party may modify the deadlines for production of privilege/redaction logs by agreement.

For each document withheld or redacted, the producing party's privilege/redaction logs shall include the following information: (1) Date (including, if applicable, the date the document was created, the date it was modified, and the date it was sent); (2) Author(s); (3) For documents produced, but redacted on the ground of privilege, the starting and ending Bates number; (4) Recipient(s), CC(s) and BCC(s) (for e-mail and hard-copy communication such as letters and internal memoranda and identification of which of them are attorneys); (5) the title or subject of a document to the extent the title does not reveal privileged or work-product protection information; (6) Specification of the privilege claimed; and (7) A description of the document and the basis for the privilege claim.

## XII.    MODIFICATION

This Stipulated Order may be modified by written agreement of the Parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.

DATED:    September 29, 2025

Respectfully submitted,

*/s/ Katherine M. Sinderson*
**BERNSTEIN LITOWITZ BERGER**
   **& GROSSMANN LLP**
John J. Rizio-Hamilton (*pro hac vice*)
(johnr@blbglaw.com)
Katherine M. Sinderson (*pro hac vice*)
(katiem@blbglaw.com)
Thomas Sperber (*pro hac vice*)
(thomas.sperber@blbglaw.com)
Abby Kritta (*pro hac vice*)
(abby.kritta@blbglaw.com)
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400

JONATHAN D. USLANER (Bar No. 256898)
jonathanu@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3470

*Counsel for Lead Plaintiff Oklahoma*
*Firefighters Pension and Retirement System*

Dated:  September 29, 2025

*/s/ Christopher Porter*
**QUINN EMANUEL URQUHART**
**& SULLIVAN, LLP**

Kristin Tahler (Bar No. 261908)
865 South Figueroa Steet, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
kristintahler@quinnemanuel.com

Christopher Porter (*pro hac vice*)
700 Louisiana Street, Suite 3900
Houston, Texas 77002
Telephone: (713) 221-7000
chrisporter@quinnemanuel.com

Jesse Bernstein (*pro hac vice*)
Brenna Nelinson (*pro hac vice*)
Amy Shehan (*pro hac vice*)
295 5th Avenue
New York, New York 10016
Telephone: (212) 849-7000

STIPULATED ORDER RE: DISCOVERY OF ESI
CASE NO. 3:24-CV-706-JSC

15

jessebernstein@quinnemanuel.com
brennanelinson@quinnemanuel.com
amyshehan@quinnemanuel.com

*Counsel for Defendants iRhythm Technologies, Inc. and Quentin Blackford*

**IT IS ORDERED** that the forgoing Agreement is approved.

_____
Honorable Jacqueline Scott Corley
United States District Judge

Dated: September 30, 2025

STIPULATED ORDER RE: DISCOVERY OF ESI
CASE NO. 3:24-CV-706-JSC

16