UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLAZING EMPLOYERS AND GLAZIERS UNION LOCAL #27 PENSION AND RETIREMENT FUND,<br><br>Plaintiff,<br><br>v.<br><br>IRHYTHM TECHNOLOGIES, INC., et al.,<br><br>Defendants. | Case No. 24-cv-00706-JSC<br><br>**ORDER RE: DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Re: Dkt. No. 88 |

Plaintiff brings this Private Securities Litigation Reform Act ("PSLRA") putative class action against iRhythm Technologies ("iRhythm") and its CEO, Quentin Blackford, for allegedly false or misleading statements regarding iRhythm's Zio AT, a device which transmits heart event data for physician monitoring. (Dkt. No. 43.)[1] The Court granted in part and denied in part Defendants' motion to dismiss, ruling Plaintiff adequately alleged Mr. Blackford made false or misleading statements and had scienter "beginning in July 2022." (Dkt. No. 77 at 24.) Plaintiff did not amend his complaint following the Court's order, and this motion for judgment on the pleadings followed. After careful consideration of the briefing, the Court concludes oral argument is unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), and DENIES Defendants' motion for judgment on the pleadings. The Court previously ruled Plaintiff adequately alleged Mr. Blackford's scienter and loss causation in its order on Defendants' motion to dismiss, so the law of the case doctrine prohibits the Court from re-examining those issues absent a motion for reconsideration.

**BACKGROUND**

**I.   The SAC's Allegations and the Court's Prior Order**

---

[1] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

The Court reincorporates its discussion of the SAC's allegations, procedural history, and analysis from its order on Defendants' motion to dismiss. (Dkt. No. 77.) For brevity, the Court reiterates only those portions of the order that are relevant to the instant motion.

Consistent with the parties' briefing, the Court's order organized Defendants' statements into four categories: "(1) Zio AT's near-real-time reporting (Dkt. No. 43 ¶¶ 179-99); (2) Zio AT's appropriateness for use by high-risk populations (*id.* ¶¶ 203-11); (3) Zio AT as a[] [mobile cardiac telemetry ("MCT") device] (*id.* ¶¶ 213-22); and (4) Zio AT's accuracy (*id.* ¶¶ 224-231)." (Dkt. No. 77 at 7.) The Court granted Defendants' motion as to MCT statements because Plaintiff had not adequately alleged the statements were false, but denied the motion as to the other three categories. (*Id.* at 15-20.)

**A. Falsity of Statements**

As to statements regarding "near real-time" and "timely" transmission, the Court ruled Plaintiff had plausibly pled these statements were false or misleading because (1) the device's transmission limits meant some "arrythmia events are *never* reported, [so] regardless of how one reads the statements, the transmissions are not timely," and (2) Plaintiff adequately alleged the device's lag time based on a confidential witness's statements. (Dkt. No. 77 at 16-19.)

For the "high-risk" and "at-risk" population statements, the Court rejected Defendants' insistence the statements were impossibly vague; instead, the Court concluded these statements "can be proven true or false based on the meaning iRhythm gave them." (Dkt. No. 77 at 13.) As support, the Court cited a graphic iRhythm presented to investors in 2022, a visual on iRhythm's website, and the FDA's understanding of the terms in its communications to iRhythm. (*Id.* at 11-13.) Accordingly, "[b]ased on the Company's own statements, 'high-risk' or 'at-risk' meant patients who had a risk of arrhythmias and so were likely to need near-real-time monitoring for their condition." (*Id.* at 12.) As for falsity, the Court reasoned the SAC's "plausibly pled transmission issues and lag time issues support an inference the product was not appropriate for" patients who met the company's understanding of the terms "high-risk" and "at-risk." (Dkt. No. 7 at 14.) And Defendants' disclosures in Clinical Reference Manuals and on the company's website did not "as a matter of undisputed fact, make the statements … true or not misleading." (Dkt. No.

2

77 at 14.)

Finally, the Court ruled Plaintiff plausibly alleged statements about the device's accuracy were false or misleading based on "FDA documents about customer complaints, confidential witness statements, and a news article." (Dkt. No. 77 at 20.) As relevant here, "[t]he FDA's July 2024 Form 483 observed iRhythm had received 'approximately 4,014 complaints related to' [Certified Cardiographic Technicians ("CCTs")] from May 2022 through July 2024, 'including issues/events related to CCT personnel misreading arrhythmia data and providing such misclassified data to end users for diagnosis purposes.'" (Dkt. No. 77 at 20 (citing Dkt. No. 43-3 at 2).)

