# EXHIBIT 9

iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)



699 8th Street
Suite 600
San Francisco, CA 94103

(415) 632-5700  Phone
(415) 632-5701  Fax

Customer Service
(888) 693-2401

iRhythmTech.com

*VIA Email Delivery to* ORADevices3FirmResponse@fda.hhs.gov

September 1, 2022

U.S. Food and Drug Administration
Office of Regulatory Affairs
Los Angeles District Office
19701 Fairchild
Irvine, CA 92612-2445

Dear U.S. Food and Drug Administration Office of Regulatory Affairs Representative:

iRhythm Technologies, Inc. ("iRhythm" or the "Company") is writing to provide a comprehensive response (our "Response") to the FDA Form 483, Inspectional Observations ("483") issued and Discussion Item raised in the July 25 to August 12, 2022 inspection of the Company's manufacturing facility at 6550 Katella Avenue, Cypress, California, by the U.S. Food and Drug Administration ("FDA").

We take the 483 Observations and Discussion Item as presented by the FDA Investigators (Janet Pulver and Alexandria Capuano) during their inspection very seriously. We have opened Corrective and Preventive Actions ("CAPAs") corresponding to each Observation and Discussion Item. We are strongly committed to improving and sustaining compliance.

This inspection has brought into sharper focus areas that I and other members of iRhythm's new leadership intend to prioritize consistent with our strong commitment to high-quality technologies and services. We also view this Response as an opportunity to provide important context regarding the Company, iRhythm's status as both a medical device manufacturer and an independent diagnostic testing facility ("IDTF"), and recent leadership changes.

### About iRhythm

iRhythm is a digital healthcare company serving physicians and their patients through services that include mobile cardiovascular telemetry ("MCT"). Like many manufacturers of MCT technologies, iRhythm supports physician and patient use of its technology – the Zio AT System – through the Company's Medicare-enrolled IDTF and Certified Cardiographic Technicians, who perform the technical monitoring services associated with a physician's order for MCT monitoring. iRhythm's dual status – that is, as both a medical device manufacturer and an IDTF – requires the Company to comply with federal and state laws, regulations, and standards that independently govern our manufacturing processes and clinical

1

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

R1

iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)

operations. Critically, iRhythm's clinical operations must be viewed through the lens of the laws and rules governing IDTFs.[1]

The inspection highlighted an opportunity for iRhythm to update the labeling of the Zio AT System to distinguish more clearly the *Zio AT System* (also referred to in our Response as the product or medical device) from MCT *monitoring services* (also referred to in our Response as the IDTF services). MCT monitoring services are diagnostic medical procedures that may use the Zio AT System and be performed by iRhythm's IDTF, when ordered by the patient's treating physician. For patients *not* suspected of having life-threatening arrhythmias, but who are suspected of having infrequent, difficult-to-detect, or asymptomatic arrhythmias, MCT technologies and services offer physicians an important clinical option that monitors ambulatory patients for an extended period of time and provides high-quality electrocardiogram ("ECG") recordings. MCT technologies and services work together to offer monitoring in a way that reduces interference with the patient's day-to-day activities and can facilitate patient compliance and the physician's diagnosis and treatment of cardiac rhythm disorders for his or her patients.

The product summary description that follows – as distinguished from the description of MCT monitoring services – previews our planned updates, which align with our enclosed Response, specifically on Observations 1A and 1B and the Discussion Item from our recent inspection.

| The Zio AT System | American Medical Association MCT Monitoring Services |
|---|---|
| The Zio AT connected continuous ambulatory monitoring system ("Zio AT System") is a prescription-only, ambulatory ECG monitoring system. It consists of three primary components: (1) the Zio AT *patch* ECG monitor that records the electrical signal from the heart continuously through the entire patient wear period, (2) the Zio AT wireless *gateway* that provides connectivity between the patch and the Zio ECG Utilization Software ("ZEUS") System, and (3) the *ZEUS System*, which supports the capture and analysis of ECG data, including specific arrhythmia events detected by the ZEUS algorithm.<br><br>The Zio AT patch is a wearable, single-use device applied to the patient's chest where it senses and records the patient's ECG data without requiring any patient interactions or manipulations. During manufacturing, | MCT monitoring services are diagnostic medical procedures that combine real-time *data analysis of ECG data* and *attended monitoring by IDTFs' Certified Cardiographic Technicians*, who review potential arrhythmia events, generate reports for medical review, and notify physicians of potential urgent or emergent arrhythmias according to the ordering physician's prescribed protocol. MCT monitoring services are outpatient procedures and are not appropriate for patients suspected of life-threatening arrhythmias or who require inpatient monitoring. MCT monitoring services may be appropriate for patients suspected of having infrequent, difficult-to-detect, or asymptomatic arrhythmias and for whom monitoring over an extended period is necessary to diagnose cardiac rhythm disorders. MCT monitoring services may use the Zio AT System and be performed by |

---

[1] See, e.g., 42 C.F.R. Sections 410.32 and 410.33.

2

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

R2

iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)

| The Zio AT System | American Medical Association MCT Monitoring Services |
|---|---|
| each patch is paired with a dedicated Zio AT wireless gateway, which is similar in size to a smart phone and may also be worn by a patient. When in proximity to the Zio AT patch and connected to cellular reception, the gateway wirelessly transmits the patient's ECG data to the ZEUS System for analysis by the arrhythmia detection algorithm.<br><br>Additionally, patients may indicate symptomatic events by pressing a button on the patch, which marks the continuous ECG record for further review and analysis. | iRhythm's IDTF. iRhythm's **IDTF is a Medicare-enrolled provider**, and its Certified Cardiographic Technicians perform the technical monitoring services associated with MCT monitoring services. Upon receipt of a valid order from the treating physician, iRhythm's Certified Cardiographic Technicians review the output of the ECG Analysis Software to review potential arrhythmia events and generate reports that are posted to a secure online portal for medical review by the ordering physician. In accordance with the ordering physician's notification protocol (the "MDN"), the Certified Cardiographic Technicians may also contact the physician and/or patient directly in the event of detecting a potentially urgent or emergent arrhythmia. |

We also want to bring to your attention two important phrases that the American Medical Association ("AMA") uses to describe MCT monitoring services and that are relevant to our Response that follows: "real-time data analysis of ECG data" and "immediate notification criteria."

Regarding ECG data capture, unlike "Holter" and "Event" technologies, which support different cardiovascular monitoring services,[2] MCT technologies "*always* have internal electrocardiogram (ECG) analysis algorithms designed to detect major arrhythmias,"[3] which the AMA describes in the MCT monitoring CPT codes as: "concurrent computerized *real time data analysis*."[4] According to the AMA, this terminology accurately describes the technical capabilities of the Zio AT System: a monitoring *technology* that captures beat-to-beat ECG data and uses algorithms to *concurrently detect* arrhythmias (for subsequent review). Importantly, "real time *data analysis*" should not be conflated with "real time *monitoring*," which would incorrectly suggest that Certified Cardiographic Technicians at an IDTF are concurrently and continuously monitoring the ECG data. iRhythm intentionally uses the phrase "*near*-real time" to qualify the Company's IDTF monitoring services – which are not equivalent to inpatient or emergency real-time monitoring – while still leveraging the AMA's terminology,

---

[2] Holter monitoring is described by CPT codes 93224 – 93227 (for wear up to 48 hours); 93241 – 93244 (for wear more than 48 hours, up to 7 days); and 93245 – 93248 (for wear more than 7 days, up to 15 days). Event monitoring is described by CPT codes 93268 and 93270 – 93272. *See* AMA, CPT 2022: Professional Edition (4th ed. 2022).

[3] AMA CPT Assistant, Vol. 21, Iss. 10 (October 2011) (emphasis added).

[4] CPT Codes 93228 and 93229. *See* AMA, CPT 2022: Professional Edition (4th ed. 2022).

3

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)

which accurately describes the timely computerized data analysis that occurs with use of the Zio AT System.[5]

The AMA also uses the phrase "immediate notification criteria" to describe the physician-prescribed protocol that triggers a Certified Cardiographic Technician to notify a treating or on-call physician outside the standard reporting framework (e.g., daily and/or end-of-monitoring reports). Notably, the AMA uses this phrase in the context of attended monitoring – that is, for Event and MCT monitoring, where technicians review ECG data *during* the patient wear period – *and* unattended monitoring – that is, for Holter monitoring, where a technician reviews ECG data *after* the patient wear period. For this reason, iRhythm incorporates this language into its own physician notification form (sometimes referred to as the MDN or the MD Notification form).

To be clear, MCT monitoring is neither an emergency service nor is it equivalent to inpatient telemetry monitoring. As the name suggests, MCT monitoring is an ambulatory, outpatient diagnostic medical procedure, contraindicated for critical care patients or patients suspected of having life-threatening arrhythmias. We are committed to enhancing our labeling and our IDTF's clinical operations materials consistent with the medical context in which our MCT technologies and services are offered. Our Response explains how we plan to act on this commitment, as we strive to meet our regulatory obligations.

**Our Commitment**

We are fully committed to the Company's compliance with all FDA and CMS requirements, and to continuously improve the Company's FDA- and CMS-regulated functions, with additional enhancements to drive meaningful progress. On behalf of the Company's Board of Directors (the "Board") and the leadership team, I want to note the Company's commitment to Compliance with Quality, Regulatory and Legal Requirements has been enhanced with the following new additions to the Company's leadership team:

- The Board appointed me as the Company's President and Chief Executive Officer in October 2021. Following my appointment in 2021, the following changes to the Company's leadership team were implemented under my leadership:
  - Patrick Murphy was appointed as the Chief Legal Officer, and Mr. Murphy was subsequently appointed as the Executive Vice President of Quality and Regulatory, Market Access and Government Affairs, as well as the Data Privacy Officer. Prior to his role at iRhythm, Mr. Murphy previously served as Chief Legal Officer of Dexcom, Inc.
  - Dr. Mintu Turakhia was appointed as the Company's Chief Medical Officer and Chief Scientific Officer. Dr. Turakhia has been a

---

[5] The type of conflation that we're trying to avoid is demonstrated in, for example, the Remote Cardiac Monitoring Assessment report issued by HHS' Agency for Healthcare Research and Quality. *See, e.g.*, HHS, Agency for Healthcare Research and Quality, Remote Cardiac Monitoring Technology Assessment (Dec. 12, 2007), *available at* https://www.cms.gov/Medicare/Coverage/DeterminationProcess/downloads/id51ta.pdf (referencing "real-time continuous attended *cardiac monitoring systems*" and "real-time continuous attended *cardiac monitoring*" to describe MCT technologies and services, respectively).

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

R4

practicing clinical cardiac electrophysiologist for over 14 years and is a tenured Professor of Medicine at the Stanford University School of Medicine and the Founding Director of the Stanford Center for Digital Health. Prior to his role at iRhythm, Dr. Turakhia was Chief of Cardiac Electrophysiology at the VA Palo Alto Health Care System. In addition to performing invasive procedures such as catheter ablation and device implantation to treat heart rhythm disorders, Dr. Turakhia was director of the hospitals' ambulatory ECG monitoring program and developed all processes and protocols. In this role, he was also responsible for quality assurance and safety of the program. He has personally interpreted over 15,000 ambulatory ECG reports, including many from mobile cardiac telemetry devices. In his academic role, he led a large multidisciplinary research program in heart rhythm disorders and has over 250 peer-reviewed publications on real-world evidence, clinical trials, regulatory science, medical device regulation, and digital health.

o Sumi Shrishrimal was appointed as the Company's Executive Vice President, Chief Risk Officer, with responsibility for the Internal Audit, Corporate Compliance, and Enterprise Risk functions, reporting directly to the Chairman of the Audit Committee of the Board. Prior to her role at iRhythm, Ms. Shrishrimal was the Senior Vice President, Chief Risk Officer at Dexcom, Inc.

In responding to these 483 Observations, the iRhythm team has taken a thoughtful and thorough approach and developed commitments that we believe will be meaningful and serve the physicians and patients who stand to benefit from MCT monitoring services.

iRhythm is committed to the completion of the outlined actions in a comprehensive and systemic manner. We will provide monthly updates to FDA beginning October 2022 to track our progress, and will continue to provide updates until the effectiveness checks we have described are successfully completed. In the intervening time, our monthly updates we will provide evidence of completed actions as they are executed.

**To facilitate mutual understanding, we respectfully request a meeting to discuss our Response. We also believe it would be beneficial and request including officers from the Center for Devices and Radiological Health's Division of Health Technology 2 A (Cardiac Electrophysiology, Diagnostics, and Monitoring Devices - External Heart Rhythm and Rate Devices) if you deem appropriate to facilitate your review of this Response and our corrective actions.**

In the event that FDA does not agree that the meeting we have requested would be helpful, we welcome feedback on our action plan through email or by phone, and would be glad to address any questions or concerns from the FDA. The official contact for correspondence with the FDA, as indicated in our establishment registrations, remains Mazi Kiani, iRhythm's Senior Vice President of Quality and Regulatory. Please do not hesitate to contact Mr. Kiani at 949-413-2147 or via email at mazi.kiani@irhythmtech.com, and he will keep me informed.

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

Finally, iRhythm respectfully notes that its Response (including all documents and attachments) contain trade secret and confidential commercial information as well as personal information (especially in light of iRhythm's status as an IDTF and Covered Entity as defined under HIPAA) exempt from disclosure under the Freedom of Information Act and its implementing regulations. *See* 5 U.S.C. §§ 552(b)(4), (6), 21 C.F.R. Part 20, 42 C.F.R. Part 5. We request that you take all available steps to protect the important privacy interests served by these FOIA exemptions, and iRhythm requests that it be given an opportunity to perform the appropriate redactions in the event that the FDA receives a request to release this information and is considering its release. In the event that FDA shares any records with CMS or other HHS entity subject to 42 C.F.R. Part 5, pursuant to 45 C.F.R. § 5.42(a), we also request notification of any FOIA or similar requests received by such entity prior to its disclosure of any information contained herein.

Sincerely,

Quentin Blackford
President and Chief Executive Officer
**iRhythm Technologies, Inc.**

cc:    Patrick Murphy
       Chief Legal Counsel and EVP of Quality & Regulatory,
       Market Access & Government Affairs
       **iRhythm Technologies, Inc.**

       Mazi Kiani
       SVP, Quality & Regulatory
       **iRhythm Technologies, Inc.**

       Rebecca Jones McKnight
       Nancy Bonifant Halstead
       **Reed Smith LLP**

6

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

R6

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| DISCUSSION ITEM |
|:---:|

| Topic as Presented by Investigators in Discussion Item with Management |
|:---:|

The following reflects iRhythm's summary notes on the Discussion Item with Management during the inspection closing meeting, capturing the views presented by the FDA Investigators:

*The Zio AT labeling states that it's contraindicated for critical care patients or not intended for use for life-threatening arrhythmias, but for timely detection of clinically actionable arrhythmias. However, the Zio AT new customer site setup MD Notification forms state language such as inform "Immediately." Other marketing content refer to the Zio AT service as "Near real-time" monitoring.*

*These factors need to be accounted for in Risk Management and the severity rankings including foreseeable misuse. FDA investigator indicated to not solely rely on labeling statements.*

| Background |
|:---|

iRhythm is committed to enhancing clarity regarding its ***Zio AT System*** and mobile cardiovascular monitoring ("MCT") ***monitoring services*** performed by the Company's independent diagnostic testing facility ("IDTF"). Please refer to the cover letter to this 483 Response, which explains the commitment from the highest levels of the company to address these matters.

From the outset of the inspection, the FDA investigators were highly focused on the terms "near-real-time" and "immediate." We understand the focus and are glad to explain the origin of these terms relative to MCT monitoring services. We believe it is essential to appreciate the specific medical context in which physicians prescribe and utilize MCT monitoring services as a tool for informing their medical diagnoses in order to understand the Company's use of these terms.

Given the nature of MCT monitoring services and iRhythm's roles, the Company is well placed to understand the healthcare landscape in which its medical devices are used.

The American Medical Association ("AMA") organizes cardiovascular monitoring services into three (3) categories of Current Procedural Terminology ("CPT") codes: (a) Holter monitoring; (b) Event monitoring; and (c) MCT monitoring.[1]

---

[1] 1 AMA CPT Assistant, Vol. 21, Iss. 10 (October 2011); AMA, CPT 2022: Professional Edition (4th ed. 2022).

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

R7

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

---

**Background**

The AMA distinguishes these monitoring services based on when (1) the remote cardiac monitor captures ECG data[2] (continuously, upon patient activation, or auto-detection of potential arrhythmias), and (2) the remote cardiac monitoring system transmits that ECG data to a monitoring center for non-physician review (either at the conclusion of the patient monitoring period or during the patient monitoring period, which the AMA refers to as "attended surveillance"). These distinctions highlight the differences in diagnostic information (data reported to a physician so that they can render a medical diagnosis) that may be obtained from each type of monitor and monitoring method. Physicians accordingly elect a particular monitoring service based on their medical judgment of a patient's clinical condition and the type of diagnostic data that would be helpful for rendering a diagnosis.

Certain iRhythm content was tailored to conform with the precise language promulgated by the AMA and reimbursement guidelines specific to MCT monitoring services, which reasonably reflect industry understanding and expectations for the Zio AT System. Regarding ECG data capture, unlike Holter and Event Technologies, MCT technologies "***always*** have internal electrocardiogram (ECG) analysis algorithms designed to detect major arrhythmias,"[3] which the AMA describes in the MCT monitoring CPT codes as: "concurrent computerized ***real-time data analysis***."[4] According to the AMA, this terminology accurately describes the technical capabilities of the Zio AT System: a monitoring ***technology*** that captures beat-to-beat ECG data and uses algorithms to ***concurrently detect*** arrhythmias (for subsequent review). Importantly, "computerized real-time ***data analysis***" should not be conflated with "real-time ***monitoring***," which incorrectly suggests that Certified Cardiographic Technicians at an IDTF are concurrently and continuously monitoring the ECG data.[5] Interchanging these terms would not accurately describe MCT monitoring services, and actually contradict the fundamental purpose and medical context in which these technologies are indicated.

To be clear, MCT monitoring is ***not*** an emergency EKG service ***nor*** is it equivalent to inpatient telemetry monitoring. As the name suggests, MCT monitoring is an ambulatory, outpatient diagnostic medical technology, contraindicated for critical care patients (i.e., those who require concurrent monitoring because they are suspected of having life-threatening arrhythmias). The provision of "real-time data analysis" is consistent with a diagnostic tool used to capture data on ambulatory patients who, in the medical judgment of the prescribing physician, need not be confined for observation. iRhythm's references to "near-real-time" seek to qualify the Company's IDTF ***monitoring services –*** which are ***not*** equivalent to inpatient real-time monitoring – while still leveraging the AMA's terminology, which accurately describes the real-time computerized data analysis that occurs using the Zio AT System. MCT monitoring services are uniquely positioned to collect and analyze ECG data regarding non-life-threatening arrhythmias that may be asymptomatic or only transient in nature (and thereby infrequently observed in clinical settings).

---

[2] Electrocardiograms (ECG) measure electrical activity of the heart and capture data reflecting heart rhythms.

[3] AMA CPT Assistant, Vol. 21, Iss. 10 (October 2011) (emphasis added).

[4] [4] CPT Codes 93228 and 93229. *See* AMA, CPT 2022: Professional Edition (4th ed. 2022).

[5] *See, e.g.*, HHS, Agency for Healthcare Research and Quality, Remote Cardiac Monitoring Technology Assessment (Dec. 12, 2007), *available at* https://www.cms.gov/Medicare/Coverage/DeterminationProcess/downloads/id51ta.pdf (referencing "real-time continuous attended ***cardiac monitoring systems***" and "real-time continuous attended ***cardiac monitoring***" to describe MCT technologies and services, respectively).

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

R8

**ZIO** BY iRHYTHM

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

---

| Background |
| --- |

Similarly, the AMA uses the phrase "immediate notification criteria" to describe the physician-prescribed protocol used by Certified Cardiac Technicians at IDTFs to evaluate transmitted ECG data. According to the AMA, for Holter, Event, **and** MCT monitoring, "arrhythmia events meeting the '*immediate* notification criteria' are **promptly** brought to the interpreting [or on-call] physician's attention."[6] Notably, for Holter monitoring, "immediate notifications," cannot occur until **after** the patient monitoring period, when the IDTF reviews the ECG data. For Event and MCT monitoring, these notifications may occur **during** the patient monitoring period because Event and MCT monitoring require "attended surveillance" or "the ***immediate availability of a remote technician*** to respond to rhythm or device alert transmissions from a patient ... as they are generated and transmitted to the remote surveillance location or center."[7]

We also refer to "immediate notification criteria" in the physician notification protocol form (the "MDN") because this is the terminology used by the AMA in context of Holter, Event, and MCT monitoring services, like those supported by Zio XT and Zio AT. And while the industry may benefit from more precise language, the AMA's references to immediate availability of, or immediate notification by, IDTF technicians ***should not*** be interpreted to suggest a diagnostic medical procedure that requires emergency response capabilities. Instead, immediate availability of technicians distinguishes Holter monitoring from Event and MCT monitoring, which include ECG data transmission and review ***during*** the patient monitoring period, and immediate notifications are those that occur outside the standard reporting procedures (i.e., daily and/or end-of-service reports).

The above provides the context in which we assessed and continue to evaluate the Discussion Item, relative to:

- how terminology is expected to be understood by those making treatment decisions, placing related prescription orders;
- the potential for imprecision in our language to create misimpressions or misunderstandings;
- the potential for language appropriate in one context and for one audience to appear in another context and be viewed by another audience;
- types of misuse that could occur and whether they are reasonably foreseeable in the MCT medical context involving a prescription device and service that must be ordered by a physician.

As explained below, we are committed to appropriate alignment with understanding of the unique medical context, as well as information we may gain about the use of the product throughout the product lifecycle. Prior to the FDA inspection, iRhythm Technologies had already initiated several activities relevant to improving our promotional labeling review process, and we recognize this as an area where we have an opportunity to drive significant enhancement to align more closely with best practices.

---

[6] AMA CPT Assistant, Vol. 21, Iss. 10 (October 2011) (emphasis added).
[7] AMA CPT Assistant, Vol. 21, Iss. 10 (October 2011) (emphasis added).

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

R9

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| CAPA-2022-0019 and CAPA-2022-0026 |
| --- |
| This response is a result of the FDA inspection at iRhythm's Cypress Katella (iOC) site, which concluded with a closing meeting on August 12, 2022. This topic is related to an FDA discussion item with management during the closing meeting. The one discussion item had two topics associated with it: Language of customer-facing material and risk management process. This response will provide input to both, but the actions will be tracked under two separate CAPAs.<br><br>The intent of CAPA-2022-0019 is to focus on the investigation and actions associated with any potential misalignments of marketing and customer-facing content verbiage with the cleared product labeling and indications, while CAPA-2022-0026 will assess the risk management process and Zio AT risk management files.<br><br>Once the CAPA investigation and corrective action phase is complete and approved within the internal system, a copy of the CAPA files will be included for FDA review in our monthly status updates. |

| Containment |
| --- |
| The following immediate actions are being implemented by September 1, 2022:<br>1. No new Zio AT marketing or promotional content will be created or launched until the corrective actions below are complete.<br>2. The statements related to low/lower risk patients for Zio XT and high/higher risk patients for Zio AT will be removed from the company website, irhythmtech.com.<br>3. Language related to "near-real-time" monitoring associated with Zio AT on the website will be removed until new language and/or clarification of existing language can be assessed and determined as part of the ongoing CAPA plan.<br><br>Additional corrections and corrective actions are proposed below in this response. The above actions are meant to provide containment while these and other marketing and customer-facing content are assessed for alignment of verbiage. |

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

R10

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Risk Assessment |
| --- |

The scope of this response is associated with clarification and alignment of marketing content or customer-facing content such as the MD Notification customer site setup form and does not directly impact the medical device as far as safety and performance. This topic does not directly impact the device label or clinical user manuals, as the CAPA actions are intended to correct and prevent any misalignments to the cleared Zio AT device labeling (e.g., product labeling, user manuals, and indications for use). Labeling updates are discussed in the response to **Observations #1A** and **#1B**.

The removal of the specified content (Refer to containment section) from the website and cessation of new claims or marketing content creation for Zio AT (until the corrective actions are completed) contains and mitigates the potential risks associated with this topic until the corrections and corrective actions are completed.

CAPA-2022-0026 will assess the risk management process and Zio AT risk management files to ensure full compliance to ISO14971:2019 and appropriate capture of foreseeable misuse.

| Investigation |
| --- |

In order to aid this investigation, the Ishikawa root cause analysis method was utilized. The factors related to Man/workforce, Materials/Equipment/SW tools, Method/procedures, and Environment were considered.

❖ **Procedures:**
▪ QCD0010 (revisions prior to 22) "Approval Matrix" did not involve the appropriate subject matter expertise and/or the necessary stakeholders to adequately review content and claims. This revision of QCD0010 only called for Marketing, Sales, Regulatory, and Quality reviewers. Clinical, Legal, or Product Management were not part of the procedural pathway for content reviews and approvals in Master Control. QCD0010 was updated from rev. 21 to rev. 22 to include additional functional approvers in claims creation and approval including Clinical and Legal. This version (QCD0010, rev. 22) was released on August 10, 2022. This investigation indicated that the process would benefit from the addition of Product Management as well. This will be implemented as an additional action.

▪ SOP0099, rev. 01 "Marketing Claims Trace Matrix Management" was initially developed and released on July 05, 2022 outlining the current process for creation of promotional claims, including a new process with linkage to a claims matrix. Prior to July 2022, this process and specific details were not in place.

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

R11

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Investigation |
|---|

Prior to the release of SOP0099, SOP0013 "Promotional and Product Literature" was used. This legacy process did not have a stand-alone claims trace matrix to provide traceability and consistency between a claim, its validating evidence, alignment to the Zio AT Clinical Reference Manual or other product labeling.

SOP0099 was updated from rev. 01 to rev. 02 and released on August 11, 2022, which added the use of MasterControl as a tool (Refer to the SW tool section of this root cause investigation below). A review of SOP0099 indicates that the newly released process is robust but an action is necessary as part of this CAPA to ensure a review of past content is performed.

❖ **Workforce:** As mentioned above, QCD0010 "Approval Matrix" (rev. 21 and prior) did not call for the appropriate reviewers to provide the right amount of subject matter expertise or technical, regulatory, and clinical subject matter expertise to inform the voracity of product and promotional claims consistent with Zio AT labeling and the Clinical User Manual. The previous version of the Approval Matrix did not standardize Legal or Clinical reviews as part of reviewing and approving product and promotional claims. This investigation determined that there may also be further benefit in formalizing claims review within QCD0010, rev. 22 (latest released version) by the appropriate Product Manager responsible for the product line.

❖ **SW Tools:** Prior to the release of SOP0099, rev. 01, the process lacked sufficient traceability between the device promotional claim, supporting evidence, product labeling and manuals, and the content documents in which claims were used. The lack of such a tool was determined to be a contributing root cause. SOP0099, rev. 02 was released shortly after rev. 01 and implemented the use of a software tool via MasterControl to maintain the product claims trace matrix (introduced in SOP0099, rev. 01).   MasterControl is now used to implement and track the claims matrix but this change occurred very recently per SOP0099, rev. 02 implemented on August 11, 2022. Revision 02 of SOP0099 requires that a new claim be linked to MasterControl via a MKT-CLAIMS InfoCard. This change was generated on July 07, 2022 and released on August 11, 2022.

❖ The remainder of the Ishikawa root cause method items, such as equipment or environment, did not seem to contribute to the root causes of this CAPA based on the investigation.

Below are additional content and visuals to illustrate the changes to processes as described above.

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

R12

ZIO
BY iRHYTHM

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

## Investigation

### Figure 1

*Previous workflow for approving content, with relevant SOP0099 and associated Department Operating Procedures (DOPs)*



**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

R13

**ZIO** BY iRHYTHM

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

---

**Investigation**

**Figure 2**

*Updated workflow for approving content, that includes new Marketing Claims Trace Matrix*



In regards to the statements from the FDA Discussion Item in relation to the risk management process (covered under CAPA-2022-026), the current process as stated in SOP0010, rev. 07 "Risk Management process" at iRhythm identifies and assesses risk based on intended use and reasonably foreseeable misuse in accordance with ISO14971:2019. Reasonably foreseeable misuse is considered within the hazard analysis of the Zio AT Risk Management File (RMF).

Page 8 of 14

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**ZIO** BY iRHYTHM

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Investigation |
| --- |

Nevertheless, the risk management process at iRhythm has recently undergone a major enhancement effort targeted at improvements, including but not limited to, the methodology for risk identification, assessment, evaluation, and linkage to design and process requirements. These process changes and enhancements were initially released in July 2021 and later enhanced in September 2021. The process change has been implemented for all current development projects at iRhythm, in addition to the Risk Management Files for existing commercial products, Zio XT, Zio Monitor, and ZEUS SaMD.

The Risk Management File (RMF) for the Zio AT have not yet been fully updated to the new process at the time of the FDA investigation. This action was planned and will now be documented as part of the corrective actions of this Discussion Item response and within CAPA-2022-026.

CAPA-2022-026 has been initiated to track the update of the Zio AT RMF to the new process outlined in SOP0010, rev. 07. This update will consider any gaps in the files related to reasonable foreseeable misuse for the Zio AT. Risks related to reasonably foreseeable misuse will be documented in a Use FMEA (uFMEA) for every product listed. Please note that the current harm severity rankings for identified hazards and hazardous situations were assessed per consultation, review, and approval of iRhythm Medical Directors (Three MDs). Nevertheless, the assigned severities will be re-assessed per post-market findings and knowledge acquired from remediation and correction efforts related to **Observations #2** and **Observation #4**.

| Root Cause Summary |
| --- |

The main contributing factors were determined to be lack of clarity in procedures, including lack of claims matrix and adequate approval requirements for claims at the time of the creation of the content. Additionally, the lack of a software tool to maintain the claims matrix was determined to be a contributing factor as described in the investigation section of this response

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

R15

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| | ACTION PLAN Correction(s) | | | |
|---|---|---|---|---|
| **Item Number** | **Description** | **Due Date** | **Status** | **Attachment Reference** |
| DI-Act-01 | **Containment Steps:**<br><br>1. No new Zio AT marketing or promotional content will be created or launched until the corrective actions below are complete.<br><br>2. The statements related to low/lower risk patients for Zio XT and high/higher risk patients for Zio AT will be removed from the company website, irhythmtech.com.<br><br>3. Language related to "near real-time" monitoring associated with Zio AT on the website will be removed until new language and/or clarification of existing language can be assessed and determined as part of the ongoing CAPA plan.<br><br>MasterControl Packet #PK05348 indicating website update per update to MKT0414, IRT Website | 31 Aug 2022 | Complete | DI-Att01-PK05348<br><br>DI-Att02-LowLower-HighHigher-Redline<br><br>DI-Att03-LowLower-HighHigher-Final<br><br>DI-Att03-Realtime-Redline<br><br>DI-Att04-Realtime-Final |
| DI-Act-02 | **Marketing and Customer Facing Content Audit:**<br>Conduct content audit of all relevant Zio AT marketing and promotional material across audiences and channels to identify content units that contain the language in question.<br><br>The content audit was initiated on August 18, 2022, and is expected to complete on September 30, 2022, due the volume of such content. | 30 Sep 2022 | Pending | No Attachment |
| DI-Act-03 | **Based on the results of the content audit, update Zio AT marketing material deemed to be potentially misaligned with labeling:** | 05 Nov 2022 (Item a) | Pending | No Attachment |

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

R16

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| | ACTION PLAN<br>Correction(s) | | | |
|---|---|---|---|---|
| **Item Number** | **Description** | **Due Date** | **Status** | **Attachment Reference** |
| DI-Act-03 | a.  Update relevant claims and language in digital assets and channels (beyond initial website update that was indicated in the containment) – including social media content, digital display, customer emails, newsletter and other website content by November 5, 2022.<br><br>b.  Update MD Notification Form to further clarify the parameters around "Immediate" notification terminology by November 5, 2022.<br><br>c.  Update relevant claims and language in sales enablement and promotional collateral. Conduct a corresponding update of any associated internal-only training materials also by December 10, 2022.<br><br>d.  Update relevant print materials used to promote Zio AT where alignment of language is necessary (MasterControl update) by December 10, 2022.<br><br>e.  Update and/or edit physician testimonials, webinars, and related video content and educational content if deemed necessary by the content audit by January 1, 2023.<br><br>*Due Date Justification:  Due to the quantity of the content to be reviewed and updated and the time required to review and update material, in particular printed material, the due dates were assigned to be aggressive but achievable. iRhythm may need to obtain additional resources to fully execute these actions. The timelines proposed above account for this effort to the best of the CAPA owner's current ability.* | 05 Nov 2022<br>(Item b)<br><br>10 Dec 2022<br>(Items c, d)<br><br>31 Jan 2023<br>(Item e) | Pending | No Attachment |

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| ACTION PLAN Correction(s) | | | | |
|---|---|---|---|---|
| **Item Number** | **Description** | **Due Date** | **Status** | **Attachment Reference** |
| | *Additionally, the timelines prioritize the more visible items such as electronic media over lower visibility or risk content such as general educational material.* | | | |

| ACTION PLAN Corrective Action(s) | | | | |
|---|---|---|---|---|
| **Item Number** | **Description** | **Due Date** | **Status** | **Attachment Reference** |
| DI-Act-04 | A newly launched SOP0099, rev. 02, that governs the lifecycle management of claims (how to create, site, route and approve new claims.) The purpose of this document is to establish a standard procedure for the lifecycle management of marketing claims, regarding products and services of iRhythm Technologies, Inc. Marketing claims will go through this process before being used in market-facing materials (e.g., for marketing, sales, customer experience, customer service).<br><br>Utilization of claims approval process via MasterControl InfoCard, for records of approval and archiving of approved and draft claims, per the Marketing Claims Trace Matrix per SOP0099, rev. 02.<br><br>Provide training records for applicable employees impacted by the scope of SOP0099, rev. 02.<br><br>*Note: Although SOP0099, rev. 02 was updated separately from this CAPA, it is directly related to addressing some of the root causes of this investigation, thus it is tracked in this corrective action section.*<br><br>SOP0099, rev. 01 redlines and released rev. 02 | 11 Aug 2022 | Complete | DI-Att05-SOP0099-Rev-02-Claims-Matrix-Redline<br><br>DI-Att06-SOP0099-Rev-02-Claims-Matrix-Final<br><br>DI-Att07-SOP0099-Rev-02-Training-Status |

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| | ACTION PLAN | | | |
| | Corrective Action(s) | | | |
|---|---|---|---|---|
| Item Number | Description | Due Date | Status | Attachment Reference |
| | SOP0099, rev. 02 training status records from MasterControl | | | |
| DI-Act-05 | QCD0010 Approval Matrix – approval matrix was updated with the launch of the claims matrix per SOP0099, rev. 02 to include approval from Marketing, RA, Clinical, Legal, QA.<br><br>This action will further update to QCD0010 Approval Matrix from rev. 22 to 23 to include Product Management reviewer on relevant claim types. | 30 Sep 2022 | Pending | No Attachment |
| DI-Act-06 | Perform and document training for QCD0010, rev. 23 updates. | 15 Oct 2022 | Pending | No Attachment |
| DI-Act-07 | **Actions Associated with CAPA-2022-0026:**<br>Risk Management File Update:<br><br>a) Update Zio AT Risk Management Files to the new process per SOP0010, rev. 07.<br><br>b) Include reasonable foreseeable misuse in the Use FMEA.<br><br>c) Based on the remedial action performed for **Observations #2** and **#4** (CAPA 2022-0018 and CAPA 2022-0023 respectively), review the Zio AT risk management files (Hazard Analysis and FMEAs) to ensure that the severity of harm and probability of occurrence ratings are properly aligned with the MDR and complaint trends and data and account for foreseeable misuse.<br><br>*Due date Justification:  Date selected in order to allow time for remediation efforts to complete first and feed into this step for Risk Management updates.  Due date* | 17 Feb 2023 | Pending | No Attachment |

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

ZIO
BY iRHYTHM

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| ACTION PLAN | | | | |
|---|---|---|---|---|
| **Corrective Action(s)** | | | | |
| **Item Number** | **Description** | **Due Date** | **Status** | **Attachment Reference** |
| | *aligned with CAPA 2022-0018 and CAPA 2022-0023.* | | | |

| Verification of Effectiveness Plan | |
|---|---|
| DI-Act-08 | Three months after the completion of the last corrective action, an internal audit of the process shall occur by an outside auditor (regulatory consultant/contractor or consulting firm) with appropriate auditor certifications and expertise. This specific audit shall be scoped to the risk management process and marketing communications. The CAPA may be deemed effective if there are major category observations.<br><br>Sampling Plan: At a min. the Zio AT hazard analysis and FMEAs shall be covered. At least five (5) samples of marketing material from the website, print materials, social media, and educational materials shall be selected for audit (total of 20 samples). |

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

R20



699 8th Street
Suite 600
San Francisco, CA 94103

(415) 632-5700 Phone
(415) 632-5701 Fax

Customer Service
(888) 693-2401

iRhythmTech.com

*VIA Email Delivery to* ORADevices3FirmResponse@fda.hhs.gov

September 1, 2022

U.S. Food and Drug Administration
Office of Regulatory Affairs
Los Angeles District Office
19701 Fairchild
Irvine, CA 92612-2445

Dear U.S. Food and Drug Administration Office of Regulatory Affairs Representative:

iRhythm Technologies, Inc. ("iRhythm" or the "Company") is writing to provide a comprehensive response (our "Response") to the FDA Form 483, Inspectional Observations ("483") issued and Discussion Item raised in the July 25 to August 12, 2022 inspection of the Company's manufacturing facility at 6550 Katella Avenue, Cypress, California, by the U.S. Food and Drug Administration ("FDA").

We take the 483 Observations and Discussion Item as presented by the FDA Investigators (Janet Pulver and Alexandria Capuano) during their inspection very seriously. We have opened Corrective and Preventive Actions ("CAPAs") corresponding to each Observation and Discussion Item. We are strongly committed to improving and sustaining compliance.

This inspection has brought into sharper focus areas that I and other members of iRhythm's new leadership intend to prioritize consistent with our strong commitment to high-quality technologies and services. We also view this Response as an opportunity to provide important context regarding the Company, iRhythm's status as both a medical device manufacturer and an independent diagnostic testing facility ("IDTF"), and recent leadership changes.

