# EXHIBIT 15

# UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## FORM 10-K

**(Mark One)**

☒ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the fiscal year ended December 31, 2022**
**OR**

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934 FOR THE TRANSITION PERIOD FROM                TO**

**Commission File Number 001-37918**

# iRhythm Technologies, Inc.
### (Exact name of Registrant as specified in its Charter)

| | |
|---|---|
| **Delaware** | **20-8149544** |
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |
| **699 8th Street, Suite 600** | |
| **San Francisco, California** | **94103** |
| (Address of principal executive offices) | (Zip Code) |

**Registrant's telephone number, including area code: (415) 632-5700**

Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Trading Symbol | Name of each exchange on which registered |
|---|---|---|
| Common Stock, Par Value $.001 Per Share | IRTC | The Nasdaq Stock Market |

Securities registered pursuant to Section 12(g) of the Act: **None**

Indicate by check mark if the Registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act. Yes ☒ No ☐

Indicate by check mark if the Registrant is not required to file reports pursuant to Section 13 or 15(d) of the Act. Yes ☐ No ☒

Indicate by check mark whether the Registrant: (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the Registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☒ No ☐

Indicate by check mark whether the Registrant has submitted electronically every Interactive Data File required to be submitted pursuant to Rule 405 of Regulation S-T (§232.405 of this chapter) during the preceding 12 months (or for such shorter period that the Registrant was required to submit and post such files). Yes ☒ No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K (§229.405) is not contained herein, and will not be contained, to the best of Registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. ☐

Indicate by check mark whether the Registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, a smaller reporting company, or an emerging growth company. See the definition of "large accelerated filer", "accelerated filer", "smaller reporting company," and "emerging growth company" in Rule 12b-2 of the Exchange Act. (Check one):

| | | | |
|---|---|---|---|
| Large accelerated filer | ☒ | Accelerated filer | ☐ |
| Non-accelerated filer | ☐ | Small reporting company | ☐ |
| Emerging growth company | ☐ | | |

If an emerging growth company, indicate by check mark if the Registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. ☐

Indicate by check mark whether the registrant has filed a report on and attestation to its management's assessment of the effectiveness of its internal control over financial reporting under Section 404(b) of the Sarbanes-Oxley Act (15 U.S.C. 7262(b)) by the registered public accounting firm that prepared or issued its audit report. ☒

If securities are registered pursuant to Section 12(b) of the Act, indicate by check mark whether the financial statements of the Registrant included in the filing reflect the correction of an error to previously issued financial statements.

Indicate by check mark whether any of those error corrections are restatements that required a recovery analysis of incentive-based compensation received by any of the Registrant's executive officers during the relevant recovery period pursuant to §240.10D-1(b). ☐

Indicate by check mark whether the Registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act). Yes ☐ No ☒

The aggregate market value of the voting and non-voting common equity held by non-affiliates of the Registrant, based on the closing price of the shares of common stock on The Nasdaq Stock Market LLC on June 30, 2022, was approximately $3.2 billion.

The number of shares of Registrant's Common Stock outstanding as of February 16, 2023, was 30,216,279.

### DOCUMENTS INCORPORATED BY REFERENCE:

Portions of the information called for by Part III of this Form 10-K is hereby incorporated by reference from the definitive Proxy Statements for our annual meeting of stockholders, which will be filed with the Securities and Exchange Commission not later than 120 days after December 31, 2022.

