# EXHIBIT 35

**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
JONATHAN D. USLANER (Bar No. 256898)
jonathanu@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3481

*Counsel for Lead Plaintiff Oklahoma
Firefighters Pension and Retirement System*

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLAZING EMPLOYERS AND GLAZIERS' UNION LOCAL #27 PENSION AND RETIREMENT FUND, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>IRHYTHM TECHNOLOGIES, INC., et al.,<br><br>Defendants. | Case No. 3:24-cv-706-JSC<br><br>**LEAD PLAINTIFF'S RESPONSES AND OBJECTIONS TO DEFENDANTS' SECOND SET OF REQUESTS FOR ADMISSION**<br><br>Assigned to: Honorable Jacqueline Scott Corley |

Pursuant to Federal Rules of Civil Procedure 26 and 36, Lead Plaintiff Oklahoma Firefighters Pension and Retirement System ("Oklahoma Firefighters" or "Lead Plaintiff"), by and through its undersigned counsel, hereby submits the following responses and objections ("Responses") to Defendants' Second Set of Requests for Admission, dated December 2, 2025 (the "Request(s)").

## GENERAL OBJECTIONS

Lead Plaintiff objects to each of the Requests, including the Instructions and Definitions incorporated therein, on the following grounds. All Answers set forth herein are subject to and without waiver of any of these General Objections.

1.      Lead Plaintiff objects to the Requests, including the Instructions and Definitions incorporated therein, to the extent that they seek to impose on Lead Plaintiff obligations that are not imposed by law or are otherwise inconsistent with the Federal Rules of Civil Procedure, the Federal Rules of Evidence, the Local Rules, or other applicable law or rule. Lead Plaintiff will respond to the Requests in accordance with, and to the extent required by, the Federal Rules of Civil Procedure, the Federal Rules of Evidence, the Local Rules, and other applicable laws and rules.

2.      Lead Plaintiff objects to the Requests, including the Instructions and Definitions incorporated therein, to the extent that they seek information that is protected from disclosure by the attorney-client privilege, attorney work product doctrine, common interest privilege, or any other applicable privilege, doctrine, immunity, or protection from disclosure. Inadvertent production of information that is protected from disclosure shall be governed by the Parties' applicable agreed-upon terms set forth in the Stipulated Protective Order entered September 29, 2025 (ECF No. 105) ("Protective Order") or as otherwise ordered by the Court.

3.      Lead Plaintiff objects to the Requests, including the Instructions and Definitions incorporated therein, to the extent they seek information that is neither relevant to any party's claims or defenses in this Action nor proportional to the needs of the Action.

4.      Lead Plaintiff objects to the Requests, including the Instructions and Definitions incorporated therein, to the extent that they seek information, the provision of which would impose

an undue burden or expense on Lead Plaintiff or shift the burden of compiling and analyzing information from Defendants to Lead Plaintiff. To the extent that Lead Plaintiff agrees to provide any information in response to any Request, Lead Plaintiff responds based on a reasonable search for responsive information, and objects to any Request, and the Instructions and Definitions incorporated therein, to the extent that they seek to impose any greater burden on Lead Plaintiff.

5.      Lead Plaintiff objects to the Requests, including the Instructions and Definitions incorporated therein, to the extent that they seek information that is not within Lead Plaintiff's possession, custody, or control. In responding to these Requests, Lead Plaintiff will not search for or respond with information that is not in its possession, custody, or control.

6.      Lead Plaintiff objects to the Requests, including the Instructions and Definitions incorporated therein, to the extent that they are unreasonably cumulative and/or duplicative of one another or of other discovery served on Lead Plaintiff by Defendants in this Action, or discovery taken by Defendants in this Action.

7.      Lead Plaintiff objects to the Requests, including the Instructions and Definitions incorporated therein, to the extent they seek information that is confidential or proprietary, or subject to a constitutional, statutory, or common law right of privacy of the United States, or any applicable jurisdiction of the United States. To the extent Lead Plaintiff responds to the Requests, production of any such information shall be governed by the applicable terms provided for in the Protective Order.

8.      Lead Plaintiff objects to the Requests, including the Instructions and Definitions incorporated therein, to the extent they are vague, ambiguous, incapable of an "admitted" or "denied" answer, require explanation or qualification, contain compound statements, seek the admission of multiple facts, contain half-truths or improper inferences, or are unintelligible.

9.      Lead Plaintiff objects to the Requests, including the Instructions and Definitions incorporated therein, to the extent they contain argument, assert or imply any legal conclusion, or seek admissions of legal conclusions or opinions, including any explanation, advice, or rationale based upon legal analysis. Any Answer by Lead Plaintiff to any Request is not an admission as to, and is without conceding, any argument or legal conclusion contained in the Requests, including

the Instructions and Definitions incorporated therein, and is without prejudice to Lead Plaintiff's right to dispute any such argument or legal conclusion.

10.   Lead Plaintiff objects to the Requests, including the Instructions and Definitions incorporated therein, to the extent they seek information that requires or may be related to expert testimony or opinion. Such Requests are premature given that expert discovery has not yet commenced in the Action.

11.   Lead Plaintiff objects to the Requests, including the Instructions and Definitions incorporated therein, to the extent they include any explicit or implicit characterization of facts, events, circumstances, persons, or issues. Any Answer by Lead Plaintiff to any Request is not an admission as to, and is without conceding, any explicit or implicit characterization of facts, events, circumstances, persons, or issues contained in the Request, including the Instructions and Definitions incorporated within Defendants' Requests, and is without prejudice to Lead Plaintiff's right to dispute any of the foregoing.

12.   Lead Plaintiff objects to the Requests to the extent that they purport to require unreasonably costly and/or time-consuming measures to locate and review responsive information. Lead Plaintiff will construe each Request to require a reasonable search in those locations and from those sources in which it would reasonably expect to find information responsive to such Request.

13.   Lead Plaintiff objects to the Requests to the extent that they are overly broad, unduly burdensome, harassing, and/or oppressive, in that they would require a search for information that is of little or no benefit with respect to the issues or controversies relevant to the parties' claims or defenses in this Action, so that the value of the information would be outweighed by the burden of obtaining it.

14.   Lead Plaintiff reserves the right to make any use of, or to introduce in any motion or brief, or at any hearing and at trial, information responsive to the Requests but that was either inadvertently omitted by Lead Plaintiff, or was learned of subsequent to the date of service of Lead Plaintiff's Answers to the Requests including, but not limited to, any information obtained during discovery.

**RESPONSES AND OBJECTIONS TO SPECIFIC REQUESTS**

**REQUEST NO. 13:**

Admit that, in correspondence dated September 1, 2022, iRhythm responded to the FDA regarding the 2022 Form 483.

**RESPONSE TO REQUEST NO. 13:**

Lead Plaintiff objects to this request on grounds that the information sought by this Request is irrelevant to the claims and defenses in this Action. Lead Plaintiff also objects to this request on grounds that the phrase "responded to the FDA regarding the 2022 Form 483" is vague and ambiguous.

Subject to and without waiving any of the foregoing objections, Lead Plaintiff admits that iRhythm submitted correspondence to the FDA that was dated September 1, 2022. Lead Plaintiff otherwise denies this request.