### B. Mr. Blackford's Scienter

The Court also held Plaintiff adequately alleged Mr. Blackford's scienter "beginning in July 2022":

> He signed iRhythm's responses to the FDA's 2022 Form 483 in which he attested "the wireless transmission limit is an essential design constraint." (Dkt. No. 51-4 at 33.) Further, the 2023 Warning Letter that followed was addressed to him. (Dkt. No. 43-2.) And Mr. Blackford signed the SEC Forms 8-K and 10-Q which reported on FDA correspondence, including the 2024 Form 483. (Dkt. No. 43 ¶ 146.) Given Mr. Blackford's admitted involvement in the internal investigation into the FDA's Form 483 claims, and his knowledge of the transmission limit issues, Plaintiff plausibly alleges "specific information [was] conveyed to [him] and related to the fraud," at least as of the date of the FDA investigations in July of 2022. (Dkt. No. 43-1); Metzler Inv. GMBH v. Corinthian Colls., Inc., 540 F.3d 1049, 1068 (9th Cir. 2008).

(Dkt. No. 77 at 22, 24.) In other words, the FDA specifically "notified iRhythm and Mr. Blackford of issues which contradicted his assertions about the Zio AT's capabilities," yet "he and iRhythm continued to tout the device as appropriate for such patients." (Dkt. No. 77 at 22-23 (citing (Dkt. No. 43 ¶¶ 158, 184-199)).) And the Court rejected Defendants' argument that their public disclosures of FDA correspondence negate an inference of scienter, because "drawing inferences in Plaintiff's favor," Defendants' disclosures "were not made 'quickly,' and even as iRhythm took corrective measures to change its labeling regarding the transmission limits, public statements about the transmission limit issue were vague at best. (*See, e.g.*, Dkt. No. 43 ¶¶ 112-114, 125-25, 137.)" (Dkt. No. 77 at 24.)

3

But, the Court also concluded Plaintiff had not adequately alleged Mr. Blackford's scienter prior to July 2022:

> Plaintiff's scienter allegations do not predate the July 2022 investigation. Mr. Blackford did not become the CEO of iRhythm until 2021 and he was not at the Company prior to becoming CEO. (Dkt. No. 43 ¶ 30.) Plaintiff does not provide any allegations of when he would have become aware of the transmission limit issue prior to this date. Indeed, Plaintiff acknowledges the timing issue in its opposition brief: "[a]t minimum, Defendants gained actual knowledge of these issues upon receipt of the 2022 Form 483 on August 12, 2022." (Dkt. No. 66 at 26.) And while Mr. Blackford was on the Company's Compliance Committee, … Plaintiff fails to allege membership in the Committee would have actually given Mr. Blackford knowledge of particular customer complaints. Further, Plaintiff does not allege when Mr. Blackford first joined the Committee.

(Dkt. No. 77 at 22-23 n.8.) The Court imputed Mr. Blackford's scienter to iRhythm. (*Id.* at 26 n.6.)

**C. Loss Causation**

The Court ruled Plaintiff met its burden of pleading "a causal connection between the material misrepresentation and the loss." (*Id.* at 27 (citing *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1211 (9th Cir. 2016)).) Plaintiff's loss causation theory was that "'misleading statements and omissions artificially inflated the price of iRhythm common stock,'" and the stock price fell when iRhythm made seven disclosures to the market. (Dkt. No. 77 at 27 (citing Dkt. No. 43 ¶ 233).) The Court highlighted three of those disclosures in which iRhythm informed the market: (1) the device has a transmission limit, (2) an FDA inspection caused iRhythm to correct the device's labeling about the transmission limit, and (3) the Department of Justice was investigating the device's failure to timely transmit data. (Dkt. No. 77 at 27 (citing Dkt. No. 43 ¶¶ 124, 129, 134).) Ultimately, the Court held Plaintiff "plausibly alleged the loss is traced back to 'the very facts about which the defendant lied'" because Plaintiff pled a drop in iRhythm's stock price after each of iRhythm's seven disclosures. (Dkt. No. 77 at 27 (citing Dkt. No. 43 ¶¶ 127, 130, 136, 139, 143, 145, 151, 153; *Mineworkers' Pension Scheme v. First Solar Inc.*, 811 F.3d. 750, 753 (9th Cir. 2018)).)