### About iRhythm

iRhythm is a digital healthcare company serving physicians and their patients through services that include mobile cardiovascular telemetry ("MCT"). Like many manufacturers of MCT technologies, iRhythm supports physician and patient use of its technology – the Zio AT System – through the Company's Medicare-enrolled IDTF and Certified Cardiographic Technicians, who perform the technical monitoring services associated with a physician's order for MCT monitoring. iRhythm's dual status – that is, as both a medical device manufacturer and an IDTF – requires the Company to comply with federal and state laws, regulations, and standards that independently govern our manufacturing processes and clinical

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)

operations. Critically, iRhythm's clinical operations must be viewed through the lens of the laws and rules governing IDTFs.[1]

The inspection highlighted an opportunity for iRhythm to update the labeling of the Zio AT System to distinguish more clearly the *Zio AT System* (also referred to in our Response as the product or medical device) from MCT *monitoring services* (also referred to in our Response as the IDTF services). MCT monitoring services are diagnostic medical procedures that may use the Zio AT System and be performed by iRhythm's IDTF, when ordered by the patient's treating physician. For patients *not* suspected of having life-threatening arrhythmias, but who are suspected of having infrequent, difficult-to-detect, or asymptomatic arrhythmias, MCT technologies and services offer physicians an important clinical option that monitors ambulatory patients for an extended period of time and provides high-quality electrocardiogram ("ECG") recordings. MCT technologies and services work together to offer monitoring in a way that reduces interference with the patient's day-to-day activities and can facilitate patient compliance and the physician's diagnosis and treatment of cardiac rhythm disorders for his or her patients.

The product summary description that follows – as distinguished from the description of MCT monitoring services – previews our planned updates, which align with our enclosed Response, specifically on Observations 1A and 1B and the Discussion Item from our recent inspection.

| The Zio AT System | American Medical Association MCT Monitoring Services |
|---|---|
| The Zio AT connected continuous ambulatory monitoring system ("Zio AT System") is a prescription-only, ambulatory ECG monitoring system. It consists of three primary components: (1) the Zio AT *patch* ECG monitor that records the electrical signal from the heart continuously through the entire patient wear period, (2) the Zio AT wireless *gateway* that provides connectivity between the patch and the Zio ECG Utilization Software ("ZEUS") System, and (3) the *ZEUS System*, which supports the capture and analysis of ECG data, including specific arrhythmia events detected by the ZEUS algorithm.<br><br>The Zio AT patch is a wearable, single-use device applied to the patient's chest where it senses and records the patient's ECG data without requiring any patient interactions or manipulations. During manufacturing, | MCT monitoring services are diagnostic medical procedures that combine real-time *data analysis of ECG data* and *attended monitoring by IDTFs' Certified Cardiographic Technicians*, who review potential arrhythmia events, generate reports for medical review, and notify physicians of potential urgent or emergent arrhythmias according to the ordering physician's prescribed protocol. MCT monitoring services are outpatient procedures and are not appropriate for patients suspected of life-threatening arrhythmias or who require inpatient monitoring. MCT monitoring services may be appropriate for patients suspected of having infrequent, difficult-to-detect, or asymptomatic arrhythmias and for whom monitoring over an extended period is necessary to diagnose cardiac rhythm disorders. MCT monitoring services may use the Zio AT System and be performed by |

---

[1] See, e.g., 42 C.F.R. Sections 410.32 and 410.33.

2

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)

| The Zio AT System | American Medical Association MCT Monitoring Services |
|---|---|
| each patch is paired with a dedicated Zio AT wireless gateway, which is similar in size to a smart phone and may also be worn by a patient. When in proximity to the Zio AT patch and connected to cellular reception, the gateway wirelessly transmits the patient's ECG data to the ZEUS System for analysis by the arrhythmia detection algorithm. Additionally, patients may indicate symptomatic events by pressing a button on the patch, which marks the continuous ECG record for further review and analysis. | iRhythm's IDTF. iRhythm's **IDTF is a Medicare-enrolled provider**, and its Certified Cardiographic Technicians perform the technical monitoring services associated with MCT monitoring services. Upon receipt of a valid order from the treating physician, iRhythm's Certified Cardiographic Technicians review the output of the ECG Analysis Software to review potential arrhythmia events and generate reports that are posted to a secure online portal for medical review by the ordering physician. In accordance with the ordering physician's notification protocol (the "MDN"), the Certified Cardiographic Technicians may also contact the physician and/or patient directly in the event of detecting a potentially urgent or emergent arrhythmia. |

We also want to bring to your attention two important phrases that the American Medical Association ("AMA") uses to describe MCT monitoring services and that are relevant to our Response that follows: "real-time data analysis of ECG data" and "immediate notification criteria."

Regarding ECG data capture, unlike "Holter" and "Event" technologies, which support different cardiovascular monitoring services,[2] MCT technologies "**always** have internal electrocardiogram (ECG) analysis algorithms designed to detect major arrhythmias,"[3] which the AMA describes in the MCT monitoring CPT codes as: "concurrent computerized **real time data analysis**."[4] According to the AMA, this terminology accurately describes the technical capabilities of the Zio AT System: a monitoring **technology** that captures beat-to-beat ECG data and uses algorithms to **concurrently detect** arrhythmias (for subsequent review). Importantly, "real time **data analysis**" should not be conflated with "real time **monitoring**," which would incorrectly suggest that Certified Cardiographic Technicians at an IDTF are concurrently and continuously monitoring the ECG data. iRhythm intentionally uses the phrase "**near**-real time" to qualify the Company's IDTF monitoring services – which are not equivalent to inpatient or emergency real-time monitoring – while still leveraging the AMA's terminology,

---

[2] Holter monitoring is described by CPT codes 93224 – 93227 (for wear up to 48 hours); 93241 – 93244 (for wear more than 48 hours, up to 7 days); and 93245 – 93248 (for wear more than 7 days, up to 15 days). Event monitoring is described by CPT codes 93268 and 93270 – 93272. *See* AMA, CPT 2022: Professional Edition (4th ed. 2022).

[3] AMA CPT Assistant, Vol. 21, Iss. 10 (October 2011) (emphasis added).

[4] CPT Codes 93228 and 93229. *See* AMA, CPT 2022: Professional Edition (4th ed. 2022).

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

which accurately describes the timely computerized data analysis that occurs with use of the Zio AT System.[5]

The AMA also uses the phrase "immediate notification criteria" to describe the physician-prescribed protocol that triggers a Certified Cardiographic Technician to notify a treating or on-call physician outside the standard reporting framework (e.g., daily and/or end-of-monitoring reports). Notably, the AMA uses this phrase in the context of attended monitoring – that is, for Event and MCT monitoring, where technicians review ECG data *during* the patient wear period – *and* unattended monitoring – that is, for Holter monitoring, where a technician reviews ECG data *after* the patient wear period. For this reason, iRhythm incorporates this language into its own physician notification form (sometimes referred to as the MDN or the MD Notification form).

To be clear, MCT monitoring is neither an emergency service nor is it equivalent to inpatient telemetry monitoring. As the name suggests, MCT monitoring is an ambulatory, outpatient diagnostic medical procedure, contraindicated for critical care patients or patients suspected of having life-threatening arrhythmias. We are committed to enhancing our labeling and our IDTF's clinical operations materials consistent with the medical context in which our MCT technologies and services are offered. Our Response explains how we plan to act on this commitment, as we strive to meet our regulatory obligations.

### Our Commitment

We are fully committed to the Company's compliance with all FDA and CMS requirements, and to continuously improve the Company's FDA- and CMS-regulated functions, with additional enhancements to drive meaningful progress. On behalf of the Company's Board of Directors (the "Board") and the leadership team, I want to note the Company's commitment to Compliance with Quality, Regulatory and Legal Requirements has been enhanced with the following new additions to the Company's leadership team:

- The Board appointed me as the Company's President and Chief Executive Officer in October 2021. Following my appointment in 2021, the following changes to the Company's leadership team were implemented under my leadership:
  - Patrick Murphy was appointed as the Chief Legal Officer, and Mr. Murphy was subsequently appointed as the Executive Vice President of Quality and Regulatory, Market Access and Government Affairs, as well as the Data Privacy Officer. Prior to his role at iRhythm, Mr. Murphy previously served as Chief Legal Officer of Dexcom, Inc.
  - Dr. Mintu Turakhia was appointed as the Company's Chief Medical Officer and Chief Scientific Officer. Dr. Turakhia has been a

---

[5] The type of conflation that we're trying to avoid is demonstrated in, for example, the Remote Cardiac Monitoring Assessment report issued by HHS' Agency for Healthcare Research and Quality. *See, e.g.*, HHS, Agency for Healthcare Research and Quality, Remote Cardiac Monitoring Technology Assessment (Dec. 12, 2007), *available at* https://www.cms.gov/Medicare/Coverage/DeterminationProcess/downloads/id51ta.pdf (referencing "real-time continuous attended *cardiac monitoring systems*" and "real-time continuous attended *cardiac monitoring*" to describe MCT technologies and services, respectively).

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)

practicing clinical cardiac electrophysiologist for over 14 years and is a tenured Professor of Medicine at the Stanford University School of Medicine and the Founding Director of the Stanford Center for Digital Health. Prior to his role at iRhythm, Dr. Turakhia was Chief of Cardiac Electrophysiology at the VA Palo Alto Health Care System. In addition to performing invasive procedures such as catheter ablation and device implantation to treat heart rhythm disorders, Dr. Turakhia was director of the hospitals' ambulatory ECG monitoring program and developed all processes and protocols. In this role, he was also responsible for quality assurance and safety of the program. He has personally interpreted over 15,000 ambulatory ECG reports, including many from mobile cardiac telemetry devices. In his academic role, he led a large multidisciplinary research program in heart rhythm disorders and has over 250 peer-reviewed publications on real-world evidence, clinical trials, regulatory science, medical device regulation, and digital health.

o  Sumi Shrishrimal was appointed as the Company's Executive Vice President, Chief Risk Officer, with responsibility for the Internal Audit, Corporate Compliance, and Enterprise Risk functions, reporting directly to the Chairman of the Audit Committee of the Board. Prior to her role at iRhythm, Ms. Shrishrimal was the Senior Vice President, Chief Risk Officer at Dexcom, Inc.

In responding to these 483 Observations, the iRhythm team has taken a thoughtful and thorough approach and developed commitments that we believe will be meaningful and serve the physicians and patients who stand to benefit from MCT monitoring services.

iRhythm is committed to the completion of the outlined actions in a comprehensive and systemic manner. We will provide monthly updates to FDA beginning October 2022 to track our progress, and will continue to provide updates until the effectiveness checks we have described are successfully completed. In the intervening time, our monthly updates we will provide evidence of completed actions as they are executed.

**To facilitate mutual understanding, we respectfully request a meeting to discuss our Response. We also believe it would be beneficial and request including officers from the Center for Devices and Radiological Health's Division of Health Technology 2 A (Cardiac Electrophysiology, Diagnostics, and Monitoring Devices - External Heart Rhythm and Rate Devices) if you deem appropriate to facilitate your review of this Response and our corrective actions.**

In the event that FDA does not agree that the meeting we have requested would be helpful, we welcome feedback on our action plan through email or by phone, and would be glad to address any questions or concerns from the FDA.  The official contact for correspondence with the FDA, as indicated in our establishment registrations, remains Mazi Kiani, iRhythm's Senior Vice President of Quality and Regulatory. Please do not hesitate to contact Mr. Kiani at 949-413-2147 or via email at mazi.kiani@irhythmtech.com, and he will keep me informed.

5

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

Finally, iRhythm respectfully notes that its Response (including all documents and attachments) contain trade secret and confidential commercial information as well as personal information (especially in light of iRhythm's status as an IDTF and Covered Entity as defined under HIPAA) exempt from disclosure under the Freedom of Information Act and its implementing regulations. *See* 5 U.S.C. §§ 552(b)(4), (6), 21 C.F.R. Part 20, 42 C.F.R. Part 5. We request that you take all available steps to protect the important privacy interests served by these FOIA exemptions, and iRhythm requests that it be given an opportunity to perform the appropriate redactions in the event that the FDA receives a request to release this information and is considering its release. In the event that FDA shares any records with CMS or other HHS entity subject to 42 C.F.R. Part 5, pursuant to 45 C.F.R. § 5.42(a), we also request notification of any FOIA or similar requests received by such entity prior to its disclosure of any information contained herein.

Sincerely,

Quentin Blackford
President and Chief Executive Officer
**iRhythm Technologies, Inc.**

cc:     Patrick Murphy
        Chief Legal Counsel and EVP of Quality & Regulatory,
        Market Access & Government Affairs
        **iRhythm Technologies, Inc.**

        Mazi Kiani
        SVP, Quality & Regulatory
        **iRhythm Technologies, Inc.**

        Rebecca Jones McKnight
        Nancy Bonifant Halstead
        **Reed Smith LLP**

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

R26

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| OBSERVATION #1 |
|:---:|

### Organization and Rationale for this Response

In our response to each component of **Observation #1 (#1A, #1B, and #1C)** we will provide factual background and context on our product and services, and the specific technical and process-related matters involved.

In particular, the inspection highlighted an opportunity for iRhythm to update the labeling of the Zio AT System (defined below) to distinguish more clearly the *Zio AT System* from the mobile cardiovascular telemetry ("MCT") *monitoring service.* Our response below incorporates these updates as we've described our products and services in the Background section.

We understand that **Observations #1A, #1B,** and **#1C** were presented in the 483 Observations under the standardized FDA 483 citation language: **"***Procedures for corrective and preventive action have not been adequately established,"* from 21 C.F.R. § 820.100.

iRhythm recognizes the importance of establishing and maintaining procedures for Corrective and Preventive Actions (CAPAs) and has had an SOP in place on this topic since 2008. SOP0020 details our CAPA procedures.

This SOP includes language on potential CAPA sources. Much like FDA's CAPA regulations, the SOP gives a non-exhaustive list of potential sources of information that might trigger a CAPA.

The identification and investigation of potential CAPA sources is a fact-specific inquiry that is aimed to reveal potential product "nonconformance." Even where information is available, it may not necessarily relate to a product nonconformance that would be suitable for CAPA. When information is available, there is still a threshold underlying question about whether a given factual scenario presents a potential product "nonconformance" suitable to be addressed under a CAPA.

As discussed below, we do not believe that facts underlying **Observations #1A** and **#1B** previously necessitated CAPA initiation for "device limitations" as the Investigators have described them (suggesting they are product nonconformances).

We want to be responsive to the underlying concerns in a meaningful way and have opened CAPAs now correlating to FDA's Observations.

As detailed below, we will issue a field advisory letter to physicians ordering MCT monitoring services and using the Zio AT System with reminders and enhanced clarity on key information relevant to the topics underlying Observation #1A (maximum transmission limits) and Observation #1B (the patient registration process). For Observation #1C our response does address our CAPA procedures.

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

---

### Observation #1A as Stated in the 483 Observations

A) *Your firm manufactures the Zio AT Cardiac Monitoring System, intended for near real time cardiac event monitoring for high risk patients and "timely detection of clinically actionable arrhythmia during the wear period", with immediate notification to clinicians (MD Notification); however, Complaint COMP-2021-6388, dated 10/25/2021, reports "a patient death occurred while using the Zio AT, and the prescribing account was not notified [immediately] of the event [Ventricular Tachycardia and Ventricular Fibrillation before Pauses and Asystole] which caused the patient's death". In another complaint (COMP-2022-2077, received 04/27/2022), the customer reported a "patient wearing a Zio patch (irhythm) AT device and had 32 minutes of sustained ventricular tachycardia with loss of consciousness. Device designed to report daily events remotely and failed to report this life-threatening arrhythmia until 1 week later...".*

*Your investigation into the reported issue indicated the device had reached its upper limit of notifications that can be transmitted (maximum of 500 asymptomatic transmissions). Once the upper limit is reached, the device continues recording events but does not transmit events to the prescribing physician. Since June 2019, your firm has received 28 complaints reporting patient episodes deemed severe enough to warrant MD Notification that were not reported to the physicians during the wear period due to this maximum threshold for asymptomatic transmissions, for example:*

- *COMP-2019-2312, dated 12/19/2019 (Atrial Flutter)*
- *COMP-2020-0443, dated 01/31/2020 (Ventricular Tachycardia)*
- *COMP-2021-5397, dated 09/07/2021 (Complete Heart Block)*
- *COMP-2021-5586, dated 09/17/2021 (Pauses)*
- *COMP-2021-5672, dated 09/21/2021 (Atrial Fibrillation)*
- *COMP-2021-6385, dated 10/25/2021 (Complete Heart Block and Asystole leading to death)*
- *COMP-2021-6928, dated 11/18/2021 (Ventricular Tachycardia).*

*However, your firm has yet to implement corrective actions to address this device limitation that your firm has been aware of since 2019 that can contribute to failure to notify clinicians of severe patient episodes, including life-threatening arrhythmias such as Ventricular Fibrillation. Furthermore, when this 500 max transmission limit is reached, the device does not provide any indication to the patient that the device is not transmitting asymptomatic events; in fact, the labeling provided to patients ("Wearing your Zio" Manual) states that "The gateway wirelessly sends heart rhythm data recorded by your patch to iRhythm. iRhythm analyzes the data and provides a report to your doctor...When they are working normally, the patch and gateway do not flash or make noise."*

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

---

| **Background** |
| --- |

The Company is highly committed to understanding potential patient outcomes in the field of cardiac health. We are devoted to making the potential benefits of **mobile cardiovascular telemetry** accessible while maintaining an objective and balanced understanding of the patient population for which Zio AT System is indicated and likely to be prescribed by physicians.

### *The Zio AT Product*

The Zio AT connected continuous ambulatory monitoring system ("Zio AT System") is a prescription-only, ambulatory electrocardiogram (ECG) monitoring system. It consists of three primary components: (1) the Zio AT patch ECG monitor that records the electrical signal from the heart continuously through the entire patient wear period, (2) the Zio AT wireless gateway that provides connectivity between the patch and the Zio ECG Utilization Software ("ZEUS") System, and (3) the ZEUS System, which supports the capture and analysis of ECG data, including arrhythmia events detected by the ZEUS algorithm. The Zio AT patch is a wearable, single-use device applied to the patient's chest where it senses and records the patient's ECG data without requiring any patient interactions or manipulations. Each patch is paired with a Zio AT wireless gateway, which is similar in size to a smart phone and may also be worn by a patient. When in proximity to the Zio AT patch and connected to cellular reception, the gateway wirelessly transmits the patient's ECG data to the ZEUS System for analysis by the arrhythmia detection algorithm. Additionally, patients may indicate symptomatic events by pressing a button on the patch, which marks the continuous ECG record for further review and analysis.

Current product labeling includes:

- The Indications for Use, which state in part: "It is indicated for use on patients 18 years or older who may be asymptomatic or who may suffer from transient symptoms such as palpitations, shortness of breath, dizziness, light-headedness, pre-syncope, syncope, fatigue, or anxiety. The reports are provided for review by the intended user [the patient's physician] to render a diagnosis based on clinical judgment and experience.  It is not intended for use on critical care patients."
- Contraindications including:
    - "Do not use Zio AT for patients with symptomatic episodes where variations in cardiac performance could result in immediate danger to the patient or when real-time or in-patient monitoring should be prescribed."
    - "Do not use Zio AT for patients with known history of life-threatening arrhythmias."
- With respect to reporting, the Clinical Reference Manual warns: "This device is not intended for use in critical care patients because the reporting timeliness is not consistent with life-threatening arrhythmias such as ventricular fibrillation."

### *MCT (Mobile Cardiovascular Telemetry) Monitoring Services*

MCT monitoring services are diagnostic medical procedures that combine real-time data analysis of ECG data and attended monitoring by an Independent Diagnostic Testing Facility (IDTF) Certified Cardiographic Technicians, who review potential arrhythmia events, generate reports for medical

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

R29

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Background |
| --- |

review, and notify physicians of potential urgent or emergent arrhythmias according to the ordering physician's prescribed protocol. MCT monitoring services are outpatient procedures and are not appropriate for patients suspected of life-threatening arrhythmias or who require inpatient monitoring. MCT monitoring services may be appropriate for patients suspected of having infrequent, difficult-to-detect, or asymptomatic arrhythmias and for whom monitoring over an extended period is necessary to diagnose cardiac rhythm disorders. MCT monitoring services may use the Zio AT System and be performed by iRhythm's IDTF. iRhythm's IDTF is a Medicare-enrolled provider, and its Certified Cardiographic Technicians perform the technical monitoring services associated with MCT monitoring services. Upon receipt of a valid order, iRhythm's Certified Cardiac Technicians use the ECG Analysis Software of the ZEUS System to review potential arrhythmia events and generate reports that are posted to the web-portal for medical review by the ordering physician. In accordance with the ordering physician's notification protocol (the "MDN"), the Certified Cardiographic Technicians may also contact the physician and/or patient directly in the event of a potential urgent or emergent arrhythmia.

*Key Terminology*

We want to bring to your attention two important phrases that the American Medical Association ("AMA") uses to describe MCT monitoring services and that are relevant to our Response that follows: "real-time data analysis of ECG data" and "immediate notification criteria."

Regarding ECG data capture, unlike "Holter" and "Event" technologies, which support different cardiovascular monitoring services,[1] MCT technologies "***always*** have internal electrocardiogram (ECG) analysis algorithms designed to detect major arrhythmias,"[2] which the AMA describes in the MCT monitoring CPT codes as: "concurrent computerized ***real time data analysis***."[3] According to the AMA, this terminology accurately describes the technical capabilities of the Zio AT System: a monitoring ***technology*** that captures beat-to-beat ECG data and uses algorithms to ***concurrently detect*** arrhythmias (for subsequent review). Importantly, "real time ***data analysis***" should not be conflated with "real time ***monitoring***," which would incorrectly suggest that Certified Cardiographic Technicians at an IDTF are concurrently and continuously monitoring the ECG data. iRhythm intentionally uses the phrase "***near***-real time" to qualify the Company's IDTF monitoring services – which are not equivalent to inpatient or emergency real-time monitoring – while still leveraging the AMA's terminology, which accurately describes the timely computerized data analysis that occurs with use of the Zio AT System.[4]

---

[1] Holter monitoring is described by CPT codes 93224 – 93227 (for wear up to 48 hours); 93241 – 93244 (for wear more than 48 hours, up to 7 days); and 93245 – 93248 (for wear more than 7 days, up to 15 days). Event monitoring is described by CPT codes 93268 and 93270 – 93272. *See* AMA, CPT 2022: Professional Edition (4th ed. 2022).

[2] AMA CPT Assistant, Vol. 21, Iss. 10 (October 2011) (emphasis added).

[3] CPT Codes 93228 and 93229. *See* AMA, CPT 2022: Professional Edition (4th ed. 2022).

[4] The type of conflation that we're trying to avoid is demonstrated in, for example, the Remote Cardiac Monitoring Assessment report issued by HHS' Agency for Healthcare Research and Quality. *See, e.g.*, HHS, Agency for Healthcare Research and Quality, Remote Cardiac Monitoring Technology Assessment (Dec. 12, 2007), *available at* https://www.cms.gov/Medicare/Coverage/DeterminationProcess/downloads/id51ta.pdf (referencing "real-time continuous attended ***cardiac monitoring systems***" and "real-time continuous attended ***cardiac monitoring***" to describe MCT technologies and services, respectively).

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Background |
| --- |

The AMA also uses the phrase "immediate notification criteria" to describe the physician-prescribed protocol that triggers a Certified Cardiographic Technician to notify a treating or on-call physician outside the standard reporting framework (e.g., daily and/or end-of-monitoring reports). Notably, the AMA uses this phrase in the context of attended monitoring – that is, for Event and MCT monitoring, where technicians review ECG data *during* the patient wear period – *and* unattended monitoring – that is, for Holter monitoring, where a technician reviews ECG data *after* the patient wear period. For this reason, iRhythm incorporates this language into its own physician notification form (sometimes referred to as the MDN or the MD Notification form).

To be clear, MCT monitoring is neither an emergency service nor is it equivalent to inpatient telemetry monitoring. As the name suggests, MCT monitoring is an ambulatory, outpatient diagnostic medical procedure, contraindicated for critical care patients or patients suspected of having life-threatening arrhythmias. We are committed to enhancing our labeling and our IDTF's clinical operations materials consistent with the medical context in which our MCT technologies and services are offered. Our Response explains how we plan to act on this commitment, as we strive to meet our regulatory obligations.

***Types of Reports That Are Generated by the IDTF***

Following the wireless transmission and/or manual download of ECG data from the Zio AT patch at the end of the wear period, a CCT reviews data transmissions and prepares a report for the patient's Health Care Provider to utilize in rendering a diagnosis at the conclusion of the prescribed wear period based on their medical judgment of the data and clinical experience with the patient. There are various types of transmission reports, each containing different levels of data, including:

- Baseline Report - Initial ECG transmission report
- Daily Report - Summary of daily ECG transmissions, including any Routine or MDN Reports
- Transmission Report – Routine Report or MDN Report *(sent in addition to daily reports, where indicated)*
  - Routine Report – Patient-initiated or auto-detected event **not** meeting MDN criteria
  - MDN Report – Patient-initiated or auto-detected event triggering MDN criteria
- Final Report - Summary of ECG transmissions during patient wear period, including any Routine or MDN Reports

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

R31

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Background |
| --- |

*Reason for the Maximum Transmission Limit*

The Zio AT patch is purposefully designed to encourage high patient compliance (i.e., uninterrupted wear for the entire prescribed period). Uninterrupted wear is of great importance because it allows for the *continuous* capture of ambulatory ECG diagnostic data during the prescribed period, which is fundamental to the Zio AT System's indicated use: detection of arrhythmias amongst patients who may be *asymptomatic* or experiencing only *transient* symptoms. Patient compliance is a high priority, as it enables the inclusion of relevant diagnostic information (i.e., data regarding the detection of arrhythmias which may otherwise be clinically challenging to capture due to their asymptomatic or transient nature) in the final report to the prescribing HCP so that they may render a medical diagnosis for these patients.

To maximize patient compliance, the Zio AT patch is designed to increase the likelihood that it will be worn by a patient for the whole prescribed period, without need for removal. It centers patient comfort, convenience, and simplicity of use by utilizing a battery design that optimizes power consumption to last the entire 14-day wear period. Eliminating the need for recharging encourages uninterrupted wear of the patch, and necessarily places some limitations on the number of remote data transmissions that can occur *wirelessly* to the IDTF before the final report is generated. Importantly, a minimal number of patients are impacted by this design constraint; it is rare for these transmission limitations to be reached (2.5% for asymptomatic arrythmias and less than 1% for symptomatic arrhythmias).

The continuous monitoring period is a key feature that distinguishes the device from other MCT devices, which have interruptions in data capture that degrade the quality of data being reported. Because of limitations in power consumption and the effect that has on battery life, the device's maximum wireless transmission design is necessary to ensure patient compliance (i.e., uninterrupted wear) and continuous data capture during the wear period. Low patient wear compliance, including disruption of wear caused by the need for battery re-charging, affect the quality and value of the data provided by an MCT device, thereby undermining the clinical relevance of the monitoring data.

Wireless transmission limits are crucial for the Zio AT System to ensure that continuous ambulatory ECG data can be **captured throughout the entire prescribed wear period**. The lack of interruption in wear is what enables the generation of a comprehensive final report that includes a complete analysis of *all* AF (atrial fibrillation) that occurred during the prescribed period, whether critical or not. Consequently, the wireless transmission limit is an essential design constraint that is necessary to effectuate the intended use of the device and provide the greatest clinical benefit to the target population.

The battery-constrained maximum is reached after 500 asymptomatic and 100 symptomatic wireless transmissions are made. ***Continuous ambulatory ECG diagnostic data is still captured without interruption***, even after the wireless transmission maximums are reached, which is manually downloaded from the device when it is returned at the conclusion of the wear period and included in the final report. The prescribing HCP is kept abreast of each patient's wireless transmissions through the above-referenced reports, and receives a separate notification if a patient is nearing the maximum threshold for either asymptomatic or symptomatic wireless transmissions before the conclusion of the

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

---

| **Background** |
| --- |

wear period. Any time a wireless transmission threshold is approached, the HCP is notified and given the option to replace the patch for the remainder of the wear period. Based on their medical judgment and experience, the HCP may determine that the Zio AT System remains clinically appropriate for a patient who has exceeded the maximum wireless transmissions and allow that patient to complete the remainder of prescribed wear period without wireless transmissions. If the HCP does desire information from wireless transmissions before the final report is generated, an additional patch is provided.

***Communications Relating to Transmission Limit***

When a patch reaches either of the following threshold scenarios, a Zticket is auto generated for Customer Care to contact account within 1 day:

- Symptomatic Transmissions - 80/100 max transmissions
- Asymptomatic Transmissions - 425/500 max transmissions

Customer Care calls the HCP location to notify them their patient is *nearing* maximum transmissions. The HCP location decides whether to ask iRhythm to send an additional patch or continue with current patch. Sometimes the HCP will decide to continue with the existing patch (especially if, for example, at Day 12). If HCP location says declines the additional patch, Customer Care does not contact the patient unless the HCP location specifically asks Customer Care to do so. If the HCP location says "yes," Customer Care reaches out to the patient to let them know iRhythm is sending an additional patch.

When a patch *reaches* maximum transmission limit for either symptomatic or asymptomatic transmissions, iRhythm's system creates a Zticket. Customer Care will reach out to the HCP account again to advise them of maximum transmission. During this call, Customer Care offers to send an additional patch to the patient if needed.

Should the HCP confirm the need for an additional patch, a new device would be shipped to the patient via Overnight Mail (Monday – Friday). A replacement request received over the weekend would be processed Monday.

When the limit has been reached, the Daily Report will reflect that:



If the symptomatic transmission limit (100) is reached, this does not impact the asymptomatic transmission limit (once a patch hits the 100 symptomatic transmission maximum, the *asymptomatic* transmissions still continue as usual).

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

R33

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

---

| **Background** |
| --- |

Similarly, if the asymptomatic transmission limit (500) is reached, this will not impact the symptomatic transmission limit (once the patch hits the asymptomatic transmission maximum, the *symptomatic* transmissions still continue as usual).

**SPECIFIC COMPLAINTS**

***COMP-2021-6388***

We take all deaths very seriously. During the inspection, the FDA Investigator spent a significant amount of time focused on a Complaint in our files, COMP-2021-6388, which reflected an event that prompted a family member to call 911 at the time it occurred and nonetheless (despite receiving emergent medical care and intervention) resulted in the patient's death. We will refer to this as the "**October 2021 Patient**." The precise language cited in the Observation (especially with the addition of "[immediately]", which was not present in the text as it appears in our files lacks important context.

The wording as originally captured in our records is not that of a cardiologist or cardiac electrophysiologist but rather the recitation of internal initial reporter (referred to in the free-text entry shown as the "complainant") and other colleagues (none of them physicians) within our Company seeking to elevate the *observation* from the final report, and related internal processing.

As part of our assessment of **Observation #1A** we reviewed in detail the timeline of communications with the October 2021 Patient's ordering physician, which we reference below, and which is attached. Please note that 1A-Att01-COMP-2021-6388-Chronology includes a full chronology of events with specific dates and actions and communications related to this specific complaint (COMP-2021-6388).

A more detailed clinical discussion of the October 2021 Patient is provided in our response to **Observation #2**, which provides the perspective of our Chief Medical Officer. In Dr. Turakhia's judgement upon reviewing this history of notifications (especially those on October 8th, 11th, or 13th), information was available to the prescribing physician that escalation to critical or emergency care would be clinically appropriate at that time.

Relevant to this **Observation #1A**, we note that during the patient's monitoring period, the IDTF provided one baseline report, fourteen daily reports, five routine reports associated with asymptomatic events, and two routine reports associated with patient-triggered events. In this case, the records demonstrate that the IDTF had given the clinician information documenting the patient's episodes of VT that occurred during the monitoring period. The reporting of observations and findings to the clinician is part of the services provided by an IDTF. The obligation to review and treat is incumbent upon the treating clinician.

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

R34

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Background |
| --- |

*COMP-2022-2077*

Another event of which we and FDA were aware involved a patient for whom 7-day monitoring was ordered, with an indication of "unspecified atrial fibrillation" (an indication consistent with the Zio AT's cleared indication). This patient reportedly experienced a loss of consciousness. On that day, the patient experienced a 33-minute run of v-tach. iRhythm observed the v-tach run in its preparation of the final report. Preceding the v-tach run and reported loss of consciousness, iRhythm notified the HCP via telephone that the transmission limit was approaching and, after the asymptomatic transmission limit was reached, provided three reports reflecting "Auto Trigger OFF."

The patient's monitoring period lasted 3 full days before the transmission limit was reached. During that time, the IDTF provided one baseline report, three daily reports, one routine report including a patient-triggered event, and one MDN report capturing an auto-triggered event that met the Account's MDN criteria. Critically, the HCP was provided notifications of v-tach readings on each day (days 1-3). Once the auto trigger transmission limit was reached, the HCP was provided three daily reports indicating that that the limit had been reached. (Note that our IDTF report processes include a notation on the reports when the transmission limit has been reached in addition to phone calls made to the HCP location.



Please note that in connection with our remediation for **Observation #2**, this complaint (in which iRhythm learned the patient was admitted to the ER) will be reassessed for MDR reportability. Similarly, the other 26 complaints will be assessed for remediation under the criteria in **Observation #2**.

We analyzed the data contained in the reports transmitted to the IDTF to the ordering physician for the 28 patients with complaints noted during the inspection. These data reside in the IDTF transmission database, and reflect daily reports, transmission reports (including routine and MDN), and the ECG findings relating to them.

We note that in all 28 cases, preceding the 500-transmission limit being reached, the IDTF had posted reports to the HCPs with all clinical findings. Once the transmission limits had been reached, the HCPs continued to receive daily reports notifying them that a relevant transmission limit had been reached. In many of these cases, even prior to the transmission limit being reached, the HCPs had been provided with findings from the IDTF that were clinically significant, which the HCPs could have acted on during the patient's wear period. For example, 17 out of 28 cases included readings of v-tach, possible high grade AV block, and/or pause. These HCP notifications came in the form of daily reports, and where clinically indicated, additional transmission reports (both routine and MDN reports). As noted above, all complaints will be assessed for potential remediation as outlined in our response to **Observation #2**.

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Background |
| --- |
| Also as noted above, our IDTF report processes include a notation on the reports when the transmission limit has been reached, in addition to phone calls made to the HCP location. |

| CAPA-2022-0020 |
| --- |
| CAPA-2022-0020 was opened August 17, 2022 to address the deficiency identified in Observation #1A. The CAPA will focus on the impact of maximum transmission limits (1A) in clinical practice and typical use (user comprehension). |
| Once the CAPA investigations and corrective action phases are complete and approved within iRhythm's internal system, copies of the CAPA files will be included for FDA review in our monthly status updates. |

| Containment and Immediate Action |
| --- |
| We will issue a field advisory letter to physicians ordering MCT monitoring services and using the Zio AT System with reminders and enhanced clarity on key information relevant to the topics underlying **Observation #1A** (maximum transmission limits). This will parallel labeling updates. |
| 21 C.F.R. 806.10 reporting will be initiated. |

| Risk Assessment |
| --- |
| The Zio AT patch is designed to increase the likelihood that it will be worn by a patient for the whole prescribed period, without need for removal. It centers patient comfort, convenience, and simplicity of use by utilizing a battery design that optimizes power consumption to last the entire 14-day wear period. Eliminating the need for recharging encourages uninterrupted wear of the patch, and necessarily places some limitations on the number of remote data transmissions that can occur *wirelessly* to the IDTF before the final report is generated. Importantly, a minimal number of patients are impacted by this design constraint; it is extremely rare for these transmission limitations to be reached (2.5% for asymptomatic arrythmias and less than 1% for symptomatic arrhythmias). |
| Nevertheless, we conducted a risk assessment. |
| The hazardous situation of a max transmission design constraint potentially leads to a delayed notification of ECG findings until the final report is posted with all findings from the wear period. The exception would be the population where the physician responded to iRhythm Customer Care communication to send a second patch prior to the max limit being reached. |

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

R36

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Risk Assessment |
| --- |

A delayed notification is within the risk analysis for Zio AT as a Severity 3, per SOP0010 Risk Management. However, as mentioned in response to the **Discussion Item** addressed via CAPA-2022-0026, the severities of these hazardous situations will be reassessed based on findings and knowledge from remediation and correction activities related to CAPA-2022-0018 (**Observation #2**) and CAPA-2022-0023 (**Observation #4**). The probability of the occurrence of harm will be calculated and reassessed once the remediation activities for **Observation #2** and the total dataset is compiled for **Discussion Item** addressed via CAPA-2022-0026.

| Investigation |
| --- |

The Ishikawa root cause analysis method was utilized to aid in this investigation and to determine if there were multiple contributing factors to a root cause.

Product/Process/People were considered as inputs to potential causes.

**Product**

The Zio AT design is constrained due to finite battery capacity available on the patch's lithium coin cell batteries (qty 2) and the lithium-ion battery pack (qty 1) in the gateway. The rationale for this design constraint is described above in the Background.

To ensure the battery can last the wear period, the design entails setting maximum thresholds for transmissions (the asymptomatic transmissions are limited to 500; and the symptomatic transmissions are limited to 100).

**Figure 1**
*Maximum Transmission Concept*



Page 11 of 17

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Investigation |
| --- |

When the Zio AT limitation on *asymptomatic* transmissions is reached, further asymptomatic transmissions are not sent to the iRhythm server (cloud) for additional analysis (additional analysis of that information will occur after iRhythm receives the physical patch back from the patient).

Likewise, when the Zio AT limitation on *symptomatic* transmissions is reached, further symptomatic transmissions are not sent to the iRhythm server (cloud) for additional analysis (additional analysis of that information will occur after iRhythm receives the physical patch back from the patient).

The Intake process dismantles the patch and gateway at which time there would be the opportunity to discover any malfunctions.

**Labeling/IFU/Device Indicators**

In light of **Observation #1A** and preceding discussion with the FDA investigators we further analyzed current labeling:

- We assessed that the Zio AT's Instructions for Use [ALB0031 rev. 07] would benefit from an update to the Warning/Precaution information to inform healthcare providers of the maximum limits for symptomatic and asymptomatic transmissions. It does not explicitly state the potential health consequences if the healthcare facility does not respond to iRhythm's attempts to facilitate a solution.
- We assessed that the patient labeling "Wearing your Zio" [ALB0010 rev. 07], would benefit from an explicit statement there are maximum limits for symptomatic and asymptomatic transmissions.

An analysis of the Zio AT patch and gateway's LED indicators was conducted. The design intent is that the LED is a visual indicator that the ECG monitoring service has been interrupted (e.g., patch is further than 10 feet from the gateway) and the patient may remedy the situation. Within the labeling, instructions are provided to both the healthcare provider and the patient describing the meaning of each's LED visual cues. Troubleshooting tips are provided to remedy the situation. Excerpts from the respective labeling are shown below.

In the case of the transmission limit being reached (asymptomatic - 500, symptomatic – 100) there is no action required of the patient to remediate. Customer Care is aware when the device approaches the limit allowing for contact to the HCP location to determine appropriate steps (for example, providing an additional device for the remaining monitoring period), if any, based on clinical judgement of the requesting physician. In this situation the gateway is functioning as intended allowing for transfer of scheduled transmission (if configured), and if the limit is reached for only one category (asymptomatic or symptomatic) allowing for the transfer of transmissions of the other category.