iRhythm00141800

**Table of Contents**

| | | Page |
|---|---|---|
| **PART I** | | |
| Item 1. | Business | 5 |
| Item 1A. | Risk Factors | 24 |
| Item 1B. | Unresolved Staff Comments | 53 |
| Item 2. | Properties | 53 |
| Item 3. | Legal Proceedings | 53 |
| Item 4. | Mine Safety Disclosures | 54 |
| | | |
| **PART II** | | |
| Item 5. | Market for Registrant's Common Equity, Related Stockholder Matters and Issuer Purchases of Equity Securities | 55 |
| Item 6. | [Reserved] | 56 |
| Item 7. | Management's Discussion and Analysis of Financial Condition and Results of Operations | 56 |
| Item 7A. | Quantitative and Qualitative Disclosures About Market Risk | 66 |
| Item 8. | Financial Statements and Supplementary Data | 68 |
| Item 9. | Changes in and Disagreements with Accountants on Accounting and Financial Disclosure | 102 |
| Item 9A. | Controls and Procedures | 103 |
| Item 9B. | Other Information | 103 |
| Item 9C | | |
| | Disclosure Regarding Foreign Jurisdictions that Prevent Inspections. | 103 |
| | | |
| **PART III** | | |
| Item 10. | Directors, Executive Officers and Corporate Governance | 104 |
| Item 11. | Executive Compensation | 104 |
| Item 12. | Security Ownership of Certain Beneficial Owners and Management and Related Stockholder Matters | 104 |
| Item 13. | Certain Relationships and Related Transactions, and Director Independence | 104 |
| Item 14. | Principal Accounting Fees and Services | 104 |
| | | |
| **PART IV** | | |
| Item 15. | Exhibits, Financial Statement Schedules | 105 |
| Item 16. | Form 10-K Summary | 107 |
| | Signatures | 108 |

iRhythm00141801

*Healthcare Reform*

Changes in healthcare policy could increase our costs and subject us to additional regulatory requirements that may interrupt commercialization of our current and future solutions. The Affordable Care Act ("ACA") substantially changed the way healthcare is financed by both governmental and private insurers, and significantly impacts our industry. Any changes to, or repeal of, the ACA may have a material adverse effect on our results of operations.

Additionally, for out-of-network or cash pay patients, we may be subject to state and federal surprise billing laws that impose limits on amounts that can be charged to such patients and/or the amount we can receive for out-of-network services from commercial payors. One such law, the federal No Surprises Act, requires covered providers to provide "good faith estimates" to patients and establishes a detailed and potentially costly independent dispute resolution process governing fee disputes with those patients. These laws and regulations may change, and additional implementation regulations are expected for the No Surprises Act, and we anticipate these requirements may apply to our business in the future.

We are subject to risks related to the U.S. fraud and abuse laws and other healthcare compliance requirements described above, as well as others that are or may be adopted in future. For further details on these risks, see "Risk Factors," below.

### U.S. Food and Drug Administration

Because we develop and manufacture the medical device technology used in the Zio Services (the hardware and software elements that FDA regulates as "devices"), we are subject to extensive and ongoing regulation by the FDA under the Federal Food, Drug, and Cosmetic Act ("FD&C Act") and its implementing regulations, as well as other federal and state regulatory bodies in the United States. The laws and regulations govern, among other things, product design and development, preclinical and clinical testing, manufacturing, packaging, labeling, storage, recordkeeping and reporting, clearance or approval, marketing, distribution, promotion, import and export, and post-marketing surveillance and associated regulatory reporting.

Most Class II devices, including the Zio patches and the ZEUS System, require 510(k) clearance from the FDA in order to be marketed in the United States. A 510(k) submission must demonstrate that the device is substantially equivalent to a device legally in commercial distribution in the United States. After clearance, changes made to devices must be evaluated on an ongoing basis, and may trigger the need for additional 510(k) clearances or – depending on the nature of the change – might require a higher level of FDA review (through the de novo premarket approval ("PMA") process). To date, our product changes have been managed within the 510(k) framework and we have not been required to provide clinical data to support these 510(k) submissions and clearances.