**REQUEST NO. 14:**

Admit that in iRhythm's correspondence to the FDA regarding the 2022 Form 483, dated September 1, 2022, iRhythm stated that the Zio AT "transmission limits are crucial for the Zio AT System to ensure that continuous ambulatory ECG data can be captured throughout the entire prescribed wear period."

**RESPONSE TO REQUEST NO. 14:**

Lead Plaintiff objects to this request on grounds that the information sought by this request is irrelevant to the claims and defenses in this Action. iRhythm's self-serving statements to the FDA in response to its Form 483 letter do not in any way contradict, and do in fact corroborate, the allegations in the Complaint. Thus, it is irrelevant whether iRhythm included the above statement in its correspondence. Lead Plaintiff also objects to this request on the grounds that it omits the context from iRhythm's September 1, 2022 response to the Form 483, including that: "The hazardous situation of a max transmission design constraint potentially leads to a delayed notification of ECF findings until the final report is posted with all findings from the wear period." (LP_IRHYTHM_0000016); and "We assessed that implementing a visual cue using the patch and gateway's LED would introduce an inconsistent behavior not aligned with the current

implementation…. [W]e do not consider it to be in the best interest of the patient to add any visual cues when the maximum limits are met." (LP_IRHYTHM_0000019).

Subject to and without waiving any of the foregoing objections, Lead Plaintiff admits that iRhythm submitted correspondence to the FDA that was dated September 1, 2022 and that the document states the language quoted in the request. Lead Plaintiff further admits that the document also states, among other things, that the "hazardous situation of a max transmission design constraint potentially leads to a delayed notification of ECF findings." Lead Plaintiff otherwise denies this request.

**REQUEST NO. 15:**

Admit that in iRhythm's correspondence to the FDA regarding the 2022 Form 483, dated September 1, 2022, iRhythm explained that "[t]o maximize patient compliance, the Zio AT patch is designed to increase the likelihood that it will be worn by a patient for the whole prescribed period, without need for removal. It centers patient comfort, convenience, and simplicity of use by utilizing a battery design that optimizes power consumption to last the entire 14-day wear period. Eliminating the need for recharging encourages uninterrupted wear of the patch, and necessarily places some limitations on the number of remote data transmissions that can occur wirelessly to the IDTF before the final report is generated. Importantly, a minimal number of patients are impacted by this design constraint; it is rare for these transmission limitations to be reached (2.5% for asymptomatic arrythmias and less than 1% for symptomatic arrhythmias)."

**RESPONSE TO REQUEST NO. 15:**

Lead Plaintiff objects to this request on grounds that the information sought by this request is irrelevant to the claims and defenses in this Action. iRhythm's self-serving statements to the FDA in response to its Form 483 letter do not in any way contradict, and do in fact corroborate, the allegations in the Complaint. Thus, it is irrelevant whether iRhythm included the above statement in its correspondence. Lead Plaintiff also objects to this request on the grounds that it omits the context from iRhythm's September 1, 2022 response to the Form 483, including that: "The hazardous situation of a max transmission design constraint potentially leads to a delayed notification of ECF findings until the final report is posted with all findings from the wear period."

(LP_IRHYTHM_0000016); and "We assessed that implementing a visual cue using the patch and gateway's LED would introduce an inconsistent behavior not aligned with the current implementation.… [W]e do not consider it to be in the best interest of the patient to add any visual cues when the maximum limits are met." (LP_IRHYTHM_0000019).

Subject to and without waiving any of the foregoing objections, Lead Plaintiff admits that iRhythm submitted correspondence to the FDA that was dated September 1, 2022 and that the document states the language quoted in the request. Lead Plaintiff further admits that the document also states, among other things, that the "hazardous situation of a max transmission design constraint potentially leads to a delayed notification of ECF findings." Lead Plaintiff otherwise denies this request.

**REQUEST NO. 16:**

Admit that in iRhythm's correspondence to the FDA regarding the 2022 Form 483, dated September 1, 2022, iRhythm stated that the Transmission Limit was "described in bench test report, REP535 included in the Zio AT 510(k) submission (cleared in K163512 with copy provided during the FDA inspection)."

**RESPONSE TO REQUEST NO. 16:**

Lead Plaintiff objects to this request on grounds that the information sought by this request is irrelevant to the claims and defenses in this Action. iRhythm's self-serving statements to the FDA in response to its Form 483 letter do not in any way contradict, and do in fact corroborate, the allegations in the Complaint. Thus, it is irrelevant whether iRhythm included the above statement in its correspondence. Lead Plaintiff also objects to this request on the grounds that it omits the context from iRhythm's September 1, 2022 response to the Form 483, including that: "The hazardous situation of a max transmission design constraint potentially leads to a delayed notification of ECF findings until the final report is posted with all findings from the wear period." (LP_IRHYTHM_0000016); and "We assessed that implementing a visual cue using the patch and gateway's LED would introduce an inconsistent behavior not aligned with the current implementation.… [W]e do not consider it to be in the best interest of the patient to add any visual cues when the maximum limits are met." (LP_IRHYTHM_0000019).

Subject to and without waiving any of the foregoing objections, Lead Plaintiff admits that iRhythm submitted correspondence to the FDA that was dated September 1, 2022 and that the document states the language quoted in the request. Lead Plaintiff further admits that the document also states, among other things, that the "hazardous situation of a max transmission design constraint potentially leads to a delayed notification of ECF findings." Lead Plaintiff otherwise denies this request.

**REQUEST NO. 17:**

Admit that iRhythm told the FDA about the Transmission Limit before the FDA approved the Zio AT's 510(k) submission in June 2017.

**RESPONSE TO REQUEST NO. 17:**

Lead Plaintiff objects to this request on grounds that the information sought by this request is irrelevant to the claims and defenses in this Action. iRhythm's self-serving statements to the FDA do not in any way contradict, and do in fact corroborate, the allegations in the Complaint. Thus, it is irrelevant whether "iRhythm told the FDA about the Transmission Limit before the FDA approved the Zio AT's 510(k) submission in June 2017." Lead Plaintiff also objects to this request on grounds that the phrase "told the FDA" is vague and ambiguous. Lead Plaintiff also objects to this request on the grounds that it is premature given that expert discovery has not yet commenced in the Action, and that discovery in the Action remains ongoing.

Subject to and without waiving the foregoing objections, Lead Plaintiff lacks sufficient information to admit or deny this request.

**REQUEST NO. 18:**

Admit that iRhythm did not tell the FDA about the Transmission Limit before the FDA approved the Zio AT's 510(k) submission in June 2017.

**RESPONSE TO REQUEST NO. 18:**

Lead Plaintiff objects to this request on grounds that the information sought by this request is irrelevant to the claims and defenses in this Action. iRhythm's self-serving statements to the FDA do not in any way contradict, and do in fact corroborate, the allegations in the Complaint. Thus, it is irrelevant whether iRhythm told the FDA about the Transmission Limit before the FDA

approved the Zio AT's 510(k) submission in June 2017. Lead Plaintiff also objects to this request on grounds that the phrase "told the FDA" is vague and ambiguous. Lead Plaintiff also objects to this request on the grounds that it is premature given that expert discovery has not yet commenced in the Action, and that discovery in the Action remains ongoing. Lead Plaintiff also objects on the grounds that this request is duplicative of Request No. 17.