4

**ANALYSIS**

The Court reincorporates from its prior order its analysis of the pleading requirements for Section 10(b) of the Exchange Act, Rule 10b-5, scienter, and loss causation. (*See* Dkt. No. 77 at 9-10, 21-22, 26-27.) The standard for a motion for judgment on the pleadings is the same as a motion to dismiss. *See Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). "Under either provision, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy, and dismiss the claim or enter judgment on the pleadings if the complaint fails to state a legally sufficient claim." *Ross v. U.S. Bank Nat. Ass'n*, 542 F.Supp.2d 1014, 1023 (N.D. Cal. 2008).

**A. Defendants' Arguments**

Defendants' motion for judgment on the pleadings asserts Plaintiff's allegations that survived 12(b)(6) dismissal fail to state a claim. Defendants argue (1) Plaintiff has not adequately alleged Mr. Blackford's scienter as to the three categories of statements that survived the motion to dismiss–that is, statements regarding the device's timely transmissions, appropriateness for "high-risk" patients, and accuracy; and (2) Plaintiff has not adequately alleged loss causation as to statements about the device's lag time.

**1. Mr. Blackford's Scienter**

Defendants contend Plaintiff's remaining allegations do not establish Mr. Blackford's scienter as to timeliness statements for two reasons. First, Plaintiff has not alleged Mr. Blackford knew about the device's lag time because the allegations about lag time come from a confidential witness "who Plaintiff does not allege reported to Mr. Blackford, attended meetings with Mr. Blackford, worked with Mr. Blackford, or even spoke with Mr. Blackford." (Dkt. No. 88 at 19-20.) Second, Mr. Blackford and the company repeatedly disclosed the device's transmission limit, so "it is illogical to suggest Defendants had an intent to deceive investors where Defendants disclosed to the public the very facts Plaintiff alleges Defendants sought to hide." (Dkt. No. 88 at 17.) As examples of disclosures, Defendants request judicial notice of changes iRhythm made to the Zio AT's labeling, (Dkt. Nos. 88-2, 88-3, 88-4, 88-5), and move to incorporate by reference a transcript of an earnings call. (Dkt. No. 88-7.) Defendants do not explain why they failed to

include these documents in their motion to dismiss. (Dkt. Nos. 89, 101.)

Next, Defendants argue Plaintiff has not pled scienter as to two "high-risk" statements: "with respect to MCT, you're monitoring some of the most at-risk patients" and "the Zio AT is appropriate for more acute patients that require timely notification." (Dkt. No. 88 at 22 (quoting Dkt. No. 43 ¶¶ 240, 211)) (cleaned up). Defendants assert (1) these two statements do not use the exact words "high risk,"[2] (2) Plaintiff has not alleged Mr. Blackford believed the terms "at-risk" and "more acute" to mean the same thing as "high risk," (3) the company's disclosures of transmission limits cuts against an inference of scienter, and (4) Plaintiff has not alleged Mr. Blackford believed the company's disclosures did not sufficiently explain the device's inappropriateness for high-risk patients. (Dkt. No. 88 at 22-24.)

As to accuracy statements, Defendants contend Plaintiff has not alleged Mr. Blackford's scienter because there are no allegations suggesting Mr. Blackford knew the facts underlying the reasons why those statements were false. Defendants emphasize there are no allegations showing Mr. Blackford knew about the Company's purported desire to "show doctors very 'clean' reports instead of 'ugly' reports" or that Mr. Blackford received the "approximately 4,014 complaints" related to Certified Cardiographic Technicians mentioned in the FDA's July 2024 Form 483. (Dkt. No. 88 at 18-19 (quoting Dkt. No. 77 at 20).) While the allegation regarding clean reports is supported by the confidential witness's statements, Plaintiff has not alleged Mr. Blackford interacted with this witness. (*Id.* at 19-20, 24-25.) Regarding the customer complaints, Defendants attempt to import the Court's reasoning why Plaintiff had not alleged Mr. Blackford's scienter prior to July 2022: "[a]t minimum, Defendants gained actual knowledge of [transmission limit] issues upon receipt of the 2022 Form 483 on August 12, 2022. … And while Mr. Blackford was on the Company's Compliance Committee, … Plaintiff fails to allege membership in the Committee would have actually given Mr. Blackford knowledge of particular customer complaints. Further, Plaintiff does not allege when Mr. Blackford first joined the Committee."