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Investigation |
| --- |

We assessed that implementing a visual cue using the patch and gateway's LED would introduce an inconsistent behavior not aligned with the current implementation. The gateway continues to function as intended after a transmission limit is reached. There are no troubleshooting tips to offer the patient wearing the device. The IDTF is aware of when the limit is being approached/reached and has the responsibility to notify the healthcare provider. It is the ordering physician's responsibility to determine if they have adequate amount of ECG information or would like an additional patch shipped to the patient.

For this reason, we do not consider it to be in the best interest of the patient to add any visual cues when the maximum limits are met.

We also identified that HCP-facing materials would benefit from additional discussion on maximum transmission limits.

**Process**

The Ishikawa method directed the investigation into the Customer Care and IDTF process for when the design constraint is reached. These processes were evaluated.

A service ticket (Zticket) is automatically generated based on the monitoring algorithm's behavior of the patient registration activation timestamp and transmission count. This Zticket informs Customer Care that a patient is nearing one or both maximum thresholds.

Per the current procedure instructions, the Customer Care team is prompted to notify a patient's healthcare provider when either of the transmission limits are nearing the maximum (the asymptomatic transmissions are limited to 500; and the symptomatic transmissions are limited to 100). The healthcare providers are contacted at transmission count 425 of 500 maximum and at transmission count 80 of 100 maximum. Customer Care calls the healthcare provider to notify them their patient is reaching maximum transmissions. The healthcare provider decides whether to send a Zio AT replacement or continue with current device. Sometimes the healthcare provider will decide to keep current device, especially if it is nearing the end of the prescribed wear period (e.g., day 12 of 14). If the healthcare provider decides they want to continue with the ECG monitoring, Customer Care reaches out to the patient to inform them why they'll be receiving another Zio AT patch and gateway.

A second Zticket is automatically generated when one or both transmission types have reached the maximum threshold. Again, Customer Care contacts the patient's healthcare provider to inform them that the threshold has been reached and to offer an additional AT patch and gateway be sent to the patient.

An analysis was conducted using data from June 2019 to Aug 2022 to determine the percentage of patients who reached a maximum limit. The date range cited in the 483 observation is the same date range selected for this analysis.

Page 13 of 17

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Investigation |
| --- |

**Figure 2**

*Asymptomatic transmissions out of 500*



**Figure 3**

*Symptomatic transmissions out of 100*

The results of this analysis concluded that a minimal percentage of patients reach the maximum limits.

- For asymptomatic (auto-triggered) arrhythmias, less than 2.5% (2,955/120,182) reach the maximum limit.
- For symptomatic (patient-triggered) arrhythmias, less than 1% (1,046/120,182) reach the maximum limit.

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Investigation |
| --- |

**People**

The Ishikawa root cause methodology revealed a secondary root cause whereby the current procedures followed by Customer Care do not ensure the healthcare providers who receive the calls from Customer Care are aware of the consequences of a device reaching the maximum transmission limits and the impact to the patients.

| Root Cause Summary |
| --- |

In conclusion, the 500 maximum asymptomatic transmission limit is a known design constraint of the device which serves the purpose of conserving power consumption to allow for continuity of wear and data capture.

The primary question examined under this CAPA was what impact, if any, the transmission limit might have on clinical practice and typical use.

Although the Zio AT, as an ambulatory ECG monitor, is not intended to be an alert system, the conclusion of this assessment is there are in fact process and labeling improvements which can be made to increase HCP awareness and understanding of the purpose of the current process and the potential impact for the patient.

Additionally, although not identified as a primary root cause, but likely a contributing factor, are two additional items:

- Lack of robust sales training and customer educational materials
- Customer Care scripts used when informing accounts of the approaching and reached limits lack the consequence of missed MD Notifications once the limits are reached

Further analysis is in-progress for improving the ECG monitoring service behaviors and results will be communicated in monthly update reports to FDA. This analysis includes:

- Evaluation of auto-shipping an additional Zio AT patch and gateway when healthcare providers do not respond to the Customer Care outreach.

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| ACTION PLAN Correction(s) | | | | |
|---|---|---|---|---|
| **Item Number** | **Description** | **Due Date** | **Status** | **Attachment Reference** |
| Obs1A-Act-01 | **Customer Advisory Notification**<br><br>A field advisory notice will be issued to Zio AT customers informing them of the maximum transmission constraints, the process associated with informing them when a patient is nearing the maximum limit.<br><br>21 CFR Part 806 assessment and/or reporting will be performed. | 30 Sep 2022 | Pending | No Attachment |
| Obs1A-Act-02 | **Update Zio AT labeling**<br><br>The Zio AT IFU will be updated to alert HCP about the maximum transmission constraint for both asymptomatic (500) and symptomatic (100) and the impact of potentially missed transmissions | 30 Oct 2022 | Pending | No Attachment |
| Obs1A-Act-03 | **Remediation**<br><br>Remediation activities associated with our response to **Observation #2** and our response to **Observation #4** will provide additional insights relevant to any potential patient impact and risk management files. | Refer to<br><br>**Observation #2** and **#4** | Pending | No Attachment |

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

R42

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| ACTION PLAN<br>Corrective Action(s) | | | | |
|---|---|---|---|---|
| **Item Number** | **Description** | **Due Date** | **Status** | **Attachment Reference** |
| Obs1A-Act-04 | Evaluation of auto-shipping an additional Zio AT patch and gateway when healthcare providers do not respond to the Customer Care outreach | 30 Oct 2022 | Pending | No Attachment |
| Obs1A-Act-05 | Operating Procedure Updates & Training<br><br>Update Customer Care procedures scripts with verbiage containing a sense of urgency for a 2nd device approval prior to the maximum transmission limit being reached. | 20 Oct 2022 | Pending | No Attachment |
| Obs1A-Act-06 | Update threshold to auto generate Zticket for Customer Care to notify the account that patient is nearing maximum threshold and to determine whether the prescriber desires an additional device to be sent to the patient<br><br>Evaluate what that more proactive threshold should be (f*or example 70/100; 400/500)* | 02 Nov 2022 | Pending | No Attachment |
| Obs1A-Act-07 | Sales education/training on changes listed above | 02 Nov 2022 | Pending | No Attachment |
| Obs1A-Act-08 | Update HCP-location-facing materials used by Sales to onboard new AT Accounts before they sign the contract/MDN | 02 Nov 2022 | Pending | No Attachment |

| Verification of Effectiveness Plan | |
|---|---|
| Obs4-Act-09 | The verification of effectiveness for this CAPA will be provided in the monthly update to FDA as it requires additional time to assess the timing of the corrections with measurable criteria. |

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**ZIO** BY iRHYTHM

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| | | | | | |
|---|---|---|---|---|---|
| | | **COMP-2021-6388**<br>Male, Age 78<br>Patient of Ordering Physician at Healthcare Facility in Minnesota<br>Primary Indication for Wear: Syncope and Collapse<br>Prescribed Wear Period: 14 Days | | | |
| **Date / Time** | **Event / Communication** | **Description** | **Recipient** | **Source Material** | **Items of Clinical Note (Current)** |
| 10/04/21 - 10/05/21 | Customer Care Outreach phone call 10/4 at 10:32 AM; officially enrolled 10/4 at 12:24pm | Registration, Activation, AT welcome call and a separate insurance-related call following patient's enrollment | Ordering Physician and Patient | Complaint File; Z Ticket 08632682 | |
| 10/04/21 5:56 PM | Baseline Report<br><br>*Initial ECG transmission report* | Sinus was present with a min HR of 65 bpm, max HR of 93 bpm, and average HR of 80 bpm. Isolated VE(s) were present. Ventricular Bigeminy was present. | Ordering Physician | Consolidated File of Daily, Routine and Final Reports for Patient ID 162649 provided by iRhythm to FDA investigators on August 5, 2022 ("Consolidated File") | |
| 10/04/21 | Daily Report, Day 1<br><br>*Summary of daily ECG transmissions* | Refer to report (attached). | Ordering Physician | Consolidated File | |
| 10/05/21 | Daily Report, Day 2 | Refer to report (attached). | Ordering Physician | Consolidated File | |
| 10/06/21 | Daily Report, Day 3 | Refer to report (attached). | Ordering Physician | Consolidated File | |
| 10/07/21 | Daily Report, Day 4 | Refer to report (attached). | Ordering Physician | Consolidated File | |

Page 1 of 9

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

R44



**OBSERVATION #1 and #1A**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Date / Time | Event / Communication | Description | Recipient | Source Material | Items of Clinical Note (Current) |
|---|---|---|---|---|---|
| | | **<u>COMP-2021-6388</u>**<br>Male, Age 78<br>Patient of Ordering Physician at Healthcare Facility in Minnesota<br>Primary Indication for Wear: Syncope and Collapse<br>Prescribed Wear Period: 14 Days | | | |
| 10/08/21<br>7:26 PM | Routine Report<br><br>*Standard report/transmission <u>not</u> meeting MDN criteria* | Report to Ordering Physician detailed the following (emphasis added):<br>"Patient had a min HR of 97 bpm, max HR of 179 bpm, and avg HR of 105 bpm. Sinus was present with a min HR of 97 bpm, max HR of 113 bpm, and avg HR of 102 bpm. **1 run of Ventricular Tachycardia occurred lasting 10 beats with a max rate of 179 bpm (avg 161 bpm).** Isolated VE(s) and VE Couplet(s) were present. Ventricular Bigeminy was present." | Ordering Physician | Consolidated File | *The Ventricular Tachycardia (V-Tach) captured by this Routine Report did not meet the Healthcare Facility's MDN Criteria. Therefore, it did not result in an MDN Report. Additionally, this Healthcare Facility only wanted to be notified of V-Tach during business hours.* |
| 10/08/21<br>10:26 PM | Routine Report | Report to Ordering Physician detailed the following (emphasis added):<br>"Patient had a min HR of 94 bpm, max HR of 185 bpm, and avg HR of 116 bpm. Sinus was present with a min HR of 102 bpm, max HR of 119 bpm, and avg HR of 109 bpm. **1 run of Ventricular Tachycardia occurred lasting 8.5 secs with a max rate of 185 bpm (avg 152 bpm).** Isolated VE(s), VE Couplet(s), and VE Triplet(s) were present. Ventricular Bigeminy was present." | Ordering Physician | Consolidated File | *The Ventricular Tachycardia (V-Tach) captured by this Routine Report did not meet the Healthcare Facility's MDN Criteria. Therefore, it did not result in an MDN Report. Additionally, this Healthcare Facility only wanted to be notified of V-Tach during business hours.* |
| 10/08/21 | Daily Report, Day 5 | Refer to report (attached). | Ordering Physician | Consolidated File | |
| 10/09/21 | Daily Report, Day 6 | Refer to report (attached). | Ordering Physician | Consolidated File | |
| 10/10/21 | Daily Report, Day 7 | Refer to report (attached). | Ordering Physician | Consolidated File | |

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**



**OBSERVATION #1 and #1A**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| COMP-2021-6388 Male, Age 78 Patient of Ordering Physician at Healthcare Facility in Minnesota Primary Indication for Wear: Syncope and Collapse Prescribed Wear Period: 14 Days | | | | | |
|---|---|---|---|---|---|
| **Date / Time** | **Event / Communication** | **Description** | **Recipient** | **Source Material** | **Items of Clinical Note (Current)** |
| 10/11/21 7:26 PM | Routine Report | Report to Ordering Physician detailed the following (emphasis added): "Patient had a min HR of 70 bpm, max HR of 188 bpm, and avg HR of 79 bpm. Sinus was present with a min HR of 70 bpm, max HR of 81 bpm, and avg HR of 76 bpm. **1 run of Ventricular Tachycardia occurred lasting 10 beats with a max rate of 188 bpm (avg 171 bpm).** Isolated VE(s) and VE Couplet(s) were present." | Ordering Physician | Consolidated File | *The Ventricular Tachycardia (V-Tach) captured by this Routine Report did not meet the Healthcare Facility's MDN Criteria. Therefore, it did not result in an MDN Report. Additionally, this Healthcare Facility only wanted to be notified of V-Tach during business hours.* |
| 10/11/21 | Daily Report, Day 8 | Refer to report (attached). | Ordering Physician | Consolidated File | |
| 10/11/21 8:26 PM | Routine Report | Report to Ordering Physician detailed the following (emphasis added): "Patient had a min HR of 81 bpm, max HR of 203 bpm, and avg HR of 87 bpm. Sinus was present with a min HR of 81 bpm, max HR of 92 bpm, and avg HR of 86 bpm. **1 run of Ventricular Tachycardia occurred lasting 4 beats with a max rate of 203 bpm (avg 159 bpm).** Isolated VE(s) and VE Couplet(s) were present." | Ordering Physician | Consolidated File | *The Ventricular Tachycardia (V-Tach) captured by this Routine Report did not meet the Healthcare Facility's MDN Criteria. Therefore, it did not result in an MDN Report. Additionally, this Healthcare Facility only wanted to be notified of V-Tach during business hours.* |
| 10/12/21 | Daily Report, Day 9 | Refer to report (attached). | Ordering Physician | Consolidated File | |

Page 3 of 9

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**



**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| COMP-2021-6388 Male, Age 78 Patient of Ordering Physician at Healthcare Facility in Minnesota Primary Indication for Wear: Syncope and Collapse Prescribed Wear Period: 14 Days | | | | | |
|---|---|---|---|---|---|
| **Date / Time** | **Event / Communication** | **Description** | **Recipient** | **Source Material** | **Items of Clinical Note (Current)** |
| 10/13/21 4:56 PM | Routine Report | Report to Ordering Physician detailed the following (emphasis added): "**Patient had a min HR of 86 bpm, max HR of 240 bpm,** and avg HR of 96 bpm. Sinus was present with a min HR of 86 bpm, max HR of 119 bpm, and avg HR of 92 bpm. **1 run of Ventricular Tachycardia occurred lasting 9 beats with a max rate of 240 bpm (avg 201 bpm).** Isolated VE(s) and VE Couplet(s) were present. Ventricular Bigeminy was present." | Ordering Physician | Consolidated File | *The Ventricular Tachycardia (V-Tach) and max heart rate of 240 BPM captured by this Routine Report did not meet the Healthcare Facility's MDN Criteria. Therefore, it did not result in an MDN Report. Additionally, this Healthcare Facility only wanted to be notified of V-Tach during business hours.* |
| 10/13/21 | Daily Report, Day 10 | Refer to report (attached). | Ordering Physician | Consolidated File | |
| 10/14/21 1:25 PM | Routine Report, Including a Patient-Triggered Event | Report to Ordering Physician detailed the following after Patient-triggered a notification at 1:20 PM: "Sinus was present with a min HR of 52 bpm, max HR of 90 bpm, and avg HR of 74 bpm. Isolated VE(s) were present. Ventricular Bigeminy was present." | Ordering Physician | Consolidated File | This notification was sent in response to Patient pressing the button for a symptomatic transmission, which generated a report to the Ordering Physician within five (5) minutes. |

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

R47



**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| COMP-2021-6388 | | | | | |
|---|---|---|---|---|---|
| Male, Age 78 Patient of Ordering Physician at Healthcare Facility in Minnesota Primary Indication for Wear: Syncope and Collapse Prescribed Wear Period: 14 Days | | | | | |
| **Date / Time** | **Event / Communication** | **Description** | **Recipient** | **Source Material** | **Items of Clinical Note (Current)** |
| 10/14/21 8:50 AM | Email Communication to Account | Consistent with the Special Instructions for this Account, **Account** was notified via email that patient is nearing the 500-maximum asymptomatic transmission limit; that Patient is on day 10 of wear time and has 4 days remaining. Ordering Physician was informed that if the Patient presses the button on the patch to indicate they felt a symptom, that will still generate a transmission report the Ordering Physician will see. The Ordering Physician was informed that if they would like to have a replacement device for the conclusion of wear, one can be provided. | Ordering Physician | Complaint File; Z Ticket 08722264 | |
| 10/14/21 | Customer Care Outreach phone call | Consistent with the Special Instructions for this Account, Customer Care attempted to call Account to notify them that patient is nearing the 500-maximum asymptomatic transmission limit. | Ordering Physician | Complaint File; Z Ticket 08722264 | |
| 10/14/21 | Asymptomatic Transmission Limit Reached | At some point after Customer Care Outreach placed a telephone call to the Account, Patient reached max asymptomatic transmission limit. | | Complaint File | |
| 10/14/21 | Daily Report, Day 11 | Auto Trigger Notification Displayed on Daily Report: **AUTO TRIGGER OFF – LIMIT REACHED** | Ordering Physician | Consolidated File | Note that if patient had pressed button for a symptomatic transmission a report would have been generated. |

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**



**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

|  | | | | | |
|---|---|---|---|---|---|
| **COMP-2021-6388**<br>Male, Age 78<br>Patient of Ordering Physician at Healthcare Facility in Minnesota<br>Primary Indication for Wear: Syncope and Collapse<br>Prescribed Wear Period: 14 Days | | | | | |
| Date / Time | Event / Communication | Description | Recipient | Source Material | Items of Clinical Note (Current) |
| 10/15/21 1:36 PM | Routine Report Associated with Patient-Triggered Event | Report to Ordering Physician detailed the following after Patient triggered a notification at 1:31 PM: "Sinus was present with a min HR of 70 bpm, max HR of 99 bpm, and avg HR of 77 bpm. Isolated VE(s) were present." | Ordering Physician | Consolidated File | This notification was sent in response to the Patient pressing the button for a symptomatic transmission, which generated a report to the Ordering Physician within five (5) minutes. |
| 10/15/21 | Daily Report, Day 12 | Auto Trigger Notification Displayed on Daily Report: **AUTO TRIGGER OFF – LIMIT REACHED** | Ordering Physician | Consolidated File | |
| 10/16/21 | Daily Report, Day 13 | Auto Trigger Notification Displayed on Daily Report: **AUTO TRIGGER OFF – LIMIT REACHED** | Ordering Physician | Consolidated File | |
| 10/17/21 | Daily Report, Day 14 | Auto Trigger Notification Displayed on Daily Report: **AUTO TRIGGER OFF – LIMIT REACHED** | Ordering Physician | Consolidated File | |
| 10/17/21 10:23 PM | | **Based on Information Received by iRhythm [Later]** Patient went into VT and VF before pauses and asystole | Family Present | Complaint File; Z Ticket 08814486 | V-Tach and V-Fib |
| 10/17/21 | | **Based on Information Received by iRhythm [Later]** Family member of patient contacted 911. | Local Emergency Family Aware | Complaint File; Z Ticket 09814168 | |
| 10/17/21 | | **Based on Information Received by iRhythm [Later]** Patient received emergency medical care. EMS shocked the Patient several times but was unable to revive. | Family Aware | Complaint File; Z Ticket 08814486 | |
| 10/17/21 | Patient Passed | **Based on Information Received by iRhythm [Later]** | Family Aware | Complaint File; Z Ticket 08814486 | |
| 10/18/21 | Customer Care Outreach phone call | End of wear call attempt; enrollment ended 1:29 AM | Ordering Physician and Attempted to Patient | Complaint File; Z Ticket 08752302 | |

Page 6 of 9

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**



OBSERVATION #1 and #1A

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| | | | | | |
|---|---|---|---|---|---|
| **COMP-2021-6388**<br>Male, Age 78<br>Patient of Ordering Physician at Healthcare Facility in Minnesota<br>Primary Indication for Wear: Syncope and Collapse<br>Prescribed Wear Period: 14 Days | | | | | |
| **Date / Time** | **Event / Communication** | **Description** | **Recipient** | **Source Material** | **Items of Clinical Note (Current)** |
| 10/22/21 | | Device returned and uploaded | iRhythm | Complaint File | |
| 10/25/21 | | Date of Awareness for iRhythm – **Internally Identified Report** | Internal at iRhythm | Complaint File | |

Page 7 of 9

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

R50



OBSERVATION #1 and #1A

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| COMP-2021-6388 | | | | | |
|---|---|---|---|---|---|
| Male, Age 78<br>Patient of Ordering Physician at Healthcare Facility in Minnesota<br>Primary Indication for Wear: Syncope and Collapse<br>Prescribed Wear Period: 14 Days | | | | | |
| Date / Time | Event / Communication | Description | Recipient | Source Material | Items of Clinical Note (Current) |
| 10/25/21 | Final Report | Final Report included the following findings:<br>"Patient had a min HR of 21 bpm, max HR of 293 bpm, and avg HR of 68 bpm. Predominant underlying rhythm was Sinus Rhythm. 4 PVT/VF/TdP episodes occurred, the longest lasting 2321 secs. 245 Ventricular Tachycardia runs occurred, the run with the fastest interval lasting 5 mins 26 secs with a max rate of 293 bpm (avg 263 bpm); the run with the fastest interval was also the longest. 28 Supraventricular Tachycardia runs occurred, the run with the fastest interval lasting 47.8 secs with a max rate of 182 bpm (avg 132 bpm); the run with the fastest interval was also the longest. 60 Pauses occurred, the longest lasting 445.6 secs (0 bpm). Idioventricular Rhythm was present. Isolated SVEs were rare (<1.0%), SVE Couplets were rare (<1.0%), and SVE Triplets were rare (<1.0%). Isolated VEs were frequent (6.6%, 85878), VE Couplets were rare (<1.0%, 5360), and VE Triplets were rare (<1.0%, 529). Ventricular Bigeminy and Trigeminy were present. MD notification criteria for Ventricular Tachycardia, Ventricular Fibrillation, and Asystole met - notified Susan, RN on 25 Oct 2021 at 1:41 pm CT (JW). The account was unaware of the patient being deceased." | iRhythm | Final Report; Consolidated File | |

Page 8 of 9

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**



**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| | COMP-2021-6388 | | | | |
|---|---|---|---|---|---|
| | Male, Age 78 | | | | |
| | Patient of Ordering Physician at Healthcare Facility in Minnesota | | | | |
| | Primary Indication for Wear: Syncope and Collapse | | | | |
| | Prescribed Wear Period: 14 Days | | | | |
| **Date / Time** | **Event / Communication** | **Description** | **Recipient** | **Source Material** | **Items of Clinical Note (Current)** |
| 10/25/21 | Outreach to Ordering Physician re Final Report Findings | -At 11:41 AM, Company notified Account of 10/17/21 final report finding of VT and VF before pauses and asystole and suspected death.  Account responded that they were unaware that Patient had died. Registered Nurse (Susan) from Account's office responded that she will check in with Patient's family.<br>-Later that day, the same RN (Susan) confirmed with Patient's family member (niece) that Patient passed on 10/17/21. | Ordering Physician | Complaint File; Z Ticket 08814486 | |
| 10/25/21 | Complaint Assessment Initiated | Complaint assessment and investigation initiated. | Internal at iRhythm | Compliant File | |
| 10/26/21 | Ordering Physician Healthcare Facility | A different registered nurse (Francis) from Account's office spoke with the Patient's spouse and confirmed emergency response event on 10/17/21 | | Complaint File; Z Ticket 08814486 | |
| 10/27/21 | Follow Up by Clinical Operations | Clinical Operations reached the Account for a follow-up and informed of RN's communication with Patient's spouse on 10/26/21 | | Complaint File; Z Ticket 08814486 | |
| 11/17/21 | Investigation Completed | Investigation Report | Internal at iRhythm | Complaint File | |
| 11/17/21 | Decision on Potential MDR Reportability | Assessed at that time as not MDR reportable. | Internal at iRhythm | Complaint File | |

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

R52

iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)



699 8th Street
Suite 600
San Francisco, CA 94103

(415) 632-5700  Phone
(415) 632-5701  Fax

Customer Service
(888) 693-2401

iRhythmTech.com

*VIA Email Delivery to* ORADevices3FirmResponse@fda.hhs.gov

September 1, 2022

U.S. Food and Drug Administration
Office of Regulatory Affairs
Los Angeles District Office
19701 Fairchild
Irvine, CA 92612-2445

Dear U.S. Food and Drug Administration Office of Regulatory Affairs Representative:

iRhythm Technologies, Inc. ("iRhythm" or the "Company") is writing to provide a comprehensive response (our "Response") to the FDA Form 483, Inspectional Observations ("483") issued and Discussion Item raised in the July 25 to August 12, 2022 inspection of the Company's manufacturing facility at 6550 Katella Avenue, Cypress, California, by the U.S. Food and Drug Administration ("FDA").

We take the 483 Observations and Discussion Item as presented by the FDA Investigators (Janet Pulver and Alexandria Capuano) during their inspection very seriously. We have opened Corrective and Preventive Actions ("CAPAs") corresponding to each Observation and Discussion Item. We are strongly committed to improving and sustaining compliance.

This inspection has brought into sharper focus areas that I and other members of iRhythm's new leadership intend to prioritize consistent with our strong commitment to high-quality technologies and services. We also view this Response as an opportunity to provide important context regarding the Company, iRhythm's status as both a medical device manufacturer and an independent diagnostic testing facility ("IDTF"), and recent leadership changes.

### About iRhythm

iRhythm is a digital healthcare company serving physicians and their patients through services that include mobile cardiovascular telemetry ("MCT"). Like many manufacturers of MCT technologies, iRhythm supports physician and patient use of its technology – the Zio AT System – through the Company's Medicare-enrolled IDTF and Certified Cardiographic Technicians, who perform the technical monitoring services associated with a physician's order for MCT monitoring. iRhythm's dual status – that is, as both a medical device manufacturer and an IDTF – requires the Company to comply with federal and state laws, regulations, and standards that independently govern our manufacturing processes and clinical

1

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)

operations. Critically, iRhythm's clinical operations must be viewed through the lens of the laws and rules governing IDTFs.[1]

The inspection highlighted an opportunity for iRhythm to update the labeling of the Zio AT System to distinguish more clearly the *Zio AT System* (also referred to in our Response as the product or medical device) from MCT *monitoring services* (also referred to in our Response as the IDTF services). MCT monitoring services are diagnostic medical procedures that may use the Zio AT System and be performed by iRhythm's IDTF, when ordered by the patient's treating physician. For patients *not* suspected of having life-threatening arrhythmias, but who are suspected of having infrequent, difficult-to-detect, or asymptomatic arrhythmias, MCT technologies and services offer physicians an important clinical option that monitors ambulatory patients for an extended period of time and provides high-quality electrocardiogram ("ECG") recordings. MCT technologies and services work together to offer monitoring in a way that reduces interference with the patient's day-to-day activities and can facilitate patient compliance and the physician's diagnosis and treatment of cardiac rhythm disorders for his or her patients.

The product summary description that follows – as distinguished from the description of MCT monitoring services – previews our planned updates, which align with our enclosed Response, specifically on Observations 1A and 1B and the Discussion Item from our recent inspection.

| The Zio AT System | American Medical Association MCT Monitoring Services |
|---|---|
| The Zio AT connected continuous ambulatory monitoring system ("Zio AT System") is a prescription-only, ambulatory ECG monitoring system. It consists of three primary components: (1) the Zio AT *patch* ECG monitor that records the electrical signal from the heart continuously through the entire patient wear period, (2) the Zio AT wireless *gateway* that provides connectivity between the patch and the Zio ECG Utilization Software ("ZEUS") System, and (3) the *ZEUS System*, which supports the capture and analysis of ECG data, including specific arrhythmia events detected by the ZEUS algorithm.<br><br>The Zio AT patch is a wearable, single-use device applied to the patient's chest where it senses and records the patient's ECG data without requiring any patient interactions or manipulations. During manufacturing, | MCT monitoring services are diagnostic medical procedures that combine real-time *data analysis of ECG data* and *attended monitoring by IDTFs' Certified Cardiographic Technicians*, who review potential arrhythmia events, generate reports for medical review, and notify physicians of potential urgent or emergent arrhythmias according to the ordering physician's prescribed protocol. MCT monitoring services are outpatient procedures and are not appropriate for patients suspected of life-threatening arrhythmias or who require inpatient monitoring. MCT monitoring services may be appropriate for patients suspected of having infrequent, difficult-to-detect, or asymptomatic arrhythmias and for whom monitoring over an extended period is necessary to diagnose cardiac rhythm disorders. MCT monitoring services may use the Zio AT System and be performed by |

---

[1] See, e.g., 42 C.F.R. Sections 410.32 and 410.33.

2

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)

| The Zio AT System | American Medical Association MCT Monitoring Services |
|---|---|
| each patch is paired with a dedicated Zio AT wireless gateway, which is similar in size to a smart phone and may also be worn by a patient. When in proximity to the Zio AT patch and connected to cellular reception, the gateway wirelessly transmits the patient's ECG data to the ZEUS System for analysis by the arrhythmia detection algorithm.<br><br>Additionally, patients may indicate symptomatic events by pressing a button on the patch, which marks the continuous ECG record for further review and analysis. | iRhythm's IDTF. iRhythm's **IDTF is a Medicare-enrolled provider**, and its Certified Cardiographic Technicians perform the technical monitoring services associated with MCT monitoring services. Upon receipt of a valid order from the treating physician, iRhythm's Certified Cardiographic Technicians review the output of the ECG Analysis Software to review potential arrhythmia events and generate reports that are posted to a secure online portal for medical review by the ordering physician. In accordance with the ordering physician's notification protocol (the "MDN"), the Certified Cardiographic Technicians may also contact the physician and/or patient directly in the event of detecting a potentially urgent or emergent arrhythmia. |

We also want to bring to your attention two important phrases that the American Medical Association ("AMA") uses to describe MCT monitoring services and that are relevant to our Response that follows: "real-time data analysis of ECG data" and "immediate notification criteria."

Regarding ECG data capture, unlike "Holter" and "Event" technologies, which support different cardiovascular monitoring services,[2] MCT technologies "*always* have internal electrocardiogram (ECG) analysis algorithms designed to detect major arrhythmias,"[3] which the AMA describes in the MCT monitoring CPT codes as: "concurrent computerized *real time data analysis*."[4] According to the AMA, this terminology accurately describes the technical capabilities of the Zio AT System: a monitoring *technology* that captures beat-to-beat ECG data and uses algorithms to *concurrently detect* arrhythmias (for subsequent review). Importantly, "real time *data analysis*" should not be conflated with "real time *monitoring*," which would incorrectly suggest that Certified Cardiographic Technicians at an IDTF are concurrently and continuously monitoring the ECG data. iRhythm intentionally uses the phrase "*near*-real time" to qualify the Company's IDTF monitoring services – which are not equivalent to inpatient or emergency real-time monitoring – while still leveraging the AMA's terminology,

---

[2] Holter monitoring is described by CPT codes 93224 – 93227 (for wear up to 48 hours); 93241 – 93244 (for wear more than 48 hours, up to 7 days); and 93245 – 93248 (for wear more than 7 days, up to 15 days). Event monitoring is described by CPT codes 93268 and 93270 – 93272. *See* AMA, CPT 2022: Professional Edition (4th ed. 2022).

[3] AMA CPT Assistant, Vol. 21, Iss. 10 (October 2011) (emphasis added).

[4] CPT Codes 93228 and 93229. *See* AMA, CPT 2022: Professional Edition (4th ed. 2022).

3

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)

which accurately describes the timely computerized data analysis that occurs with use of the Zio AT System.[5]

The AMA also uses the phrase "immediate notification criteria" to describe the physician-prescribed protocol that triggers a Certified Cardiographic Technician to notify a treating or on-call physician outside the standard reporting framework (e.g., daily and/or end-of-monitoring reports). Notably, the AMA uses this phrase in the context of attended monitoring – that is, for Event and MCT monitoring, where technicians review ECG data *during* the patient wear period – *and* unattended monitoring – that is, for Holter monitoring, where a technician reviews ECG data *after* the patient wear period. For this reason, iRhythm incorporates this language into its own physician notification form (sometimes referred to as the MDN or the MD Notification form).

To be clear, MCT monitoring is neither an emergency service nor is it equivalent to inpatient telemetry monitoring. As the name suggests, MCT monitoring is an ambulatory, outpatient diagnostic medical procedure, contraindicated for critical care patients or patients suspected of having life-threatening arrhythmias. We are committed to enhancing our labeling and our IDTF's clinical operations materials consistent with the medical context in which our MCT technologies and services are offered. Our Response explains how we plan to act on this commitment, as we strive to meet our regulatory obligations.

### Our Commitment

We are fully committed to the Company's compliance with all FDA and CMS requirements, and to continuously improve the Company's FDA- and CMS-regulated functions, with additional enhancements to drive meaningful progress. On behalf of the Company's Board of Directors (the "Board") and the leadership team, I want to note the Company's commitment to Compliance with Quality, Regulatory and Legal Requirements has been enhanced with the following new additions to the Company's leadership team:

- The Board appointed me as the Company's President and Chief Executive Officer in October 2021. Following my appointment in 2021, the following changes to the Company's leadership team were implemented under my leadership:
  - Patrick Murphy was appointed as the Chief Legal Officer, and Mr. Murphy was subsequently appointed as the Executive Vice President of Quality and Regulatory, Market Access and Government Affairs, as well as the Data Privacy Officer. Prior to his role at iRhythm, Mr. Murphy previously served as Chief Legal Officer of Dexcom, Inc.
  - Dr. Mintu Turakhia was appointed as the Company's Chief Medical Officer and Chief Scientific Officer. Dr. Turakhia has been a

---

[5] The type of conflation that we're trying to avoid is demonstrated in, for example, the Remote Cardiac Monitoring Assessment report issued by HHS' Agency for Healthcare Research and Quality. *See, e.g.*, HHS, Agency for Healthcare Research and Quality, Remote Cardiac Monitoring Technology Assessment (Dec. 12, 2007), *available at* https://www.cms.gov/Medicare/Coverage/DeterminationProcess/downloads/id51ta.pdf (referencing "real-time continuous attended *cardiac monitoring systems*" and "real-time continuous attended *cardiac monitoring*" to describe MCT technologies and services, respectively).

4

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

practicing clinical cardiac electrophysiologist for over 14 years and is a tenured Professor of Medicine at the Stanford University School of Medicine and the Founding Director of the Stanford Center for Digital Health. Prior to his role at iRhythm, Dr. Turakhia was Chief of Cardiac Electrophysiology at the VA Palo Alto Health Care System. In addition to performing invasive procedures such as catheter ablation and device implantation to treat heart rhythm disorders, Dr. Turakhia was director of the hospitals' ambulatory ECG monitoring program and developed all processes and protocols. In this role, he was also responsible for quality assurance and safety of the program. He has personally interpreted over 15,000 ambulatory ECG reports, including many from mobile cardiac telemetry devices. In his academic role, he led a large multidisciplinary research program in heart rhythm disorders and has over 250 peer-reviewed publications on real-world evidence, clinical trials, regulatory science, medical device regulation, and digital health.

o   Sumi Shrishrimal was appointed as the Company's Executive Vice President, Chief Risk Officer, with responsibility for the Internal Audit, Corporate Compliance, and Enterprise Risk functions, reporting directly to the Chairman of the Audit Committee of the Board. Prior to her role at iRhythm, Ms. Shrishrimal was the Senior Vice President, Chief Risk Officer at Dexcom, Inc.

In responding to these 483 Observations, the iRhythm team has taken a thoughtful and thorough approach and developed commitments that we believe will be meaningful and serve the physicians and patients who stand to benefit from MCT monitoring services.

iRhythm is committed to the completion of the outlined actions in a comprehensive and systemic manner. We will provide monthly updates to FDA beginning October 2022 to track our progress, and will continue to provide updates until the effectiveness checks we have described are successfully completed. In the intervening time, our monthly updates we will provide evidence of completed actions as they are executed.

**To facilitate mutual understanding, we respectfully request a meeting to discuss our Response. We also believe it would be beneficial and request including officers from the Center for Devices and Radiological Health's Division of Health Technology 2 A (Cardiac Electrophysiology, Diagnostics, and Monitoring Devices - External Heart Rhythm and Rate Devices) if you deem appropriate to facilitate your review of this Response and our corrective actions.**

In the event that FDA does not agree that the meeting we have requested would be helpful, we welcome feedback on our action plan through email or by phone, and would be glad to address any questions or concerns from the FDA.  The official contact for correspondence with the FDA, as indicated in our establishment registrations, remains Mazi Kiani, iRhythm's Senior Vice President of Quality and Regulatory. Please do not hesitate to contact Mr. Kiani at 949-413-2147 or via email at mazi.kiani@irhythmtech.com, and he will keep me informed.

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)

Finally, iRhythm respectfully notes that its Response (including all documents and attachments) contain trade secret and confidential commercial information as well as personal information (especially in light of iRhythm's status as an IDTF and Covered Entity as defined under HIPAA) exempt from disclosure under the Freedom of Information Act and its implementing regulations. *See* 5 U.S.C. §§ 552(b)(4), (6), 21 C.F.R. Part 20, 42 C.F.R. Part 5. We request that you take all available steps to protect the important privacy interests served by these FOIA exemptions, and iRhythm requests that it be given an opportunity to perform the appropriate redactions in the event that the FDA receives a request to release this information and is considering its release. In the event that FDA shares any records with CMS or other HHS entity subject to 42 C.F.R. Part 5, pursuant to 45 C.F.R. § 5.42(a), we also request notification of any FOIA or similar requests received by such entity prior to its disclosure of any information contained herein.

Sincerely,

Quentin Blackford
President and Chief Executive Officer
**iRhythm Technologies, Inc.**

cc:    Patrick Murphy
       Chief Legal Counsel and EVP of Quality & Regulatory,
       Market Access & Government Affairs
       **iRhythm Technologies, Inc.**

       Mazi Kiani
       SVP, Quality & Regulatory
       **iRhythm Technologies, Inc.**

       Rebecca Jones McKnight
       Nancy Bonifant Halstead
       **Reed Smith LLP**

6

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

**ZIO** BY IRHYTHM

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| OBSERVATION #1B |
|---|

| Observation as Stated in 483 Observation |
|---|

*B) Your SalesForce database includes >8,400 "ZTickets" for Zio AT Cardiac Monitoring System (dated August 2017- August 2022) that have been applied to the patients, activated, and transmitted data; however, the data was held in your Zeus system and not reported to the clinicians due to incomplete patient registration. For example, 39 ZTickets reviewed during the inspection include MD Notification Criteria forms showing the clinicians had requested immediate notification of critical and life-threatening arrhythmias (e.g., ZTickets, #06507882, 06584455, and 06407598, dated 01/13/2021, 01/25/2021, and 12/29/2020, respectively (all still open)), but the patient data was not reported to the physician during wear due to the incomplete registration, and the records do not show follow up on the patient status to determine the impact of any delayed MD Notifications.*

*Your firm defined the minimum information that must be entered into the system to complete the patient registration to allow transmission of the data to clinicians. However, those registration requirements include fields that are not necessary to allow matching of data to a specific patient and have resulted in delayed reports to the clinicians. For example, ZTickets 10565351, 10736820, and 10987821 contain patient information but the reports to the clinicians were held pending billing or insurance information. One hundred seventy-one ZTickets are still open (as of 08/04/2022), 42 for more than 100 days. And 50 of the closed ZTickets were closed 100 days or more from the date opened.*

*Your firm has yet to implement corrective actions to address this device limitation that can contribute to failure to notify clinicians of severe patient episodes, including life-threatening arrhythmias such as Ventricular Fibrillation.*

| Background |
|---|

iRhythm takes this **Observation #1B** very seriously and we have opened a CAPA as detailed below. As introduced in our preliminary comments on **Observation #1**, we believe patient registration, which determines when IDTF services begin, is outside FDA's device CAPA framework. For IDTFs, the patient enrollment, which iRhythm refers to as registration, constitutes the treating physician's prescription order. We communicate with ordering physicians and their practices in a variety of ways about patients for whom registration data is outstanding.