After a device is placed on the market, numerous regulatory requirements continue to apply. These include:

- the FDA's QSR, which requires manufacturers, including their suppliers, to follow stringent design, testing, control, documentation, and other quality assurance procedures during all aspects of the product lifecycle, including the manufacturing process;

- labeling regulations and FDA prohibitions against the promotion of products for uncleared, unapproved or off-label uses, including parameters around manufacturer communications with payors and healthcare professionals;

- medical device reporting regulations, which require that manufacturers report to the FDA if their device may have caused or contributed to a death or serious injury or malfunctioned in a way that would likely cause or contribute to a death or serious injury if the malfunction were to recur;

- medical device recalls, which require that manufacturers report to the FDA any recall of a medical device, provided the recall was initiated to either reduce a risk to health posed by the device, or to remedy a violation of the FD&C Act caused by the device that may present a risk to health; and

- post-market surveillance regulations, which apply when necessary to protect the public health or to provide additional safety and effectiveness data for the device.

iRhythm00141821

After a device receives 510(k) clearance or PMA approval, any modification that could significantly affect its safety or effectiveness, or that would constitute a major change in its intended use, performance, or functionality may require a new clearance or approval. The FDA requires each manufacturer to make this determination initially, but the FDA can review any such decision and can disagree with a manufacturer's determination. If the FDA disagrees with the determination not to seek a new 510(k) clearance or PMA approval, the FDA may retroactively require a new 510(k) clearance or PMA approval. The FDA could also require a manufacturer to cease marketing and distribution and/or recall the modified device until 510(k) clearance or PMA approval is obtained. Also, in these circumstances, the manufacturer may be subject to significant regulatory fines, penalties, and other enforcement actions, such as warning letters.

We have registered appropriate facilities with the FDA as a medical device specification developer, manufacturer, or designated complaint handling unit. We have also obtained a manufacturing license from the California Department of Public Health ("CDPH"). The FDA and CDPH have broad post-market and regulatory enforcement powers. We are subject to unannounced inspections by the FDA and the Food and Drug Branch of CDPH to determine our compliance with the QSR and other regulations, and these inspections may include the manufacturing facilities of our suppliers.

Failure to comply with applicable regulatory requirements can result in enforcement action by the FDA, which may include any of the following sanctions:

- warning letters, fines, injunctions, consent decrees, and civil penalties;

- repair, replacement, refunds, recall, or seizure of our products;

- operating restrictions, partial suspension, or total shutdown of production;

- refusing our requests for 510(k) clearance or PMA approval of new products, new intended uses, or modifications to existing products;

- withdrawing 510(k) clearance or PMA approvals that have already been granted; and

- criminal prosecution.

*Privacy and Security Regulation*

Our business is subject to foreign, federal, and state privacy and security laws concerning the collection, use, analysis, retention, storage, protection, transfer, disclosure, and/or disposal of individually identifiable information including, without limitation, the General Data Protection Regulation ("GDPR"), the Health Insurance Portability and Accountability Act of 1996, as amended by the final regulations promulgated pursuant to the Health Information Technology for Economic and Clinical Health Act ("HITECH"), found in the American Recovery and Reinvestment Act of 2009 (collectively, "HIPAA"), the Telephone Consumer Protection Act, the CAN-SPAM Act, and state privacy, consumer protection, and breach notification laws.

We are subject to risks related to privacy and security regulation. For further details on these risks, see "Risk Factors," below.

*European Union and United Kingdom*

The Zio XT patch is currently regulated in the European Union as a Class IIa medical device pursuant to the MDD. The MDD sets out the basic regulatory framework for medical devices in the European Union. In May 2021, the EU MDR, a more comprehensive regulatory framework, replaced the MDD.

21

iRhythm00141822

Table of Contents

***We are subject to extensive compliance requirements for the quality of the medical device we manufacture for use in our Zio Services, and for vigilance on complaint-handling, escalation, assessment, and reporting of adverse events and malfunctions. A wide range of quality, regulatory, or safety matters could trigger the need for a recall or correction to marketed products.***

Our design and manufacturing facilities and processes and those of certain third-party suppliers are subject to unannounced FDA, state, and Notified/Approved Body regulatory inspections for compliance with various medical device regulations and standards, including the QSR, MDD, EU MDR, UK MDR requirements. Developing and maintaining a compliant quality system is time consuming and investment intensive. Requirements and standards may change and evolve over time, and we will need to adapt. Failure to maintain compliance with, or not fully complying with the requirements of the FDA and state regulators could result in enforcement actions, which could include the issuance of warning letters, adverse publicity, seizures, prohibitions on product sales, recalls, and civil and criminal penalties, any one of which could significantly impact our manufacturing supply and provision of services and impair our financial results. Failure to maintain full compliance with the requirements of EU MDD, EU MDR, and UK MDR could result in similar disruptions in these markets.