Subject to and without waiving the foregoing objections, Lead Plaintiff lacks sufficient information to admit or deny this request.

**REQUEST NO. 19:**

Admit that in iRhythm's correspondence to the FDA regarding the 2022 Form 483, dated September 1, 2022, iRhythm included a section titled "ACTION PLAN Correction(s)" in which iRhythm stated that "[t]he Zio AT IFU will be updated to alert HCP about the maximum transmission constraint for both asymptomatic (500) and symptomatic (100) and the impact of potentially missed transmissions."

**RESPONSE TO REQUEST NO. 19:**

Lead Plaintiff objects to this request on grounds that the information sought by this request is irrelevant to the claims and defenses in this Action. iRhythm's self-serving statements to the FDA in response to its Form 483 letter do not in any way contradict, and do in fact corroborate, the allegations in the Complaint. Thus, it is irrelevant whether iRhythm included the above statement in its correspondence. Lead Plaintiff also objects to this request on grounds that it omits that Defendants withheld crucial information pertaining to the Transmission Limit from the FDA, including that: "The hazardous situation of a max transmission design constraint potentially leads to a delayed notification of ECF findings until the final report is posted with all findings from the wear period." (LP_IRHYTHM_0000016); and "We assessed that implementing a visual cue using the patch and gateway's LED would introduce an inconsistent behavior not aligned with the current implementation.… [W]e do not consider it to be in the best interest of the patient to add any visual cues when the maximum limits are met." (LP_IRHYTHM_0000019).

Subject to and without waiving any of the foregoing objections, Lead Plaintiff admits that iRhythm submitted correspondence to the FDA that was dated September 1, 2022 and that the

document states the language quoted in the request. Lead Plaintiff further admits that the document also states, among other things, that the "hazardous situation of a max transmission design constraint potentially leads to a delayed notification of ECF findings." Lead Plaintiff otherwise denies this request.

**REQUEST NO. 20:**

Admit that in iRhythm's correspondence to the FDA regarding the 2022 Form 483, dated September 1, 2022, iRhythm included a section titled "ACTION PLAN Correction(s)" in which iRhythm stated that "[a] field advisory notice will be issued to Zio AT customers informing them of the maximum transmission constraints, the process associated with informing them when a patient is nearing the maximum limit."

**RESPONSE TO REQUEST NO. 20:**

Lead Plaintiff objects to this request on grounds that the information sought by this request is irrelevant to the claims and defenses in this Action. iRhythm's self-serving statements to the FDA in response to its Form 483 letter do not in any way contradict, and do in fact corroborate, the allegations in the Complaint. Thus, it is irrelevant whether iRhythm included the above statement in its correspondence. Lead Plaintiff also objects to this request on grounds that it omits that Defendants withheld crucial information pertaining to the Transmission Limit from the FDA, including that: "The hazardous situation of a max transmission design constraint potentially leads to a delayed notification of ECF findings until the final report is posted with all findings from the wear period." (LP_IRHYTHM_0000016); and "We assessed that implementing a visual cue using the patch and gateway's LED would introduce an inconsistent behavior not aligned with the current implementation.… [W]e do not consider it to be in the best interest of the patient to add any visual cues when the maximum limits are met." (LP_IRHYTHM_0000019).

Subject to and without waiving any of the foregoing objections, Lead Plaintiff admits that iRhythm submitted correspondence to the FDA that was dated September 1, 2022 and that the document states the language quoted in the request. Lead Plaintiff further admits that the document also states, among other things, that the "hazardous situation of a max transmission design

constraint potentially leads to a delayed notification of ECF findings." Lead Plaintiff otherwise denies this request.

**REQUEST NO. 21:**

Admit that the Zio AT CRM is part of the Zio AT label.

**RESPONSE TO REQUEST NO. 21:**

Lead Plaintiff objects to this request on grounds that the information sought by this request is irrelevant to the claims and defenses in this Action. iRhythm's self-serving claims do not in any way contradict, and do in fact corroborate, the allegations in the Complaint. Thus, it is irrelevant whether the Zio AT CRM is part of the Zio AT label. Lead Plaintiff also objects to this request on the grounds that it is premature given that expert discovery has not yet commenced in the Action, and that discovery in the Action remains ongoing.

Subject to and without waiving the foregoing objections, Lead Plaintiff lacks sufficient information to admit or deny this request.

**REQUEST NO. 22:**

Admit that no later than September 26, 2022, iRhythm updated the Zio AT CRM to state that "[t]he Zio AT patch has a maximum threshold of transmitting 100 Patient Triggers and 500 Auto-Triggers during wear, after which point the device no longer transmits for whichever trigger limit has been reached. If this occurs, unless a patch is promptly replaced when the patient is approaching a maximum transmission limit, there will be time during the wear period in which transmissions of that type are captured but not transmitted, and information will not become available until the final report."

**RESPONSE TO REQUEST NO. 22:**

Lead Plaintiff objects to this request on grounds that the information sought by this request is irrelevant to the claims and defenses in this Action. iRhythm's self-serving CRM does not in any way contradict, and does in fact corroborate, the allegations in the Complaint. Thus, it is irrelevant whether iRhythm updated the Zio AT CRM to state the above quoted language.

Subject to and without waiving the foregoing objections, Lead Plaintiff admits that a version of the CRM contains the language quoted in the request. Lead Plaintiff otherwise denies this request.

**REQUEST NO. 23:**

Admit that no later than September 26, 2022, iRhythm updated the Zio AT CRM to state that "[t]he device has a maximum threshold of transmitting 100 Patient Triggers and 500 Auto Triggers during wear. When a patient is approaching the limit for either transmission type, iRhythm reaches out to the account to determine whether to send another Zio AT device to the patient."

**RESPONSE TO REQUEST NO. 23:**

Lead Plaintiff objects to this request's characterization of the document, which speaks for itself. Lead Plaintiff objects to this request on grounds that the information sought by this request is irrelevant to the claims and defenses in this Action. iRhythm's self-serving CRM does not in any way contradict, and does in fact corroborate, the allegations in the Complaint. Thus, it is irrelevant whether iRhythm updated the Zio AT CRM to state the above quoted language.

Subject to and without waiving the foregoing objections, Lead Plaintiff admits that a version of the CRM contains the language quoted in the request. Lead Plaintiff otherwise denies this request.

**REQUEST NO. 24:**

Admit that no later than September 26, 2022, iRhythm disclosed the Transmission Limit in the Zio AT CRM.

**RESPONSE TO REQUEST NO. 24:**

Lead Plaintiff objects to this request's characterization of the document, which speaks for itself. Lead Plaintiff objects to this request on grounds that the information sought by this request is irrelevant to the claims and defenses in this Action. iRhythm's self-serving CRM does not in any way contradict, and does in fact corroborate, the allegations in the Complaint. Thus, it is irrelevant whether iRhythm disclosed the Transmission Limit in the CRM no later than September 26, 2022. Lead Plaintiff also objects on the grounds that the phrase "disclosed" is vague and

ambiguous. Lead Plaintiff further objects to this request on the grounds that it inappropriately embeds a legal conclusion. *People of State of Cal. v. The Jules Fribourg*, 19 F.R.D. 432, 436 (N.D. Cal. 1955) ("[R]equests for admission are not to be treated as substitutes for discovery processes to uncover evidence, and … they may not be applied to controverted legal issues lying at the heart of the case."); *Gibson Brands Inc. v. John Hornby Skewes & Co.*, 2015 WL 12681376, at *6 (C.D. Cal. July 20, 2015) (denying motion to compel responses to requests for admissions where such requests "are best reserved for authentication of documents and confirmation of undisputed facts that will therefore not require proof at trial. The use of RFAs as discovery devices to obtain new information, particularly when that information may require complex judgments and nuanced appraisals, is generally improper.").