---

[2] The Court's order on the motion to dismiss clarified "[n]ot every allegedly false statement in this category uses the words 'at-risk' or 'high-risk.' The Court uses the term 'high-risk' as shorthand for all alleged statements the parties placed into this category." (Dkt. No. 77 at 11 n.3.)

6

1   (Dkt. No. 88 at 25; Dkt. No. 77 at 22 n.8 (quoting Dkt. No. 66 at 26)) (cleaned up).

### 2. Loss Causation

Finally, Defendants argue Plaintiff has not adequately pled loss causation as to statements regarding the device's lag time. Defendants do not move to dismiss any other statements upon which Plaintiff's loss causation theory rests. (Dkt. No. 88 at 21.) Of the seven disclosures Plaintiff alleges, Defendants argue none of them "relate to the alleged 'lag time.'" (Dkt. No. 88 at 21.) For this reason, Defendants assert there are no alleged corrective disclosures that "relate back to the misrepresentation" about lag time, rather than "some other negative information about the company." (Dkt. No. 88 at 21 (quoting *Espy v. J2 Glob, Inc.*, 99 F.4th 527, 540 (9th Cir. 2024)).)

### B. The Law of the Case

Defendants' motion for judgment on the pleadings contends Plaintiff has not adequately pled Mr. Blackford's scienter and loss causation, but as noted above, the Court already ruled otherwise. (Dkt. No. 77 at 22-24, 26-28.) So, Defendants' motion is barred by the law of the case doctrine. "The law-of-the-case doctrine generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Musacchio v. United States*, 577 U.S. 237, 244–45 (2016); *see also Richardson v. U.S.*, 841 F.2d 993, 996 (9th Cir. 1988) ("A court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case."); *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993) ("For the doctrine to apply, the issue in question must have been decided either expressly or by necessary implication in [the] previous disposition.") (cleaned up); *Chae v. SLM Corp.*, 2008 WL 11342464 *1 (N.D. Cal. Jan. 17, 2008) (holding the "law of the case" doctrine barred the court from examining issues in a motion for judgment on the pleadings because the court had already addressed identical arguments in a motion to dismiss).

So, Defendants should have moved for leave to file a motion for reconsideration. *See* N.D. Cal. Civ. L.R. 7-9(a). They did not. And they could not have successfully done so. To be granted leave to file a motion for reconsideration, a party must show "one of the following":

> 1. That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court

|   |   |
|---|---|
| 1 | before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or |
| 2. | The emergence of new material facts or a change of law occurring after the time of such order; or |
| 3. | A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order. |

Civ. L.R. 7-9(b). Defendants' new loss causation argument does not rely on any new material facts or a change of law, and their new scienter argument is based upon the device's Clinical Reference Manuals from 2022—evidence that existed at the time of Defendants' motion to dismiss. (*See* Dkt. No. 88 at 21-23). Thus, none of the prerequisites to bringing a motion for reconsideration apply; Defendants cannot show in the exercise of reasonable diligence they would not be aware *of their very own labels*, particularly when Defendants requested judicial notice of prior versions of the same labels. (*See* Dkt. Nos. 52, 51-18, 51-20.)

Defendants' insistence Federal Rule of Civil Procedure "12(c) specifically permits raising 'any issues not raised in a previous motion[]' Fed. R. Civ. P. 12(h)(2)" (Dkt. No. 100 at 2 n.1) is unavailing. First, Defendants did raise the "issues" of whether Plaintiff had plausibly alleged Mr. Blackford's scienter and loss causation in its motion to dismiss, and Defendants even raised the issues specifically in connection with disclosures iRhythm had made. (Dkt. No. 51 at 9 (highlighting Defendants' disclosures *in the first sentence* of their memorandum of points and authorities in support of motion to dismiss), 13-14 (four bold-faced headings with the phrase "iRhythm's voluntary disclosure"), 25 (arguing Defendants' disclosures create a "more compelling, non-culpable inference" regarding scienter), 30-31 (arguing Mr. Blackford's scienter is not adequately alleged), 32-33 (raising arguments as to each of Defendants' seven disclosures).) Defendants' motion for judgment on the pleadings may be identifying additional evidence to support their arguments, but they are still relitigating the same issues. So, under Defendants' own characterization of what the Rules permit them to argue, their motion is improper.