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

R59

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Background |
| --- |

Nevertheless, we opened a CAPA correlating to **Observation #1B**. We focused our investigation under this CAPA on questions we believed would meaningfully inform our commitment to the quality of our products and services. In particular, the inspection highlighted an opportunity for iRhythm to update the labeling of the Zio AT System (defined below) to distinguish more clearly the *Zio AT System* from the mobile cardiovascular telemetry ("MCT") *monitoring service*. As detailed below, we will issue a field advisory letter notifying physicians that use the Zio AT System that patient registration of the Zio AT patch electrocardiogram ("ECG") monitor (the "Zio AT patch") is required *to submit an order for MCT monitoring services* and initiate monitoring by iRhythm's IDTF and Certified Cardiographic Technicians.

MCT monitoring services are diagnostic medical procedures that combine real-time data analysis of ECG data and attended monitoring by an IDTF's Certified Cardiographic Technicians, who review potential arrhythmia events, generate reports for medical review, and notify physicians of potential urgent or emergent arrhythmias according to the ordering physician's prescribed protocol. MCT monitoring services are outpatient procedures and are not appropriate for patients suspected of life-threatening arrhythmias or who require inpatient monitoring. MCT monitoring services may be appropriate for patients suspected of having infrequent, difficult-to-detect, or asymptomatic arrhythmias and for whom monitoring over an extended period is necessary to diagnose cardiac rhythm disorders.

MCT monitoring services may use the Zio AT System and be performed by iRhythm's IDTF. iRhythm's IDTF is a Medicare-enrolled provider, and its Certified Cardiographic Technicians perform the technical monitoring services associated with MCT monitoring services. Upon receipt of a valid order, iRhythm's Certified Cardiographic Technicians review potential arrhythmia events and generate reports that are posted to a secure online portal for medical review by the ordering physician. In accordance with the ordering physician's notification protocol (the "MDN"), the Certified Cardiographic Technicians may also contact the physician and/or patient directly in the event of a potential urgent or emergent arrhythmia.

iRhythm defined the minimum information to complete patient registration consistent with the laws and regulations governing diagnostic medical procedures performed by IDTFs. Federal law requires iRhythm's IDTF to obtain a valid order from a patient's treating physician prior to initiating the technical component of any diagnostic medical procedures: "All procedures performed by [an] IDTF must be *specifically ordered in writing* by the physician who is treating the [patient]."[1] The patient registration *is the physician's order* for MCT monitoring services performed by iRhythm's IDTF, which authorizes iRhythm's Certified Cardiographic Technicians to begin monitoring the patient. IDTFs are also prohibited from directly soliciting any patients and "*must accept only* those patients referred for diagnostic testing by an attending physician who is furnishing a consultation or treating a [patient] for a specific medical problem and who uses the results in the management of the [patient]'s specific medical problem."[2]

---

[1] *See* 42 C.F.R. § 410.33(d); *see also* 62 Fed. Reg. 59048, 59072 (Oct. 31, 1997) (IDTFs are *prohibited* from "add[ing] *any procedures* based on internal protocols *without written order from the treating physician*" (emphasis added)).
[2] 42 C.F.R. § 410.33(d), (g)(7) (emphasis added).

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**ZIO** BY iRHYTHM

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Background |
| --- |

Federal and state law also establish rigorous billing requirements and prohibit iRhythm from routinely waiving patient cost-sharing amounts.[3]  For example, as an IDTF regulated by the Centers for Medicare & Medicaid Services ("CMS"), iRhythm "must certify in its enrollment application" that it "[b]ills for all mobile diagnostic services that are furnished to a Medicare beneficiary."[4] Therefore, it is important to us that patients understand whether their health insurance will cover the diagnostic medical procedure ordered by their physician and have visibility in cases where they might incur significant out-of-pocket payment obligations for our services.

As part of the investigation described below, we evaluated the required fields to complete a patient registration and identified the legal, compliance, and/or operational rationale or purpose for each.

| CAPA-2022-0021 |
| --- |

CAPA-2022-0021 was opened August 17, 2022 to address the deficiency identified in Observation #1B. The CAPA will focus on the impact of  missed/delayed MD Notifications due to incomplete patient registrations (**Observation #1B**).

Once the CAPA investigations and corrective action phases are complete and approved within iRhythm's internal system, copies of the CAPA files will be included for FDA review in our monthly status updates.

| Containment |
| --- |

A field advisory letter will be issued notifying HCPs that use the Zio AT System that MCT monitoring services performed by the IDTF cannot begin until and unless the HCP completes patient registration, which serves as the prescription order.

| Risk Assessment |
| --- |

As described in this document, the patient registration (which serves as the prescription order) is required to begin the MCT monitoring service. Without complete registration, the device may not be

---

[3] *See, e.g.*, 42 C.F.R. § 410.33(g)(17); HHS, Office of Inspector General, Special Fraud Alert: Routine Waiver of Copayments or Deductibles Under Medicare Part B, 59 Fed. Reg. 65372, 65374 (Dec. 19, 1994); Medicare Claims Processing Manual, Chp. 23, Sec. 80.8.1 ("Physicians or suppliers who routinely waive the collection of deductible or coinsurance from a beneficiary constitute a violation of law pertaining to false claims and kickbacks. . . . Deductible and coinsurance amounts are taken into account (included in determining the reasonable charge for a service or item). In this regard, a billed amount that is not reasonably related to an expectation of payment is not considered the "actual" charge for the purpose of processing a claim or for the purpose of determining customary charges.").

[4] 42 C.F.R. § 410.33(g)(17).

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Risk Assessment |
| --- |

associated to a patient and iRhythm has not yet received a physician's order to initiate the diagnostic medical procedure. Nevertheless, we performed a risk assessment.

The hazardous situation of a delayed start of mobile telemetry monitoring is within the risk analysis for Zio AT as a Severity 2, per SOP0010 Risk Management. Another hazardous situation that can result is a delayed transmission/notification of ECG findings until the registration is completed, then all

pending transmissions are automatically pushed to the IDTF; the severity of this hazardous situation is ranked as 3 in the current Zio AT risk management file. However, as mentioned in response to the **Discussion Item** addressed via CAPA-2022-0026, the severities of these hazardous situations will be reassessed based on findings and knowledge from remediation and correction activities related to CAPA-2022-0018 (**Observation #2**) and CAPA-2022-0023 (**Observation #4**). The probability of the occurrence of harm will be calculated and reassessed once the remediation activities for **Observation #2** and the total dataset is compiled for the **Discussion Item** addressed via CAPA-2022-0026.

| Investigation |
| --- |

During the inspection, the Investigators raised concerns that incomplete patient registrations were causing delays in MD Notifications to the ordering physician, due to the Company's requirement of complete patient registrations. In order to identify a root cause, we implemented the Ishikawa root cause investigation method, evaluating Product, Process, and People as potential causes.

In connection with the CAPA we have now opened correlating to Observation #1B, we investigated the following questions, which we believe will meaningfully inform our commitment to the quality of our services and products:

- Question 1: Are the identified issues of patient registration related to a nonconformance in the Zio AT patch or Zio gateway?
- Question 2: What is the purpose of the patient registration and the necessity of each field required to complete the registration?
- Question 3: How well do we communicate the purpose and importance of the patient registration and the required fields?
- Question 4: What are our processes to resolve incomplete registrations and why did it appear, based on the inspection, that a number of Ztickets generated for active devices with incomplete registrations remained open for 100 days or more?

Page 4 of 19

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

---

| **Investigation** |
|---|

We analyze each of these questions in turn below.

**Question 1: Are the identified issues of patient registration related to a nonconformance in the Zio AT patch or Zio gateway?**

The Zio AT System is a prescription-only, ambulatory ECG monitoring system. It consists of three primary components: (1) the Zio AT patch ECG monitor that records the electrical signal from the heart continuously through the entire patient wear period, (2) the Zio gateway that provides connectivity

between the patch and the Zio ECG Utilization Software ("ZEUS") System, and (3) the ZEUS System, which supports the capture and analysis of ECG data, including arrhythmia events detected by the ZEUS algorithm. The Zio AT patch is a wearable, single-use device applied to the patient's chest where it senses and records the patient's ECG data without requiring any patient interactions or manipulations. Each patch is paired with a Zio gateway, which is similar in size to a smart phone and may also be worn by a patient. When in proximity to the Zio AT patch and connected to cellular

reception, the Zio gateway wirelessly transmits the patient's ECG data to the ZEUS System for analysis by the ZEUS algorithm. Additionally, patients may indicate symptomatic events by pressing a button on the patch, which marks the continuous ECG record for further review and analysis.

The Zio patch is **activated** when applied to a patient and paired with the Zio gateway. Activation initiates continuous real-time ECG data **analysis** and captures any patient-initiated alerts (or *symptomatic transmissions*); **registration** is required, however, to initiate **MCT monitoring services** by iRhythm's Certified Cardiographic Technicians using the ECG Analysis Software of the ZEUS System.

The physical device components of the Zio AT System – the Zio AT patch and the Zio gateway – are performing according to its intended use. There are no malfunctions identified on the product. Accordingly, we discuss below our assessment of the patient registration process and the people who implement the process.

**Question 2: What is the purpose of the patient registration and the necessity of each field required to complete the registration?**

The patient registration **is the physician's order** for MCT monitoring services performed by iRhythm's IDTF, which authorizes iRhythm's Certified Cardiographic Technicians to begin monitoring the patient. As described in the Background section above, all diagnostic medical procedures performed by iRhythm's IDTF (including MCT monitoring services) "must be **specifically ordered in writing** by the physician who is treating the [patient]." [5] Additionally, as a CMS-regulated IDTF, iRhythm "must certify in its [Medicare] enrollment application" that it "[b]ills for all mobile diagnostic services that are furnished to a Medicare beneficiary" and federal and state laws prohibit iRhythm from routinely waiving patient

---

[5] 42 C.F.R. 410.33(d).

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Investigation |
| --- |

cost-sharing amounts.[6] Therefore, it is important to us that patients understand whether their health insurance will cover our MCT monitoring services and have visibility in cases where they might incur significant out-of-pocket payment obligations for our services.

The Investigators raised concerns related to the number and type of fields required by the patient registration. As part of the investigation, we identified each field and evaluated the legal, compliance, and/or operational purpose for each. The table below identifies each of the fields required to complete the patient registration and identifies the legal, compliance, and/or operational purpose for each.

*Table 1*

*All required patient registration fields*

| Category | Field | Operational Purpose | Legal/Compliance Rationale |
| --- | --- | --- | --- |
| Patient Information | First Name | *Patient Identification* | *All procedures performed by an IDTF must be specifically ordered in writing. 42 C.F.R. § 410.33(d).* |
| | Last Name | *Patient Identification* | |
| | Sex | *Patient Identification* | |
| | Date of Birth | *Patient Identification* | |
| Zio Monitor Details | Monitor Serial Number | *Allows iRhythm to match device to patient* | *All procedures performed by an IDTF must be specifically ordered in writing. 42 C.F.R. § 410.33(d).* |
| | Monitor Type (Zio XT or Zio AT) | *Specifies diagnostic medical procedure* | *Monitor type identifies the specific diagnostic medical procedure:* |
| | Monitor Start Date | *Identifies date physician patched the patient* | *Zio XT = Holter monitoring services* |
| | Duration in Days | *Patient wear period – prescription length* | *Zio AT = MCT monitoring services* |
| Patient Contact | Primary Phone Number Address | *Contact patient if needed for clinical reasons, including shipping additional patches* | *Patient contact information required for IDTF to perform its clinical operations, including physician-prescribed patient follow up. See DOP0054 (Mobile Cardiac Telemetry) MD Notification Process.* |
| Emergency Contact | Name Phone Number | *Contact in case of emergencies* | *Patient contact information required for IDTF to perform its clinical operations, including physician-prescribed patient follow up. See DOP0053 MCT High Risk Arrhythmias Response Plan.* |

---

[6] 42 C.F.R. 410.33(g)(17).

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| **Investigation** | | | |
|---|---|---|---|
| **Category** | **Field** | **Operational Purpose** | **Legal/Compliance Rationale** |
| Provider | Prescribing Provider | *Identified on reports and MD Notifications for reference* | *All procedures performed by an IDTF must be specifically ordered in writing by the patient's treating physician – that is, the physician who is furnishing a consultation or treating a patient for a specific medical problem and who uses the results in the management of the patient's specific medical problem. 42 C.F.R. §§ 410.33(d), (g)(7).* |
| Prescription | Primary Indication for Zio Monitor | *Included on reports for reference* | *All procedures performed by an IDTF must be specifically ordered in writing. 42 C.F.R. § 410.33(d).* |
| | Name of Hook-Up RN/Technician | *For data analysis and trending for re-education of Zio AT patch application process if needed* | *The order must specify the diagnosis or other basis for the testing. 42 C.F.R. § 410.33(d).* |
| Clinical Considerations | The patient has: No Pacemaker or ICD (Implantable Cardioverter Defibrillator) Pacemaker ICD Both Pacemaker and ICD | *Required for clinical observations of ECG data by Certified Cardiographic Technicians* | *All procedures performed by an IDTF must be specifically ordered in writing. 42 C.F.R. § 410.33(d).* *The order must specify the diagnosis or other basis for the testing. 42 C.F.R. § 410.33(d).* |
| Billing | Billing Method* Insurance Company** Insured's ID/Policy Number** Billing Indication 1 Is the Patient the insurance holder? Yes/No *Direct Bill Only ** Depends on Billing Method Selected | *Billing and insurance information are necessary to initiate benefits checks and calculation of expected out-of-pocket expenses for patients.* | *iRhythm must certify in its enrollment application to CMS that it "[b]ills for all mobile diagnostic services that are furnished to a Medicare beneficiary." 42 C.F.R. § 410.33(g)(17).* *Federal and state laws prohibit iRhythm from routinely waiving patient cost-sharing amounts. See, e.g., HHS, Office of Inspector General, Special Fraud Alert: Routine Waiver of Copayments or Deductibles Under Medicare Part B, 59 Fed. Reg. 65372, 65374 (Dec. 19, 1994).* |

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

---

| **Investigation** |
| --- |

The patient registration and the specific fields/data required by the registration satisfies legal obligations applicable to iRhythm's IDTF and allow iRhythm to perform the MCT monitoring services as ordered by the physician.

**Question 3: How well do we communicate the purpose and importance of the patient registration and the required fields?**

The following paragraphs describe the Zio AT patch activation and patient registration processes.

Physicians and their clinical staff apply the Zio AT patch to a patient and pair the patch to the Zio gateway during the patient visit at the physician's office. Once the Zio AT patch is applied, the physician or patient presses and releases the button in the center of the Zio AT patch. The Zio AT patch will flash green and, once the flashing completes, the Zio patch begins recording the patient's ECG rhythm. The Zio gateway flashes orange and then green, and once the flashing is complete, the Zio gateway has successfully connected to the Zio AT patch. This completes the Zio AT patch "activation" process.

Separate from the Zio AT patch "activation," the physician must complete the patient registration, which is the physician's order for MCT monitoring services for that patient and associates the patient with the activated Zio AT patch's serial number. In other words, the process of associating a specific Zio AT patch with the patient is a manual process that requires the correct Zio AT patch serial number of the activated patch to be submitted with the patient registration. Although providers (including practice staff that may perform the administrative steps of patient registration) may complete the patient registration during the patient visit, some providers or staff may not register patients until after the patient visit has concluded or later, such as at the end of the business day.

There are two methods for registering patients and ordering MCT monitoring services performed by iRhythm's IDTF:

- ***Web Portal Registration (ZioSuite.com)***

The healthcare provider may register the patient via ZioSuite.com (iRhythm's secure registration web portal) and order MCT monitoring services upon completing the patient registration.

For registration in the web portal, a single page is presented for clinical staff to fill out both required and optional fields, as detailed in **Table 1**, above. Once all required fields have been populated, the user submits the patient registration. If one or more required fields is not populated, the web portal prompts the user to complete the missing information before submitting the request. Doing so allows for immediate awareness and resolution by the clinical staff. For the web-portal, given that there are field checks performed prior to submission, iRhythm is unaware of the reasons (workflow and/or lack of access to requested information) and prevalence for each for unregistered devices. Stated differently, iRhythm does not receive partial registration data; iRhythm only receives completed registrations via the web-portal.

- ***Integrated EHR Registration***

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Investigation |
| --- |

Alternatively, the account may establish an integration between their Electronic Health Record ("EHR") system and ZioSuite, which maps the standardized required fields in ZioSuite to the EHR system's user interface and allows the provider to submit registrations through their own EHR system.

For registration via the customer's EHR system, requests are submitted by the customer system to the Zio Service server via an application programming interface ("API"). Importantly, because these registrations are completed through the customer's EHR system, this method does not offer the same required-field prompts as the ZioSuite registration portal. To address this issue, Customer Care follows a modified process to obtain missing information and complete the registration.

We summarize below our assessment of iRhythm's current communication, through labeling, provider onboarding, the registration portal, and the account dashboard, of the requirement and importance of a complete patient registration for the MCT monitoring service to begin.

*Labeling*

iRhythm provides healthcare providers with information on patient registration, and the importance of completing the patient registration, in its labeling and other distributed materials.

- **Zio AT Clinical Reference Manual**
  - The **Zio AT Clinical Reference Manual** includes the precaution, "Registration errors may result in limited functionality or erroneous ECG reporting. Utmost caution should be applied to ensure that patient registration is accurate and complete."

- **Zio AT Important Information**
  - The **Zio AT Important Information** documents includes the precaution, "Registration errors may result in limited functionality or erroneous ECG reporting. Utmost caution should be applied to ensure that patient registration is accurate and complete."

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Investigation |
| --- |

### *Registration Portal*

During the patient registration process in the web portal, if a required field has been left blank, the portal informs the user of missing information.



**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

R68

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Investigation |
|---|

### *Account Dashboard*

The dashboard in the web portal displays a list of unregistered devices for each healthcare facility.

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

R69

**ZIO**
BY iRHYTHM

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Investigation |
| --- |

### Zio Action Report

Within the ZAR (Zio action report), a twice a week automated email sent to specified individuals within an account, unregistered Zio AT patches are listed. Unregistered patches serial numbers are directly linked to the page in the web-portal to complete the registration.

**ZioSuite**

**Zio Action Report for [LOCATION]**

Dear _____.

The following are Zio monitors that require your attention for the following locations in account {Account name}: {Location Names}. iRhythm Customer Care team is available 24/7 to assist you with any of these instances, please reach out at 1-888-693-2401 or email us at support@irhythmtech.com with any questions or concerns.

**1. Unregistered Monitors**

| LOCATION | SERIAL NUMBER |
| --- | --- |
| Stanford EKG | A123456789 |
| Clakmas Clinic | A123456789 |

**2. Pending Return Monitors**

| LOCATION | SERIAL NUMBER | PRESCRIBER |
| --- | --- | --- |
| Stanford EKG | A123456789 | Michael Olowakandi |
| Stanford EKG | A123456789 | John Smith |

**3. Data Not Available Monitors**

| LOCATION | SERIAL NUMBER | PRESCRIBER |
| --- | --- | --- |
| Stanford EKG | A123456789 | John Smith |

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

## Investigation

Following this evaluation of Question 3, we have concluded that, although we emphasize in our labeling, as well as our registration portal and account dashboard, the requirement and importance of completing the patient registration for MCT monitoring services to begin, this Inspection and our internal investigation have highlighted an opportunity for iRhythm to update the labeling of the Zio AT System to distinguish more clearly the *Zio AT System* from *the MCT monitoring service*. We noted elsewhere in this response, we will issue a field advisory letter notifying physicians that use the Zio AT System that patient registration of the Zio AT patch is required *to submit an order for MCT monitoring services* and initiate monitoring by iRhythm's IDTF and Certified Cardiographic Technicians.

**Question 4: What are our processes to resolve incomplete registrations and why did it appear, based on the inspection, that a number of Ztickets generated for active devices with incomplete registrations remained open for 100 days or more?**

When a Zio AT patch has been activated, but does not have an associated complete patient registration, an automated Zticket is generated and assigned to Customer Care for customer follow-up. These Ztickets are managed by a dedicated Customer Care team for iRhythm's MCT monitoring services, who implement the following communications process:

- Customer Care contacts the account via phone or email within the first 24 hours following the creation of the Zticket ("Day 1").
  - Incomplete registration notifications are, by default, communicated to the account via telephone. However, accounts are permitted to provide "special instructions" where an alternative method is requested for incomplete registration notifications, for example, by email.



**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Investigation |
| --- |

- If Customer Care is unsuccessful in contacting the account on Day 1, or the registration has not been completed, Customer Care contacts the account two more times on Day 2 and Day 3. A sample script, delivered to the account via phone or email in accordance with the above instructions on Days 1 through 3, is below:

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Investigation |
| --- |

**SAMPLE EMAIL FOR NON EHR ACCOUNTS**

Hello,

Account: Pulse Heart- Downtown

We are needing the following Zio AT device to be registered. It is actively transmitting, please register this device as soon as possible. Please be advised our Clinical Team is unable to follow up on any urgent transmissions until the device gets registered.

Asset SN:A224821520

Activation Date: 08/23/2022 01:43 PM

If you have any questions, please feel free to contact us at 1-888-693-2401 and reference:11364528

Thank you,

iRhythm Customer Care

- When incomplete registrations are EHR-related, Customer Care first tries to resolve the Zticket without contacting the healthcare provider. If outreach is required, same process is followed as above. If an EHR order is on hold due to billing/insurance data missing or inaccurate, the ticket is transferred to the Revenue Cycle Management claims integrity team, who work on outreach/resolution within 48 hours.
- Once the patient registration associated with the open Zticket is complete, the Zticket is manually closed.
- Specific to accounts that register though an integrated EHR system, prior to Step 1 above, Customer Care attempts to resolve the open Zticket before contacting the account, to evaluate and resolve any issues related to the software or transmission of registration data that may be causing an incomplete registration.

The Investigators raised concerns related to the open Ztickets related to incomplete registrations and the length of time certain Ztickets remained open. As part of our investigation, we evaluated how well we implement our processes to resolve incomplete registrations and considered specifically the open Ztickets identified by the Investigators.

- Of the three Ztickets identified specifically in the Observation:
  - #06507882: The Zio AT patch assigned to this patient was changed. The patient was fitted with another Zio AT patch and processing continued for the new serial number assigned to this patient upon submission of a completed patient registration/order in accordance with 42 C.F.R. § 410.33(d). This ticket was inadvertently left open. The ticket was closed on August 23, 2022.

Page 15 of 19

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Investigation |
| --- |

- #06584455: The Zio AT patch applied to this patient was replaced with a Zio XT patch per instructions ordering physician and a completed patient registration/order in accordance with 42 C.F.R. § 410.33(d). The Zio XT patch supports Holter monitoring services, which do not include any attended monitoring by an IDTF. All review and analysis of ECG data occurs after the patient wear period. This ticket was inadvertently left open. The ticket was closed on August 23, 2022.
  - #06407598: The Zio AT patch assigned to this patient was changed. The patient was fitted with a second patch due to the original patch falling off. Processing continued for the new serial number assigned to this patient upon submission of a completed patient registration/order in accordance with 42 C.F.R. § 410.33(d). This ticket was inadvertently left open. The ticket was closed on August 23, 2022.
- Of the 171 Ztickets open as of August 4, 2022:
  - 42 were open greater than 100 days. All 42 tickets, while resolved, remained open due to a failure to manually close the ticket following resolution, and a lack of a procedure for ensuring all open tickets are manually closed following resolution. There were no pending patient-related activities remaining to be addressed.
  - As of September 1, 2022, we have closed 163 of the 171 tickets, all of which have been resolved. The eight (8) remaining tickets are currently open due to the following ongoing status types: (i) 6 devices have not been returned to iRhythm following three attempts to reach the account. iRhythm waits 45 days before closing the ticket (ii) 1 device is pending registration following three attempts to contact the account to complete the patient registration; and (iii) 1 device, which was never worn but had been opened from its packaging, has been returned to iRhythm and is in the recycling queue.
- Separately, as of August 4, 2022, there were 50 tickets that had aged over 100 days. Although resolved, all 50 tickets remained open due to a failure to manually change the status to close following resolution, and a lack of a procedure for ensuring all open tickets are manually closed following resolution. All 50 of these tickets were closed by August 4, 2022 following confirmation of each ticket's resolution.

| Root Cause Summary |
| --- |

In conclusion, the patient registration is the prescription order for MCT monitoring services. iRhythm must obtain a valid prescription order for MCT monitoring services before the IDTF can initiate monitoring services.

The required fields support the IDTF's legal and compliance obligations and/or the IDTF's provision of the monitoring service.

The Zio AT System labeling would benefit from more clearly distinguishing the Zio AT System from MCT monitoring services to inform the healthcare provider of the importance of prompt registration of Zio AT patches and the clinical implications of unregistered devices.

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Root Cause Summary |
| --- |
| Additionally, although not identified as a root cause, three (3) additional items will be addressed:<br>1. The scripts used by Customer Care will be revised to communicate the potential patient impact for incomplete patient registrations.<br>2. Closure of open Ztickets for incomplete registrations will be reviewed weekly for those that can be closed. In addition, further analysis will be conducted to identify process efficiencies within Salesforce for Zticket closures.<br>3. A "human factors" analysis will be conducted to thoroughly assess whether today's web-portal design is a contributing factor and the most effective channels to communicate with providers for resolution of incomplete registrations from web-portal and EHR UI.<br>    a. An interim solution while #3 is being conducted, will be to manually enter default values for the two fields (patient emergency contact name and phone number) which are contributing to incomplete registrations coming from an EHR system. |

| ACTION PLAN Correction(s) | | | | |
| --- | --- | --- | --- | --- |
| **Item Number** | **Description** | **Due Date** | **Status** | **Attachment Reference** |
| Obs1B-Act-01 | **Customer Advisory Notification**<br><br>A field advisory notice will be issued to Zio AT customers emphasizing that registration of the Zio AT patch is required to submit an order for MCT monitoring services and initiate monitoring by iRhythm's IDTF.<br><br>21 CFR Part 806 assessment and/or reporting will be performed. | 30 Sep 2022 | Pending | No Attachment |
| Obs1B-Act-02 | **Update Zio AT Labeling**<br><br>The Zio AT CRM will be updated to distinguish the Zio AT System from MCT monitoring services and alert HCP of the importance of registration completion and implications of an unregistered Zio AT patch. | 30 Oct 2022 | Pending | No Attachment |
| Obs1B-Act-03 | All open **Customer Care tickets** as of August 4, 2022 for transmitting unregistered Zio AT patches will be reviewed, with resolved tickets closed. | 01 Sep 2022 | Complete | 1B-Att01-TicketStatus |

Page 17 of 19

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| ACTION PLAN Correction(s) | | | | |
|---|---|---|---|---|
| **Item Number** | **Description** | **Due Date** | **Status** | **Attachment Reference** |
| Obs1B-Act-04 | **Remediation**<br><br>Remediation activities associated with our response to **Observation #2** and our response to **Observation #4** will provide additional insights relevant to any potential patient impact and risk management files. | Refer to<br><br>**Observation #2** and **#4** | Pending | No Attachment |

| ACTION PLAN Corrective Action(s) | | | | |
|---|---|---|---|---|
| **Item Number** | **Description** | **Due Date** | **Status** | **Attachment Reference** |
| Obs1B-Act-05 | Update Customer Care email template and establish call script for unregistered Zio AT patches to use language with greater sense of urgency highlighting that the MCT monitoring service will not begin until the patch is registered. | 30 Sep 2022 | Pending | No Attachment |
| Obs1B-Act-06 | Evaluate the feasibility within Salesforce for a more efficient closure method. In the interim, Customer Care team will review open tickets weekly to keep status up to date. | 30 Oct 2022 | Pending | No Attachment |
| Obs1B-Act-07 | Update marketing training and customer-facing educational content relevant to Zio AT patch registration, to highlight the registration is the order for MCT monitoring services, which cannot begin until the registration is complete. | 30 Nov 2022 (digital) and 28 Feb 2023 (physical) | Pending | No Attachment |
| Obs1B-Act-08 | Conduct user research study to understand drivers of unregistered Zio AT patches on the web portal and most effective channels to communicate with providers for resolution of incomplete registrations from web portal and EHR UI. Determine if further actions are appropriate as a result of the user research study. | 30 Dec 2022 | Pending | No Attachment |

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

ZIO
BY iRHYTHM

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Verification of Effectiveness Plan | |
| --- | --- |
| Obs1B-Act-09 | The effectiveness check for this CAPA will be provided in a monthly update to FDA pending the outcome of the human factor evaluation and evaluation of further efficiencies for Zticket closures in Salesforce. |

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)



699 8th Street
Suite 600
San Francisco, CA 94103

(415) 632-5700  Phone
(415) 632-5701  Fax

Customer Service
(888) 693-2401

iRhythmTech.com

*VIA Email Delivery to* ORADevices3FirmResponse@fda.hhs.gov

September 1, 2022

U.S. Food and Drug Administration
Office of Regulatory Affairs
Los Angeles District Office
19701 Fairchild
Irvine, CA 92612-2445

Dear U.S. Food and Drug Administration Office of Regulatory Affairs Representative:

iRhythm Technologies, Inc. ("iRhythm" or the "Company") is writing to provide a comprehensive response (our "Response") to the FDA Form 483, Inspectional Observations ("483") issued and Discussion Item raised in the July 25 to August 12, 2022 inspection of the Company's manufacturing facility at 6550 Katella Avenue, Cypress, California, by the U.S. Food and Drug Administration ("FDA").

We take the 483 Observations and Discussion Item as presented by the FDA Investigators (Janet Pulver and Alexandria Capuano) during their inspection very seriously. We have opened Corrective and Preventive Actions ("CAPAs") corresponding to each Observation and Discussion Item. We are strongly committed to improving and sustaining compliance.

This inspection has brought into sharper focus areas that I and other members of iRhythm's new leadership intend to prioritize consistent with our strong commitment to high-quality technologies and services. We also view this Response as an opportunity to provide important context regarding the Company, iRhythm's status as both a medical device manufacturer and an independent diagnostic testing facility ("IDTF"), and recent leadership changes.

### About iRhythm

iRhythm is a digital healthcare company serving physicians and their patients through services that include mobile cardiovascular telemetry ("MCT"). Like many manufacturers of MCT technologies, iRhythm supports physician and patient use of its technology – the Zio AT System – through the Company's Medicare-enrolled IDTF and Certified Cardiographic Technicians, who perform the technical monitoring services associated with a physician's order for MCT monitoring. iRhythm's dual status – that is, as both a medical device manufacturer and an IDTF – requires the Company to comply with federal and state laws, regulations, and standards that independently govern our manufacturing processes and clinical

1

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

operations. Critically, iRhythm's clinical operations must be viewed through the lens of the laws and rules governing IDTFs.[1]

The inspection highlighted an opportunity for iRhythm to update the labeling of the Zio AT System to distinguish more clearly the **Zio AT System** (also referred to in our Response as the product or medical device) from MCT **monitoring services** (also referred to in our Response as the IDTF services). MCT monitoring services are diagnostic medical procedures that may use the Zio AT System and be performed by iRhythm's IDTF, when ordered by the patient's treating physician. For patients **not** suspected of having life-threatening arrhythmias, but who are suspected of having infrequent, difficult-to-detect, or asymptomatic arrhythmias, MCT technologies and services offer physicians an important clinical option that monitors ambulatory patients for an extended period of time and provides high-quality electrocardiogram ("ECG") recordings. MCT technologies and services work together to offer monitoring in a way that reduces interference with the patient's day-to-day activities and can facilitate patient compliance and the physician's diagnosis and treatment of cardiac rhythm disorders for his or her patients.

The product summary description that follows – as distinguished from the description of MCT monitoring services – previews our planned updates, which align with our enclosed Response, specifically on Observations 1A and 1B and the Discussion Item from our recent inspection.

| The Zio AT System | American Medical Association MCT Monitoring Services |
|---|---|
| The Zio AT connected continuous ambulatory monitoring system ("Zio AT System") is a prescription-only, ambulatory ECG monitoring system. It consists of three primary components: (1) the Zio AT **patch** ECG monitor that records the electrical signal from the heart continuously through the entire patient wear period, (2) the Zio AT wireless **gateway** that provides connectivity between the patch and the Zio ECG Utilization Software ("ZEUS") System, and (3) the **ZEUS System**, which supports the capture and analysis of ECG data, including specific arrhythmia events detected by the ZEUS algorithm.<br><br>The Zio AT patch is a wearable, single-use device applied to the patient's chest where it senses and records the patient's ECG data without requiring any patient interactions or manipulations. During manufacturing, | MCT monitoring services are diagnostic medical procedures that combine real-time **data analysis of ECG data** and **attended monitoring by IDTFs' Certified Cardiographic Technicians**, who review potential arrhythmia events, generate reports for medical review, and notify physicians of potential urgent or emergent arrhythmias according to the ordering physician's prescribed protocol. MCT monitoring services are outpatient procedures and are not appropriate for patients suspected of life-threatening arrhythmias or who require inpatient monitoring. MCT monitoring services may be appropriate for patients suspected of having infrequent, difficult-to-detect, or asymptomatic arrhythmias and for whom monitoring over an extended period is necessary to diagnose cardiac rhythm disorders. MCT monitoring services may use the Zio AT System and be performed by |

---

[1] See, e.g., 42 C.F.R. Sections 410.32 and 410.33.

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)

| The Zio AT System | American Medical Association MCT Monitoring Services |
|---|---|
| each patch is paired with a dedicated Zio AT wireless gateway, which is similar in size to a smart phone and may also be worn by a patient. When in proximity to the Zio AT patch and connected to cellular reception, the gateway wirelessly transmits the patient's ECG data to the ZEUS System for analysis by the arrhythmia detection algorithm.<br><br>Additionally, patients may indicate symptomatic events by pressing a button on the patch, which marks the continuous ECG record for further review and analysis. | iRhythm's IDTF. iRhythm's **IDTF is a Medicare-enrolled provider**, and its Certified Cardiographic Technicians perform the technical monitoring services associated with MCT monitoring services. Upon receipt of a valid order from the treating physician, iRhythm's Certified Cardiographic Technicians review the output of the ECG Analysis Software to review potential arrhythmia events and generate reports that are posted to a secure online portal for medical review by the ordering physician. In accordance with the ordering physician's notification protocol (the "MDN"), the Certified Cardiographic Technicians may also contact the physician and/or patient directly in the event of detecting a potentially urgent or emergent arrhythmia. |

We also want to bring to your attention two important phrases that the American Medical Association ("AMA") uses to describe MCT monitoring services and that are relevant to our Response that follows: "real-time data analysis of ECG data" and "immediate notification criteria."

Regarding ECG data capture, unlike "Holter" and "Event" technologies, which support different cardiovascular monitoring services,[2] MCT technologies "**always** have internal electrocardiogram (ECG) analysis algorithms designed to detect major arrhythmias,"[3] which the AMA describes in the MCT monitoring CPT codes as: "concurrent computerized **real time data analysis**."[4] According to the AMA, this terminology accurately describes the technical capabilities of the Zio AT System: a monitoring **technology** that captures beat-to-beat ECG data and uses algorithms to **concurrently detect** arrhythmias (for subsequent review). Importantly, "real time **data analysis**" should not be conflated with "real time **monitoring**," which would incorrectly suggest that Certified Cardiographic Technicians at an IDTF are concurrently and continuously monitoring the ECG data. iRhythm intentionally uses the phrase "**near**-real time" to qualify the Company's IDTF monitoring services – which are not equivalent to inpatient or emergency real-time monitoring – while still leveraging the AMA's terminology,

---

[2] Holter monitoring is described by CPT codes 93224 – 93227 (for wear up to 48 hours); 93241 – 93244 (for wear more than 48 hours, up to 7 days); and 93245 – 93248 (for wear more than 7 days, up to 15 days). Event monitoring is described by CPT codes 93268 and 93270 – 93272. *See* AMA, CPT 2022: Professional Edition (4th ed. 2022).

[3] AMA CPT Assistant, Vol. 21, Iss. 10 (October 2011) (emphasis added).

[4] CPT Codes 93228 and 93229. *See* AMA, CPT 2022: Professional Edition (4th ed. 2022).

3

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)

which accurately describes the timely computerized data analysis that occurs with use of the Zio AT System.[5]

The AMA also uses the phrase "immediate notification criteria" to describe the physician-prescribed protocol that triggers a Certified Cardiographic Technician to notify a treating or on-call physician outside the standard reporting framework (e.g., daily and/or end-of-monitoring reports). Notably, the AMA uses this phrase in the context of attended monitoring – that is, for Event and MCT monitoring, where technicians review ECG data *during* the patient wear period – *and* unattended monitoring – that is, for Holter monitoring, where a technician reviews ECG data *after* the patient wear period. For this reason, iRhythm incorporates this language into its own physician notification form (sometimes referred to as the MDN or the MD Notification form).

To be clear, MCT monitoring is neither an emergency service nor is it equivalent to inpatient telemetry monitoring. As the name suggests, MCT monitoring is an ambulatory, outpatient diagnostic medical procedure, contraindicated for critical care patients or patients suspected of having life-threatening arrhythmias. We are committed to enhancing our labeling and our IDTF's clinical operations materials consistent with the medical context in which our MCT technologies and services are offered. Our Response explains how we plan to act on this commitment, as we strive to meet our regulatory obligations.