We are required to file various reports with the FDA, and EU or UK regulators, including reports required by each jurisdiction's adverse event and field action reporting regulations. These reports are often required if our Zio System may have caused or contributed to a death or serious injury or malfunctioned in a way that would likely cause or contribute to a death or serious injury if the malfunction were to recur. They may also be necessary or prudent for a range of other reasons relating to the importance of gathering information in the post marketing setting and managing risk throughout the product lifecycle. If these reports are not filed in a timely manner, regulators may impose sanctions and we may be subject to product liability or regulatory enforcement actions, all of which could harm our business. These reports are typically publicly available information in most jurisdictions, including the United States. If we initiate a field action (whether a "correction" made relative to a device that remains in the field, which could be through a labeling or software update, or "removal" or "recall" and return of that device to us, or field advisory notices) to reduce a risk to health posed by our Zio System, we would be required to report the Correction or Removal to the FDA and, in many cases, similar reports to other regulatory agencies. If these reports are not filed in a timely manner, regulators may impose sanctions and we may be subject to product liability or regulatory enforcement actions, all of which could harm our business. These reports are typically publicly available information in most jurisdictions, including the United States.

For example, on September 28, 2022, we initiated a Customer Advisory Notice to Zio AT customers regarding a Zio AT labeling correction; the labeling changes involve additions and modifications to the Zio AT labeling precautions relating to the device's maximum transmission limits during wear, and also to the need for healthcare providers to complete registration to initiate monitoring services. We reported this Customer Advisory Notice and related information to the FDA under 21 C.F.R., Part 806, and are in ongoing communication with the FDA on this matter. This labeling correction follows our assessment of topics raised in an FDA inspection focused on Zio AT. We have been in dialogue with the FDA in relation to the inspection process, and in connection with our Customer Advisory Notice and 806 report. These communications and discussions are continuing at this time, following our 483 responses submitted in September of 2022. Although we do not expect this Zio AT labeling correction or the activities associated with the topics raised in the FDA inspection to present a material risk to our business at this time, FDA observation responses, field action or corrections and the 806 process can be unpredictable and can present regulatory and commercial risks and uncertainties relating to matters including product labeling, the scope and approach of the correction, and/or customer and patient perception of our technologies and services.

Depending on the reason for the correction or removal and the potential severity of the impact to patient safety or the effectiveness of the device, the FDA may require differing degrees of communication to alert those who may be in possession of an impacted device. We would generally be subject to similar requirements in jurisdictions outside the United States where the Zio products are used. Furthermore, even if we adhere to regulatory standards and expectations in our corrective actions, the public nature of such actions can result in broader negative publicity and perceptions, which could harm our reputation.

If we assess a potential quality issue or complaint or product enhancement as not requiring either field action or notification, respectively, regulators may review documentation of that decision during a subsequent audit. If regulators disagree with our decision, or take issue with either our investigation process or the resulting documentation or course of action, we may be subject to a range of potential regulatory enforcement actions or required to take corrective actions, which depending on their nature and scope could harm our business.

iRhythm00141830

**SIGNATURES**

Pursuant to the requirements of Section 13 or 15(d) of the Securities Exchange Act of 1934, as amended, the Registrant has duly caused this Report to be signed on its behalf by the undersigned, thereunto duly authorized.

iRhythm Technologies, Inc.