Subject to and without waiving any of the foregoing objections, Lead Plaintiff will not respond to this request at this time but is willing to meet and confer with Defendants concerning this request.

**REQUEST NO. 25:**

Admit that no later than September 26, 2022, iRhythm disclosed the Transmission Limit in the Zio AT label.

**RESPONSE TO REQUEST NO. 25:**

Lead Plaintiff objects to this request's characterization of the document, which speaks for itself. Lead Plaintiff objects to this request on grounds that the information sought by this request is irrelevant to the claims and defenses in this Action. iRhythm's self-serving label does not in any way contradict, and does in fact corroborate, the allegations in the Complaint. Thus, it is irrelevant whether iRhythm disclosed the Transmission Limit in the label no later than September 26, 2022. Lead Plaintiff also objects on the grounds that the phrase "disclosed" is vague and ambiguous. Lead Plaintiff further objects to this request on the grounds that it inappropriately embeds a legal conclusion. *People of State of Cal. v. The Jules Fribourg*, 19 F.R.D. 432, 436 (N.D. Cal. 1955) ("[R]equests for admission are not to be treated as substitutes for discovery processes to uncover evidence, and … they may not be applied to controverted legal issues lying at the heart of the case."); *Gibson Brands Inc. v. John Hornby Skewes & Co.*, 2015 WL 12681376, at *6 (C.D. Cal.

July 20, 2015) (denying motion to compel responses to requests for admissions where such requests "are best reserved for authentication of documents and confirmation of undisputed facts that will therefore not require proof at trial. The use of RFAs as discovery devices to obtain new information, particularly when that information may require complex judgments and nuanced appraisals, is generally improper."). Lead Plaintiff also objects on the grounds that the request embeds the assertion that the Zio AT label included the Zio AT CRM.

Subject to and without waiving any of the foregoing objections, Lead Plaintiff will not respond to this request at this time but is willing to meet and confer with Defendants concerning this request.

**REQUEST NO. 26:**

Admit that no later than September 26, 2022, iRhythm did not disclose the Transmission Limit in the Zio AT label.

**RESPONSE TO REQUEST NO. 26:**

Lead Plaintiff objects to this request's characterization of the document, which speaks for itself. Lead Plaintiff objects to this request on grounds that the information sought by this request is irrelevant to the claims and defenses in this Action. iRhythm's self-serving label does not in any way contradict, and does in fact corroborate, the allegations in the Complaint. Thus, it is irrelevant whether iRhythm disclosed the Transmission Limit in the label no later than September 26, 2022. Lead Plaintiff also objects on the grounds that the phrase "disclosed" is vague and ambiguous. Lead Plaintiff further objects to this request on the grounds that it inappropriately embeds a legal conclusion. *People of State of Cal. v. The Jules Fribourg*, 19 F.R.D. 432, 436 (N.D. Cal. 1955) ("[R]equests for admission are not to be treated as substitutes for discovery processes to uncover evidence, and … they may not be applied to controverted legal issues lying at the heart of the case."); *Gibson Brands Inc. v. John Hornby Skewes & Co.*, 2015 WL 12681376, at *6 (C.D. Cal. July 20, 2015) (denying motion to compel responses to requests for admissions where such requests "are best reserved for authentication of documents and confirmation of undisputed facts that will therefore not require proof at trial. The use of RFAs as discovery devices to obtain new information, particularly when that information may require complex judgments and nuanced

appraisals, is generally improper."). Lead Plaintiff also objects on the grounds that the request embeds the assertion that the Zio AT label included the Zio AT CRM.

Subject to and without waiving any of the foregoing objections, Lead Plaintiff will not respond to this request at this time but is willing to meet and confer with Defendants concerning this request.

**REQUEST NO. 27:**

Admit that on September 28, 2022, iRhythm issued a CAN to Zio AT customers.

**RESPONSE TO REQUEST NO. 27:**

Lead Plaintiff objects to this request on grounds that the information sought by this request is irrelevant to the claims and defenses in this Action. iRhythm's self-serving CAN does not in any way contradict, and does in fact corroborate, the allegations in the Complaint. Thus, it is irrelevant whether iRhythm issued a CAN to Zio AT customers on September 28, 2022. Lead Plaintiff also objects on the grounds that the phrase "issued" is vague and ambiguous. Lead Plaintiff further objects to this request on the grounds that it inappropriately embeds a legal conclusion. *People of State of Cal. v. The Jules Fribourg*, 19 F.R.D. 432, 436 (N.D. Cal. 1955) ("[R]equests for admission are not to be treated as substitutes for discovery processes to uncover evidence, and … they may not be applied to controverted legal issues lying at the heart of the case."); *Gibson Brands Inc. v. John Hornby Skewes & Co.*, 2015 WL 12681376, at *6 (C.D. Cal. July 20, 2015) (denying motion to compel responses to requests for admissions where such requests "are best reserved for authentication of documents and confirmation of undisputed facts that will therefore not require proof at trial. The use of RFAs as discovery devices to obtain new information, particularly when that information may require complex judgments and nuanced appraisals, is generally improper."). Lead Plaintiff further objects to this request on the grounds that Lead Plaintiff does not have sufficient information as to when, and to whom, iRhythm "issued" the CAN.

Subject to and without waiving the foregoing objections, Lead Plaintiff lacks sufficient information to admit or deny this request.

**REQUEST NO. 28:**

Admit that iRhythm's September 28, 2022 CAN stated that "Clinical Reference Manual and associated Important Information Pamphlet for Zio AT System are being updated to inform you of the maximum wireless transmission limits for the Zio AT monitor."

**RESPONSE TO REQUEST NO. 28:**

Lead Plaintiff objects to this request on grounds that the information sought by this request is irrelevant to the claims and defenses in this Action. iRhythm's self-serving CAN does not in any way contradict, and does in fact corroborate, the allegations in the Complaint. Thus, it is irrelevant whether iRhythm included the above statement in its CAN. Lead Plaintiff further objects to this request on the grounds that Lead Plaintiff does not have sufficient information as to when, and to whom, iRhythm "issued" the CAN.

Subject to and without waiving any of the foregoing objections, Lead Plaintiff admits that iRhythm claims to have issued a CAN that includes the language quoted in the request. Lead Plaintiff denies this request to the extent that the Zio AT CRM was not updated to include *other* necessary facts pertaining to the transmission limit, including: (i) the full extent of the "known design constraints," which were "essential" to the device's function; (ii) the "hazardous" limitations of the device; and (iii) its general failure to transmit "near real-time" notifications. Lead Plaintiff otherwise denies this request.