Second, Defendants quote Federal Rule of Civil Procedure 12(h)(2) as permitting "any issues not raised in a previous motion." (Dkt. No. 100 at 2 n.1.) But that language is nowhere in

1  Rule 12, let alone in 12(h)(2) as Defendants represent. The quote does not exist. Rules 12(g)(2)
2  and (h)(2) address raising and waiving "defenses." Rule 12 does not mention "issues;" it says
3  "defenses" and delineates "defenses" by the category in which they appear in Rule 12(b)(2)-(6).
4  *See* Fed. Rs. Civ. P. 12(g)(2), (h)(1). Defendants already asserted the defense of "failure to state a
5  claim"–that is, Plaintiff failed to plausibly state Mr. Blackford's scienter and loss causation under
6  the PSLRA's pleading standards–and are now re-raising that same 12(b)(6) defense, to the same
7  elements, based on the same allegations.  (Dkt. No 51 at 25, 30-33; *see* Dkt. No. 88 at 23 n.12, 24
8  n.13.)  Rule 12's plain language does not permit Defendants to re-raise the same failure-to-state-a-
9  claim defense based on the exact same complaint allegations. Fed. R. Civ. P. 12(g)(2), (h)(2). And
10 Defendants' cited cases interpreting Rule 12(h)(2) (Dkt. No. 88 at 14 n.8) are inapposite because
11 both cases addressed situations where the defendants raised a Rule 12(b)(6) defense for the first
12 time; so, neither involves the application of the law of the case doctrine.[3]

So, whether Defendants may again argue the complaint does not plausibly allege scienter and loss causation is governed by the law of the case. *See Chae*, 2008 WL 11342464 at *1 (holding the court's order on a motion to dismiss precludes re-examination of whether the plaintiff stated a claim on a subsequent motion for judgment on the pleadings). And the law of the case is that the identical allegations Defendants attack plausibly allege scienter and loss causation.  (Dkt. No. 77 at 22-24 (ruling Mr. Blackford's scienter is adequately alleged and rejecting Defendants' argument their public disclosures cut against an inference of scienter), 26-28 (loss causation is adequately alleged).)  The Court decided those questions "expressly," *Thomas*, 983 F.2d at 154, and yet "Defendants' instant motion for judgment on the pleadings essentially requests the Court reconsider that ruling." *Chae*, 2008 WL 11342464 at *1. So, for this reason alone, Defendants'

---

[3] *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313 (9th Cir. 2017), involved a defendant moving to dismiss two counts in an amended complaint in a second motion to dismiss which it had not moved to dismiss in the first motion; that is, in the second motion the defendant raised a 12(b)(6) defense to those counts for the first time. *Id.* at 317-18. Second, *Western Digital Technologies, Inc. v. Viasat, Inc.*, 2023 WL 7739816 (N.D. Cal. Nov. 15, 2023), addressed a situation where a defendant omitted a patent eligibility 12(b)(6) argument from a 12(b)(1) motion to dismiss, then filed a 12(b)(6) motion based on that defense. *Id.* at *2. Here, Defendants are making the same 12(b)(6) defense to the same causes of action based on the identical allegations they previously challenged.

motion for judgment on the pleadings must be denied.

**CONCLUSION**

Following two months of briefing, over 1,000 pages of written submissions, and an hour and half of oral argument, the Court issued a 29-page order on Defendants' motion to dismiss, including Defendants' arguments to dismiss for failure to adequately plead scienter and loss causation. As the law of the case doctrine bars Defendants' attempt to relitigate those issues in a motion for judgment on the pleadings, Defendants' motion for judgment on the pleadings is DENIED.

This Order disposes of Docket No. 88.

**IT IS SO ORDERED.**

Dated: November 7, 2025

JACQUELINE SCOTT CORLEY
United States District Judge