### Our Commitment

We are fully committed to the Company's compliance with all FDA and CMS requirements, and to continuously improve the Company's FDA- and CMS-regulated functions, with additional enhancements to drive meaningful progress. On behalf of the Company's Board of Directors (the "Board") and the leadership team, I want to note the Company's commitment to Compliance with Quality, Regulatory and Legal Requirements has been enhanced with the following new additions to the Company's leadership team:

- The Board appointed me as the Company's President and Chief Executive Officer in October 2021. Following my appointment in 2021, the following changes to the Company's leadership team were implemented under my leadership:
  - Patrick Murphy was appointed as the Chief Legal Officer, and Mr. Murphy was subsequently appointed as the Executive Vice President of Quality and Regulatory, Market Access and Government Affairs, as well as the Data Privacy Officer. Prior to his role at iRhythm, Mr. Murphy previously served as Chief Legal Officer of Dexcom, Inc.
  - Dr. Mintu Turakhia was appointed as the Company's Chief Medical Officer and Chief Scientific Officer. Dr. Turakhia has been a

---

[5] The type of conflation that we're trying to avoid is demonstrated in, for example, the Remote Cardiac Monitoring Assessment report issued by HHS' Agency for Healthcare Research and Quality. *See, e.g.*, HHS, Agency for Healthcare Research and Quality, Remote Cardiac Monitoring Technology Assessment (Dec. 12, 2007), *available at* https://www.cms.gov/Medicare/Coverage/DeterminationProcess/downloads/id51ta.pdf (referencing "real-time continuous attended *cardiac monitoring systems*" and "real-time continuous attended *cardiac monitoring*" to describe MCT technologies and services, respectively).

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)

practicing clinical cardiac electrophysiologist for over 14 years and is a tenured Professor of Medicine at the Stanford University School of Medicine and the Founding Director of the Stanford Center for Digital Health. Prior to his role at iRhythm, Dr. Turakhia was Chief of Cardiac Electrophysiology at the VA Palo Alto Health Care System. In addition to performing invasive procedures such as catheter ablation and device implantation to treat heart rhythm disorders, Dr. Turakhia was director of the hospitals' ambulatory ECG monitoring program and developed all processes and protocols. In this role, he was also responsible for quality assurance and safety of the program. He has personally interpreted over 15,000 ambulatory ECG reports, including many from mobile cardiac telemetry devices. In his academic role, he led a large multidisciplinary research program in heart rhythm disorders and has over 250 peer-reviewed publications on real-world evidence, clinical trials, regulatory science, medical device regulation, and digital health.

- Sumi Shrishrimal was appointed as the Company's Executive Vice President, Chief Risk Officer, with responsibility for the Internal Audit, Corporate Compliance, and Enterprise Risk functions, reporting directly to the Chairman of the Audit Committee of the Board. Prior to her role at iRhythm, Ms. Shrishrimal was the Senior Vice President, Chief Risk Officer at Dexcom, Inc.

In responding to these 483 Observations, the iRhythm team has taken a thoughtful and thorough approach and developed commitments that we believe will be meaningful and serve the physicians and patients who stand to benefit from MCT monitoring services.

iRhythm is committed to the completion of the outlined actions in a comprehensive and systemic manner. We will provide monthly updates to FDA beginning October 2022 to track our progress, and will continue to provide updates until the effectiveness checks we have described are successfully completed. In the intervening time, our monthly updates we will provide evidence of completed actions as they are executed.

**To facilitate mutual understanding, we respectfully request a meeting to discuss our Response. We also believe it would be beneficial and request including officers from the Center for Devices and Radiological Health's Division of Health Technology 2 A (Cardiac Electrophysiology, Diagnostics, and Monitoring Devices - External Heart Rhythm and Rate Devices) if you deem appropriate to facilitate your review of this Response and our corrective actions.**

In the event that FDA does not agree that the meeting we have requested would be helpful, we welcome feedback on our action plan through email or by phone, and would be glad to address any questions or concerns from the FDA.  The official contact for correspondence with the FDA, as indicated in our establishment registrations, remains Mazi Kiani, iRhythm's Senior Vice President of Quality and Regulatory. Please do not hesitate to contact Mr. Kiani at 949-413-2147 or via email at mazi.kiani@irhythmtech.com, and he will keep me informed.

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)

Finally, iRhythm respectfully notes that its Response (including all documents and attachments) contain trade secret and confidential commercial information as well as personal information (especially in light of iRhythm's status as an IDTF and Covered Entity as defined under HIPAA) exempt from disclosure under the Freedom of Information Act and its implementing regulations. *See* 5 U.S.C. §§ 552(b)(4), (6), 21 C.F.R. Part 20, 42 C.F.R. Part 5. We request that you take all available steps to protect the important privacy interests served by these FOIA exemptions, and iRhythm requests that it be given an opportunity to perform the appropriate redactions in the event that the FDA receives a request to release this information and is considering its release. In the event that FDA shares any records with CMS or other HHS entity subject to 42 C.F.R. Part 5, pursuant to 45 C.F.R. § 5.42(a), we also request notification of any FOIA or similar requests received by such entity prior to its disclosure of any information contained herein.

Sincerely,

Quentin Blackford
President and Chief Executive Officer
**iRhythm Technologies, Inc.**

cc:    Patrick Murphy
       Chief Legal Counsel and EVP of Quality & Regulatory,
       Market Access & Government Affairs
       **iRhythm Technologies, Inc.**

       Mazi Kiani
       SVP, Quality & Regulatory
       **iRhythm Technologies, Inc.**

       Rebecca Jones McKnight
       Nancy Bonifant Halstead
       **Reed Smith LLP**

6

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

---

| **OBSERVATION #1C** |
| :---: |

---

| **Observation as Stated in 483 Observations** |
| :---: |

*CAPA # CAPA-2022-0013 was initiated to address an "Activation Time Mismatch" error identified on 04/01/2022 during intake of returned Zio AT Cardiac Monitoring System patch S/N A208041269, where the activation date/time on the actual patch did not match the date/time of activation that had been transmitted during patient wear by the companion Zio AT Gateway server to your Zio ECG Utilization Service ("ZEUS") System for analysis.*

*The CAPA form shows that this issue has the potential for adverse effect on product quality and is a risk that is not identified in an existing risk assessment document. The CAPA shows the issue is due to failure to erase previous patient data during your process for re-using the device's printed circuit boards during manufacturing. Reportedly this could result in failure of product in the field to identify patient episodes deemed severe enough to warrant the immediate notification to the clinicians because previous patient data could use up the 500 max transmissions of patient episodes (reference Observation #1A). However, your firm failed to initiate a Health Hazard Evaluation of the health hazard presented to products in the field "when an unanticipated issue arises which affects product in the field", as required per your Health Hazard Evaluation procedure, Document DOP0111, Health Hazard Evaluation, Revision 03.*

---

| **Background** |
| :--- |

At the outset we note that the technical matters raised in this Observation – the "Activation Time Mismatch" matter that was internally identified by iRhythm and the subject of a CAPA at the investigation stage when FDA's investigators arrived, as well as the "500 max transmissions" topic – are explained in detail in responses to **Observations #3** and **#1A** respectively. This response and associated CAPA focus on the process aspects raised under **Observation #1's** focus.

During the FDA inspection, the Investigator requested several quality systems logs. On July 27, 2022 the CAPA log was requested and provided. The CAPA that is the subject of this **Observation #1C** was one of three (3) CAPAs the Investigator selected to review live and discuss during the inspection.

Upon review of our notes from the time of the inspection and extensive discussion with the subject matter experts within iRhythm, we appreciate that the highly technical nature of both the 500 maximum transmission design constraint and the Printed Circuit Board Assemblies ("PCBAs") utilized in our MCT technologies made this a challenging issue to explain concisely during the inspection.

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

R84

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Background |
| --- |
| We appreciate the opportunity provided by the 483 Response process to factually clarify a number of important underlying technical facts. These technical facts provide context on the handling and timing of the investigation for this CAPA which was still ongoing when discussed with the FDA investigator. Our investigation and root cause analysis presented in this section focuses on the procedural aspects of the timing of initial HHE assessment. |

| CAPA-2022-0024 |
| --- |
| FDA **Observation #1C** will be addressed under CAPA-2022-0024 which was initiated August 19, 2022. The technical aspects of this **Observation #1C** related to the product and references to CAPA 2022-0013, as well as 500 maximum transmission design constraints, are addressed under **Observation #1A** and **Observation #3**.<ul><li>CAPA-2022-0024: Addresses this **Observation #1C** from a process perspective.</li><li>CAPA-2022-0020 associated with **Observation #1A**: Addresses the maximum transmission design constraint.</li><li>CAPA-2022-0013 and CAPA-2022-0022 associated with Observation #3: Addresses the activation time and process validation topics.</li></ul>Once the CAPA investigation and corrective action phase is complete and approved within internal system, a copy of the CAPA file will be included for FDA review in our monthly status updates. |

| Containment and Immediate Action |
| --- |
| **Immediate Action**<br>In response to the Observation #1C, the following immediate actions were taken:<ul><li>**August 12, 2022**: Health Hazard Evaluation, HHE-220812 was opened to assess the impact of the identified deficiency on product currently in the field and in inventory.  See additional details and copy of HHE as part of Observation #3 response. (See Attachment 1)</li></ul> |

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Containment and Immediate Action |
| --- |

- August 17, 2022: CAPA procedural updates were released per the change control process (see Attachment 2).
  - SOP0020 rev. 08 Corrective and Preventive Action, includes clear guidance on prompt escalation to HHE during the lifecycle of the CAPA, and the use of Action Items within MasterControl to track HHE assessments
  - FRM0050 rev. 05 CAPA Request and Determination, was updated to include checklist questions with a clear escalation path from field escalation to HHE assessment
  - CAPA workflow improvements were released in MasterControl
    - New fields were added that capture additional field impact assessment and an updated risk assessment after the investigation is complete
    - DOP0163 rev. 02, CAPA Management in MasterControl, aligns with CAPA workflow improvements in MasterControl and includes language regarding prompt escalation to HHE if field impact is determined during the investigation process
  - Training was pushed to relevant roles via MasterControl upon release. Quiz content includes knowledge checks applicable to these changes (see Attachment 3).
- August 17 – 19, 2022: In addition to the training provided in MasterControl for a much larger audience, a Classroom training was provided for owners of CAPAs initiated under the new process (see Attachment 3) so they're fully aware of the process changes.

**Containment**

**Observation #1C** cited a failure to initiate a Health Hazard Evaluation (HHE) in response to information obtained during the investigation of CAPA-2022-0013. As such, immediate containment activities included an expansive review of all CAPAs opened since 2017. Being that this CAPA was opened in response to a Product Evaluation Report, and each CAPA request is now documented as an Issue Review within MasterControl, these records were also included as part of the containment activity.

The files were reviewed with management from Quality Systems, Risk Management and Regulatory Affairs to determine if there were instances where an assessment for HHE was not documented in accordance with DOP0111.

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

## Containment and Immediate Action

A summary of this activity is provided in Table 1:

**Table 1**

*Summary of Immediate Containment Activities*

| Quality Source | Qty. of Records (01Jan2017-16Aug2022)* | Qty. of Pending HHE Assessments Identified | Qty. of HHEs Opened |
|---|---|---|---|
| CAPAs | 65 | 6 | 2 |
| Issue Reviews (not escalated to CAPA) | 8 | 0 | N/A |
| Product Evaluation Reports (PERs) | 10 | 5 | 2 |

* Bounding through 16Aug2022 as containment actions were taken on August 17, 2022.

As a result of this activity, 11 HHE assessments were triggered, which resulted in four new HHEs (see Attachment 5). It should be noted that one of the CAPAS requiring HHE assessment is subject CAPA-2022-0013, and one of the PERs requiring HHE assessment was very recently opened on August 16, 2022. The four (4) new HHEs will be completed per DOP0111 to determine whether field action should be taken in accordance with SOP0038 rev. 03 Corrections and Removals.

In addition to these immediate containment activities, action will be taken to assess records from other quality system data sources that may trigger the need for HHE assessment. Due to the scope and volume of records requiring review, this activity will be driven as part of the CAPA action plan. Table 2 provides a list of these additional data sources and their governing procedures.

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| **Containment and Immediate Action** |
|---|

**Table 2**

*Summary of Additional Quality Sources to HHE Assessment*

| Quality Data Source | Governing Procedure(s) |
|---|---|
| Complaints and Adverse Event Reporting | SOP0021, *Complaint Handling*<br>SOP0023, *Adverse Event Reporting*<br>DOP0081, *Complaint Handling Process Guidelines* |
| Nonconforming Material Reports (NCMRs) | SOP0019, *Non-conformance Procedure*<br>DOP0185, *Deviation Process* |
| Supplier Corrective Action Requests (SCARs) | SOP0014, *Supplier Management* |
| Audit Nonconformances | SOP0006, *Internal Quality Audits*<br>SOP0080, *External Audit Guidelines* |
| Cybersecurity | SOP0101, *Cybersecurity Management* |

The topic of Jira tickets and handling was reviewed as part of this CAPA. Investigation shows that these tickets are either triggered from existing quality sub-systems, or enter into a quality system from Jira, where they trigger appropriate risk assessment.

| **Risk Assessment** |
|---|

This CAPA is associated with a quality system process and has no direct impact on product quality. However, failure to perform an HHE could result in violative product that remains in commercial distribution without consideration for field action. Per containment activities driven in this CAPA, various quality data sources will be reviewed to determine where HHE assessments are outstanding, and remediation will be triggered as necessary.

For the specific topic cited in the Observation #1C, which is also the subject of CAPA-2022-0013 and **Observation #3**, HHE-220812 was opened to assess the impact of the identified deficiency on product currently in the field and in inventory (see Attachment 1). Refer to the response to **Observation #3** for additional details.

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Investigation |
| --- |

The following timeline of events is relevant to this **Observation #1C** and our investigation relative to CAPA processes:

| | |
| --- | --- |
| April 01, 2022 | When attempting to upload data from AT Patch S/N A208041269 at Intake, "Activation Time Mismatch" error message received |
| | Device segregated for analysis |
| | Product Evaluation Report PER-2022-0002 opened |
| April 13, 2022 | Issue escalated for CAPA consideration |
| May 16, 2022 | CAPA request approved |
| May 19, 2022 | CAPA opened (ISSUE-2022-0015, CAPA-2022-0013) |
| June 21, 2022 | CAPA team identified additional units related to the probable fault condition of a large status file. Root cause was still undetermined at this time, and there was no evidence that these units exhibited an activation time mismatch or that they exhibited impact in the field. |
| June 22, 2022 | Product evaluation report PER-2022-0002 closed |
| July 25, 2022 | FDA Inspection began |
| Week of July 25, 2022 | CAPA-2022-0013 root cause identified, which confirmed field impact |
| July 28, 2022 | FDA investigator first reviewed CAPA-2022-0013 |
| | CAPA investigation ongoing |

**Figure 1**

*Timelines of Activities Upon Opening of CAPA-2022-0013*



As indicated by the timeline above, the root cause for CAPA-2022-0013 was not identified until the week of July 25, 2022, when the FDA inspection was ongoing. The root cause of the activation time mismatch was determined to be failure to completely erase the gateway PCBA. Status log data, more specifically the patch activation time stamp from a previous patient's wear of the device, remained on the gateway PCBA. It is critical to note that no ECG data from any previous patient was found on the gateway PCBA, and the only data found to not have been erased entirely from the gateway PCBA was the status log data.

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Investigation |
| --- |

As a result of this discovery, it was confirmed that five total devices exhibited the issue; the device that triggered the CAPA-2022-0013 (A208041269), as well as four additional units (A211402859, A148331608, A216912177, A212511442). Of these additional units, only A148331608 was worn by a patient. Therefore, this was the first time the team had confirmation that the issue was not isolated.

**Record Review**

Content from the product evaluation report and resulting CAPA were reviewed and assessed against relevant procedural requirements.

- **PER-2022-0002**; this product evaluation report was opened on April 1, 2022. Per DOP0198 rev. 01 Product Evaluation Procedure, Section 9.3, a risk assessment shall be performed for each investigation and considered for HHE when there is potential increase to patient harm, or a new failure is detected. However, a review of PER-2022-0002 shows that the required risk assessment was not performed.

- **Per DOP0198**, Section 9.6, escalation assessments are performed for each PER. During the escalation assessment, it was determined that an HHE was not required, as the "Final report data was not compromised by stored date-time variance." However, the issue was escalated for CAPA consideration on April 13, 2022.

- **CAPA-2022-0013;** at the time the CAPA request was submitted, an assessment for bounding and impact was documented using FRM0050 rev. 02 CAPA Request and Determination. Based on available information, the requestor indicated impact was isolated to the single Patch and Gateway and that "Additional investigation is required to determine further potential impact." Therefore, an assessment for HHE was not triggered at that time.

  In addition, the CAPA request form requires that a risk assessment be performed. The risk assessment indicated the issue had the potential for adverse effect on product quality, and the risk is not identified in an existing assessment. Per SOP0020 rev. 07 Corrective and Preventive Action, if the risk is not documented, associated updates are driven as part of the CAPA action plan.

  The CAPA request was reviewed and approved during the next CAPA Review Board meeting. As a result, CAPA-2022-0013 was opened on May 19, 2022.

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Investigation |
| --- |

**Procedural Review**

As part of the investigation, the CAPA procedure and form were reviewed in detail. Through this exercise, it was determined that there is not clear escalation to the HHE process throughout the CAPA lifecycle.

- **SOP0020 Corrective and Preventive Action**

  At the time CAPA-2022-0013 was opened, SOP0020 rev. 06 was released. This was later revised to SOP0020 rev.07 on May 31, 2022.

  - Both versions of the procedure include DOP0111 Health Hazard Evaluation and FRM0026 Health Hazard Evaluation Tool, within the reference section. However, there is no clear indication in SOP0020 when the CAPA process should trigger an HHE assessment per DOP0111.
  - SOP0020 Section 6.4.1.5, states that "Bounding information and field impact determination is made" as part of the CAPA request process using FRM0050. However, there is no indication that bounding and field impact should be reassessed after the CAPA is opened.

- **FRM0050 CAPA Request and Determination**

  The determination for opening CAPA-2022-0013 was documented using FRM0050 rev. 02. This was later revised to FRM0050 rev. 03 on May 27, 2022.

  - Both versions of the form include a section for bounding and field impact. This section includes guidance that states QA should be immediately contacted if "…it is determined that potentially affected units are in the field." Though implied, there is no clear indication that an HHE assessment should be performed in accordance with DOP0111.

In addition, all revisions of the HHE procedure and form were reviewed. This historical assessment determined there were several process changes that occurred since 2020 which contributed to inconsistent interpretation of 1) pre-HHE vs. HHE terminology, 2) when an assessment for HHE should be triggered, 3) where the assessment for HHE is documented, and 4) expectations for timeliness.

- **DOP0111 Health Hazard Evaluation**

  Prior to the initial release of DOP0111, escalation for HHE was discussed within the procedure for field action (previously SOP038 Corrections, Removals and Recalls) and documented using FRM034A Pre-HHE Tool.

- In April 2020, DOP0111 rev.01 Field Hazard Evaluation, was first released.

  - This process focused on data gathering from product NCMRs and Complaints to trigger a pre-HHE assessment using FRM0026.
  - Issues identified in the field only triggered pre-HHE if:
    - There is an increase in existing patient or business risk,
    - A new high severity or occurrence failure mode is identified, or
    - A new patient/safety impact is identified

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Investigation |
| --- |

- FRM0026 rev. 02 Pre-HHE Tool, was used to document an assessment for HHE and Field Action. Though called a "pre-HHE" assessment, the content of FRM0026 closely followed FDA's Health Hazard Evaluation form (HHE Version 3, 12Jan2007), which includes sections for "Product Data", "Problem Definition and Analysis" and "Health Risks."
- In July 2020, DOP0111 rev. 02 was released. This version of the document included enhanced tracking of HHEs (utilizing a formal log) and established timeline requirements for completion of FRM0026.
- In November 2020, FRM0026 rev. 03 was released. This version of the form documents the three trigger criteria above. Per the DOP0111 rev. 02 flowchart, if the answers are "No"; this is documented and approved using Section 1 of FRM0026.
  - NOTE: this update created a notable process change. Prior to this, any issue in the field could be assessed outside of the HHE system, utilizing the three trigger criteria. As a result of the change, it may be interpreted that *all* issues identified with product in the field should be assessed and documented using FRM0026.
- In March 2022, the most recent version of DOP0111 was released. In DOP0111 rev. 03, a number of changes were driven, including:
  - Change of title to "Health Hazard Evaluation"
  - Removal of the statement that potential health hazards are identified through NCMRs and complaints, increasing the scope of quality data serving as an input to the HHE process
  - Language regarding pre-HHE was removed and replaced with HHE
  - Triggers for HHE updated to include two new criteria:
    - The benefit to risk profile is impacted
    - The devices labeling claims are impacted
  - Timeline requirements for HHE completion were removed

Finally, a systemic review of various quality system procedures was performed to assess how they interact with the HHE process. Through this exercise, it was determined that escalation into the HHE process has not been consistently or clearly defined across all systems.

- **Complaints and Adverse Event Reporting**
  - SOP0021 rev. 07 Complaint Handling, section 6.5.2 explains when the risk assessment performed for each confirmed complaint shall escalate to DOP0111, but the old "pre-HHE" verbiage is used. Trending as a trigger to DOP0111 is mentioned, but no additional guidance is provided.
  - DOP0081 rev.10 Complaint Handling Process Guidelines, section 7.5.2.5 explains how the inability to assign a Risk ID may suggest that a new failure is identified and trigger evaluation of health hazard per DOP0111.
  - SOP0023 rev.10 Adverse Event Reporting, includes DOP0111 in the reference section, but makes no clear indication what types of adverse events should be considered for HHE consideration.

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

**ZIO**
BY iRHYTHM

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Investigation |
| --- |

- **Nonconformances**
  - SOP0019 rev. 09, Non-Conformance Procedure, makes no reference to DOP0111 or the HHE process. However, supporting form FRM0005 rev. 07, NCMR Form, includes a section for field impact with clear escalation for HHE assessment. In addition, Risk Manager approval is required within the NCMR form if there is any impact in the field.

- **Supplier Corrective Action Requests (SCARs)**
  - SOP0014 rev. 10 Supplier Management, makes no reference to DOP0111. Per section 6.9.4, SCARs may be triggered from CAPA, NC, Complaint or Audit results, and are categorized as Risk Level 1 if associated with a known field corrective action. However, FRM0052 rev. 03 Supplier Corrective Action Request form, does not trigger a reassessment for field impact after containment has been documented by the supplier.

- **Audit Nonconformances**
  - SOP0006 rev. 08 Internal Quality Audits, makes no reference to DOP0111. Section 6.7.2 indicates that "impact to product and processes shall be considered to support statements of containment and bounding," but there is no indication to escalation for HHE assessment if field impact is determined.
  - SOP0080 rev. 01 External Audit Guidelines, makes no reference to DOP0111. However, per this procedure, all external observations shall result in a CAPA, which would drive bounding and field impact assessment per SOP0020.

- **Cybersecurity**
  - SOP0101 rev. 01 Cybersecurity Management, was recently released on July 14, 2022. This new process defines post-release activities, including the collection of cybersecurity incidents/complaints and trending. However, DOP0111 is not referenced and there is no discussion of field impact or triggers for HHE assessment.

- **Deviations**
  - DOP0185 rev. 01 Deviation Process, describes the process for planned deviations that impact existing processes used during manufacturing. This process involves risk assessment and active management oversight. Section 8.4 indicates that deviations cannot be used if impacted product is no longer in iRhythm's control. However, FRM0089 rev. 04 Deviation Request Form, could be improved to emphasize this guidance.

Page 10 of 15

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Investigation |
| --- |

**Root Cause Analysis:**

To aid in summarizing the investigation results, and determining the root cause for missing HHE escalations, an Ishikawa diagram was utilized.

**Figure 2**
*Ishikawa Diagram Used in Root Cause Analysis*



**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

R94

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Root Cause Summary |
|---|

Based on the investigation results, the root causes can be summarized as follows:

1. DOP0111 procedural updates have resulted in inconsistent interpretations of the HHE process. Specifically,
   a. Triggers for an HHE assessment (e.g. "pre"-HHE) vs. a full HHE
   b. Documentation of the assessment (within Quality System documentation, or HHE process)
   c. Risk Manager involvement
   d. Expectations for timeliness

2. Quality System procedures, forms and tools do not have clear escalation criteria to trigger consistent and timely entry into the HHE process

| ACTION PLAN Correction(s) | | | | |
|---|---|---|---|---|
| **Item Number** | **Description** | **Due Date** | **Status** | **Attachment Reference** |
| Obs1C-Act-01 | Initiate an HHE for the new failure mode identified in CAPA-2022-0013. It was initiated on August 12, 2022. | 30 Aug 2022 | Complete | 1C-Att01-HHE-220812 |
| Obs1C-Act-02 | Update RSK0052 Process FMEA for Zio AT Patch Assembly – FG Assembly – PCBA, to address the newly identified failure mode.<br><br>Per SOP0020, this will be driven as part of the action plan within CAPA-2022-0013. | 15 Oct 2022 | Pending | No Attachment |
| Obs1C-Act-03 | Initiate action items in MasterControl to drive HHE assessments in response to gaps identified during immediate containment activities.<br><br>• CAPAs, Issues and PERs spanning 01Jan2017 to 16Aug2022<br><br>• Complete HHE assessments identified during immediate containment activity; open HHEs where required | 31 Aug 2022 | Complete | 1C-Att05-HHE-Assessment |

Page 12 of 15

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| ACTION PLAN Correction(s) | | | | |
|---|---|---|---|---|
| **Item Number** | **Description** | **Due Date** | **Status** | **Attachment Reference** |
| Obs1C-Act-04 | Complete and approve HHEs generated from Action 3, in accordance with DOP0111. | 28 Oct 2022 | Pending | No Attachment |
| Obs1C-Act-05 | Perform containment for additional quality sources (reference Table 2):<br><br>• Review 2+ years of records (beginning 01Jan2020)<br><br>• Identify any gaps where it is determined that an assessment for HHE is required<br><br>• Initiate action items in MasterControl to drive HHE assessments for the identified gaps | 30 Sep 2022 | Pending | No Attachment |
| Obs1C-Act-06 | • Complete HHE assessments identified during immediate containment activity (Item 5).<br><br>• Where it is determined that an HHE is required, this shall be completed and approved per DOP0111.<br><br>• Due date will be determined after completion of Action 5, based on Qty. of records required. | TBD | Pending | No Attachment |

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| ACTION PLAN Corrective Action(s) | | | | |
|---|---|---|---|---|
| **Item Number** | **Description** | **Due Date** | **Status** | **Attachment Reference** |
| Obs1C-Act-07 | Update DOP0111 to clearly define:<br><br>• Assessment vs. escalation to full HHE<br><br>• How and where to document the assessment for HHE (pre-HHE)<br><br>• Expectations for timeliness<br><br>• Role of Risk Manager | 31 Oct 2022 | Pending | No Attachment |
| Obs1C-Act-08 | Train to procedural updates:<br><br>• Push training via quiz in MasterControl to all impacted users<br><br>• Provide classroom training for process owners of impacted Quality Systems (reference Table 2)<br><br>• Training will be documented. | 11 Nov 2022 | Pending | No Attachment |
| Obs1C-Act-09 | Update CAPA procedure, form and tool (MasterControl workflow) to include clear triggers for escalation to HHE during the lifecycle of the CAPA. Training will be documented. | 17 Aug 2022 | Complete | 1C-Att02-SOP0020-Rev-08-CAPA-Redline<br><br>1C-Att03-SOP0020-Rev-08-CAPA-Final<br><br>1C-Att04-SOP0020-Rev-08-Training-Status |
| Obs1C-Act-10 | Update procedures, forms and tools for other identified quality sources (reference Table 2) as needed to:<br><br>• Ensure consistent guidance is provided in each procedure to align | 31 Oct 2022 | Pending | No Attachment |

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| ACTION PLAN Corrective Action(s) | | | | |
|---|---|---|---|---|
| **Item Number** | **Description** | **Due Date** | **Status** | **Attachment Reference** |
| | with DOP0111 Health Hazard Evaluation, and<br><br>• Ensure forms (paper and electronic) have consistent prompts, decision points and escalation to the HHE process | | | |
| Obs1C-Act-11 | Provide classroom training for all impacted process owners and users. Training will be documented. | 11 Nov 2022 | Pending | No Attachment |

| Verification of Effectiveness Plan | |
|---|---|
| Obs1C-Act-12 | 1. Three months after completion of the last corrective action, randomly select 59 records from the various quality sources identified in CAPA-2022-0024 (e.g. CAPAs, Issues, PERs, NCMRs, SCARs, etc.).<br>   a. Per SOP0024 Analysis of Data, this sample size provides 95% confidence and 95% reliability.<br>   b. The distribution of the records selected should reflect the percentage of records from each quality source.<br>   c. All records sampled should be generated after the date of the last corrective action<br><br>The CAPA will be deemed effective if the assessment for HHE has been properly documented and escalated to HHE as applicable (per DOP0111 requirements) for all 59 records reviewed.<br><br>2. Three months after completion of the last corrective action, randomly sample 75% of records from the HHE log. Confirm that, where HHEs are required, they have been completed within the timeline requirements specified in DOP0111. |

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)



699 8th Street
Suite 600
San Francisco, CA 94103

(415) 632-5700  Phone
(415) 632-5701  Fax

Customer Service
(888) 693-2401

iRhythmTech.com

*VIA Email Delivery to* ORADevices3FirmResponse@fda.hhs.gov

September 1, 2022

U.S. Food and Drug Administration
Office of Regulatory Affairs
Los Angeles District Office
19701 Fairchild
Irvine, CA 92612-2445

Dear U.S. Food and Drug Administration Office of Regulatory Affairs Representative:

iRhythm Technologies, Inc. ("iRhythm" or the "Company") is writing to provide a comprehensive response (our "Response") to the FDA Form 483, Inspectional Observations ("483") issued and Discussion Item raised in the July 25 to August 12, 2022 inspection of the Company's manufacturing facility at 6550 Katella Avenue, Cypress, California, by the U.S. Food and Drug Administration ("FDA").

We take the 483 Observations and Discussion Item as presented by the FDA Investigators (Janet Pulver and Alexandria Capuano) during their inspection very seriously. We have opened Corrective and Preventive Actions ("CAPAs") corresponding to each Observation and Discussion Item. We are strongly committed to improving and sustaining compliance.

This inspection has brought into sharper focus areas that I and other members of iRhythm's new leadership intend to prioritize consistent with our strong commitment to high-quality technologies and services. We also view this Response as an opportunity to provide important context regarding the Company, iRhythm's status as both a medical device manufacturer and an independent diagnostic testing facility ("IDTF"), and recent leadership changes.

### About iRhythm

iRhythm is a digital healthcare company serving physicians and their patients through services that include mobile cardiovascular telemetry ("MCT"). Like many manufacturers of MCT technologies, iRhythm supports physician and patient use of its technology – the Zio AT System – through the Company's Medicare-enrolled IDTF and Certified Cardiographic Technicians, who perform the technical monitoring services associated with a physician's order for MCT monitoring. iRhythm's dual status – that is, as both a medical device manufacturer and an IDTF – requires the Company to comply with federal and state laws, regulations, and standards that independently govern our manufacturing processes and clinical

<div align="center">1</div>

iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)

operations. Critically, iRhythm's clinical operations must be viewed through the lens of the laws and rules governing IDTFs.[1]

The inspection highlighted an opportunity for iRhythm to update the labeling of the Zio AT System to distinguish more clearly the **Zio AT System** (also referred to in our Response as the product or medical device) from MCT **monitoring services** (also referred to in our Response as the IDTF services). MCT monitoring services are diagnostic medical procedures that may use the Zio AT System and be performed by iRhythm's IDTF, when ordered by the patient's treating physician. For patients **not** suspected of having life-threatening arrhythmias, but who are suspected of having infrequent, difficult-to-detect, or asymptomatic arrhythmias, MCT technologies and services offer physicians an important clinical option that monitors ambulatory patients for an extended period of time and provides high-quality electrocardiogram ("ECG") recordings. MCT technologies and services work together to offer monitoring in a way that reduces interference with the patient's day-to-day activities and can facilitate patient compliance and the physician's diagnosis and treatment of cardiac rhythm disorders for his or her patients.

The product summary description that follows – as distinguished from the description of MCT monitoring services – previews our planned updates, which align with our enclosed Response, specifically on Observations 1A and 1B and the Discussion Item from our recent inspection.

| The Zio AT System | American Medical Association MCT Monitoring Services |
|---|---|
| The Zio AT connected continuous ambulatory monitoring system ("Zio AT System") is a prescription-only, ambulatory ECG monitoring system. It consists of three primary components: (1) the Zio AT **patch** ECG monitor that records the electrical signal from the heart continuously through the entire patient wear period, (2) the Zio AT wireless **gateway** that provides connectivity between the patch and the Zio ECG Utilization Software ("ZEUS") System, and (3) the **ZEUS System**, which supports the capture and analysis of ECG data, including specific arrhythmia events detected by the ZEUS algorithm. | MCT monitoring services are diagnostic medical procedures that combine real-time **data analysis of ECG data** and **attended monitoring by IDTFs' Certified Cardiographic Technicians**, who review potential arrhythmia events, generate reports for medical review, and notify physicians of potential urgent or emergent arrhythmias according to the ordering physician's prescribed protocol. MCT monitoring services are outpatient procedures and are not appropriate for patients suspected of life-threatening arrhythmias or who require inpatient monitoring. MCT monitoring services may be appropriate for patients suspected of having infrequent, difficult-to-detect, or asymptomatic arrhythmias and for whom monitoring over an extended period is necessary to diagnose cardiac rhythm disorders. MCT monitoring services may use the Zio AT System and be performed by |
| The Zio AT patch is a wearable, single-use device applied to the patient's chest where it senses and records the patient's ECG data without requiring any patient interactions or manipulations. During manufacturing, | |

---

[1] See, e.g., 42 C.F.R. Sections 410.32 and 410.33.

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)

| The Zio AT System | American Medical Association MCT Monitoring Services |
|---|---|
| each patch is paired with a dedicated Zio AT wireless gateway, which is similar in size to a smart phone and may also be worn by a patient. When in proximity to the Zio AT patch and connected to cellular reception, the gateway wirelessly transmits the patient's ECG data to the ZEUS System for analysis by the arrhythmia detection algorithm.<br><br>Additionally, patients may indicate symptomatic events by pressing a button on the patch, which marks the continuous ECG record for further review and analysis. | iRhythm's IDTF. iRhythm's ***IDTF is a Medicare-enrolled provider***, and its Certified Cardiographic Technicians perform the technical monitoring services associated with MCT monitoring services. Upon receipt of a valid order from the treating physician, iRhythm's Certified Cardiographic Technicians review the output of the ECG Analysis Software to review potential arrhythmia events and generate reports that are posted to a secure online portal for medical review by the ordering physician. In accordance with the ordering physician's notification protocol (the "MDN"), the Certified Cardiographic Technicians may also contact the physician and/or patient directly in the event of detecting a potentially urgent or emergent arrhythmia. |

We also want to bring to your attention two important phrases that the American Medical Association ("AMA") uses to describe MCT monitoring services and that are relevant to our Response that follows: "real-time data analysis of ECG data" and "immediate notification criteria."

Regarding ECG data capture, unlike "Holter" and "Event" technologies, which support different cardiovascular monitoring services,[2] MCT technologies "***always*** have internal electrocardiogram (ECG) analysis algorithms designed to detect major arrhythmias,"[3] which the AMA describes in the MCT monitoring CPT codes as: "concurrent computerized ***real time data analysis***."[4] According to the AMA, this terminology accurately describes the technical capabilities of the Zio AT System: a monitoring ***technology*** that captures beat-to-beat ECG data and uses algorithms to ***concurrently detect*** arrhythmias (for subsequent review). Importantly, "real time ***data analysis***" should not be conflated with "real time ***monitoring***," which would incorrectly suggest that Certified Cardiographic Technicians at an IDTF are concurrently and continuously monitoring the ECG data. iRhythm intentionally uses the phrase "***near***-real time" to qualify the Company's IDTF monitoring services – which are not equivalent to inpatient or emergency real-time monitoring – while still leveraging the AMA's terminology,

---

[2] Holter monitoring is described by CPT codes 93224 – 93227 (for wear up to 48 hours); 93241 – 93244 (for wear more than 48 hours, up to 7 days); and 93245 – 93248 (for wear more than 7 days, up to 15 days). Event monitoring is described by CPT codes 93268 and 93270 – 93272. *See* AMA, CPT 2022: Professional Edition (4th ed. 2022).

[3] AMA CPT Assistant, Vol. 21, Iss. 10 (October 2011) (emphasis added).

[4] CPT Codes 93228 and 93229. *See* AMA, CPT 2022: Professional Edition (4th ed. 2022).

3

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)

which accurately describes the timely computerized data analysis that occurs with use of the Zio AT System.[5]

The AMA also uses the phrase "immediate notification criteria" to describe the physician-prescribed protocol that triggers a Certified Cardiographic Technician to notify a treating or on-call physician outside the standard reporting framework (e.g., daily and/or end-of-monitoring reports). Notably, the AMA uses this phrase in the context of attended monitoring – that is, for Event and MCT monitoring, where technicians review ECG data *during* the patient wear period – *and* unattended monitoring – that is, for Holter monitoring, where a technician reviews ECG data *after* the patient wear period. For this reason, iRhythm incorporates this language into its own physician notification form (sometimes referred to as the MDN or the MD Notification form).

To be clear, MCT monitoring is neither an emergency service nor is it equivalent to inpatient telemetry monitoring. As the name suggests, MCT monitoring is an ambulatory, outpatient diagnostic medical procedure, contraindicated for critical care patients or patients suspected of having life-threatening arrhythmias. We are committed to enhancing our labeling and our IDTF's clinical operations materials consistent with the medical context in which our MCT technologies and services are offered. Our Response explains how we plan to act on this commitment, as we strive to meet our regulatory obligations.

**Our Commitment**

We are fully committed to the Company's compliance with all FDA and CMS requirements, and to continuously improve the Company's FDA- and CMS-regulated functions, with additional enhancements to drive meaningful progress. On behalf of the Company's Board of Directors (the "Board") and the leadership team, I want to note the Company's commitment to Compliance with Quality, Regulatory and Legal Requirements has been enhanced with the following new additions to the Company's leadership team:

- The Board appointed me as the Company's President and Chief Executive Officer in October 2021. Following my appointment in 2021, the following changes to the Company's leadership team were implemented under my leadership:
  - Patrick Murphy was appointed as the Chief Legal Officer, and Mr. Murphy was subsequently appointed as the Executive Vice President of Quality and Regulatory, Market Access and Government Affairs, as well as the Data Privacy Officer. Prior to his role at iRhythm, Mr. Murphy previously served as Chief Legal Officer of Dexcom, Inc.
  - Dr. Mintu Turakhia was appointed as the Company's Chief Medical Officer and Chief Scientific Officer. Dr. Turakhia has been a

---

[5] The type of conflation that we're trying to avoid is demonstrated in, for example, the Remote Cardiac Monitoring Assessment report issued by HHS' Agency for Healthcare Research and Quality. *See, e.g.*, HHS, Agency for Healthcare Research and Quality, Remote Cardiac Monitoring Technology Assessment (Dec. 12, 2007), *available at* https://www.cms.gov/Medicare/Coverage/DeterminationProcess/downloads/id51ta.pdf (referencing "real-time continuous attended *cardiac monitoring systems*" and "real-time continuous attended *cardiac monitoring*" to describe MCT technologies and services, respectively).