Date: February 23, 2023                                    By:                    /s/ Quentin S. Blackford

Quentin S. Blackford
President and Chief Executive Officer
(Principal Executive Officer)

Pursuant to the requirements of the Securities Exchange Act of 1934, as amended, this Report has been signed below by the following persons on behalf of the Registrant in the capacities and on the dates indicated.

| Name | Title | Date |
|---|---|---|
| /s/ Quentin S. Blackford<br>Quentin S. Blackford | President, Chief Executive Officer and Director<br>(Principal Executive Officer) | February 23, 2023 |
| /s/ Brice Bobzien<br>Brice Bobzien | Chief Financial Officer<br>(Principal Financial Officer) | February 23, 2023 |
| /s/ Abhijit Y. Talwalkar<br>Abhijit Y. Talwalkar | Director and Chairman of the Board | February 23, 2023 |
| /s/ Bruce G. Bodaken<br>Bruce G. Bodaken | Director | February 23, 2023 |
| /s/ Ralph Snyderman M.D.<br>Ralph Snyderman M.D. | Director | February 23, 2023 |
| /s/ C. Noel Bairey Merz, M.D.<br>C. Noel Bairey Merz, M.D. | Director | February 23, 2023 |
| /s/ Mark J. Rubash<br>Mark J. Rubash | Director | February 23, 2023 |
| /s/ Karen Ling<br>Karen Ling | Director | February 23, 2023 |
| /s/ Renee Budig<br>Renee Budig | Director | February 23, 2023 |

108

iRhythm00141909

**Exhibit 31.1**

**CERTIFICATION OF CHIEF EXECUTIVE OFFICER**
**Pursuant to**
**Securities Exchange Act Rules 13a-14(a) and 15d-14(a),**
**As Adopted Pursuant to**
**Section 302 of the Sarbanes-Oxley Act of 2002**

I, Quentin S. Blackford, certify that:

1.    I have reviewed this Annual Report on Form 10-K of iRhythm Technologies, Inc.;

2.    Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.    Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.    The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

    (a)    Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

    (b)    Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

    (c)    Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

    (d)    Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.    The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

    (a)    All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

    (b)    Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date: February 23, 2023

By:    _____/s/ Quentin S. Blackford_____

**Quentin S. Blackford,**
**President and Chief Executive Officer**
**(Principal Executive Officer)**

iRhythm00141927

**Exhibit 31.2**

**CERTIFICATION OF CHIEF FINANCIAL OFFICER**
**Pursuant to**
**Securities Exchange Act Rules 13a-14(a) and 15d-14(a),**
**As Adopted Pursuant to**
**Section 302 of the Sarbanes-Oxley Act of 2002**

I, Brice Bobzien, certify that:

1.    I have reviewed this Annual Report on Form 10-K of iRhythm Technologies, Inc.;

2.    Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.    Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.    The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

      (a)    Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

      (b)    Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

      (c)    Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

      (d)    Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.    The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

      (a)    All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

      (b)    Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date: February 23, 2023                    By: _____/s/ Brice Bobzien_____

                                                            **Brice Bobzien**
                                                            **Chief Financial Officer**

iRhythm00141928

**Exhibit 32.1**

## CERTIFICATIONS OF CHIEF EXECUTIVE OFFICER AND CHIEF FINANCIAL OFFICER
**PURSUANT TO
18 U.S.C. SECTION 1350,
AS ADOPTED PURSUANT TO
SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002**

In connection with the Annual Report of iRhythm Technologies, Inc. (the "Company") on Form 10-K for the year ending December 31, 2022 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), I certify, pursuant to 18 U.S.C. § 1350, as adopted pursuant to § 906 of the Sarbanes-Oxley Act of 2002, that:

(1)     The Report fully complies with the requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934, as amended; and

(2)     The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

Date: February 23, 2023

By: _____/s/ Quentin S. Blackford_____
**Quentin S. Blackford
President and Chief Executive Officer
(Principal Executive Officer)**

By: _____/s/ Brice Bobzien_____
**Brice Bobzien
Chief Financial Officer
(Principal Financial Officer)**

iRhythm00141929