**REQUEST NO. 29:**

Admit that iRhythm's September 28, 2022 CAN stated that "[e]ach Zio AT patch is limited to 100 symptomatic (i.e., patient initiated) and 500 asymptomatic (i.e., auto triggered or device - detected) wireless transmissions."

**RESPONSE TO REQUEST NO. 29:**

Lead Plaintiff objects to this request on grounds that the information sought by this request is irrelevant to the claims and defenses in this Action. iRhythm's self-serving CAN does not in any way contradict, and does in fact corroborate, the allegations in the Complaint. Thus, it is irrelevant whether iRhythm included the above statement in its CAN. Lead Plaintiff further objects to this

request on the grounds that Lead Plaintiff does not have sufficient information as to when, and to whom, iRhythm "issued" the CAN.

Subject to and without waiving any of the foregoing objections, Lead Plaintiff admits that iRhythm claims to have issued a CAN containing the language quoted in the request. Lead Plaintiff denies this request to the extent that the CAN did not include *other* necessary facts pertaining to the transmission limit, including: (i) the full extent of the "known design constraints," which were "essential" to the device's function; (ii) the "hazardous" limitations of the device; and (iii) its general failure to transmit "near real-time" notifications. Lead Plaintiff otherwise denies this request.

**REQUEST NO. 30:**

Admit that iRhythm's September 28, 2022 CAN stated that "[t]he transmission limits were established to provide up to 14 days of an uninterrupted monitoring experience for patients without the need for removing the patch and charging the device."

**RESPONSE TO REQUEST NO. 30:**

Lead Plaintiff objects to this request on grounds that the information sought by this request is irrelevant to the claims and defenses in this Action. iRhythm's self-serving CAN does not in any way contradict, and does in fact corroborate, the allegations in the Complaint. Thus, it is irrelevant whether iRhythm included the above statement in its CAN. Lead Plaintiff further objects to this request on the grounds that Lead Plaintiff does not have sufficient information as to when, and to whom, iRhythm "issued" the CAN.

Subject to and without waiving any of the foregoing objections, Lead Plaintiff admits that iRhythm claims to have issued a CAN containing the language quoted in the request. Lead Plaintiff denies this request to the extent that the CAN did not include *other* necessary facts pertaining to the transmission limit, including: (i) the full extent of the "known design constraints," which were "essential" to the device's function; (ii) the "hazardous" limitations of the device; and (iii) its general failure to transmit "near real-time" notifications. Lead Plaintiff otherwise denies this request.

**REQUEST NO. 31:**

Admit that iRhythm's September 28, 2022 CAN stated that "[o]nce the maximum transmission limit is reached for either transmission type – symptomatic or asymptomatic – any further transmissions for that specific type will cease. Continuous ambulatory ECG diagnostic data is still captured without interruption, even after the wireless transmission maximums are reached, which is manually downloaded from the device when it is returned at the conclusion of the wear period and included in the final report."

**RESPONSE TO REQUEST NO. 31:**

Lead Plaintiff objects to this request on grounds that the information sought by this request is irrelevant to the claims and defenses in this Action. iRhythm's self-serving CAN does not in any way contradict, and does in fact corroborate, the allegations in the Complaint. Thus, it is irrelevant whether iRhythm included the above statement in its CAN. Lead Plaintiff further objects to this request on the grounds that Lead Plaintiff does not have sufficient information as to when, and to whom, iRhythm "issued" the CAN.

Subject to and without waiving any of the foregoing objections, Lead Plaintiff admits that iRhythm claims to have issued a CAN containing the language quoted in the request. Lead Plaintiff denies this request to the extent that the CAN did not include *other* necessary facts pertaining to the Transmission Limit, including: (i) the full extent of the "known design constraints," which were "essential" to the device's function; (ii) the "hazardous" limitations of the device; and (iii) its general failure to transmit "near real-time" notifications. Lead Plaintiff otherwise denies this request.

**REQUEST NO. 32:**

Admit that iRhythm's September 28, 2022 CAN stated that "[i]f iRhythm detects that a patient is approaching the maximum limit for either symptomatic or asymptomatic transmissions, we notify you in the following ways: iRhythm customer care will contact you to confirm if another Zio AT patch should be sent to your patient for the remainder of the monitoring period. It is important you respond to this outreach. Effective November 2022, iRhythm will enhance this process. If we are unable to reach you after our first notification attempt, we will auto-ship another

Zio AT patch to the patient. Additionally, the Daily Zio AT reports posted to the Zio Suite portal indicate when the maximum transmission limit has been reached for either category."

**RESPONSE TO REQUEST NO. 32:**

Lead Plaintiff objects to this request on grounds that the information sought by this request is irrelevant to the claims and defenses in this Action. iRhythm's self-serving CAN does not in any way contradict, and does in fact corroborate, the allegations in the Complaint. Thus, it is irrelevant whether iRhythm included the above statement in its CAN. Lead Plaintiff further objects to this request on the grounds that Lead Plaintiff does not have sufficient information as to when, and to whom, iRhythm "issued" the CAN.

Subject to and without waiving any of the foregoing objections, Lead Plaintiff admits that iRhythm claims to have issued a CAN containing the language quoted in the request. Lead Plaintiff denies this request to the extent that the CAN did not include *other* necessary facts pertaining to the transmission limit, including: (i) the full extent of the "known design constraints," which were "essential" to the device's function; (ii) the "hazardous" limitations of the device; and (iii) its general failure to transmit "near real-time" notifications. Lead Plaintiff otherwise denies this request.

**REQUEST NO. 33:**

Admit that iRhythm's September 28, 2022 CAN stated that "if the scenarios described in this letter occur"—i.e., if the Transmission Limit is hit—"they present a risk of a delay between the time a patient experiences an arr[h]ythmia and the time when that information is available to the patient's provider."

**RESPONSE TO REQUEST NO. 33:**

Lead Plaintiff objects to this request's characterization of the document, which speaks for itself. Lead Plaintiff objects to this request on grounds that the information sought by this request is irrelevant to the claims and defenses in this Action. iRhythm's self-serving CAN does not in any way contradict, and does in fact corroborate, the allegations in the Complaint. Thus, it is irrelevant whether iRhythm included the above statement in its CAN. Lead Plaintiff further objects to this

request on the grounds that Lead Plaintiff does not have sufficient information as to when, and to whom, iRhythm "issued" the CAN.

Subject to and without waiving any of the foregoing objections, Lead Plaintiff denies the request to the extent that Defendants mischaracterize the document, which speaks for itself. Lead Plaintiff admits that iRhythm claims to have issued a CAN containing the language quoted in the request. Lead Plaintiff denies this request to the extent that the CAN did not include *other* necessary facts pertaining to the transmission limit, including: (i) the full extent of the "known design constraints," which were "essential" to the device's function; (ii) the "hazardous" limitations of the device; and (iii) its general failure to transmit "near real-time" notifications. Lead Plaintiff otherwise denies this request.

**REQUEST NO. 34:**

Admit that in iRhythm's September 28, 2022 CAN, iRhythm disclosed the Transmission Limit.