4

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

practicing clinical cardiac electrophysiologist for over 14 years and is a tenured Professor of Medicine at the Stanford University School of Medicine and the Founding Director of the Stanford Center for Digital Health. Prior to his role at iRhythm, Dr. Turakhia was Chief of Cardiac Electrophysiology at the VA Palo Alto Health Care System. In addition to performing invasive procedures such as catheter ablation and device implantation to treat heart rhythm disorders, Dr. Turakhia was director of the hospitals' ambulatory ECG monitoring program and developed all processes and protocols. In this role, he was also responsible for quality assurance and safety of the program. He has personally interpreted over 15,000 ambulatory ECG reports, including many from mobile cardiac telemetry devices. In his academic role, he led a large multidisciplinary research program in heart rhythm disorders and has over 250 peer-reviewed publications on real-world evidence, clinical trials, regulatory science, medical device regulation, and digital health.

o  Sumi Shrishrimal was appointed as the Company's Executive Vice President, Chief Risk Officer, with responsibility for the Internal Audit, Corporate Compliance, and Enterprise Risk functions, reporting directly to the Chairman of the Audit Committee of the Board. Prior to her role at iRhythm, Ms. Shrishrimal was the Senior Vice President, Chief Risk Officer at Dexcom, Inc.

In responding to these 483 Observations, the iRhythm team has taken a thoughtful and thorough approach and developed commitments that we believe will be meaningful and serve the physicians and patients who stand to benefit from MCT monitoring services.

iRhythm is committed to the completion of the outlined actions in a comprehensive and systemic manner. We will provide monthly updates to FDA beginning October 2022 to track our progress, and will continue to provide updates until the effectiveness checks we have described are successfully completed. In the intervening time, our monthly updates we will provide evidence of completed actions as they are executed.

**To facilitate mutual understanding, we respectfully request a meeting to discuss our Response. We also believe it would be beneficial and request including officers from the Center for Devices and Radiological Health's Division of Health Technology 2 A (Cardiac Electrophysiology, Diagnostics, and Monitoring Devices - External Heart Rhythm and Rate Devices) if you deem appropriate to facilitate your review of this Response and our corrective actions.**

In the event that FDA does not agree that the meeting we have requested would be helpful, we welcome feedback on our action plan through email or by phone, and would be glad to address any questions or concerns from the FDA.  The official contact for correspondence with the FDA, as indicated in our establishment registrations, remains Mazi Kiani, iRhythm's Senior Vice President of Quality and Regulatory. Please do not hesitate to contact Mr. Kiani at 949-413-2147 or via email at mazi.kiani@irhythmtech.com, and he will keep me informed.

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

Finally, iRhythm respectfully notes that its Response (including all documents and attachments) contain trade secret and confidential commercial information as well as personal information (especially in light of iRhythm's status as an IDTF and Covered Entity as defined under HIPAA) exempt from disclosure under the Freedom of Information Act and its implementing regulations. *See* 5 U.S.C. §§ 552(b)(4), (6), 21 C.F.R. Part 20, 42 C.F.R. Part 5. We request that you take all available steps to protect the important privacy interests served by these FOIA exemptions, and iRhythm requests that it be given an opportunity to perform the appropriate redactions in the event that the FDA receives a request to release this information and is considering its release. In the event that FDA shares any records with CMS or other HHS entity subject to 42 C.F.R. Part 5, pursuant to 45 C.F.R. § 5.42(a), we also request notification of any FOIA or similar requests received by such entity prior to its disclosure of any information contained herein.

Sincerely,

Quentin Blackford
President and Chief Executive Officer
**iRhythm Technologies, Inc.**

cc: Patrick Murphy
  Chief Legal Counsel and EVP of Quality & Regulatory,
  Market Access & Government Affairs
  **iRhythm Technologies, Inc.**

  Mazi Kiani
  SVP, Quality & Regulatory
  **iRhythm Technologies, Inc.**

  Rebecca Jones McKnight
  Nancy Bonifant Halstead
  **Reed Smith LLP**

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

## OBSERVATION #2

### Observation as Stated in 483 Observations

*An MDR report was not submitted within 30 days of receiving or otherwise becoming aware of information that reasonably suggests that a marketed device may have caused or contributed to death or serious injury.*

*Specifically, complaint #COMP-2021-6388, received 10/25/2021, reports a patient death that occurred while using your Zio AT cardiac monitoring system. The Zio AT patch and Gateway "allow timely detection of clinically actionable arrhythmia during the wear period" ("Zeus System Architecture Description", Document DES0024, dated 04/04/2022); however, the complaint states that "the prescribing account was not notified of the event [Ventricular Tachycardia (VT) and Ventricular Fibrillation (VF) before Pauses and Asystole] which caused the patient's death". The MD notification criteria form for this patient shows the physician requested to be notified "Immediately" of these events, but the clinician was not notified until 8 days after the "End of Life" events. Your firm failed to submit a Medical Device Report for this event where your Zio AT was a contributing factor to the patient's death.*

### Background

**Observation #2** presented an opportunity for iRhythm to evaluate with heightened perspective the documentation, process, and level of clinical input on complaint investigation and MDR reportability assessment. **Observation #2** relates to the same individual who passed away discussed in **Observation #1A**, which relates to COMP-2021-6388 (the "October 2021 Patient").

As we will explain, we are committed to improving our contemporaneous documentation of the thought and clinical judgment applied to the complex medical scenarios that present in the cardiac health context. At the outset we want to clarify the source of the language quoted in the **Observation #2** as written by the FDA Investigators. Referenced as a "complaint," this event was self-identified by iRhythm's independent diagnostic testing facility ("IDTF") Certified Cardiographic Technicians (CCTs) upon preparation of the final report for this period of MCT monitoring service for the patient. This event was first discovered in the final report prepared by the CCT, as opposed to being submitted by any physician, treating healthcare professional, or family member of the October 2021 Patient.

Our complaint files are, with hindsight, not precisely worded. For example, we think it is worth clarifying that we read the statement quoted in the 483 Observation as referring to the *cardiac* event as causing the patient's death.

Page 1 of 16

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

---

| **Background** |
| --- |

The wording as originally captured in our complaint records is not that of a cardiologist or cardiac electrophysiologist but rather the recitation of the internal initial reporter and other colleagues (none of them physicians) within our Company seeking to elevate the *observation* from the final report, and related internal processing.

**Background on Zio AT System:**

*The Zio AT Product*
The Zio AT connected continuous ambulatory monitoring system ("Zio AT System") is a prescription-only, ambulatory electrocardiogram (ECG) monitoring system. It consists of three primary components: (1) the Zio AT patch ECG monitor that records the electrical signal from the heart continuously through the entire patient wear period, (2) the Zio AT wireless gateway that provides connectivity between the patch and the Zio ECG Utilization Software ("ZEUS") System, and (3) the ZEUS System, which supports the capture and analysis of ECG data, including arrhythmia events detected by the ZEUS algorithm.

The Zio AT patch is a wearable, single-use device applied to the patient's chest where it senses and records the patient's ECG data without requiring any patient interactions or manipulations. Each patch is paired with a Zio AT wireless gateway, which is similar in size to a smart phone and may also be worn by a patient. When in proximity to the Zio AT patch and connected to cellular reception, the gateway wirelessly transmits the patient's ECG data to the ZEUS System for analysis by the arrhythmia detection algorithm. Additionally, patients may indicate symptomatic events by pressing a button on the patch, which marks the continuous ECG record for further review and analysis.

*Monitoring Service*

MCT monitoring services are diagnostic medical procedures that combine real-time data analysis of ECG data and attended monitoring by an IDTF's Certified Cardiographic Technicians, who review potential arrhythmia events, generate reports for medical review, and notify physicians of potential urgent or emergent arrhythmias according to the ordering physician's prescribed protocol. MCT monitoring services are outpatient procedures and are not appropriate for patients suspected of life-threatening arrhythmias or who require inpatient monitoring. MCT monitoring services may be appropriate for patients suspected of having infrequent, difficult-to-detect, or asymptomatic arrhythmias and for whom monitoring over an extended period is necessary to diagnose cardiac rhythm disorders.

MCT monitoring services may use the Zio AT System and be performed by iRhythm's IDTF. iRhythm's IDTF is a Medicare-enrolled provider, and its Certified Cardiographic Technicians perform the technical monitoring services associated with MCT monitoring services. Upon receipt of a valid order, iRhythm's Certified Cardiographic Technicians use the ECG Analysis Software of the ZEUS System to review potential arrhythmia events and generate reports that are posted to a secure online portal for medical review by the ordering physician. In accordance with the ordering physician's notification protocol (the "MDN"), the Certified Cardiographic Technicians may also contact the physician and/or patient directly in the event of a potential urgent or emergent arrhythmia.

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

---

| **Background** |
| --- |

We discuss the design constraint which limits the maximum transmissions to 500 auto-triggered transmissions extensively in response to **Observation #1A**. CAPA 2022-0020 related to FDA **Observation #1A** will address the specific design constraint related to the maximum trigger limits for COMP-2021-6388. This CAPA will focus on the MDR reporting and not the technical elements associated with this design constraint.

In summary, implementation of limits for purposes of power consumption is crucial to ensuring that continuous monitoring can occur throughout the intended wear period, which subsequently enables the generation of the comprehensive final report that includes a complete analysis of all applicable arrhythmias that occurred during the prescribed monitoring period. This design constraint was described in bench test report, REP535 included in the Zio AT 510(k) submission (cleared in K163512 with copy provided during the FDA inspection).

**Image 1**
*Illustrates the MCT monitoring service using the Zio AT System, including the Zio AT patch and gateway device, as well as the IDTF assessment by Certified Cardiographic Technicians (Technician QA).*



Page 3 of 16

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Background |
| --- |

*Background on the Patient Referenced*

FDA's 483 Observation #2 specifically cited Complaint #COMP-2021-6388, received on October 25, 2021 as the example for "Missed MDR" **Observation #2**. The FDA Investigators stated in Observation #2 their own apparent conclusion that the Zio AT system "was a contributing factor" to the death of the October 2021 Patient.

Complaint #COMP-2021-6388 was not reported as an MDR reportable event at the time of the initial assessment. Upon additional review with the input of our current Chief Medical Officer we think that the reportability status of this specific event would remain the same (not reportable) but as explained below recognize the root cause identified below warrants corrective and preventive action.

During the inspection, iRhythm provided clinical perspective from Minang (Mintu) Turakhia, M.D., M.A.S., iRhythm's Chief Medical and Chief Scientific Officer. Dr. Turakhia joined iRhythm in June of 2022. He has been a practicing clinical cardiac electrophysiologist for over 14 years and is a tenured Professor of Medicine at the Stanford University School of Medicine and the Founding Director of the Stanford Center for Digital Health. Prior to his role at iRhythm, Dr. Turakhia was the Chief of Cardiac Electrophysiology at the VA Palo Alto Health Care System. In addition to performing invasive procedures such as catheter ablation and device implantation to treat heart rhythm disorders, Dr. Turakhia was director of the ambulatory ECG monitoring program and responsible for the development of all processes and protocols. In this role, he was also responsible for quality assurance and safety of the program. He has personally interpreted over 15,000 ambulatory ECG recordings, including mobile cardiovascular telemetry ("MCT"). In his academic role, he leads a large multidisciplinary research program in heart rhythm disorders and has over 250 peer-reviewed publications on real-world evidence, clinical trials, regulatory science, medical device regulation, and digital health.

During discussions, the FDA Investigators stated that the Zio AT system does not communicate to the patient when the automatic, asymptomatic maximum transmission limit of 500 transmissions is reached and, further, suggested that if the patient knew of this issue, they would have been able to act on it. The Investigators commented that there is no visual or audio alert or alarm when the maximum transmission limit has been reached.

This design, whereby the device continues recording—but stops transmitting—auto detected, asymptomatic ECG data to the monitoring center, was known at the time of regulatory clearance of the device. This device is not intended for critical care, critical monitoring, or real-time arrhythmia detection by an IDTF and, in the complaint at issue, the device performed according to its intended use for which it received regulatory clearance. Specifically, the device performed all of its functions within its operating specifications and provided these data to the IDTF. The IDTF provides the MCT monitoring services, including technician review, communication with the physician, and communication with the patient. The IDTF functions are separate and distinct from the medical device and its manufacturer.

Dr. Turakhia explained that while the asymptomatic maximum transmission limit was reached in the case of this complaint, even if the device had *not* reached this limit, this death would not have been preventable.

Page 4 of 16

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Background |
| --- |

According to patient registration records, the treating clinician prescribed MCT monitoring services for this 78-year-old male for syncope and collapse (meaning the patient had previously fainted and lost consciousness). At the time of the prescription order, the clinician is expected to have made the determination that this patient was not high-risk, did not require critical care, and did not have any contraindications against the Zio AT System, such as "with symptomatic episodes where variations in cardiac performance could result in immediate danger to the patient or **when real-time or in-patient monitoring should be prescribed**," which is explicitly defined in the device's labeling. That determination is a decision made by the clinician, not the device manufacturer or the IDTF that provides the MCT monitoring service.

Furthermore, the physician or physician practice defines and pre-specifies the criteria for physician (MD) notification during remote cardiac monitoring. In this case, the notification criteria in place at the time of this patient's monitoring service for ventricular tachycardia ("VT") were for a VT rate threshold as shown here:

**Image 2**
*Notification criteria for the site at the time of the complaint event.*

On October 8th, 11th, and 13th, 2021, the patient experienced episodes of VT that were included in both routine and daily reports sent to the clinician. This arrhythmia was appropriately detected and transmitted by the medical device to the IDTF. Although the IDTF received the data from the medical device, the episodes of VT did not meet the clinician-defined urgent MD notification criteria and the arrhythmia episodes were transmitted as routine and daily reports by the IDTF to the clinician on the same day as occurrence. Routine reports are special event reports of transmissions that do not meet the provider-selected urgent MD notification criteria but are selected by the IDTF to be transmitted. All reports were sent by the IDTF to the clinician for review via the clinician portal. For MCT monitoring services, because a key benefit is the provision of daily reports, it is generally expected as part of the clinician's professional service that the clinician should review the reports daily as part of the physician service that is billed to the insurer.

During the patient's monitoring period, the IDTF provided one baseline report, fourteen daily reports, five routine reports associated with asymptomatic events, and two routine reports associated with patient-triggered events. In this case, the records demonstrate that the IDTF had given the clinician information documenting the patient's episodes of VT that occurred during the monitoring period, which could have been acted upon by the clinician to obtain additional or emergency care for the patient well in advance of the terminal arrhythmia episode, if considered appropriate by the clinician. The reporting of observations and findings to the clinician is part of the services provided by an IDTF. The obligation to review and treat is incumbent upon the treating clinician.

Page 5 of 16

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Background |
| --- |

In Dr. Turakhia's judgement upon reviewing this history of notifications (especially those on October 8th, 11th, or 13th), information was available to the prescribing physician that escalation to critical or emergency care would be clinically appropriate at that time.

Regarding the episode of the terminal arrhythmia and the patient's expiration, this device was not intended to perform real-time monitoring by an IDTF. (The history and use of terms like "real time" or "near real time" in the context of MCT monitoring services are addressed in more detail in our response to the Discussion Item.) The device also does not provide therapy, such as emergency medical response notification or acute defibrillation (an electrical shock to the chest). The type of device that does this is a wearable cardioverter defibrillator, that the clinician could have elected to prescribe if the clinician determined the patient needed real-time therapy.

Based on clinician review by Dr. Turakhia of the ambulatory ECG data, it appears that the patient may have been experiencing myocardial ischemia (low blood flow to the heart) or a heart attack. The Zio AT System is not designed to detect or treat ischemia or a heart attack and this is outside of its intended use. The Zio AT System is not designed to provide therapy for cardiac arrest and this is outside of its intended use.

Specifically, in this clinical scenario, loss of consciousness occurs within seconds of a cardiac arrest arrhythmia such as VF[1].Loss of consciousness occurs well before an ECG recording of the episode could be received or processed by the IDTF. In the case at issue, the patient's family member promptly called 911 due to the patient's loss of consciousness. By the time emergency response arrived at the patient's location, the patient could not be resuscitated and expired. In Dr. Turakhia's medical opinion, it is possible that even a wearable cardioverted defibrillator may not have been able to successfully restore and maintain normal rhythm if a cardiac arrest is due to a heart attack.

The Zio AT device is not intended to recognize, detect, or initiate response to cardiac arrest, as was experienced by the patient here.

In this case, emergency response was promptly called and, nevertheless, was unable to resuscitate this patient. Accordingly, in Dr. Turakhia's independent clinical judgment, the patient had cardiac arrest and this was a non-survivable event.

The use of this device, even absent a maximum transmission limit, would not have affected the outcome of the patient, or impacted the response time of emergency response services.

---

[1]source: See Cleveland Clinic. 2022. V-Fib: What Is It, Causes, Symptoms & Treatment. (https://my.clevelandclinic.org/health/diseases/21878-ventricular-fibrillation) and American Heart Association. 2022. Heart Attack and Sudden Cardiac Arrest Differences. (https://www.heart.org/en/health-topics/heart-attack/about-heart-attacks/heart-attack-or-sudden-cardiac-arrest-how-are-they-different

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Background |
| --- |

Critically, IDTF functions are separate and distinct from medical device manufacturer functions. Reporting and MDN notifications fall squarely within the IDTF's function and are unrelated to the device. Specifically, the device provides data to the IDTF for the IDTF to conduct its review, reporting, and notification functions. In this case, the IDTF was notified that the device was approaching its auto-trigger maximum transmission limit and, in accordance with protocols, the IDTF notified the physician in advance according to the notification protocols established by the practice.

Additionally, the IDTF received ECG transmissions documenting the patient's VT episodes and, in accordance with protocol, notified the physician according to the MDN parameters selected by the physician practice. In other words, the device functioned as intended in order to allow the IDTF to perform its review, reporting, and notification functions.

iRhythm's IDTF provides the technical services associated with diagnostic medical procedures and does not deliver therapy. MCT monitoring services are not intended for critical care use, and this device is not intended to function as a device that can immediately detect and intervene in a cardiac event, such as an implantable cardiac defibrillator, nor does this device have an alarm function. Instead, this service provides clinicians with daily reports, end-of-service reports, routine reports, and MDN reports, which provide data on episodes that meet the provider-selected notification criteria.

Here, at least one of the patient's VT episodes did not meet the provider's selected notification criteria. Further, despite daily and routine reports showing multiple VT episodes throughout the wear period, the clinician did not review or act upon the reports provided by the IDTF and, therefore, did not intervene when (in Dr. Turakhia's view upon review of this history) it was clinically evident that the patient required escalated care, well in advance of the terminal arrhythmia.

Please note that Attachment 2-Att01-COMP-2021-6388-Chronology includes a full chronology of events with specific dates and actions and communications related to this specific complaint (COMP-2021-6388).

| CAPA-2022-0018 |
| --- |

FDA **Observation #2** is being addressed under CAPA 2022-0018, which was opened prior to the FDA inspection closure and later updated based on the final 483 Observation verbiage as issued. The content of this response is derived from CAPA 2022-0018.

Once the CAPA investigation and corrective action phase is complete and approved within the internal system, a copy of the CAPA file will be included for FDA review in our monthly status updates.

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Containment |
| --- |
| The adverse event (MDR) reporting SOP0023, rev. 10, was updated during the investigation phase to ensure immediate correction and modification of the MDR reporting assessment for current and future complaints. Classroom training was performed for the team members that perform Complaint Handling and MDR reporting.  Refer to the correction section of this table.<br><br>A remedial action plan is indicated in the correction section of this template. |

| Risk Assessment |
| --- |
| The scope of this investigation and associated CAPA-2022-0018 is related to compliance with 21 C.F.R. Part 803 Medical Device Reporting. This topic does not directly impact the product, however, information obtained as a result of this investigation and associated actions may impact the risk assessments for the product. As part of this CAPA, a remediation effort will occur to look back at complaints, applying the newly established MDR reporting guidance in SOP0023, rev. 11 for March 2019 to Aug. 30, 2022 (Date of SOP0023 rev. 10 to 11 update – Refer to the Investigation and Correction sections for additional details). This remediation effort will ensure death, serious injury (including hospitalization), or malfunctions that are likely to result in death or serious injury – should they recur – are reassessed for reporting.<br><br>The outcome of this activity may impact the risk management files. The risk assessment for CAPA 2022-0018 will recur post this activity to ensure proper evaluation of product risk associated with Zio AT and ZEUS. See Corrections and Corrective Action sections on this response. |

| Investigation |
| --- |
| As a result of the assessment and clinical rationale provided in the background section, Complaint COMP-2021-6388 was not reported as an MDR reportable event at the time of the initial assessment.<br><br>Based on discussions with the FDA Investigators during the inspection and further evaluation of 21 C.F.R. Part 803, a deeper dive into the process is necessary to ensure that iRhythm takes a more conservative approach to MDR reporting and the definitions it utilizes to determine "Caused or contributed by the device." A few potential procedural misalignments with FDA's expectations were identified in iRhythm's interpretation of 21 C.F.R. Part 803, within SOP0023, rev. 10, Adverse Event Reporting. Additionally, the investigation assessed that some process alignments may be necessary as related to Customer Care tickets and the process for determining those tickets that require escalations into the complaint handling process for the purposes of making adverse event reporting (MDR) decisions. This root cause investigation evaluated both processes as it relates to MDR reporting, while CAPA-2022-0023 associated with FDA **Observation #4** will investigate the Complaint Handling process per SOP0021. |

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

---

### Investigation

**Root Cause Investigation:**

As part of the investigation, the following areas were evaluated:

- The interpretation of "Caused or contributed to death" within 21 C.F.R. Part 803 as it relates to Zio AT System, including the associated ZEUS Software as Medical Device (SaMD), which aids in interpretation of the data.
- MDR assessments for Class 1 complaint categories, which are considered lower risk and complaint topics previously investigated.
- The depth of investigations and necessary improvements in documenting such investigations associated with MDR reportable events.
- Necessary monitoring of Customer Care service tickets to ensure no reportable events were missed.
- Necessary monitoring of other sources such as MAUDE database MedWatch reports or Social Media sites.

In order to aid this investigation, the Ishikawa root cause analysis method was utilized. The factors related to Man/workforce, Materials/Equipment/SW tools, Method/procedures, Environment were considered.

❖ **Procedures:** SOP0023, rev. 10 was reviewed in detail. It was determined that although the definitions of reportable events for death, serious injuries, and malfunctions match the regulations, there is no guidance provided to the users of the procedure on the interpretation of these requirements.

The investigation indicated that the following changes to SOP0023, rev. 10 are required to provide clarity to users of this procedure on when events may be reportable:

- ○ Reporting death: 21 C.F.R. Part 803 states "Manufacturers or importers must report deaths or serious injuries that the device has or may have caused or contributed to…" However, SOP0023, rev. 10 does not provide adequate guidance on what "contributed to" may mean. It is challenging for the employees to assess MDR reporting without additional guidance relevant to iRhythm devices and services and the clinical context in which they are used.
- ○ The procedure includes events occurring as a result of: Failure, malfunction, improper or inadequate design, manufacture, labeling, or use error. In addition, the procedure would benefit from clarification that allegations made by a Healthcare Provider (HCP) or patient that the device caused or contributed to death or serious injury shall be filed as an MDR, regardless of iRhythm's investigation outcome results on potential causality with Zio products. SOP0023, rev. 10 Appendix 1 will need to be updated with specific details of reportable events as part of the corrective actions to provide the additional details missing in order to make MDR reporting decisions.

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Investigation |
| --- |

- Serious Injury: Although SOP0023, rev. 10 does provide more insight on what may constitute serious injury, such as certain types of skin reactions, this investigation determined that additional details are needed in Appendix 1 of SOP0023. In addition to the details already provided in the procedures, the Serious Injury reports will also include allegation by an HCP or patient that the device caused or contributed to the serious injury, when serious injury was a result of a use error or when the most probable cause of the reported event is unknown or uncertain.

- It was noted that SOP0023, rev. 10 does not outline the need for MDR supplements. Although this aspect is not directly related to FDA's **Observation #2** that led to this CAPA, the corrective actions will comprehensively address and update the process. This detail associated with MDR supplements will need to be added to SOP0023 to ensure the assessment considers the need for supplements, in particular post investigations and when iRhythm becomes aware of supplemental information.

- This investigation indicated that reportable malfunctions do not have the same degree of ambiguity relative to the linkage of the adverse event (Death or Serious Injury) and its influence in the MDR reporting decision.

❖ **Workforce:** The current complaint handling team members that make MDR assessments are trained on the current process and are qualified, however, several complaint handling specialists and investigators can make an MDR assessment at this time. Once an MDR report is deemed necessary, the individuals that draft and submit the report are narrowed to two. Based on this investigation, if the procedure provided adequate guidance and associated training and escalation process, we believe that personnel could effectively utilize the process.  In order to mitigate human variability, each MDR file is to be reviewed by a member of Quality Management. Additionally, any MDR reports of death, which a team member determines is not reportable, shall be reviewed by Medical (Medical Directors/MDs or Chief Medical Officer). These new requirements will be added to SOP0023.

❖ **SW Tools:** Complaints are currently classified into three categories based on initial risk assessment of the report and if the issue has been previously investigated.

- **Category 1:** Lowest risk complaints, where the issue was previously investigated, require no new investigations/evaluations and the assignable root cause has already been identified. This category is tracked and trended to ensure it does not trigger pre-established limits. FDA MDR or Vigilance reporting is not triggered. (Note:  Category 1 complaints cannot have any injury or death associated with the event or a malfunction that would likely cause or contribute to death or serious injury should it recur.)

- **Category 2:** Issue may require further investigation/evaluation in order to determine root cause. It could be a new issue or the assignable root cause not directly linked to a previous investigation. MDR or Vigilance reporting is most likely not triggered but shall be evaluated.

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Investigation |
| --- |
| <p>   o **Category 3**: Higher risk complaints, requiring further investigation/evaluation. MDR or Vigilance reporting OR review by Medical Director may be triggered per SOP0023. (Note: Complaints with reports of serious injury or death shall be considered in this category.)</p><p>Customer Care tickets are first entered into Salesforce Software Tool (SFDC) and then transferred to MasterControl (the e-QMS tool we use). The MasterControl e-QMS tool does have some pre-defined questions to determine reportability, however, for Class 1 complaints, which are considered the lowest risk complaints, there is no such questionnaire for each individual event. For SFDC tickets, specific questions need to be added in order to request and confirm that no serious injury or death occurred for each ticket, rather than relying on the event description field. The tool SFDC will be updated with this mandatory MDR questionnaire to ensure each file explicitly documents questions related to death or serious injury with the reported events. Additionally, it was noted that the SFDC tickets for customer service calls do not have a specific awareness date field but do have an event date and call/ticket date. Since the majority of the tickets are HCP or patient calls and autogenerated tickets by the system for a potential issue detected by the software, the awareness date would match the ticket creation date. However, the SFDC software tool will be updated to add an awareness date field to ensure proper alignment with 21 C.F.R. Part 803 in rare situations where the awareness date may differ from the ticket creation date.</p><p>❖ This investigation determined that the remainder of the Ishikawa root cause method items, such as equipment or environment, were not a contributing factor to the root causes of this CAPA, however, three additional items were determined to be a potential contributing factor:</p><p>  1. Lack of customer care ticket searches on a routine basis, such as monthly keyword search, for any potential missed MDRs.</p><p>  2. Lack of documented FDA MAUDE database searches on a monthly basis in order to ensure iRhythm is aware of any reports that were sent directly through MedWatch.</p><p>  3. Lack of documented social media (e.g., comment sections) searches for potential missed complaints and/or adverse events.</p> |

| Root Cause Summary |
| --- |
| The main driving factors were determined to be lack of procedural clarity on interpretation of 21 C.F.R. Part 803 requirements relative to the specific clinical context in which Zio AT is used and pre-defined fields in the software tools (e.g., SFDC). These items are outlined in greater detail in the investigation section of this CAPA. |

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

<table>
<tr><td colspan="5" align="center">**ACTION PLAN**<br>**Correction(s)**</td></tr>
<tr><td>**Item Number**</td><td>**Description**</td><td>**Due Date**</td><td>**Status**</td><td>**Attachment Reference**</td></tr>
<tr>
<td>Obs2-Act-01</td>
<td>

**Remedial Action:**

a. Review of Zio AT complaints and customer care tickets for reports of death or serious injury (including hospitalization) or malfunctions that are likely to result in death or serious injury should they recur, to ensure they were properly reported per the new criteria and guidance set in the revised procedure SOP0023, rev. 11, which includes new guidance in Appendix 1 of this procedure. *Refer to Corrective Actions for details of changes to SOP0023.*

b. MDRs to be submitted upon discovery as soon as possible within the 30 days of the new awareness date.

c. MDR remediation - Date range to include March 2019 to present (Date of SOP0023 rev. 10 to 11 update).

*Justification criteria for Remediation timing: CAPA 2022-0023 for complaint handling process also requires overlapping remedial action in relation to complaints and FDA observation #4. Due to resource intensive nature of this action, additional resources will need to be obtained first and training performed, in order not to negatively impact the on-going (current and future) complaints processing and timely MDR reporting. The remediation timeline account for approximately one month to secure additional resources and are estimated to the best of CAPA owner's current ability.*

</td>
<td>30 Jan 2023</td>
<td>Pending</td>
<td>No Attachment</td>
</tr>
</table>

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| ACTION PLAN Correction(s) | | | | |
|---|---|---|---|---|
| **Item Number** | **Description** | **Due Date** | **Status** | **Attachment Reference** |
| | *The date range of March 2019 to present provides 3.5 years of remediation in alignment with process changes associated with complaint handling process (in April 2019), where complaint categorization criteria was modified. Additionally, in March 2019, the Complaint Handling eQMS tool via MasterControl was introduced.  The remediation will be conducted according to a protocol to be written and released by 20oct2022.  The due date is estimated to the best of the author's current ability but will be evaluated as part of the remediation protocol and scoping activity.* | | | |
| Obs2-Act-02 | **Risk Management File Update:**<br><br>Based on the remedial action performed in Correction item #1, review the Zio AT risk management files (Hazard Analysis and FMEAs) to ensure that the severity of harm and probability of occurrence ratings are properly aligned with the MDR file data and account for foreseeable misuse.<br><br>*Due date Justification: Date selected in order to allow time for remediation efforts to complete first and feed into this step for Risk Management updates.* | 28 Feb 2023 | Pending | No Attachment |

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

<table>
<tr><th colspan="5">ACTION PLAN<br>Corrective(s)</th></tr>
<tr><th>Item Number</th><th>Description</th><th>Due Date</th><th>Status</th><th>Attachment Reference</th></tr>
<tr>
<td>Obs2-Act-03</td>
<td>Update SOP0023, rev. 10 to rev. 11 (Adverse Event Reporting SOP) and SOP0021, rev. 07 to 08 (Complaint Handling SOP) to include updates in alignment with the investigation section of this CAPA. Summary of changes:<br><br>In SOP0023, rev. 11<br>a. Guidance on determining "Caused or contributed" to death or serious injury in Appendix 1 as it relates to iRhythm medical devices.<br>b. Addition of details to the level of investigation needed for adverse event complaints.<br>c. Verbiage related to reporting of MDR supplements as a result of new or revised information or investigations.<br>d. Added reviews of MDRs by Quality Management and in cases where the adverse event does not result in MDRs, then review by Medical.<br>e. Addition of Customer Care ticket keyword searches to ensure proper escalations into MasterControl for any potential MDR reportable events which may have been missed or not appropriately escalated.<br>f. MAUDE search performed on a monthly basis and documented for any potential missed MDR reportable events or responses to external party reports about Zio products.<br><br>In SOP0021, rev. 08<br>a. Social media searches for potential missed complaints and/or adverse events.<br>b. Complete approval and release of SOP0023, rev. 11.</td>
<td>30 Aug 2022</td>
<td>Complete</td>
<td>2-Att03-SOP0021-Rev-08-Complaint-Redline<br><br>2-Att04-SOP0021-Rev-08-Complaint-Final<br><br>2-Att05-SOP0023-Rev-11-AEReporting-Redline<br><br>2-Att06-SOP0023-Rev-11-AEReporting-Final<br><br>2-Att07-SOP0023-Rev11-SOP0021_Rev8_Training</td>
</tr>
</table>

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

<table>
<tr><td colspan="5" align="center"><strong>ACTION PLAN<br>Corrective(s)</strong></td></tr>
<tr>
<th>Item Number</th>
<th>Description</th>
<th>Due Date</th>
<th>Status</th>
<th>Attachment Reference</th>
</tr>
<tr>
<td>Obs2-Act-04</td>
<td>Perform training on SOP0023, rev. 11 and SOP0021, rev. 08 for all applicable employees and document training records.<br><br>August 31, 2022: Complaint Handling and MDR reporting team members<br><br>September 26, 2022: All other impacted employees</td>
<td>31 Aug 2022<br><br>and<br><br>26 Sep 2022</td>
<td>Complete<br><br>and<br><br>Pending</td>
<td>2-Att07-SOP0023-Rev11-SOP0021_Rev8_Training</td>
</tr>
<tr>
<td>Obs2-Act-05</td>
<td>Update Salesforce (SFDC) customer care ticket template in the software to add the following fields:<br>a)  "Awareness Date" field as mandatory field.<br>b)  Questions: Did death or serious injury occur with this event? These fields shall be mandatory fields where the tool does not allow closure prior to determining this information being entered into the tool.<br>c)  Align SOP0034 (rev. 8 to rev. 9) with the SFDC tool update.<br>d)  Implement software update and procedure update by October 30, 2022.<br><br>*Justifications: This action requires IT tool update. The due date accounts for this IT effort. Malfunction MDR question is not necessary at this ticket level as it is part of the complaint evaluation rather than confirmation from the reporter.*</td>
<td>30 Oct 2022</td>
<td>Pending</td>
<td>No Attachment</td>
</tr>
<tr>
<td>Obs2-Act-06</td>
<td>Perform training on SOP0034, rev. 09 for all applicable employees and document training records.</td>
<td>17 Oct 2022</td>
<td>Pending</td>
<td>No Attachment</td>
</tr>
</table>

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Verification of Effectiveness Plan | |
|---|---|
| Obs2-Act-07 | Three months after the completion of the last corrective action planned, an internal audit of the process shall occur by an outside auditor (regulatory consultant/contractor or consulting firm) with appropriate auditor certifications, as well as expertise and experience with 21 C.F.R. 803 topics. This specific audit shall be scoped to the complaint handling process as it relates to the MDR assessments and reporting. The CAPA may be deemed effective if there are no missed MDRs for a qualifying event per the updated guidance provided in SOP0023, rev. 11.<br><br>Sampling Plan: At a minimum, samples of 59 units/records to review, providing 95% confidence and 95% reliability. |

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**



699 8th Street
Suite 600
San Francisco, CA 94103

(415) 632-5700 Phone
(415) 632-5701 Fax

Customer Service
(888) 693-2401

iRhythmTech.com

*VIA Email Delivery to* ORADevices3FirmResponse@fda.hhs.gov

September 1, 2022

U.S. Food and Drug Administration
Office of Regulatory Affairs
Los Angeles District Office
19701 Fairchild
Irvine, CA 92612-2445

Dear U.S. Food and Drug Administration Office of Regulatory Affairs Representative:

iRhythm Technologies, Inc. ("iRhythm" or the "Company") is writing to provide a comprehensive response (our "Response") to the FDA Form 483, Inspectional Observations ("483") issued and Discussion Item raised in the July 25 to August 12, 2022 inspection of the Company's manufacturing facility at 6550 Katella Avenue, Cypress, California, by the U.S. Food and Drug Administration ("FDA").

We take the 483 Observations and Discussion Item as presented by the FDA Investigators (Janet Pulver and Alexandria Capuano) during their inspection very seriously. We have opened Corrective and Preventive Actions ("CAPAs") corresponding to each Observation and Discussion Item. We are strongly committed to improving and sustaining compliance.

This inspection has brought into sharper focus areas that I and other members of iRhythm's new leadership intend to prioritize consistent with our strong commitment to high-quality technologies and services. We also view this Response as an opportunity to provide important context regarding the Company, iRhythm's status as both a medical device manufacturer and an independent diagnostic testing facility ("IDTF"), and recent leadership changes.

### About iRhythm

iRhythm is a digital healthcare company serving physicians and their patients through services that include mobile cardiovascular telemetry ("MCT"). Like many manufacturers of MCT technologies, iRhythm supports physician and patient use of its technology – the Zio AT System – through the Company's Medicare-enrolled IDTF and Certified Cardiographic Technicians, who perform the technical monitoring services associated with a physician's order for MCT monitoring. iRhythm's dual status – that is, as both a medical device manufacturer and an IDTF – requires the Company to comply with federal and state laws, regulations, and standards that independently govern our manufacturing processes and clinical

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

R121

iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)

operations. Critically, iRhythm's clinical operations must be viewed through the lens of the laws and rules governing IDTFs.[1]

The inspection highlighted an opportunity for iRhythm to update the labeling of the Zio AT System to distinguish more clearly the *Zio AT System* (also referred to in our Response as the product or medical device) from MCT *monitoring services* (also referred to in our Response as the IDTF services). MCT monitoring services are diagnostic medical procedures that may use the Zio AT System and be performed by iRhythm's IDTF, when ordered by the patient's treating physician. For patients *not* suspected of having life-threatening arrhythmias, but who are suspected of having infrequent, difficult-to-detect, or asymptomatic arrhythmias, MCT technologies and services offer physicians an important clinical option that monitors ambulatory patients for an extended period of time and provides high-quality electrocardiogram ("ECG") recordings. MCT technologies and services work together to offer monitoring in a way that reduces interference with the patient's day-to-day activities and can facilitate patient compliance and the physician's diagnosis and treatment of cardiac rhythm disorders for his or her patients.