**RESPONSE TO REQUEST NO. 34:**

Lead Plaintiff objects to this request's characterization of the document, which speaks for itself. Lead Plaintiff objects to this request on grounds that the information sought by this request is irrelevant to the claims and defenses in this Action. iRhythm's self-serving CAN does not in any way contradict, and does in fact corroborate, the allegations in the Complaint. Thus, it is irrelevant whether iRhythm disclosed the Transmission Limit in the September 28, 2022 CAN. Lead Plaintiff also objects on the grounds that the phrase "disclosed" is vague and ambiguous. Lead Plaintiff further objects to this request on the grounds that it inappropriately embeds a legal conclusion. *People of State of Cal. v. The Jules Fribourg*, 19 F.R.D. 432, 436 (N.D. Cal. 1955) ("[R]equests for admission are not to be treated as substitutes for discovery processes to uncover evidence, and … they may not be applied to controverted legal issues lying at the heart of the case."); *Gibson Brands Inc. v. John Hornby Skewes & Co.*, 2015 WL 12681376, at *6 (C.D. Cal. July 20, 2015) (denying motion to compel responses to requests for admissions where such requests "are best reserved for authentication of documents and confirmation of undisputed facts that will therefore not require proof at trial. The use of RFAs as discovery devices to obtain new information,

particularly when that information may require complex judgments and nuanced appraisals, is generally improper."). Lead Plaintiff further objects to this request on the grounds that Lead Plaintiff does not have sufficient information as to when, and to whom, iRhythm "issued" the CAN.

Subject to and without waiving any of the foregoing objections, Lead Plaintiff will not respond to this request at this time but is willing to meet and confer with Defendants concerning this request.

**REQUEST NO. 35:**

Admit that in iRhythm's September 28, 2022 CAN, iRhythm did not disclose the Transmission Limit.

**RESPONSE TO REQUEST NO. 35:**

Lead Plaintiff objects to this request's characterization of the document, which speaks for itself. Lead Plaintiff objects to this request on grounds that the information sought by this request is irrelevant to the claims and defenses in this Action. iRhythm's self-serving CAN does not in any way contradict, and does in fact corroborate, the allegations in the Complaint. Thus, it is irrelevant whether iRhythm disclosed the Transmission Limit in the September 28, 2022 CAN. Lead Plaintiff also objects on the grounds that the phrase "disclosed" is vague and ambiguous. Lead Plaintiff further objects to this request on the grounds that it inappropriately embeds a legal conclusion. *People of State of Cal. v. The Jules Fribourg*, 19 F.R.D. 432, 436 (N.D. Cal. 1955) ("[R]equests for admission are not to be treated as substitutes for discovery processes to uncover evidence, and … they may not be applied to controverted legal issues lying at the heart of the case."); *Gibson Brands Inc. v. John Hornby Skewes & Co.*, 2015 WL 12681376, at *6 (C.D. Cal. July 20, 2015) (denying motion to compel responses to requests for admissions where such requests "are best reserved for authentication of documents and confirmation of undisputed facts that will therefore not require proof at trial. The use of RFAs as discovery devices to obtain new information, particularly when that information may require complex judgments and nuanced appraisals, is generally improper."). Lead Plaintiff further objects to this request on the grounds that Lead

Plaintiff does not have sufficient information as to when, and to whom, iRhythm "issued" the CAN. Lead Plaintiff also objects on the grounds that this request is duplicative of Request No. 34.

Subject to and without waiving any of the foregoing objections, Lead Plaintiff will not respond to this request at this time but is willing to meet and confer with Defendants concerning this request.

**REQUEST NO. 36:**

Admit that on November 1, 2022, during iRhythm's third quarter earnings call, Mr. Blackford told analysts and investors that iRhythm had "voluntarily issued a customer advisory notice to our Zio AT customers. We have updated language related to the precautions in the Zio AT clinical reference manual and important information pamphlet as it relates to the Zio AT patient registration process in Zio AT patients and auto trigger transmission limits."

**RESPONSE TO REQUEST NO. 36:**

Lead Plaintiff objects to this request on grounds that the information sought by this request is irrelevant to the claims and defenses in this Action. iRhythm's self-serving statements made on an earnings call do not in any way contradict, and do in fact corroborate, the allegations in the Complaint. Thus, it is irrelevant whether Mr. Blackford stated on the third quarter 2022 earnings call that iRhythm "voluntarily issued a customer advisory notice to our Zio AT customers. We have updated language related to the precautions in the Zio AT clinical reference manual and important information pamphlet as it relates to the Zio AT patient registration process in Zio AT patients and auto trigger transmission limits." Lead Plaintiff also objects on the grounds that the Request embeds the assertion that Mr. Blackford "told analysts and investors."

Subject to and without waiving any of the foregoing objections, Lead Plaintiff admits this request to the extent that Mr. Blackford stated the language quoted in the request on the November 1, 2022 earnings call. Lead Plaintiff otherwise denies the request.

**REQUEST NO. 37:**

Admit that iRhythm disclosed the Transmission Limit during iRhythm's third quarter 2022 earnings conference call on November 1, 2022.

**RESPONSE TO REQUEST NO. 37:**

Lead Plaintiff objects to this request on grounds that the information sought by this request is irrelevant to the claims and defenses in this Action. iRhythm's self-serving statements during an earnings call do not in any way contradict, and do in fact corroborate, the allegations in the Complaint. Thus, it is irrelevant whether iRhythm disclosed the Transmission Limit during iRhythm's third quarter 2022 earnings conference call. Lead Plaintiff also objects on the grounds that the phrase "disclosed" is vague and ambiguous. Lead Plaintiff further objects to this request on the grounds that it inappropriately embeds a legal conclusion. *People of State of Cal. v. The Jules Fribourg*, 19 F.R.D. 432, 436 (N.D. Cal. 1955) ("[R]equests for admission are not to be treated as substitutes for discovery processes to uncover evidence, and … they may not be applied to controverted legal issues lying at the heart of the case."); *Gibson Brands Inc. v. John Hornby Skewes & Co.*, 2015 WL 12681376, at *6 (C.D. Cal. July 20, 2015) (denying motion to compel responses to requests for admissions where such requests "are best reserved for authentication of documents and confirmation of undisputed facts that will therefore not require proof at trial. The use of RFAs as discovery devices to obtain new information, particularly when that information may require complex judgments and nuanced appraisals, is generally improper.").

Subject to and without waiving any of the foregoing objections, Lead Plaintiff will not respond to this request at this time but is willing to meet and confer with Defendants concerning this request.

**REQUEST NO. 38:**

Admit that in iRhythm's Form 10-Q for the third quarter of 2022, available at https://www.sec.gov/ix?doc=/Archives/edgar/data/1388658/000138865822000159/irtc-20220930.htm (dated November 4, 2022), iRhythm disclosed that "on September 28, 2022, we initiated a Customer Advisory Notice to Zio AT customers regarding a Zio AT labeling correction; the labeling changes involve additions and modifications to the Zio AT labeling precautions relating to the device's maximum transmission limits during wear."