The product summary description that follows – as distinguished from the description of MCT monitoring services – previews our planned updates, which align with our enclosed Response, specifically on Observations 1A and 1B and the Discussion Item from our recent inspection.

| The Zio AT System | American Medical Association MCT Monitoring Services |
|---|---|
| The Zio AT connected continuous ambulatory monitoring system ("Zio AT System") is a prescription-only, ambulatory ECG monitoring system. It consists of three primary components: (1) the Zio AT *patch* ECG monitor that records the electrical signal from the heart continuously through the entire patient wear period, (2) the Zio AT wireless *gateway* that provides connectivity between the patch and the Zio ECG Utilization Software ("ZEUS") System, and (3) the *ZEUS System*, which supports the capture and analysis of ECG data, including specific arrhythmia events detected by the ZEUS algorithm.<br><br>The Zio AT patch is a wearable, single-use device applied to the patient's chest where it senses and records the patient's ECG data without requiring any patient interactions or manipulations. During manufacturing, | MCT monitoring services are diagnostic medical procedures that combine real-time *data analysis of ECG data* and *attended monitoring by IDTFs' Certified Cardiographic Technicians*, who review potential arrhythmia events, generate reports for medical review, and notify physicians of potential urgent or emergent arrhythmias according to the ordering physician's prescribed protocol. MCT monitoring services are outpatient procedures and are not appropriate for patients suspected of life-threatening arrhythmias or who require inpatient monitoring. MCT monitoring services may be appropriate for patients suspected of having infrequent, difficult-to-detect, or asymptomatic arrhythmias and for whom monitoring over an extended period is necessary to diagnose cardiac rhythm disorders. MCT monitoring services may use the Zio AT System and be performed by |

---

[1] See, e.g., 42 C.F.R. Sections 410.32 and 410.33.

2

iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)

| The Zio AT System | American Medical Association MCT Monitoring Services |
|---|---|
| each patch is paired with a dedicated Zio AT wireless gateway, which is similar in size to a smart phone and may also be worn by a patient. When in proximity to the Zio AT patch and connected to cellular reception, the gateway wirelessly transmits the patient's ECG data to the ZEUS System for analysis by the arrhythmia detection algorithm.<br><br>Additionally, patients may indicate symptomatic events by pressing a button on the patch, which marks the continuous ECG record for further review and analysis. | iRhythm's IDTF. iRhythm's **IDTF is a Medicare-enrolled provider**, and its Certified Cardiographic Technicians perform the technical monitoring services associated with MCT monitoring services. Upon receipt of a valid order from the treating physician, iRhythm's Certified Cardiographic Technicians review the output of the ECG Analysis Software to review potential arrhythmia events and generate reports that are posted to a secure online portal for medical review by the ordering physician. In accordance with the ordering physician's notification protocol (the "MDN"), the Certified Cardiographic Technicians may also contact the physician and/or patient directly in the event of detecting a potentially urgent or emergent arrhythmia. |

We also want to bring to your attention two important phrases that the American Medical Association ("AMA") uses to describe MCT monitoring services and that are relevant to our Response that follows: "real-time data analysis of ECG data" and "immediate notification criteria."

Regarding ECG data capture, unlike "Holter" and "Event" technologies, which support different cardiovascular monitoring services,[2] MCT technologies "**always** have internal electrocardiogram (ECG) analysis algorithms designed to detect major arrhythmias,"[3] which the AMA describes in the MCT monitoring CPT codes as: "concurrent computerized **real time data analysis**."[4] According to the AMA, this terminology accurately describes the technical capabilities of the Zio AT System: a monitoring **technology** that captures beat-to-beat ECG data and uses algorithms to **concurrently detect** arrhythmias (for subsequent review). Importantly, "real time **data analysis**" should not be conflated with "real time **monitoring**," which would incorrectly suggest that Certified Cardiographic Technicians at an IDTF are concurrently and continuously monitoring the ECG data. iRhythm intentionally uses the phrase "**near**-real time" to qualify the Company's IDTF monitoring services – which are not equivalent to inpatient or emergency real-time monitoring – while still leveraging the AMA's terminology,

---

[2] Holter monitoring is described by CPT codes 93224 – 93227 (for wear up to 48 hours); 93241 – 93244 (for wear more than 48 hours, up to 7 days); and 93245 – 93248 (for wear more than 7 days, up to 15 days). Event monitoring is described by CPT codes 93268 and 93270 – 93272. *See* AMA, CPT 2022: Professional Edition (4th ed. 2022).

[3] AMA CPT Assistant, Vol. 21, Iss. 10 (October 2011) (emphasis added).

[4] CPT Codes 93228 and 93229. *See* AMA, CPT 2022: Professional Edition (4th ed. 2022).

3

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

which accurately describes the timely computerized data analysis that occurs with use of the Zio AT System.[5]

The AMA also uses the phrase "immediate notification criteria" to describe the physician-prescribed protocol that triggers a Certified Cardiographic Technician to notify a treating or on-call physician outside the standard reporting framework (e.g., daily and/or end-of-monitoring reports). Notably, the AMA uses this phrase in the context of attended monitoring – that is, for Event and MCT monitoring, where technicians review ECG data *during* the patient wear period – *and* unattended monitoring – that is, for Holter monitoring, where a technician reviews ECG data *after* the patient wear period. For this reason, iRhythm incorporates this language into its own physician notification form (sometimes referred to as the MDN or the MD Notification form).

To be clear, MCT monitoring is neither an emergency service nor is it equivalent to inpatient telemetry monitoring. As the name suggests, MCT monitoring is an ambulatory, outpatient diagnostic medical procedure, contraindicated for critical care patients or patients suspected of having life-threatening arrhythmias. We are committed to enhancing our labeling and our IDTF's clinical operations materials consistent with the medical context in which our MCT technologies and services are offered. Our Response explains how we plan to act on this commitment, as we strive to meet our regulatory obligations.

## Our Commitment

We are fully committed to the Company's compliance with all FDA and CMS requirements, and to continuously improve the Company's FDA- and CMS-regulated functions, with additional enhancements to drive meaningful progress. On behalf of the Company's Board of Directors (the "Board") and the leadership team, I want to note the Company's commitment to Compliance with Quality, Regulatory and Legal Requirements has been enhanced with the following new additions to the Company's leadership team:

- The Board appointed me as the Company's President and Chief Executive Officer in October 2021. Following my appointment in 2021, the following changes to the Company's leadership team were implemented under my leadership:
  - Patrick Murphy was appointed as the Chief Legal Officer, and Mr. Murphy was subsequently appointed as the Executive Vice President of Quality and Regulatory, Market Access and Government Affairs, as well as the Data Privacy Officer. Prior to his role at iRhythm, Mr. Murphy previously served as Chief Legal Officer of Dexcom, Inc.
  - Dr. Mintu Turakhia was appointed as the Company's Chief Medical Officer and Chief Scientific Officer. Dr. Turakhia has been a

---

[5] The type of conflation that we're trying to avoid is demonstrated in, for example, the Remote Cardiac Monitoring Assessment report issued by HHS' Agency for Healthcare Research and Quality. *See, e.g.*, HHS, Agency for Healthcare Research and Quality, Remote Cardiac Monitoring Technology Assessment (Dec. 12, 2007), *available at* https://www.cms.gov/Medicare/Coverage/DeterminationProcess/downloads/id51ta.pdf (referencing "real-time continuous attended *cardiac monitoring systems*" and "real-time continuous attended *cardiac monitoring*" to describe MCT technologies and services, respectively).

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

R124

practicing clinical cardiac electrophysiologist for over 14 years and is a tenured Professor of Medicine at the Stanford University School of Medicine and the Founding Director of the Stanford Center for Digital Health. Prior to his role at iRhythm, Dr. Turakhia was Chief of Cardiac Electrophysiology at the VA Palo Alto Health Care System. In addition to performing invasive procedures such as catheter ablation and device implantation to treat heart rhythm disorders, Dr. Turakhia was director of the hospitals' ambulatory ECG monitoring program and developed all processes and protocols. In this role, he was also responsible for quality assurance and safety of the program. He has personally interpreted over 15,000 ambulatory ECG reports, including many from mobile cardiac telemetry devices. In his academic role, he led a large multidisciplinary research program in heart rhythm disorders and has over 250 peer-reviewed publications on real-world evidence, clinical trials, regulatory science, medical device regulation, and digital health.

o Sumi Shrishrimal was appointed as the Company's Executive Vice President, Chief Risk Officer, with responsibility for the Internal Audit, Corporate Compliance, and Enterprise Risk functions, reporting directly to the Chairman of the Audit Committee of the Board. Prior to her role at iRhythm, Ms. Shrishrimal was the Senior Vice President, Chief Risk Officer at Dexcom, Inc.

In responding to these 483 Observations, the iRhythm team has taken a thoughtful and thorough approach and developed commitments that we believe will be meaningful and serve the physicians and patients who stand to benefit from MCT monitoring services.

iRhythm is committed to the completion of the outlined actions in a comprehensive and systemic manner. We will provide monthly updates to FDA beginning October 2022 to track our progress, and will continue to provide updates until the effectiveness checks we have described are successfully completed. In the intervening time, our monthly updates we will provide evidence of completed actions as they are executed.

**To facilitate mutual understanding, we respectfully request a meeting to discuss our Response. We also believe it would be beneficial and request including officers from the Center for Devices and Radiological Health's Division of Health Technology 2 A (Cardiac Electrophysiology, Diagnostics, and Monitoring Devices - External Heart Rhythm and Rate Devices) if you deem appropriate to facilitate your review of this Response and our corrective actions.**

In the event that FDA does not agree that the meeting we have requested would be helpful, we welcome feedback on our action plan through email or by phone, and would be glad to address any questions or concerns from the FDA. The official contact for correspondence with the FDA, as indicated in our establishment registrations, remains Mazi Kiani, iRhythm's Senior Vice President of Quality and Regulatory. Please do not hesitate to contact Mr. Kiani at 949-413-2147 or via email at mazi.kiani@irhythmtech.com, and he will keep me informed.

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)

Finally, iRhythm respectfully notes that its Response (including all documents and attachments) contain trade secret and confidential commercial information as well as personal information (especially in light of iRhythm's status as an IDTF and Covered Entity as defined under HIPAA) exempt from disclosure under the Freedom of Information Act and its implementing regulations. *See* 5 U.S.C. §§ 552(b)(4), (6), 21 C.F.R. Part 20, 42 C.F.R. Part 5. We request that you take all available steps to protect the important privacy interests served by these FOIA exemptions, and iRhythm requests that it be given an opportunity to perform the appropriate redactions in the event that the FDA receives a request to release this information and is considering its release. In the event that FDA shares any records with CMS or other HHS entity subject to 42 C.F.R. Part 5, pursuant to 45 C.F.R. § 5.42(a), we also request notification of any FOIA or similar requests received by such entity prior to its disclosure of any information contained herein.

Sincerely,

Quentin Blackford
President and Chief Executive Officer
**iRhythm Technologies, Inc.**

cc:    Patrick Murphy
       Chief Legal Counsel and EVP of Quality & Regulatory,
       Market Access & Government Affairs
       **iRhythm Technologies, Inc.**

       Mazi Kiani
       SVP, Quality & Regulatory
       **iRhythm Technologies, Inc.**

       Rebecca Jones McKnight
       Nancy Bonifant Halstead
       **Reed Smith LLP**

6

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

ZIO
BY iRHYTHM

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| OBSERVATION #3 |
| --- |

| Observation as Stated in 483 Observations |
| --- |

*A process whose results cannot be fully verified by subsequent inspection and test has not been validated according to established procedures.*

*Specifically, your firm implemented design changes to the hardware and firmware of your Zio AT Cardiac Monitoring System (Project Plan: AT Strawberry Spritz, PLN0069, 11/23/2021) and to the Gateway tool and test fixture used in the manufacture of the Zio AT (Project Plans PLN0136 and PLN0183). Your firm executed the Zio AT Spritz Performance Qualification (PQ) Protocol TP00582 (dated 10/29/2021) to demonstrate that the ZIO AT manufacturing process using the updated device, tool, and fixture, performs consistently in accordance with its required specifications. However, review of the PQ report (TR01244) shows that the validation failed to assess the re-use of Gateway printed circuit board assemblies (PCBAs) returned from patients, to ensure that data from the previous patient was erased before using the PCBAs to manufacture new devices. No re-used boards were used in the validation; only "virgin" boards were used. Furthermore, the PQ was executed following the routine manufacturing procedure (WRK 0043, Zio AT Gateway PCBA Initialize and Test); however, this procedure did not include a step to ensure the data from re-used Gateway boards is erased.*

| Background |
| --- |

This **Observation #3** originated from the FDA investigator's review of CAPA-2022-0013 (Initiated May 19, 2022). This CAPA was still in the "Investigation" phase when the FDA inspection began, and was being actively investigated during this time. This CAPA was issued to investigate an activation time mismatch for a single device. More specifically, there was a discrepancy found between the patch activation time communicated by the gateway upon its initial connection to the network and the time stamp downloaded from the patch at "Intake" upon return of the device post-wear. The CAPA process elements from that example are discussed in our response to **Observation #1C**.

For understanding of **Observation #3** as stated, and our response, technical background and context is needed.

Page 1 of 21

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Background |
| --- |

*Zio AT ECG Monitoring Device Product Summary*

The Zio AT connected continuous ambulatory monitoring system ("Zio AT System") is a prescription-only, ambulatory electrocardiogram (ECG) monitoring system. It consists of three primary components: (1) the Zio AT patch ECG monitor that records [the electrical signal from the heart] continuously through the entire patient wear period, (2) the Zio AT wireless gateway that provides connectivity between the patch and the Zio ECG Utilization Software ("ZEUS") System, and (3) the ZEUS System, which supports the capture and analysis of ECG data, including arrhythmia events detected by the ZEUS algorithm.

The Zio AT patch is a wearable, single-use device applied to the patient's chest where it senses and records the patient's ECG data without requiring any patient interactions or manipulations. Each patch is paired with a Zio AT wireless gateway, which is similar in size to a smart phone and may also be worn by a patient. When in proximity to the Zio AT patch and connected to cellular reception, the gateway wirelessly transmits the patient's ECG data to the ZEUS System for analysis by the Zio arrhythmia detection algorithm. Additionally, patients may indicate symptomatic events by pressing a button on the patch, which marks the continuous ECG record for further review and analysis.

*The Use of PCBAs in Zio AT*

When manufacturing Zio AT patches and gateways for distribution, iRhythm uses new ("virgin") PCBAs and re-used PCBAs iRhythm collects from previously used devices. All PCBAs (both virgin and re-used) must pass performance testing (described below) before iRhythm uses them in finished products.

*Information Transmission: the Patch, the Gateway, and iRhythm Servers*

As illustrated in Figure 1, the patch communicates with the gateway continuously during monitoring. sending not only ECG data (described below), but also time-stamped log entries indicating changes in device status](e.g., "activation" time) and other device and system information (e.g., ble connection/disconnection, battery voltage, temperature, humidity). As we will illustrate below, the gateway PCBA stores both persistent data such as configuration, status and debug log and temporary data such as R-Peak, Classifier, and ECG Event. The temporary data is only stored until completion of data transfer either to the patch or the server. R-peak and Event temporary data are automatically deleted by Gateway after successful data transmission to the server. Classifier temporary data is automatically deleted by the Gateway after successful data transmission to the patch. This is designed to ensure that no data is lost if any connections are interrupted.

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

## Background

### Figure 1
*Information Transmission Visualization*



An ECG signal consists of a "QRS" complex in which each letter has a specific meaning and purpose. The R-wave of the QRS complex is the indicator by which heart rates are calculated. It is not an indicator of arrhythmia type. R-to-R intervals are used to calculate heart rates.  Heart rates are a diagnostic indicator of an arrhythmia. Clinically actionable arrhythmias often have characteristically fast and slow heart rates, allowing the R-peak time history to be used to determine which signals to pass through and transmit for further analysis for a potential heart rhythm disorder or clinically important very high or very low heart rates. The patch stores the complete ECG data on its NAND, and transmits the time-stamped R-Peak Information to the gateway, which logs the R-Peak Information in the order received (see Table 1), stores the log on its NAND, and transmits the received R-Peak Information to the server. The gateway assigns a numeric index (starting with "1") to each R-Peak transmittal to the server.

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Background |
| --- |



A **server algorithm** analyzes the R-Peak information to identify which arrythmia-types may be present. The server algorithm generates instructions to the patch to run an algorithm locally on the patch (a "classifier request") that will identify and extract the likely arrhythmias with particularity. The classifier request requires raw ECG data, and the patch is the sole location of raw ECG data during monitoring. The server sends the classifier request to the gateway. The gateway transmits the **classifier request** to the patch. Once successfully transmitted to the patch, the gateway deletes the classifier request from local storage; the classifier request is not logged on the status log.



The patch receives the **classifier request** and runs the algorithm locally. If the output indicates the likely presence of an arrythmia, the patch extracts 90-seconds of raw ECG data and transmits the data to the gateway. The gateway transmits **the data** to the server. Once successfully transmitted to the server, the gateway deletes the ECG data from local storage; the ECG data is not logged on the status log.

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

R130

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Background |
| --- |

*Table 1*
*Information Stored on the Gateway NAND*

| DATA TYPE | DESCRIPTION | IMPACT OF DATA REMAINING ON GATEWAY |
| --- | --- | --- |
| **STATUS LOG** | Time-stamped log entries indicating changes in device status (e.g., "activation" time) and other device and system information (e.g., BLE connection/disconnection, battery voltage, temperature, humidity). | The status-change events the gateway sends to the server aid in monitoring the patch and gateway status. The status log stored on the gateway NAND are write-only, meaning the log reflects the time-stamped events the gateway sends the server. Neither the server nor the gateway read from the log during patch wear, and log data cannot be erased or overwritten during wear. After the patient returns the Zio AT to iRhythm, iRhythm downloads the activation time recorded by the patch and compares that time to the corresponding activation time entry recorded on the server. The testing programs will flag any mismatches between gateway-logged activation time entries and server-received activation time entries. This Observation #3 relates to an "activation time" mismatch error observed for the gateway paired with patch serial number A208041269, which resulted in the initiation of CAPA-2022-0013. See below for further discussion of CAPA-2022-0013. |

Page 5 of 21

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Background |
| --- |

### Table 2
*Information Stored on the Gateway NAND*

| DATA TYPE | DESCRIPTION | IMPACT OF DATA REMAINING ON GATEWAY |
| --- | --- | --- |
| **R-PEAK DATA** | The R-wave of the QRS complex is the indicator by which heart rates are calculated. It is not an indicator of arrhythmia type. R-to-R intervals are used to calculate heart rates.  Heart rates are a diagnostic indicator of an arrhythmia. Clinically actionable arrhythmias often have characteristically fast and slow heart rates, allowing the R-peak time history to be used to determine which signals to pass through and transmit for further analysis for a potential heart rhythm disorder or clinically important very high or very low heart rates. | The R-wave or R-peak is stored on the gateway PCBA, but the patient-specific ECG recording is stored on the Zio AT patch's PCBA. |

**We notes the terms "Strawberry" and "Spritz" were referenced in Observation #3.** For background, iRhythm uses internal code names to refer to certain hardware and firmware projects, as described in this table:

| Code Name | Component | Part Number(s) |
| --- | --- | --- |
| Strawberry | Gateway PCBA | AMB0008 |
| Spritz | Firmware | Combination of: SFW0053.05: patch firmware, SFW0055.05: gateway main processor firmware SFW0056.05: gateway BLE processor firmware |

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)

---

## Background

### Process Validation at iRhythm

*Process Qualification (PQ)*

All PQ lots undergo an end-to-end test where lots are sampled. Sampled devices undergo a signal injection process to simulate usage and are then brought through the simulated "Intake" process where clinical reports are generated to ensure that device data can be processed through the appropriate iRhythm systems. For PQs that implement a change to PCBA design, the following attributes are also verified under a statistical sampling plan:

- ☐ Impedance Verification
- ☐ Arrhythmia Verification
- ☐ Gateway and/or Patch Battery Voltage
- ☐ R-Peak Latency, BLE Connectivity and Cell Connectivity Verification (Gateway only)
- ☐ BLE Connection Percentage (Gateway only)
- ☐ Cell Connectivity Verification (Gateway only)
- ☐ Verification of Arrhythmias Detection Auto Trigger Functionality (Gateway only)

Note: Both "virgin" and "re-used" PCBAs are used for PQ.

*Discussion of CAPA During Inspection*

This observation originated from the FDA investigator's review of CAPA-2022-0013 (Initiated May 19, 2022). This CAPA was still in the "Investigation" phase when the FDA inspection began, and was being actively investigated during this time. This CAPA was issued to investigate an activation time mismatch for a single device. More specifically, there was a discrepancy found between the patch activation time communicated by the gateway upon its initial connection to the network and the time stamp downloaded from the patch at "Intake" upon return of the device post-wear.

During the CAPA-2022-0013 investigation, the root cause of the activation time mismatch was determined to be a failure to completely erase the gateway PCBA in preparation for re-use. Status log data, more specifically the activation time stamp of a patch from a previous patient's wear of the device, remained on the corresponding gateway's PCBA. It is critical to note that no ECG data from any previous patient was found on the gateway PCBA, and the only data found to not have been erased entirely was the status log data. Please see the table below for different types of data that can be stored on the PCBA and the impact of the specific type of data remaining on the gateway PCBA. For clarification, the NAND (Persistent Storage) is equivalent of a hard drive on a personal computer. It is the storage function within the PCBA.

The symptom of an activation time mismatch is remarkably rare in occurrence. In fact, there have been five (5) devices found to have displayed this symptom. Three (3) of these devices were never worn by a patient. The other two (2) accounted for five (5) missed MDN transmission reports, out of 106,427 devices (81,983 total MDN transmissions). The rate of occurrence for this symptom is 0.006%.

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)

---

**Background**

The low occurrence and the resultant low risk posed by this symptom was discussed with the FDA investigator. The investigator's concern was that it would theoretically be possible for data to remain on the gateway from a previous use which could be sent to the server and could mistakenly be associated with the new patient using the gateway.

iRhythm identified zero instances of the hypothetical scenario where ECG data associated with a patient could mistakenly be associated with a new patient's ECG data. However, to verify that this has, in fact, not occurred, the ECG data of transmissions was compared to the ECG data that were downloaded from the patches at intake. All devices which had raw ECG data available from 01 June 2020 through 01 June 2022 were reviewed. This covered 81,736 devices. For 81,732 of the devices there was an exact match of ECG data between the ECG data of transmissions and the ECG data that was downloaded from the patch at intake. There were 4 devices where data were found to be corrupted (0.004893804% corrupt). The majority of the transmission data still matched the final data that it is clear that it was associated with the correct patient. The evidence of this verification is in TR01612 rev. 01 Transmission zData Technical Report (-Att2-TR01612-Rev-01-TransmissionZdataComparison).

*Inclusion of Both New and "Reuse" PCBAs for Process Qualification*

**Observation #3** alleges that the PQ (TR01244 rev. 01 ZIO AT Spritz Performance Qualification (PQ) Report) failed to test reuse Gateway PCBAs and that only virgin boards were used in the qualification. The PQ TR01244 rev. 01 (ZIO AT Spritz Performance Qualification (PQ) Report), in fact, included 280 reuse Gateway boards along with 145 Gateway virgin boards as part of the execution of the test protocol. These reused Gateway PCBAs are denoted with the suffix *"-R"* in the report on *Page 6 of 17*. Refer to Attachment 3, *TR01244 rev. 01 ZIO AT Spritz Performance Qualification (PQ) Report* for objective evidence.

Additionally, **Observation #3** discusses the failure of the process qualification for Zio AT, TR01244 rev. 01 ZIO AT Spritz Performance Qualification (PQ) Report, to validate the complete erasure of gateway PCBAs. The Observation also discusses the lack of a 100% verification step to ensure the gateway PCBAs have been completely erased, in the work instruction WRK0043 ZIO AT Gateway PCBA initialize and test. While the actions planned per our previously initiated CAPA-2022-0013 do address the correction, we are committed to work on a broader corrective action plan.

Page 8 of 21

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

ZIO
BY iRHYTHM

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| CAPA-2022-0013 and CAPA-2022-0022 |
| --- |

CAPA-2022-0013 was opened on May 19, 2022 (prior to the FDA inspection) to investigate an activation time mismatch for a single device.

CAPA-2022-0022 was opened August 17, 2022 to address the deficiency identified in **Observation #3**. Specifically, that the process validation failed to implement a test fixture that validates the complete erasure of the gateway PCBAs, and that the manufacturing work instructions did not include a step to verify this erasure.

Once the CAPA investigations and corrective action phases are complete and approved within iRhythm's internal system, copies of the CAPA files will be included for FDA review in our monthly status updates.

| Containment and Immediate Action |
| --- |

### Containment

- ☐ On August 5, 2022, when this issue was brought up by the FDA investigator, a stop shipment was put in place to ensure that no AT gateway with reused PCBAs would be shipped out until further investigation and correction of the problem. Correspondingly, NC-2022-157 was initiated for this issue. Additionally, products still within iRhythm control were identified and moved to the facility Material Review Board (MRB/Quarantine) area.

- ☐ A Health and Hazard Evaluation was performed for this issue to assess the impact of the identified deficiency on the product currently in the field and in inventory. Please see attached HHE-220812.

- ☐ Per HHE-220812, the risk posed by the symptom associated with CAPA-2022-0013, activation time mismatch and the resulting failure of the device to transmit is a potential misdiagnosis and/or delay in treatment of a critical arrhythmia, ranked as severity 4 (serious injury requiring medical intervention).

- ☐ There were five (5) devices found to have a large status log file size indicating improperly erased gateway PCBAs. 3 of the 5 devices were not worn by a patient. The analysis in HHE-220812 indicates a total of one (1) missed transmission meeting MDN criteria, out of 106,427 total Zio AT devices used from Jan 2020 to Aug 2022, which resulted in 81,983 total MDN transmissions during the same time period. This results in a rate of one (1) missed MDN transmission out of 81,983 total MDNs in the population, rate of 0.001%, Probability Rank 2.

- ☐ The assigned severity (4) and the calculated probability (2) result in a medium risk level per SOP-0010, Risk Management.

There have been no patient adverse events or injuries reported as a result of these events, and the probability of occurrence of harm is assessed conservatively assuming 100% occurrence of a harm as a result of the hazard. Based on the device intended use, lack of any reported patient injury, and the low occurrence rate of this hazard (0.001% missed MDN transmission – Probability Rank 2), a field action is not recommended at this time.

Page 9 of 21

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

---

| Containment and Immediate Action |
| --- |

**Product Bounding**

**Relevant to bounding decisions, we determined that the issue identified in processing the Gateway PCBA for reuse could not affect any other PCBAs that are reused by iRhythm.** The following PCBAs are reused by iRhythm:

| Product | PCBA |
| --- | --- |
| Zio XT | Patch PCBA |
| Zio AT | Patch PCBA<br>Gateway PCBA |
| Zio monitor | Patch PCBA |

To ensure a comprehensive review of all iRhythm products where the deficiency could be present or applicable, a review of the Zio XT patch, Zio monitor patch and Zio AT patch was performed. Note that Zio XT and Zio monitor do not involve a gateway but include patch PCBAs that may be reused to assemble new devices.

**Supporting our bounding approach, we are providing a technical description of how NAND (persistent storage) writing and erasing works. This is background to the explanation of how the test process during manufacturing ensures that all patient data is erased prior to reuse.** On the Zio XT patch PCBA, Zio AT patch PCBA and Zio monitor patch PCBA, the NAND is accessed directly at a low level by the firmware. There is no filesystem layer like there is with the Gateway PCBA. The patch's ECG data is stored at specific locations in NAND. Even if data is not erased properly, it would be overwritten. The nature of NAND is such that when you erase, it sets all the bits to high (binary 1's) and when you write you can only change bits from high to low (1's to 0's). Overwriting takes any bits that were still high in the original NAND data and flips them to low. Any bits that were already low in the original data stay low, whether the overwriting data has them set to high or low. If an overwrite occurs, the data ends up looking corrupted at the binary level.

**This paragraph describes the existing testing that takes place in the patch PCBA test fixtures for all iRhythm products, which ensures that patient data from previous uses is erased. iRhythm will adopt new procedures to similarly ensure data erasure from the gateway PCBAs.** All products' patch test fixtures (Zio XT, Zio AT, and Zio monitor) include a Production ECG Test. The following table describes the location where the Production ECG Test is defined for each product:

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)

### Containment and Immediate Action

| Product | Document | Section |
|---|---|---|
| Zio XT | RQS0133.01 Zio Patch PCBA Functional Test Fixture Requirement Specification (3-Att8-RQS0133-Rev-01-PatchPCBARequirements) | MFNTFS_A5, MFNTFS_A8, MFNTFS_A9, MFNTFS_A10, MFNTFS_A11, MFNTFS_12, and MFNTFS_14 |
| Zio AT | DES0042.04 – Zio AT Patch PCBA Test Fixture Design Specification (3-Att5-DES0042-Rev-04-ZioATPatchPCBAFixtureDesignSpec) | Steps #25 - #32 |
| Zio monitor | DES0085.01 Shasta PCBA FCT Test Design Specification (3-Att9-DES0085-Rev-01-ShastaPCBATestDesignSpec) | Sections 8.38 - 8.46 |

The above-listed Production ECG Tests check for the complete erasure of patient data from patch PCBAs. Thus, the symptom and deficiency being addressed per OBS#3 cannot exist on other iRhythm products that involve PCBAs.

### Risk Assessment

☐ A Health and Hazard Evaluation was performed for this issue to assess the impact of the identified deficiency on the product currently in the field and in inventory. Please see Attachment 3-Att10-HHE-220812

☐ Per HHE-220812, the risk posed by the symptom associated with CAPA-2022-0013, activation time mismatch and the resulting failure of the device to transmit is a potential misdiagnosis and/or delay in treatment of a critical arrhythmia, ranked as severity 4 (serious injury requiring medical intervention).

☐ There were five (5) devices found to have a large status log file size indicating improperly erased gateway PCBAs. 3 of the 5 devices were not worn by a patient. The analysis in HHE-220812 indicates a total of one (1) missed transmission meeting MDN criteria, out of 106,427 total Zio AT devices used from Jan 2020 to Aug 2022, which resulted in 81,983 total MDN transmissions during the same time period. This results in a rate of one (1) missed MDN transmission out of 81,983 total MDNs in the population, rate of 0.001%, Probability Rank 2.

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

OBSERVATION #3

| Risk Assessment |
| --- |

☐     The assigned severity (4) and the calculated probability (2) result in a medium risk level per SOP0010, Risk Management.

There have been no patient adverse events or injuries reported as a result of these events, and the probability of occurrence of harm is assessed conservatively assuming 100% occurrence of a harm as a result of the hazard. Based on the device intended use, lack of any reported patient injury, and the low occurrence rate of this hazard (0.001% missed MDN transmission – Probability Rank 2), a field action is not recommended at this time.

| Investigation |
| --- |

CAPA-2022-0022 has been initiated to address the deficiency identified in **Observation #3**. Specifically, that the process validation failed to implement a test fixture that validates the complete erasure of the gateway PCBAs, and that the manufacturing work instructions did not include a step to verify this erasure.

The **Observation #3** alleges that the implementation of a design change was not performed due to deficiencies related to process validation and in-process verification. Upon review of the issue, it was determined that the issue is not limited to design changes only. The deficiency extends beyond design changes and is a systemic issue with process validation and 100% verification in general. The root cause analysis below was performed taking a holistic approach not limited to implementation of design changes.

The investigation per CAPA-2022-22 utilized a fishbone diagram (Ishikawa diagram) approach depicted in Attachment 1 (3-Att1-FishboneDiagram)..

**Investigation:**
**Machine:** The CAPA investigation found root cause for the category "Machine."

**Machine Root Cause 1**, "Equipment for testing reused PCBAs does not verify that previous patient data was deleted."

Review of the manufacturing test firmware for Zio AT Gateway SFW0070 rev. 02 was performed by engineering. The manufacturing test firmware offers a command to format the NAND, but the review found that there is the possibility of failures occurring during that format process which are not reported and do not result in the NAND being fully erased. The AT Gateway Functional Verification Tester (FVT) software SFW0064 sends the command to format the NAND, however, the FVT does not perform a verification to confirm that previous patient data was erased successfully.

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Investigation |
| --- |

It is important to note here that this nonconformance is quite rare at an occurrence rate of 0.002%, thus the risk posed by this issue is low. Please see attached Health and Hazard Evaluation, HHE-220812.

**Method:** The CAPA investigation found four potential root causes for the category "Method."

**Method Root Cause 2**, "Documentation lacks validation of reuse of PCBAs." This root cause was broken into 4 sections on the Ishikawa diagram for the following:
1. PCBA testing equipment did not have process validation for PCBA reuse.
2. Process FMEA documentation does not contain specific failure modes for reuse PCBAs.
3. Work instructions do not provide testing output(s) for reuse PCBA criteria.
4. SOP0028 – Process Validation does not have requirements for reuse PCBAs.

A review of iRhythm's document management system (MasterControl) was performed on August 19, 2022 of all document types outlined in this root cause. The following table provides the summary of the document review.

| Document No. | Description | Document Summary | Conclusion |
| --- | --- | --- | --- |
| TP00438.01 | Zio AT Gateway LTE FVT2 Fixture Acceptance Test Protocol | This protocol intent is to verify an upgraded FVT design (FVT2) for performance testing characteristics and does not address the reuse of PCBAs. | This protocol was used in the design phase of the equipment's lifecycle and is not part of process validation. |
| TP00439.01 | Zio AT Gateway LTE FVT2 GRR Protocol | This protocol tests the equipment's gauge capability. | This protocol does not address the reuse of PCBAs. |
| TP00500.01 | Zio AT Gateway LTE FVT2 Requirements Verification | This protocol tests iRhythm designed software to be used in the new FVT2 equipment. | This protocol was used in the design phase of the equipment's life cycle and is not part of process validation. |
| TP00501.01 | Zio AT Gateway LTE FVT2 Test Fixture GRR Test Protocol | This protocol tests the equipment's gauge capability. | This protocol does not address the reuse of PCBAs. |

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Investigation |
|---|

| Document No. | Description | Document Summary | Conclusion |
|---|---|---|---|
| TP00556.02 | Installation Qualification Protocol for Zio AT Gateway LTE FVT2 | This protocol is intended to verify the proper installation of all AT Gateway FVT2 equipment during the process validation phase of the equipment's lifecycle. | The protocol has a section which verifies that a failed PCBA shall have the reuse flag set but does not verify or validate that a reused PCBA is suitable for manufacturing. |
| TP00568.03 | Installation Qualification Protocol for Zio AT FVT | This protocol is intended to verify the proper installation of all AT patch PCBA FVT equipment during the process validation phase of the equipment's lifecycle. | The protocol does not verify or validate that a reused PCBA is suitable for manufacturing. |
| TP00623.02 | Installation Qualification Protocol for XT Patch Functional Verification Tester (FVT) | This IQ protocol is intended to verify the proper installation of all XT patch PCBA FVT equipment during the process validation phase of the equipment's lifecycle. | The protocol does not verify or validate that a reused PCBA is suitable for manufacturing. |
| MVP0004.02 | Zio Monitor Master Validation Plan | This is the Master Validation Plan for Zio Monitor process validation requirements. | This master validation plan does not have specific process validation requirements for reuse PCBAs. |
| TP00638.01 | Performance Qualification (PQ) Protocol for Zio Monitor | This PQ protocol covers the end-to-end manufacturing process for Zio AT and has a step to ensure that PCBAs can be reused from an inventory management perspective. | The protocol does not have specific process validation criteria for reuse PCBAs during the PCBA testing process. |
| MVP0005.02 | Master Validation Plan Zio AT Katella Manufacturing | This is the Master Validation Plan for Zio AT process validation requirements. | This master validation plan does not have specific process validation requirements for reuse PCBAs. |
| TP00691.01 | Performance Qualification Protocol for Zio AT Manufacturing Line | This PQ protocol covers the end-to-end manufacturing process for Zio AT and has a step to ensure that PCBAs can be reused from an inventory management perspective. | The protocol does not have specific process validation criteria for reuse PCBAs during the PCBA testing process. |
| MVP0006.07 | Master Validation Plan Zio XT Katella Manufacturing | This is the Master Validation Plan for Zio XT process validation requirements. | This master validation plan does not have specific process validation requirements for reuse PCBAs. |
| TP00627.01 | Performance Qualification Protocol for Zio XT Manufacturing Line | This PQ protocol covers the end-to-end manufacturing process for Zio XT and has a step to ensure that PCBAs can be reused from an inventory management perspective. | The protocol does not have specific process validation criteria for reuse PCBAs during the PCBA testing process. |

Page 14 of 21

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Investigation | | | |
|---|---|---|---|
| **Document No.** | **Description** | **Document Summary** | **Conclusion** |
| SOP0028.03 | Process Validation | This is the overarching process validation procedure for iRhythm manufacturing process validation. | No specific requirements exist for validating reuse of PCBAs in manufacturing. |
| RSK0047.05 | Process FMEA for Zio XT Patch Assembly – FG Assembly – PCBA | This is the process FMEA for the Zio XT Patch that covers patch assembly and PCBA testing. | No specific failure modes exist for reuse of PCBAs. |
| RSK0052.03 | Process FMEA for Zio AT Patch Assembly – FG Assembly – PCBA | This is the process FMEA for the Zio AT patch and gateway that covers patch assembly, gateway assembly, and PCBA testing. | No specific failure modes exist for reuse of PCBAs. |
| RSK0057.01 | Process FMEA for Zio Monitor | This is the process FMEA for the Zio Monitor patch that covers patch assembly and PCBA testing. | No specific failure modes exist for reuse of PCBAs. |
| WRK0009.05 | Zio Monitor Functional Test | This work instruction describes the process steps for testing and programming Zio Monitor patch PCBAs. The work instruction requires operators on page 15 confirm whether the PCBA has passed or failed testing and programming. | The work instruction does not detail the specific types of test outputs that would indicate whether a reused PCBA was properly tested. |
| WRK0038.04 | Zio XT PCBA Initialize and Test | This work instruction describes the process steps for testing and programming Zio XT patch PCBAs. The work instruction requires operators on page 13 to confirm whether the PCBA has passed or failed testing and programming. | The work instruction does not detail the specific types of test outputs that would indicate whether a reused PCBA was properly tested. |
| WRK0043.05 | Zio AT Gateway PCBA Initialize and Test | This work instruction describes the process steps for testing and programming the Zio AT gateway PCBA. The work instruction requires operators on page 12 to confirm whether the PCBA has passed or failed testing and programming. | The work instruction does not detail the specific types of test outputs that would indicate whether a reused PCBA was properly tested. |
| WRK0062.04 | Zio AT Patch Functional and BLE PCBA Initialize and Test | This work instruction describes the process steps for testing and programming the Zio AT patch PCBA. The work instruction requires operators on page 15 to confirm whether the PCBA has passed or failed testing and programming. | The work instruction does not detail the specific types of test outputs that would indicate whether a reused PCBA was properly tested. |

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Investigation |
|---|
| After performing a review of all applicable documents for the root cause, "Documentation lacks criteria for reuse of PCBAs" it was determined that process validation was not performed for the reuse of PCBAs for Zio AT, Zio XT and Zio Monitor. Furthermore, Process FMEA, Process Validation SOP and PCBA testing work instructions do not have criteria for PCBA reuse. |

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Root Cause Summary |
|---|

**Machine Root Cause 1**, "Equipment for testing reused PCBAs does not verify that previous patient data was deleted."

The AT Gateway Functional Verification Tester (FVT) software SFW0064 sends the command to format the NAND, however, the FVT does not perform a verification to confirm that previous patient data was erased successfully.