**RESPONSE TO REQUEST NO. 38:**

Lead Plaintiff objects to this request's characterization of the document, which speaks for itself. Lead Plaintiff objects to this request on grounds that the information sought by this request

is irrelevant to the claims and defenses in this Action. iRhythm's self-serving statements in the Form 10-Q do not in any way contradict, and do in fact corroborate, the allegations in the Complaint. Thus, it is irrelevant whether the Form 10-Q contained the above language. Lead Plaintiff also objects on the grounds that the phrase "disclosed" is vague and ambiguous. Lead Plaintiff further objects to this request on the grounds that it inappropriately embeds a legal conclusion. *People of State of Cal. v. The Jules Fribourg*, 19 F.R.D. 432, 436 (N.D. Cal. 1955) ("[R]equests for admission are not to be treated as substitutes for discovery processes to uncover evidence, and … they may not be applied to controverted legal issues lying at the heart of the case."); *Gibson Brands Inc. v. John Hornby Skewes & Co.*, 2015 WL 12681376, at *6 (C.D. Cal. July 20, 2015) (denying motion to compel responses to requests for admissions where such requests "are best reserved for authentication of documents and confirmation of undisputed facts that will therefore not require proof at trial. The use of RFAs as discovery devices to obtain new information, particularly when that information may require complex judgments and nuanced appraisals, is generally improper."). Lead Plaintiff further objects to this request on the grounds that Lead Plaintiff does not have sufficient information as to when, and to whom, iRhythm "issued" the CAN.

Subject to and without waiving any of the foregoing objections, Lead Plaintiff will not respond to this request at this time but is willing to meet and confer with Defendants concerning this request.

**REQUEST NO. 39:**

Admit that on November 4, 2022, the FDA posted about the CAN on the FDA website, available at https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfRes/res.cfm?ID=196267, stating that "[o]n 9/28/2022, Field Safety Notice Labeling Corrections were sent to customers who were informed of labeling changes and that the firm intends to enhance the process of notifying patients that they are approaching the maximum limit for either symptomatic or asymptomatic transmissions by auto shipping another Zio AT patch to the patient."

**RESPONSE TO REQUEST NO. 39:**

Lead Plaintiff objects to this request on grounds that the information sought by this request is irrelevant to the claims and defenses in this Action. iRhythm's self-serving claims in the CAN do not in any way contradict, and do in fact corroborate, the allegations in the Complaint. Thus, it is irrelevant whether the website contained the above language. Lead Plaintiff also objects on the grounds that the phrase "posted about the CAN" is vague and ambiguous. Lead Plaintiff further objects to this request on the grounds that Lead Plaintiff does not have sufficient information as to when, and to whom, iRhythm "sent" the CAN.

Subject to and without waiving the foregoing objections, Lead Plaintiff lacks sufficient information to admit or deny this request.

**REQUEST NO. 40:**

Admit that on November 4, 2022, the FDA posted about the CAN on the FDA website, available at https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfRes/res.cfm?ID=196267, stating that "once the maximum transmission limit is reached for either type, any further transmissions for that type will cease."

**RESPONSE TO REQUEST NO. 40:**

Lead Plaintiff objects to this request's characterization of the document, which speaks for itself. Lead Plaintiff objects to this request on grounds that the information sought by this request is irrelevant to the claims and defenses in this Action. iRhythm's self-serving claims in the CAN do not in any way contradict, and do in fact corroborate, the allegations in the Complaint. Thus, it is irrelevant whether the website contained the above language. Lead Plaintiff also objects on the grounds that the phrase "posted about the CAN" is vague and ambiguous.

Subject to and without waiving the foregoing objections, Lead Plaintiff lacks sufficient information to admit or deny this request.

**REQUEST NO. 41:**

Admit that the Warning Letter iRhythm received from the FDA on May 25, 2023, available at https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/irhythm-technologies-inc-643474-05252023, was publicly available no later than June 6, 2023.

**RESPONSE TO REQUEST NO. 41:**

Lead Plaintiff objects to this request on grounds that the information sought by this request is irrelevant to the claims and defenses in this Action. Lead Plaintiff also objects on the grounds that the phrase "publicly available" is vague and ambiguous. Lead Plaintiff further objects on the grounds that Lead Plaintiff cannot verify that the Warning Letter was "publicly available no later than June 6, 2023."

Subject to and without waiving the foregoing objections, Lead Plaintiff admits that the existence of the Warning Letter was available no later than June 6, 2023.

**REQUEST NO. 42:**

Admit that in the Warning Letter iRhythm received from the FDA on May 25, 2023, available at https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/irhythm-technologies-inc-643474-05252023, the FDA did not acknowledge that since the FDA's July 2022 inspection, iRhythm had updated the Zio AT label.

**RESPONSE TO REQUEST NO. 42:**

Lead Plaintiff objects to this request's characterization of the document, which speaks for itself. Lead Plaintiff objects to this request on grounds that the information sought by this request is irrelevant to the claims and defenses in this Action. iRhythm's self-serving claim does not in any way contradict, and does in fact corroborate, the allegations in the Complaint. Lead Plaintiff also objects on the grounds that the phrases "did not acknowledge" and "had updated" are vague and ambiguous. Lead Plaintiff also objects on the grounds that the request embeds the assertion that iRhythm had updated the Zio AT label since the FDA's July 2022 inspection.

Subject to and without waiving any of the foregoing objections, Lead Plaintiff lacks sufficient information to admit or deny this request.

**REQUEST NO. 43:**

Admit that no later than August 1, 2024, in iRhythm's Form 10-Q for the second quarter of 2024, available at https://www.sec.gov/ix?doc=/Archives/edgar/data/0001388658/000138865824000143/irtc-20240630.htm (dated August 1, 2024), iRhythm disclosed that the FDA had issued the 2024 Form 483.

**RESPONSE TO REQUEST NO. 43:**

Lead Plaintiff objects to this request's characterization of the document, which speaks for itself. Lead Plaintiff objects to this request on grounds that the information sought by this request is irrelevant to the claims and defenses in this Action. iRhythm's self-serving claim does not in any way contradict, and does in fact corroborate, the allegations in the Complaint. Lead Plaintiff also objects on the grounds that "disclosed" is vague and ambiguous. Lead Plaintiff further objects to this request on the grounds that it inappropriately embeds a legal conclusion. *People of State of Cal. v. The Jules Fribourg*, 19 F.R.D. 432, 436 (N.D. Cal. 1955) ("[R]equests for admission are not to be treated as substitutes for discovery processes to uncover evidence, and … they may not be applied to controverted legal issues lying at the heart of the case."); *Gibson Brands Inc. v. John Hornby Skewes & Co.*, 2015 WL 12681376, at *6 (C.D. Cal. July 20, 2015) (denying motion to compel responses to requests for admissions where such requests "are best reserved for authentication of documents and confirmation of undisputed facts that will therefore not require proof at trial. The use of RFAs as discovery devices to obtain new information, particularly when that information may require complex judgments and nuanced appraisals, is generally improper.").

Subject to and without waiving any of the foregoing objections, Lead Plaintiff will not respond to this request at this time but is willing to meet and confer with Defendants concerning this request.

**REQUEST NO. 44:**

Admit that version 8 of iRhythm's Zio AT CRM dated September 26, 2022 disclosed that the Zio AT is not "intended for use in critical care patients because the reporting timeliness is not consistent with life-threatening arrhythmias."