**Method Root Cause 2**, "Documentation lacks validation of reuse of PCBAs."

After performing a review of all applicable documents for the root cause, "Documentation lacks criteria for reuse of PCBAs" it was determined that process validation was not performed for the reuse of PCBAs for Zio AT, Zio XT and Zio Monitor. Furthermore, Process FMEA, Process Validation SOP and PCBA testing work instructions do not have criteria for PCBA reuse.

| ACTION PLAN Correction(s) | | | | |
|---|---|---|---|---|
| **Item Number** | **Description** | **Due Date** | **Status** | **Attachment Reference** |
| Obs3-Act-01 | Develop and Implement 100% Verification of properly erased/formatted Flash memory at the Functional Verification Test Fixture for *AT Gateway PCBAs (ETS0090). This entails the following updated documents:*<br><br>RQS0069.03<br>DES0039.04<br>DES0078.03<br>SFW0070.03<br>SFW00130.03 | 30 Sep 2022 | Pending | No Attachment |
| Obs3-Act-02 | Updated RQS0069.03, Zio AT Gateway LTE FVT2 Requirements | 22 Aug 2022 | Complete | 3-Att4-RQS0069-Rev-03-ZioATGatewayLTEFVT2Requirements |
| Obs3-Act-03 | Updated DES0039.04, Gateway PCBA Manufacturing Test Firmware Interface Specification | 22 Aug 2022 | Complete | 3-Att6 DES0039-Rev-04-GatewayPCBAFirmwareInterfaceSpec |

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| | ACTION PLAN<br>Correction(s) | | | |
|---|---|---|---|---|
| **Item Number** | **Description** | **Due Date** | **Status** | **Attachment Reference** |
| Obs3-Act-04 | Updated DES0078.03, Zio AT GATEWAY LTE FVT2 Design | 22 Aug 2022 | Complete | 3-Att7-DES0078-Rev-03-ZioATGatewayLTEFVT2DesignSpec |
| Obs3-Act-05 | Updated SFW0070.03, Zio AT Gateway Manufacturing Test Firmware | 30 Sep 2022 | Pending | No Attachment |
| Obs3-Act-06 | Updated SFW0130.03, Zio AT Gateway LTE FVT2 Test Software | 30 Sep 2022 | Pending | No Attachment |
| Obs3-Act-07 | Update and execute the V&V protocols used to validate the changes to fixture software (SFW0064) and the manufacturing firmware (SFW0070) that it uses for the new verification test.<br><br>*This entails the following updated or created documents:*<br><br>VTC0078.03<br>TP00709.01<br>TP00710.01<br>TP00711.01<br>TR01601.01<br>TR01602.01<br>TR01603.01 | 16 Sep 2022 | Pending | No Attachment |
| Obs3-Act-08 | Updated VTC0078.03, Zio AT Gateway LTE FVT2 Requirements Verification Test Cases | 16 Sep 2022 | Pending | No Attachment |
| Obs3-Act-09 | Creation of TP00709.01, CAPA-2022-0013 Gateway Fixture Design Verification Test Plan | 16 Sep 2022 | Pending | No Attachment |
| Obs3-Act-10 | Creation of TP00710.01, CAPA-2022-0013 GatewayCpuCtrl and SFW0070 Software Validation Test Plan | 16 Sep 2022 | Pending | No Attachment |
| Obs3-Act-11 | Creation of TP00711.01, CAPA-2022-0013 Technical Method Validation Test Plan | 16 Sep 2022 | Pending | No Attachment |

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| ACTION PLAN Correction(s) | | | | |
|---|---|---|---|---|
| **Item Number** | **Description** | **Due Date** | **Status** | **Attachment Reference** |
| Obs3-Act-12 | Creation of TR01601.01, CAPA-2022-0013 Gateway Fixture Design Verification Test Report | 16 Sep 2022 | Pending | No Attachment |
| Obs3-Act-13 | Creation of TR01602.01, CAPA-2022-0013 GatewayCpuCtrl and SFW0070 Software Validation Test Report | 16 Sep 2022 | Pending | No Attachment |
| Obs3-Act-14 | Creation of TR01603.01, CAPA-2022-0013 Technical Method Validation Test Report | 16 Sep 2022 | Pending | No Attachment |
| Obs3-Act-15 | Update and perform manufacturing validation with appropriate IQ activities as needed for the scope of this change. *This entails the following updated documents:* TP00556.03 TR01218.02 | 30 Sep 2022 | Pending | No Attachment |
| Obs3-Act-16 | Updated TP00556.03, Installation Qualification Protocol for Zio AT Gateway LTE FVT2 | 30 Sep 2022 | Pending | No Attachment |
| Obs3-Act-17 | Updated TR01218.02, IQ Protocol Summary Report for Zio AT Gateway LTE FVT2 | 30 Sep 2022 | Pending | No Attachment |

| ACTION PLAN Corrective(s) | | | | |
|---|---|---|---|---|
| **Item Number** | **Description** | **Due Date** | **Status** | **Attachment Reference** |
| Obs3-Act-18 | **Corrective Action 1**: To ensure that previous patient data was properly erased, AT Gateway PCBA manufacturing test firmware (SFW0070) and FVT equipment software (SFW0064) will be updated to ensure that previous patient data was removed from the Gateway. | 30 Sep 2022 | Pending | No Attachment |

Page 19 of 21

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| | ACTION PLAN Corrective(s) | | | |
|---|---|---|---|---|
| **Item Number** | **Description** | **Due Date** | **Status** | **Attachment Reference** |
| Obs3-Act-19 | **Corrective Action 2**<br><br>To ensure that PCBA testing equipment will undergo proper process validation, the following actions will be taken in the form of document updates and qualifications: | 04 Nov 2022 | Pending | No Attachment |
| Obs3-Act-20 | Update SOP0028.03, Process Validation | 14 Sep 2022 | Pending | No Attachment |
| Obs3-Act-21 | Update TMP0027.01, Performance Qualification (PQ) Protocol | 14 Sep 2022 | Pending | No Attachment |
| Obs3-Act-22 | Update RSK0047.05, Process FMEA for Zio XT Patch Assembly – FG Assembly – PCBA | 13 Oct 2022 | Pending | No Attachment |
| Obs3-Act-23 | Update RSK0057.01, Process FMEA for Zio Monitor | 27 Oct 2022 | Pending | No Attachment |
| Obs3-Act-24 | Update RSK0052.03, Process FMEA for Zio AT Patch Assembly – FG Assembly – PCBA | 03 Oct 2022 | Pending | No Attachment |
| Obs3-Act-25 | Update WRK0009.05, Zio Monitor Functional Test | 16 Sep 2022 | Pending | No Attachment |
| Obs3-Act-26 | Update WRK0038.04, Zio XT PCBA Initialize and Test | 16 Sep 2022 | Pending | No Attachment |
| Obs3-Act-27 | Update WRK0043.05, Zio AT Gateway PCBA Initialize and Test | 16 Sep 2022 | Pending | No Attachment |
| Obs3-Act-28 | Update WRK0062.04, Zio AT Patch Functional and BLE PCBA Initialize and Test | 16 Sep 2022 | Pending | No Attachment |
| Obs3-Act-29 | Update TP00716.01, Process Qualification, Zio XT PCBA Reuse | 07 Oct 2022 | Pending | No Attachment |
| Obs3-Act-30 | Update TR01609.01, PQ Report, Zio XT PCBA Reuse | 20 Oct 2022 | Pending | No Attachment |
| Obs3-Act-31 | Update MVP0006.06, Master Validation Plan Zio XT Katella Manufacturing | 20 Oct 2022 | Pending | No Attachment |
| Obs3-Act-32 | Update TP00717.01, Process Qualification, Zio AT PCBA Reuse | 30 Sep 2022 | Pending | No Attachment |
| Obs3-Act-33 | Update TR01610.01, PQ Report, Zio AT PCBA Reuse | 14 Oct 2022 | Pending | No Attachment |

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

<table>
<tr><td colspan="5" align="center"><b>ACTION PLAN<br>Corrective(s)</b></td></tr>
<tr><th>Item Number</th><th>Description</th><th>Due Date</th><th>Status</th><th>Attachment Reference</th></tr>
<tr><td>Obs3-Act-34</td><td>Update TP00718.01, Process Qualification, Zio Monitor PCBA Reuse</td><td>21 Oct 2022</td><td>Pending</td><td>No Attachment</td></tr>
<tr><td>Obs3-Act-35</td><td>Update TR01611.01, PQ Report, Zio Monitor PCBA Reuse</td><td>04 Nov 2022</td><td>Pending</td><td>No Attachment</td></tr>
<tr><td>Obs3-Act-36</td><td>Update MVP0004.02, Zio Monitor Master Validation Plan</td><td>04 Nov 2022</td><td>Pending</td><td>No Attachment</td></tr>
<tr><td>Obs3-Act-37</td><td>Update TP00728, Process Qualification, Zio AT Patch PCBA Reuse</td><td>28 Oct 2022</td><td>Pending</td><td>No Attachment</td></tr>
<tr><td>Obs3-Act-38</td><td>Update TR01616, PQ Report, Zio AT Patch PCBA Reuse</td><td>11 Nov 2022</td><td>Pending</td><td>No Attachment</td></tr>
<tr><td>Obs3-Act-39</td><td>Update MVP0005.01, Master Validation Plan Zio AT Katella Manufacturing</td><td>11 Nov 2022</td><td>Pending</td><td>No Attachment</td></tr>
</table>

<table>
<tr><td colspan="2"><b>Verification of Effectiveness Plan</b></td></tr>
<tr><td>Obs3-Act-40</td><td>To ensure effectiveness of the corrective actions outlined in this response are properly implemented, the design transfer of new products Zio Monitor ME2 (PLN0225, will be evaluated for proper process validation against the updated guidance in SOP0028 Process Validation to ensure reused PCBA's were properly validated, including verification of prior data erasure.<br><br>Note: The project selected is the only project expected to align at or around the date of the effectiveness check. If additional project samples are available, they shall be included in the verification.</td></tr>
</table>

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)



699 8th Street
Suite 600
San Francisco, CA 94103

(415) 632-5700  Phone
(415) 632-5701  Fax

Customer Service
(888) 693-2401

iRhythmTech.com

*VIA Email Delivery to* ORADevices3FirmResponse@fda.hhs.gov

September 1, 2022

U.S. Food and Drug Administration
Office of Regulatory Affairs
Los Angeles District Office
19701 Fairchild
Irvine, CA 92612-2445

Dear U.S. Food and Drug Administration Office of Regulatory Affairs Representative:

iRhythm Technologies, Inc. ("iRhythm" or the "Company") is writing to provide a comprehensive response (our "Response") to the FDA Form 483, Inspectional Observations ("483") issued and Discussion Item raised in the July 25 to August 12, 2022 inspection of the Company's manufacturing facility at 6550 Katella Avenue, Cypress, California, by the U.S. Food and Drug Administration ("FDA").

We take the 483 Observations and Discussion Item as presented by the FDA Investigators (Janet Pulver and Alexandria Capuano) during their inspection very seriously. We have opened Corrective and Preventive Actions ("CAPAs") corresponding to each Observation and Discussion Item. We are strongly committed to improving and sustaining compliance.

This inspection has brought into sharper focus areas that I and other members of iRhythm's new leadership intend to prioritize consistent with our strong commitment to high-quality technologies and services. We also view this Response as an opportunity to provide important context regarding the Company, iRhythm's status as both a medical device manufacturer and an independent diagnostic testing facility ("IDTF"), and recent leadership changes.

### About iRhythm

iRhythm is a digital healthcare company serving physicians and their patients through services that include mobile cardiovascular telemetry ("MCT"). Like many manufacturers of MCT technologies, iRhythm supports physician and patient use of its technology – the Zio AT System – through the Company's Medicare-enrolled IDTF and Certified Cardiographic Technicians, who perform the technical monitoring services associated with a physician's order for MCT monitoring. iRhythm's dual status – that is, as both a medical device manufacturer and an IDTF – requires the Company to comply with federal and state laws, regulations, and standards that independently govern our manufacturing processes and clinical

1

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

operations. Critically, iRhythm's clinical operations must be viewed through the lens of the laws and rules governing IDTFs.[1]

The inspection highlighted an opportunity for iRhythm to update the labeling of the Zio AT System to distinguish more clearly the ***Zio AT System*** (also referred to in our Response as the product or medical device) from MCT ***monitoring services*** (also referred to in our Response as the IDTF services). MCT monitoring services are diagnostic medical procedures that may use the Zio AT System and be performed by iRhythm's IDTF, when ordered by the patient's treating physician. For patients ***not*** suspected of having life-threatening arrhythmias, but who are suspected of having infrequent, difficult-to-detect, or asymptomatic arrhythmias, MCT technologies and services offer physicians an important clinical option that monitors ambulatory patients for an extended period of time and provides high-quality electrocardiogram ("ECG") recordings. MCT technologies and services work together to offer monitoring in a way that reduces interference with the patient's day-to-day activities and can facilitate patient compliance and the physician's diagnosis and treatment of cardiac rhythm disorders for his or her patients.

The product summary description that follows – as distinguished from the description of MCT monitoring services – previews our planned updates, which align with our enclosed Response, specifically on Observations 1A and 1B and the Discussion Item from our recent inspection.

| The Zio AT System | American Medical Association MCT Monitoring Services |
|---|---|
| The Zio AT connected continuous ambulatory monitoring system ("Zio AT System") is a prescription-only, ambulatory ECG monitoring system. It consists of three primary components: (1) the Zio AT ***patch*** ECG monitor that records the electrical signal from the heart continuously through the entire patient wear period, (2) the Zio AT wireless ***gateway*** that provides connectivity between the patch and the Zio ECG Utilization Software ("ZEUS") System, and (3) the ***ZEUS System***, which supports the capture and analysis of ECG data, including specific arrhythmia events detected by the ZEUS algorithm. | MCT monitoring services are diagnostic medical procedures that combine real-time ***data analysis of ECG data*** and ***attended monitoring by IDTFs' Certified Cardiographic Technicians***, who review potential arrhythmia events, generate reports for medical review, and notify physicians of potential urgent or emergent arrhythmias according to the ordering physician's prescribed protocol. MCT monitoring services are outpatient procedures and are not appropriate for patients suspected of life-threatening arrhythmias or who require inpatient monitoring. MCT monitoring services may be appropriate for patients suspected of having infrequent, difficult-to-detect, or asymptomatic arrhythmias and for whom monitoring over an extended period is necessary to diagnose cardiac rhythm disorders. |
| The Zio AT patch is a wearable, single-use device applied to the patient's chest where it senses and records the patient's ECG data without requiring any patient interactions or manipulations. During manufacturing, | MCT monitoring services may use the Zio AT System and be performed by |

---

[1] See, e.g., 42 C.F.R. Sections 410.32 and 410.33.

2

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)

| The Zio AT System | American Medical Association MCT Monitoring Services |
|---|---|
| each patch is paired with a dedicated Zio AT wireless gateway, which is similar in size to a smart phone and may also be worn by a patient. When in proximity to the Zio AT patch and connected to cellular reception, the gateway wirelessly transmits the patient's ECG data to the ZEUS System for analysis by the arrhythmia detection algorithm.<br><br>Additionally, patients may indicate symptomatic events by pressing a button on the patch, which marks the continuous ECG record for further review and analysis. | iRhythm's IDTF. iRhythm's **IDTF is a Medicare-enrolled provider**, and its Certified Cardiographic Technicians perform the technical monitoring services associated with MCT monitoring services. Upon receipt of a valid order from the treating physician, iRhythm's Certified Cardiographic Technicians review the output of the ECG Analysis Software to review potential arrhythmia events and generate reports that are posted to a secure online portal for medical review by the ordering physician. In accordance with the ordering physician's notification protocol (the "MDN"), the Certified Cardiographic Technicians may also contact the physician and/or patient directly in the event of detecting a potentially urgent or emergent arrhythmia. |

We also want to bring to your attention two important phrases that the American Medical Association ("AMA") uses to describe MCT monitoring services and that are relevant to our Response that follows: "real-time data analysis of ECG data" and "immediate notification criteria."

Regarding ECG data capture, unlike "Holter" and "Event" technologies, which support different cardiovascular monitoring services,[2] MCT technologies "**always** have internal electrocardiogram (ECG) analysis algorithms designed to detect major arrhythmias,"[3] which the AMA describes in the MCT monitoring CPT codes as: "concurrent computerized **real time data analysis**."[4] According to the AMA, this terminology accurately describes the technical capabilities of the Zio AT System: a monitoring **technology** that captures beat-to-beat ECG data and uses algorithms to **concurrently detect** arrhythmias (for subsequent review). Importantly, "real time **data analysis**" should not be conflated with "real time **monitoring**," which would incorrectly suggest that Certified Cardiographic Technicians at an IDTF are concurrently and continuously monitoring the ECG data. iRhythm intentionally uses the phrase "**near**-real time" to qualify the Company's IDTF monitoring services – which are not equivalent to inpatient or emergency real-time monitoring – while still leveraging the AMA's terminology,

---

[2] Holter monitoring is described by CPT codes 93224 – 93227 (for wear up to 48 hours); 93241 – 93244 (for wear more than 48 hours, up to 7 days); and 93245 – 93248 (for wear more than 7 days, up to 15 days). Event monitoring is described by CPT codes 93268 and 93270 – 93272. *See* AMA, CPT 2022: Professional Edition (4th ed. 2022).

[3] AMA CPT Assistant, Vol. 21, Iss. 10 (October 2011) (emphasis added).

[4] CPT Codes 93228 and 93229. *See* AMA, CPT 2022: Professional Edition (4th ed. 2022).

3

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)

which accurately describes the timely computerized data analysis that occurs with use of the Zio AT System.[5]

The AMA also uses the phrase "immediate notification criteria" to describe the physician-prescribed protocol that triggers a Certified Cardiographic Technician to notify a treating or on-call physician outside the standard reporting framework (e.g., daily and/or end-of-monitoring reports). Notably, the AMA uses this phrase in the context of attended monitoring – that is, for Event and MCT monitoring, where technicians review ECG data *during* the patient wear period – *and* unattended monitoring – that is, for Holter monitoring, where a technician reviews ECG data *after* the patient wear period. For this reason, iRhythm incorporates this language into its own physician notification form (sometimes referred to as the MDN or the MD Notification form).

To be clear, MCT monitoring is neither an emergency service nor is it equivalent to inpatient telemetry monitoring. As the name suggests, MCT monitoring is an ambulatory, outpatient diagnostic medical procedure, contraindicated for critical care patients or patients suspected of having life-threatening arrhythmias. We are committed to enhancing our labeling and our IDTF's clinical operations materials consistent with the medical context in which our MCT technologies and services are offered. Our Response explains how we plan to act on this commitment, as we strive to meet our regulatory obligations.

**Our Commitment**

We are fully committed to the Company's compliance with all FDA and CMS requirements, and to continuously improve the Company's FDA- and CMS-regulated functions, with additional enhancements to drive meaningful progress. On behalf of the Company's Board of Directors (the "Board") and the leadership team, I want to note the Company's commitment to Compliance with Quality, Regulatory and Legal Requirements has been enhanced with the following new additions to the Company's leadership team:

- The Board appointed me as the Company's President and Chief Executive Officer in October 2021. Following my appointment in 2021, the following changes to the Company's leadership team were implemented under my leadership:
  - Patrick Murphy was appointed as the Chief Legal Officer, and Mr. Murphy was subsequently appointed as the Executive Vice President of Quality and Regulatory, Market Access and Government Affairs, as well as the Data Privacy Officer. Prior to his role at iRhythm, Mr. Murphy previously served as Chief Legal Officer of Dexcom, Inc.
  - Dr. Mintu Turakhia was appointed as the Company's Chief Medical Officer and Chief Scientific Officer. Dr. Turakhia has been a

---

[5] The type of conflation that we're trying to avoid is demonstrated in, for example, the Remote Cardiac Monitoring Assessment report issued by HHS' Agency for Healthcare Research and Quality. *See, e.g.*, HHS, Agency for Healthcare Research and Quality, Remote Cardiac Monitoring Technology Assessment (Dec. 12, 2007), *available at*
 https://www.cms.gov/Medicare/Coverage/DeterminationProcess/downloads/id51ta.pdf (referencing "real-time continuous attended ***cardiac monitoring systems***" and "real-time continuous attended ***cardiac monitoring***" to describe MCT technologies and services, respectively).

4

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)

practicing clinical cardiac electrophysiologist for over 14 years and is a tenured Professor of Medicine at the Stanford University School of Medicine and the Founding Director of the Stanford Center for Digital Health. Prior to his role at iRhythm, Dr. Turakhia was Chief of Cardiac Electrophysiology at the VA Palo Alto Health Care System. In addition to performing invasive procedures such as catheter ablation and device implantation to treat heart rhythm disorders, Dr. Turakhia was director of the hospitals' ambulatory ECG monitoring program and developed all processes and protocols. In this role, he was also responsible for quality assurance and safety of the program. He has personally interpreted over 15,000 ambulatory ECG reports, including many from mobile cardiac telemetry devices. In his academic role, he led a large multidisciplinary research program in heart rhythm disorders and has over 250 peer-reviewed publications on real-world evidence, clinical trials, regulatory science, medical device regulation, and digital health.

o Sumi Shrishrimal was appointed as the Company's Executive Vice President, Chief Risk Officer, with responsibility for the Internal Audit, Corporate Compliance, and Enterprise Risk functions, reporting directly to the Chairman of the Audit Committee of the Board. Prior to her role at iRhythm, Ms. Shrishrimal was the Senior Vice President, Chief Risk Officer at Dexcom, Inc.

In responding to these 483 Observations, the iRhythm team has taken a thoughtful and thorough approach and developed commitments that we believe will be meaningful and serve the physicians and patients who stand to benefit from MCT monitoring services.

iRhythm is committed to the completion of the outlined actions in a comprehensive and systemic manner. We will provide monthly updates to FDA beginning October 2022 to track our progress, and will continue to provide updates until the effectiveness checks we have described are successfully completed. In the intervening time, our monthly updates we will provide evidence of completed actions as they are executed.

**To facilitate mutual understanding, we respectfully request a meeting to discuss our Response. We also believe it would be beneficial and request including officers from the Center for Devices and Radiological Health's Division of Health Technology 2 A (Cardiac Electrophysiology, Diagnostics, and Monitoring Devices - External Heart Rhythm and Rate Devices) if you deem appropriate to facilitate your review of this Response and our corrective actions.**

In the event that FDA does not agree that the meeting we have requested would be helpful, we welcome feedback on our action plan through email or by phone, and would be glad to address any questions or concerns from the FDA.  The official contact for correspondence with the FDA, as indicated in our establishment registrations, remains Mazi Kiani, iRhythm's Senior Vice President of Quality and Regulatory. Please do not hesitate to contact Mr. Kiani at 949-413-2147 or via email at mazi.kiani@irhythmtech.com, and he will keep me informed.

5

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)

Finally, iRhythm respectfully notes that its Response (including all documents and attachments) contain trade secret and confidential commercial information as well as personal information (especially in light of iRhythm's status as an IDTF and Covered Entity as defined under HIPAA) exempt from disclosure under the Freedom of Information Act and its implementing regulations. *See* 5 U.S.C. §§ 552(b)(4), (6), 21 C.F.R. Part 20, 42 C.F.R. Part 5. We request that you take all available steps to protect the important privacy interests served by these FOIA exemptions, and iRhythm requests that it be given an opportunity to perform the appropriate redactions in the event that the FDA receives a request to release this information and is considering its release. In the event that FDA shares any records with CMS or other HHS entity subject to 42 C.F.R. Part 5, pursuant to 45 C.F.R. § 5.42(a), we also request notification of any FOIA or similar requests received by such entity prior to its disclosure of any information contained herein.

Sincerely,

Quentin Blackford
President and Chief Executive Officer
**iRhythm Technologies, Inc.**

cc:    Patrick Murphy
       Chief Legal Counsel and EVP of Quality & Regulatory,
       Market Access & Government Affairs
       **iRhythm Technologies, Inc.**

       Mazi Kiani
       SVP, Quality & Regulatory
       **iRhythm Technologies, Inc.**

       Rebecca Jones McKnight
       Nancy Bonifant Halstead
       **Reed Smith LLP**

6

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

**ZIO** BY IRHYTHM

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

---

| **OBSERVATION #4** |
|---|

---

| **Observation as Stated in 483 Observations** |
|---|

*Procedures for receiving, reviewing, and evaluating complaints by a formally designated unit have not been adequately established.*

*Specifically, review of your SalesForce Customer Relationship Management system revealed records ("ZTickets") dated January 2020 - July 2022 documenting alleged deficiencies in reliability or performance of your Zio AT Cardiac Monitoring System that your firm failed to categorize as complaints. For example, the following deficiencies that can result in delayed transmission to clinicians of critical or life-threatening arrhythmias were not categorized as complaints:*

- *2,870 ZTickets reporting electrode leads status as "patch is in leads off condition" indicating no connectivity of the leads with the body (e.g., ZTickets numbers: 5721381, 06624635, and 07381340, dated 09/08/2020, 02/01/2021, and 05/07/2021)*

- *18,304 automated z-tickets for Gateway Function errors documenting that the Gateway has gone 4 or 24 consecutive hours without communicating with the Zues Servers and unable to transmit data (e.g., ZTickets numbers: 08845952, 09423530, and 09467016, dated 10/28/2021, 01/12/2022, and 01/18/2022, respectively)*

---

| **Background** |
|---|

For clarification and comprehension of iRhythm's processes, the following definitions are provided:
1. Casing. Combination of values selected in the Zticket Reason, Zticket Sub-Reason, and Zticket Sub-Reason Details used to triage and document information in salesforce.
2. SFDC: "Salesforce dot com" Customer relationship management (CRM) System used by iRhythm to manage internal and external customer interactions.
3. Ztickets- (Zio)tickets used in Salesforce to track communication/ issue / interaction with internal and external customers to closure. Each device (serial number) may have multiple Ztickets associated with it.

iRhythm's services require numerous touchpoints with patients, healthcare providers (HCPs), devices, and technicians throughout the duration of cardiac monitoring.

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

R154

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Background |
| --- |

These touchpoints include things like device registration, account onboarding, billing questions, patient feedback, or even shipment tracking. These customer care activities, along with approximately 250 other categories and sub-categories, are created in Salesforce and identified as *Ztickets*.

In addition to external sources of information (such as patient or HCP contacts), iRhythm also observes the progress of each patient's ECG monitoring service with internal information from the system/software, which may result in auto-generated service tickets for follow-up. This internal information allows Customer Care to proactively follow up with a patient or HCP prior to the patient or HCP reaching out to iRhythm. This communication is documented in Ztickets as "Service Monitoring."

While the vast majority of Ztickets generate information that is not "alleging" even a possible deficiency or problem, there are specific categories of Ztickets that are internally treated as "complaints" and routed accordingly. Even outside of these designated Zticket categories, all iRhythm employees, representatives, and distributors are responsible for routing *any type of complaint from any source* to Customer Care **within 24 hours of becoming aware of the issue**. *See SOP0021.*

Auto-generated Ztickets are not typically related to product issues. Among the "Service Monitoring" category of Ztickets are:

- Service Monitoring > Gateway function > Suspected Leads Off
  - Reasons for proactive auto-generated system ticket: User may have been instructed by their physician to remove the Zio AT patch (i.e., prescription shorter than 14 days), or the user decided to intentionally remove the Zio AT patch.
- Service Monitoring > Gateway function > No Connection 4 Hours
  - Reasons for proactive auto-generated system ticket: User may be flying and placed their gateway in airplane mode, or user has intentionally been away from their gateway for over 4 hours (e.g., went out and left the gateway at home).

It is possible that a complaint would emerge from a Service Monitoring Zticket.

A *complaint* is any written, electronic, or verbal communication indicating an alleged deficiency in identity, quality, durability, reliability, safety, effectiveness, or performance of any product manufactured or provided by iRhythm after it is released for distribution. Once notified of a complaint, Customer Care Service Agents are responsible for recording complaint details, customer communication acknowledgment of reported complaint, and directions of use within the approved device labeling.

Once Customer Care reaches out to the user and confirms a failure such as a deficiency in reliability or performance of Zio AT, a **product complaint Zticket** is opened in Salesforce by the Customer Care agent. If the information received by the Customer Care agent does not constitute a potential alleged deficiency, the inquiry is resolved without a Zticket complaint. *See Figure 1.*

Page 2 of 9

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Background |
|---|

**Figure 1**

*Workflow for a Service Monitoring Zticket for Customer Care*



Once a **product complaint Zticket** is created, it is given a complaint category based on a risk-based approach. Criteria for which constitutes a complaints and how it is "cased" is documented in SOP0034 rev. 08. Once a Zticket has been identified as a complaint, the complaint categorization is defined as follows (DOP0081 rev. 10 *Complaint Handling Process Guidelines):*

- o **Category 1:** Lowest risk complaints, where the issue was previously investigated, requires no new investigations/evaluations and the assignable root cause has already been identified. This category is tracked and trended to ensure it does not trigger pre-established limits. FDA MDR or Vigilance reporting is not triggered. (Note: Category 1 complaints will never have an injury or death associated with the event; nor will they have a malfunction that would likely cause or contribute to death or serious injury should it recur.)
- o **Category 2:** Issue may require further investigation/evaluation in order to determine root cause. It could be a new issue or the assignable root cause not directly linked to a previous investigation. MDR or Vigilance reporting is most likely not triggered but shall be evaluated.
- o **Category 3**: Higher risk complaints, which require further investigation/evaluation. MDR or Vigilance reporting OR review by Medical Director may be triggered per SOP0023 (Note: Complaints with reports of serious injury or death shall be considered in this category.)

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| **CAPA-2022-0023** |
|---|
| CAPA-2022-0023 was opened August 17, 2022 to address the deficiency identified in FDA **Observation #4**.<br><br>FDA **Observation #2**, associated with a subset of complaints that may be reportable as MDRs, is being addressed under CAPA-2022-0018.<br><br>Once the CAPA investigation and corrective action phase is complete and approved within the internal system, a copy of the CAPA file will be included for FDA review in our monthly status updates. |

| **Containment** |
|---|
| A remedial action plan will be proposed in the correction section of this response. |

| **Risk Assessment** |
|---|
| The scope of this investigation and associated CAPA-2022-0023 is related to compliance to 21 CFR Part 803 and 21 CFR Part 820.198. This topic does not directly impact the product; however, information obtained as a result of this investigation and associated actions may impact the risk assessments for the product. As part of this CAPA, a remediation effort will occur to retrospectively review complaints per the newly established criteria defined in the corrective actions. The outcome of this activity may impact the risk management files. The risk assessment for CAPA-2022-0023 will recur post this remediation activity to ensure proper evaluation of product risk associated with Zio AT and ZEUS. *See Corrections and Corrective Action section of this response.* |

| **Investigation** |
|---|
| iRhythm's established process and procedures include a comprehensive method for capturing potential issues concerning iRhythm Products. The process uses a risk-based approach to ensure that allegations of deficiency are documented and investigated as complaints. Information that is automatically sent via Salesforce to Customer Care is evaluated for complaint reporting, Ztickets are created when a deficiency is alleged either by internal data (system generated) or external information (reports of complaints).<br><br>A historical review of procedures was performed, and it was noted that on April 26, 2019, the "Service Monitoring" Zticket category was created. This category is used for Customer Care to reach out to users and/or HCPs. To clarify, there is no medical device "service" (per 21CFR 820.200) provided to users. Since April 2019, there have been multiple changes to add and remove casings within the |

Page 4 of 9

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

| Investigation |
| --- |

"Service Monitoring" category; however, the overall category has remained constant—where service monitoring Ztickets are triggered from information derived from iRhythm's internal system.

A *"five why"* analysis was used to investigate the deficiency related to the casing of Zio AT Service Monitoring ZTickets, and a detailed review of the current revision of SOP0034, *Customer Care Activities* and SOP0021 *Complaint Handling*, was conducted:

- Why were the Service Monitoring Ztickets Created in Salesforce?
  - Ztickets are created in SFDC when there is information from the internal software system, ZEUS, for Customer Care to:
    - Reach out to the user regarding the information from the system (e.g., A device that was successfully activated but not yet registered by the HCP);
    - Document follow-up information from the internal system (e.g., temporary interruption of external cellular service, gateway on airplane mode, patient away from gateway for longer than 4 hours, etc.); or
    - Case the information as a customer complaint if the information gathered indicates an alleged deficiency.

- Why are Service Monitoring Ztickets not considered to be complaints upon receipt of the information?
  - iRhythm believed that this information does not always constitute a potential alleged deficiency. It is typically autogenerated by a software, pending evaluation by Customer Care. However, this process is not clearly defined.

- Why is the process not clearly defined?
  - The criteria for the initiation of complaints from service monitoring Ztickets was misinterpreted.

- Why was there a misinterpretation of the complaint requirements?
  - Confirmation of issue was considered the "evaluation" (per 820.198) of the allegation, and formal complaints were opened once this evaluation was completed. However, this evaluation was not formally documented.

- Why was the evaluation of complaints not formally documented?
  - Lack of clarity in the procedure where formal evaluation is not required and confirmation of issue is used as the gate of whether an internal alert is a complaint or not.

Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| Investigation |
| --- |
| Additional Finding:<br><br>An additional finding was confirmed when performing the above investigation. The content of some of the Ztickets that were noted as part of the observation were not automatically created and were incorrectly cased by Customer Care agents.<br><br>The issue is not related to the procedural use of Service Monitoring as a case reason. However, implementation of a corrective action concurrent with addressing the deficiency in **Observation #4** will be implemented. |

| Root Cause Summary |
| --- |
| A detailed review of SOP0021 rev. 07, SOP0034 rev. 08, and DOP0081 rev. 10 was conducted, and subject matter experts were interviewed to reach root cause. The root cause of the deficiency concerns the evaluation of information automatically generated from the system to determine whether it should be classified as a complaint (i.e., whether it includes a potential alleged deficiency). |

| ACTION PLAN<br>Correction(s) | | | | |
| --- | --- | --- | --- | --- |
| **Item Number** | **Description** | **Due Date** | **Status** | **Attachment Reference** |
| Obs4-Act-01 | Update SOP0034, rev. 08 to 09 Customer Care Activities to include emphases on the evaluation of internal information that may meet the definition of a complaint. | 01 Sep 2022 | Complete | 4-Att01-SOP0034-Rev-09-CustomerCare-Redlines<br><br>4-Att02-SOP0034-Rev-09-CustomerCare-Final<br><br>4-Att03-SOP0034-Rev-09-Training-Status |
| Obs4-Act-02 | Perform training on updated SOP0034, rev. 09 for Customer Care employees. | 30 Sep 2022 | Pending | No Attachment |

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| ACTION PLAN Correction(s) | | | | |
|---|---|---|---|---|
| **Item Number** | **Description** | **Due Date** | **Status** | **Attachment Reference** |
| Obs4-Act-03 | **Remedial Action:**<br><br>Conduct a retrospective review of Ztickets identified from CA1b, found to be sourced from internal information, and assess that they have been correctly escalated to complaints. If not, complaint files will be opened and assessed for MDR reportability per 21CFR 820.803.<br><br>a) The period under review will address all Ztickets since April 26, 2019, since the casing "Service Monitoring" was created.<br><br>b) The remediation will be conducted according to a protocol to be written and released by October 30, 2022.<br><br>*Note: Due to the resource-intensive nature of this action, additional resources will need to be obtained first and training performed, in order avoid negatively impacting the ongoing (current and future) complaints processing and timely MDR reporting. The remediation timeline accounts for approximately one month to secure additional resources and is estimated to the best of the CAPA owner's current ability. The date range of April 2019 to present provides 3.5 years of remediation in alignment with process changes associated with the complaint handling process (in April 2019), where complaint categorization criteria was modified.* | TBD, based on item 6b to define the remediation process | Pending | No Attachment |

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| ACTION PLAN Correction(s) | | | | |
|---|---|---|---|---|
| **Item Number** | **Description** | **Due Date** | **Status** | **Attachment Reference** |
| Obs4-Act-04 | Based on the remedial action performed in item #3 above, review the Zio AT risk management files (Hazard Analysis and FMEAs) to ensure that the severity of harm and probability of occurrence ratings are properly aligned with the MDR file data and account for foreseeable misuse. | 28 Feb 2023 | Pending | No Attachment |

| ACTION PLAN Corrective Action(s) | | | | |
|---|---|---|---|---|
| **Item Number** | **Description** | **Due Date** | **Status** | **Attachment Reference** |
| Obs4-Act-05 | Analyze all Zticket categories from SOP0034 rev. 09, and clearly identify:<br><br>a) Casings that should be moved into the complaint category, and<br><br>b) Casings with sources from internal system information. | 30 Sep 2022 | Pending | No Attachment |
| Obs4-Act-06 | Update Salesforce to include the following:<br><br>a) Correctly categorize the casing from action CA1a, and<br><br>b) Add a section in Ztickets where Customer Care can indicate if information received from the system needs to become a complaint (add logic/ automation in SFDC). | 30 Oct 2022 | Pending | No Attachment |

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**

**iRhythm Technologies, Inc. – FDA Inspection Response (FEI #3021769057)**

| | ACTION PLAN Corrective Action(s) | | | |
|---|---|---|---|---|
| **Item Number** | **Description** | **Due Date** | **Status** | **Attachment Reference** |
| Obs4-Act-07 | Revise and release updates of SOP0034, rev. 09 to 10 upon release of the Salesforce revision discussed in CA2.<br><br>*Because the changes to SOP0034 are dependent upon an update to the Salesforce ticketing system, it is critical to align the procedural update with the release of the revised software tool.* | 30 Oct 2022 | Pending | No Attachment |
| Obs4-Act-08 | Perform classroom training for SOP0034 rev. 10 Customer Care Activities for all Customer Care and Post Market teams immediately upon release of revisions of procedures. | 30 Oct 2022 | Pending | No Attachment |
| Obs4-Act-09 | Implement a SFDC Change Control Board to review to all changes to Zticket Template/ forms to ensure that any future updates are aligned with the definition of a complaint. | 30 Dec 2022 | Pending | No Attachment |

| **Verification of Effectiveness Plan** | |
|---|---|
| Obs4-Act-10 | Three months after the completion of the last corrective action planned an internal audit of the process shall occur by an outside auditor (regulatory consultant or consulting firm) with appropriate auditor certifications and expertise and experience with 21 CFR 820 topics. This specific audit shall be scoped to the complaint handling process as it relates to allegations of deficiency in iRhythm products. Verification of effectiveness of Zticket escalation to the complaint handling system will be defined upon completion of the remediation protocol.<br><br>Sampling Plan: At a minimum, samples of 59 records to review, providing a 95% confidence and 95% reliability |

**Contains Confidential Commercial and Private Information Exempt from Disclosure Under FOIA**