**RESPONSE TO REQUEST NO. 44:**

Lead Plaintiff objects to this request's characterization of the document, which speaks for itself. Lead Plaintiff objects to this request on grounds that the information sought by this request is irrelevant to the claims and defenses in this Action. iRhythm's self-serving claim does not in any way contradict, and does in fact corroborate, the allegations in the Complaint. Lead Plaintiff also objects on the grounds that "disclosed" is vague and ambiguous. Lead Plaintiff further objects

to this request on the grounds that it inappropriately embeds a legal conclusion. *People of State of Cal. v. The Jules Fribourg*, 19 F.R.D. 432, 436 (N.D. Cal. 1955) ("[R]equests for admission are not to be treated as substitutes for discovery processes to uncover evidence, and … they may not be applied to controverted legal issues lying at the heart of the case."); *Gibson Brands Inc. v. John Hornby Skewes & Co.*, 2015 WL 12681376, at \*6 (C.D. Cal. July 20, 2015) (denying motion to compel responses to requests for admissions where such requests "are best reserved for authentication of documents and confirmation of undisputed facts that will therefore not require proof at trial. The use of RFAs as discovery devices to obtain new information, particularly when that information may require complex judgments and nuanced appraisals, is generally improper.").

Subject to and without waiving any of the foregoing objections, Lead Plaintiff will not respond to this request at this time but is willing to meet and confer with Defendants concerning this request.

**REQUEST NO. 45:**

Admit that version 9 of iRhythm's Zio AT CRM dated September 2022 disclosed that the Zio AT is not "intended for use in critical care patients because the reporting timeliness is not consistent with life-threatening arrhythmias."

**RESPONSE TO REQUEST NO. 45:**

Lead Plaintiff objects to this request's characterization of the document, which speaks for itself. Lead Plaintiff objects to this request on grounds that the information sought by this request is irrelevant to the claims and defenses in this Action. iRhythm's self-serving claim does not in any way contradict, and does in fact corroborate, the allegations in the Complaint. Lead Plaintiff also objects on the grounds that "disclosed" is vague and ambiguous. Lead Plaintiff further objects to this request on the grounds that it inappropriately embeds a legal conclusion. *People of State of Cal. v. The Jules Fribourg*, 19 F.R.D. 432, 436 (N.D. Cal. 1955) ("[R]equests for admission are not to be treated as substitutes for discovery processes to uncover evidence, and … they may not be applied to controverted legal issues lying at the heart of the case."); *Gibson Brands Inc. v. John Hornby Skewes & Co.*, 2015 WL 12681376, at \*6 (C.D. Cal. July 20, 2015) (denying motion to compel responses to requests for admissions where such requests "are best reserved for

authentication of documents and confirmation of undisputed facts that will therefore not require proof at trial. The use of RFAs as discovery devices to obtain new information, particularly when that information may require complex judgments and nuanced appraisals, is generally improper.").

Subject to and without waiving any of the foregoing objections, Lead Plaintiff will not respond to this request at this time but is willing to meet and confer with Defendants concerning this request.

**REQUEST NO. 46:**

Admit that version 10 of iRhythm's Zio AT CRM disclosed that the Zio AT is not "intended for use in critical care patients because the reporting timeliness is not consistent with life - threatening arrhythmias."

**RESPONSE TO REQUEST NO. 46:**

Lead Plaintiff objects to this request's characterization of the document, which speaks for itself. Lead Plaintiff objects to this request on grounds that the information sought by this request is irrelevant to the claims and defenses in this Action. iRhythm's self-serving claim does not in any way contradict, and does in fact corroborate, the allegations in the Complaint. Lead Plaintiff also objects on the grounds that "disclosed" is vague and ambiguous. Lead Plaintiff further objects to this request on the grounds that it inappropriately embeds a legal conclusion. *People of State of Cal. v. The Jules Fribourg*, 19 F.R.D. 432, 436 (N.D. Cal. 1955) ("[R]equests for admission are not to be treated as substitutes for discovery processes to uncover evidence, and … they may not be applied to controverted legal issues lying at the heart of the case."); *Gibson Brands Inc. v. John Hornby Skewes & Co.*, 2015 WL 12681376, at *6 (C.D. Cal. July 20, 2015) (denying motion to compel responses to requests for admissions where such requests "are best reserved for authentication of documents and confirmation of undisputed facts that will therefore not require proof at trial. The use of RFAs as discovery devices to obtain new information, particularly when that information may require complex judgments and nuanced appraisals, is generally improper.").

Subject to and without waiving any of the foregoing objections, Lead Plaintiff will not respond to this request at this time but is willing to meet and confer with Defendants concerning this request.

**REQUEST NO. 47:**

Admit that iRhythm disclosed in all Class Period Zio AT labels that the device is not "intended for use in critical care patients because the reporting timeliness is not consistent with life -threatening arrhythmias."

**RESPONSE TO REQUEST NO. 47:**

Lead Plaintiff objects to this request's characterization of the document, which speaks for itself. Lead Plaintiff objects to this request on grounds that the information sought by this request is irrelevant to the claims and defenses in this Action. iRhythm's self-serving claim does not in any way contradict, and does in fact corroborate, the allegations in the Complaint. Lead Plaintiff also objects on the grounds that "disclosed" is vague and ambiguous. Lead Plaintiff further objects to this request on the grounds that it inappropriately embeds a legal conclusion. *People of State of Cal. v. The Jules Fribourg*, 19 F.R.D. 432, 436 (N.D. Cal. 1955) ("[R]equests for admission are not to be treated as substitutes for discovery processes to uncover evidence, and … they may not be applied to controverted legal issues lying at the heart of the case."); *Gibson Brands Inc. v. John Hornby Skewes & Co.*, 2015 WL 12681376, at *6 (C.D. Cal. July 20, 2015) (denying motion to compel responses to requests for admissions where such requests "are best reserved for authentication of documents and confirmation of undisputed facts that will therefore not require proof at trial. The use of RFAs as discovery devices to obtain new information, particularly when that information may require complex judgments and nuanced appraisals, is generally improper."). Lead Plaintiff also objects on the grounds that the request embeds the assertion that the Zio AT label included the Zio AT CRM.

Subject to and without waiving any of the foregoing objections, Lead Plaintiff will not respond to this request at this time but is willing to meet and confer with Defendants concerning this request.

DATED:    January 2, 2026                    Respectfully submitted,

*/s/ Katherine M. Sinderson*
**BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP**

JOHN J. RIZIO-HAMILTON (*pro hac vice*)
(johnr@blbglaw.com)
KATHERINE M. SINDERSON (*pro hac vice*)
(katiem@blbglaw.com)
THOMAS Z. SPERBER (*pro hac vice*)
(thomas.sperber@blbglaw.com)
ABBY KRITTA (*pro hac vice*)
(abygail.kritta@blbglaw.com)
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400

JONATHAN D. USLANER (Bar No. 256898)
jonathanu@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3481

*Counsel for Lead Plaintiff Oklahoma
Firefighters Pension and Retirement System*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 2, 2026, I caused a true and correct copy of LEAD PLAINTIFF'S RESPONSES AND OBJECTIONS TO DEFENDANTS' SECOND SET OF REQUESTS FOR ADMISSION to be served via e-mail upon counsel of record in this action.


*/s/ Thomas Z. Sperber*
Thomas Z. Sperber

CERTIFICATE OF SERVICE
Case No. 3:24-CV-706-JSC