March 17, 2026

<u>**VIA ECF**</u>

Hon. Jacqueline Scott Corley
Phillip Burton Federal Building &
United States Courthouse
450 Golden Gate Avenue
San Francisco, CA 94102

Re:  ***Glazing Employers & Glaziers Union Local #27 Pension & Retirement Fund v.
iRhythm Technologies, Inc.*, Case No. 3:24-cv-00706-JSC**

Dear Judge Corley:

Pursuant to this Court's Civil Standing Order, Lead Plaintiff Oklahoma Firefighters
Pension and Retirement System ("Plaintiff") and Defendants iRhythm Technologies, Inc. and
Quentin Blackford ("Defendants," and together with Plaintiff, the "Parties") jointly submit this
letter to address Plaintiff's demands that:

(i)    Defendants produce all communications between iRhythm and the United States
Department of Justice ("DOJ") regarding its investigations as disclosed on, *inter
alia*, May 4, 2023 (¶134) and July 1, 2024 (¶141), pursuant to Plaintiff's Request
for Production Nos. 1 and 2:

(ii)   Defendants reverse the clawback of the single produced communication between
the DOJ and iRhythm.

The Parties met and conferred telephonically regarding this dispute on February 23, 2026,
and, following subsequent correspondence, were unable to resolve this dispute.

**[Parties' Joint Submission Begins On Next Page]**

**Plaintiff's Position**

**DOJ Communications:** Plaintiff seeks all communications between the DOJ and iRhythm regarding its investigation announced in May 2023. These documents are essential to test the scope and nature of the DOJ's "ongoing criminal investigation," to rebut Defendants' anticipated loss causation and damages arguments, and are responsive to, *inter alia*, Request Nos. 1-2.

The DOJ's investigation is central to this case. On May 4, 2023, iRhythm disclosed a subpoena from the DOJ's Civil Division concerning iRhythm's "products and services." ¶134. The July 1, 2024 DOJ petition revealed that the DOJ was investigating whether "the Zio Systems were failing to timely transmit patient cardiac data to physicians for review after the occurrence of a cardiac event." ¶¶141-42. Each disclosure caused a significant stock decline. ¶¶136, 143. Analysts linked the investigation to the FDA's inspection and Warning Letter. *See, e.g.*, ¶¶138, 150, 154.

To expedite discovery, Plaintiff initially sought "cloned discovery" of documents produced to the DOJ. In response, Defendants repeatedly represented that the DOJ production broadly addressed all Company devices and practices—not just Warning Letter issues. Plaintiff agreed to forego cloned discovery. However, in opposing class certification, Defendants argued that analysts understood the subpoena to be an "industrywide" inquiry and the device's "lag time" was never disclosed. ECF No. 120 at 6, 18. Defendants will likely rely on this to challenge loss causation for the DOJ-related disclosures and to argue that damages must be reduced given alleged overbreadth. *See also* ECF No. 120 at 22 (arguing Plaintiff must disaggregate confounding information).

Recent developments underscore the seriousness of the DOJ's ongoing investigation and its centrality to this case. The DOJ recently revealed that the subpoena was issued "[i]n furtherance of ***an ongoing criminal investigation*** related to federal health care offenses." No. 25-3736, ECF No. 45.1. On February 19, 2026, iRhythm disclosed in its 2025 Form 10-K receiving a "civil investigative demand" from the DOJ as part of the previously disclosed 2023 DOJ subpoena seeking documents "***related to Zio AT***[.]" Thus, the inquiry is not an "industrywide" "broad[]" probe," but is focused on the Zio AT.

During discovery, Plaintiff identified that Defendants had not produced correspondence with the DOJ, including to show the scope and nature of the investigation (except for the single document discussed below). Plaintiff requested this correspondence; Defendants refused.

Plaintiff is entitled to documents bearing on Defendants' assertions about the DOJ investigation, which directly implicate their anticipated loss causation and damages arguments. *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016) (loss causation for disclosure of government investigation where later corrective disclosure reveals fraud connection).[1] Defendants cannot invoke the scope and nature of the DOJ investigation as a defense while refusing to produce documents relevant to testing that defense. Courts regularly require production of communications with government agencies concerning related investigations. *E.g., Tobler v. 1248 Holdings, LLC*, 2025 WL 1158280, at *1 (D. Kan. Apr. 21, 2025) (compelling DOJ communications); *3M Co. v.*

---

[1] Plaintiff reserves all rights to challenge any arguments related to loss causation or any purported requirement to disaggregate damages.

*AIME LLC*, 2023 WL 2604983, at *4 (W.D. Wash. Feb. 13, 2023) (same).

Defendants have not advanced any burden, privilege, or prejudice objections. Instead, they argue Plaintiff "abandoned" this issue, that it is "stale," and that "document discovery is over." Ex. A. But fact discovery closes June 15. There is no prohibition on identifying production gaps, particularly as developments highlight this discovery's importance. And Plaintiff's agreement to not pursue "cloned discovery" (while reserving all rights) did not abandon *this* issue.

Defendants' relevance arguments are: (1) "there are no documents between Quinn Emanuel and the DOJ that reflect the basis of the DOJ investigation" (Ex. A)—which they now conspicuously modify to documents that "***pre-date the subpoena***," and (2) that they do not *currently* intend to raise loss causation or damages arguments about the investigation's "scope." Defendants do not claim the correspondence does not exist; they just demand that Plaintiff accept their characterization of it. But the letters could, for example, identify categories of documents the DOJ pursued (potential evidence of "scope") and indicates that there are post-subpoena documents that do reflect the DOJ's focus. Further, attorney representations as to Defendants' current strategy are not evidence, which Plaintiff will need to prove loss causation and damages. Absent a binding waiver at minimum, the DOJ communications are relevant under Rule 26.

The parties conferred telephonically on February 23. Plaintiff requested Defendants' final position by February 25; Defendants did not respond. After Plaintiff followed up on March 3, Defendants asserted the issue was "moot," that relevant communications "don't exist," and threatened a fee-shifting motion if Plaintiff sought Court intervention. Ex. A.

**Clawback of iRhythm00322760**. Defendants produced a single document reflecting DOJ-iRhythm communications. In it, iRhythm's outside counsel Quinn Emanuel ("QE") forwarded to iRhythm an email chain between QE and the DOJ concerning the DOJ's demand for FDA communications regarding the Warning Letter. Ex. B (to be submitted for in-camera review by Defendants). Defendants redacted a subsequent short message from iRhythm's in-house counsel to Blackford, claiming it contained "legal advice … in anticipation of litigation regarding ***the FDA Warning Letter***." Ex. C. When Plaintiff identified this document as evidence of the DOJ's focus on issues underlying this Action and asked about other DOJ communications, Defendants announced they were clawing back the entire document.

Defendants' privilege claim is meritless. Communications between adverse parties are not privileged. QE's transmittal email to iRhythm stating "FYI, our response seeking clarification" "merely transmitted [the DOJ communications] without any substantive comment." *Muhler Co., Inc. v. State Farm Fire & Cas. Co.*, 2019 WL 2419016, at *6 (D.S.C. June 10, 2019); *see also Devries v. Advanced Am. Constr., Inc.*, 2014 WL 13145285, at *4 (D. Or. Sept. 1, 2014) ("transmittal emails … devoid of any mental impressions or opinions" not protected). Defendants' description of the redacted portion raises substantial doubt about the privilege claim, as it references only the FDA's investigation—not the DOJ's. *Compare* Ex. B *with* Ex. C. The Court should review this portion of the document *in camera*.

But even if this message was properly redacted, that does not justify withholding the entire document. *See U.S. v. City of Hesperia*, 2021 WL 5034381, at *6 (C.D. Cal. 2021) (directing

2

defendants to produce "emails forwarding or discussing privileged attorney-client communications … with only the privileged portions redacted…. Similarly, attachments to privileged emails are not themselves privileged simply by association."). Defendants have demanded that Plaintiff produce non-privileged *attachments* to privileged emails—which Plaintiff has done—yet assert that non-privileged emails *forwarded* in privileged communications are protected. There is no principled difference between an email forward and attachment. Defendants must produce non-privileged portions of email chains, as they have with other partially privileged emails where counsel provides advice in a later part of an email chain.

Defendants argue communications "between lawyer and client" are protected, but cite to cases involving information provided *by* a client *to* their lawyer for purposes of obtaining legal advice. *See* Ex. A at 7-8; *Muro v. Target Corp.*, 250 F.R.D. 350, 363 (N.D. Ill. 2007).[2] iRhythm transmitted no information and was not seeking legal advice. Defendants cite *no* authority for the proposition that a lawyer transmitting negotiations from an adverse party is privileged.

The Court should find that Defendants' clawback is improper, and that the document should be reproduced with only the privileged portion, if any, redacted.

### Defendants' Position

### I.    Plaintiff's Demand Is Based On A Hypothetical, Inaccurate Argument

Plaintiff concedes that its entire demand rests on Defendants' "anticipated" arguments. *Supra* at 1 (seeking documents "to rebut Defendants' *anticipated* loss causation and damages arguments"). But Defendants have already confirmed in writing that they have not—and will not—make corrective disclosure loss causation or damages arguments based on the "scope" of the DOJ investigation.[3] Ex. A. Accordingly, the communications are not "relevant to any party's claim or defense," as required by Federal Rule of Civil Procedure 26. This is dispositive: Plaintiff may not invent arguments Defendants could make and demand documents to respond to them.

Plaintiff relies on Defendants' class certification opposition brief to speculate about Defendants "anticipated" arguments, but that brief provides no support for Plaintiff's speculation. Defendants argued in their opposition that neither the 2023 DOJ subpoena nor the 2024 DOJ enforcement petition had *any price impact*: neither revealed new, corrective information to the market because (a) the transmission limits were disclosed no later than November 1, 2022, (b) a lag time was *never* disclosed, and (c) Plaintiff pointed to no other information relevant to its case theory that those alleged disclosures revealed to the market. ECF No. 120 at 15, 18. Defendants stated that the DOJ investigation was "industry-wide" because a competitor also received a subpoena around the same time iRhythm did. *Id.* at 6. These arguments are singularly concerned with what information was already incorporated into iRhythm's stock price, *not* the "scope" of the subpoena. Plaintiff's attempt to twist one sentence from the background section of Defendants'

---

[2] The one exception, *Goldberg v. Ruano*, involved a finding that legal services bills sent from the attorney to the client could be privileged if they "inform[ed] the client of the nature or amount of work occurring." 2024 WL 4406805, at *4 (C.D. Cal. Mar. 25, 2024). That is not the case here.
[3] Defendants reserve the right to respond to any arguments Plaintiff makes.

brief into an unasserted argument fails.

If Defendants had made any such argument in their opposition brief (they did not), Plaintiff could and should have raised that in its reply.  It did not.  Instead, Plaintiff raised this issue after filing its reply and *six months* after abandoning its initial request for the DOJ communications following Defendants' relevance arguments.

## II.    Plaintiff Already Has The Documents Needed To Address Its Hypothetical Theory

Setting aside the improper justification for its demand, Plaintiff *already has* the documents needed to address its hypothetical theory.  As Plaintiff has itself acknowledged, ***Plaintiff already has*** the documents that define the "scope" and "nature" of the DOJ investigation:  the subpoena itself and the enforcement petition, which lay out exactly what the DOJ was interested in.  ECF No. 96 at 9 ("[O]n July 1, 2024, the DOJ filed suit to enforce its subpoena, ***revealing the focus*** on the Zio AT's "fail[ure] to timely transmit patient cardiac data to physicians."); *id.* at 25 (the "subpoena specifically concerned the lag time").[4]  This is independently dispositive.

Plaintiff nonetheless demands additional ***non-public*** communications between the Company's counsel and the DOJ that could not be relevant to Plaintiff's argument.  To support its corrective disclosure theory, Plaintiff pled that the subpoena announcement revealed the DOJ investigation and "caused the price of iRhythm common stock to decline," *id.* ¶ 136, and that the enforcement petition "revealed to investors the seriousness with which the DOJ was pursuing its investigation," "news" that also allegedly caused a stock price decline, *id.* ¶¶ 141, 143.  Whether the announcement of the subpoena and enforcement petition are "corrective disclosures" capable of supporting Plaintiff's loss causation theory turns on what new information was ***revealed to the market***, not on what may have been discussed with the DOJ non-publicly.  *Lloyd*, 811 F.3d at 1210 (investigation announcement adequately pled as corrective disclosure when considered alongside subsequent ***public*** disclosures).  Plaintiff can point to no case in this Circuit where the announcement of a government investigation served as a corrective disclosure based on communications that were ***never*** made public, like those Plaintiff seeks here.  Non-public communications cannot help Plaintiff prove a change in market price.  *See Evanston Pol. Pension Fund v. McKesson Corp.*, 2021 WL 4902420, at *5 (N.D. Cal. Oct. 21, 2021) ("A corrective disclosure must somehow provide 'new information' to the market.").  In *McKesson*, the court granted partial summary judgment for McKesson after concluding that corrective information was not "revealed" by government investigation disclosures because the relevant information was already "in the market" and that "[t]he loss ... may well have happened even if McKesson had done nothing wrong."  2021 WL 4902420, at *5-6.  Because the communications sought are not relevant to loss causation, they ***could never be relevant*** to Plaintiff's stated purpose.

---

[4]    Failing to establish relevance, Plaintiff argues that developments postdating iRhythm's receipt of the subpoena by ***nearly three years***—and never pled in the Complaint—justify its belated discovery request.  Even were this argument credible, Defendants have never disputed what Plaintiff claims these developments show—that the DOJ sought (among other topics) information related to the Zio AT, a fact that is readily available from the face of the subpoena itself.

### III.    Plaintiff's Demand Is Moot—Defendants Already Confirmed No Documents Exist

The above failures notwithstanding, Plaintiff's demand is also moot because Defendants have already confirmed that the requested documents do not exist.  Plaintiff demanded documents from iRhythm related to the "manifest[ation]" of the DOJ subpoena. Ex. A.  As already explained to Plaintiff, Defendants conducted a reasonable search of the emails between QE,[5] on the one hand, and the DOJ, on the other, and found no documents that reflect the basis for the DOJ investigation or reveal its intended "scope."

Plaintiff fails to explain to this Court what more it would have Defendants do.  It states that "Plaintiff is entitled to test Defendants' unilateral representation" (*supra* at 2) but offers no response to the fact that Defendants already conducted a reasonable search and confirmed such documents do not exist.  Wasting party and judicial resources on an unsubstantiated and already moot motion is precisely why Defendants warned Plaintiff that it may seek fee-shifting.

### IV.    The Court Should Not Allow Plaintiff To Invade Privileged Material

*Finally*, Plaintiff now attempts to reverse the clawback of iRhythm00322760, an inadvertently produced, privileged email chain between iRhythm's litigation counsel, QE, and its client *after* the DOJ subpoena had been issued.  The email's date and context make clear it was prepared not merely in *anticipation* of litigation, but *in the midst of* litigation.

It is black-letter law that the transfer of information reflecting legal advice from outside counsel to a corporate client is a privileged communication. *E.g.*, *Goldberg v. Ruano*, 2024 WL 4406805, at *4 (C.D. Cal. Mar. 25, 2024) (communications that "inform[ed] the client of the nature or amount of work occurring" are privileged); *Chrimar Sys. Inc v. Cisco Sys. Inc*, 2016 WL 1595785, at *3 (N.D. Cal. Apr. 21, 2016) ("communications between a corporation and its outside counsel are presumed to be made for the purpose of seeking legal advice.").

The later emails in the chain—between outside litigation counsel, iRhythm in-house attorneys, and Quentin Blackford—are thus indisputably privileged, and the communication between Quinn Emanuel and DOJ was integrated into the privileged attorney-client communication to explain to the client exactly what was happening in response to the subpoena. Plaintiff has no counter to the "weight of authority" holding that whether an email chain is privileged or not depends on "examination of the most recent communication" in the chain. *Dawe v. Corr. USA,* 263 F.R.D. 613, 621 (E.D. Cal. 2009); *see also Muro*, 250 F.R.D. at 363 ("even though one e-mail is not privileged, a second e-mail which forwards that prior e-mail to counsel might be privileged in its entirety…. the forwarded material is similar to prior conversations or documents that are quoted verbatim in a letter[.]").  That attachments are treated differently, *see City of Hesperia*, 2021 WL 5034381, at *6, is of no moment.

*    *    *

The Parties thank the Court for its attention to this matter.

---

[5]  The Company did not correspond with the DOJ directly.

Respectfully submitted,

/s/ Katherine M. Sinderson

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

John J. Rizio-Hamilton (*pro hac vice*)
Katherine M. Sinderson (*pro hac vice*)
Alec T. Coquin (*pro hac vice*)
Thomas Z. Sperber (*pro hac vice*)
Abby Kritta (*pro hac vice*)
johnr@blbglaw.com
katiem@blbglaw.com
alec.coquin@blbglaw.com
thomas.sperber@blbglaw.com
abygail.kritta@blbglaw.com
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400

Jonathan D. Uslaner (Bar No. 256898)
jonathanu@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3470

*Counsel for Lead Plaintiff Oklahoma Firefighters Pension and Retirement System*

/s/ Christopher Porter

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Kristin Tahler (Bar No. 261908)
kristintahler@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000

Christopher Porter (*pro hac vice*)
chrisporter@quinnemanuel.com
700 Louisiana Street, Suite 3900
Houston, TX 77002
Telephone: (713) 221-7000

Jesse Bernstein (*pro hac vice*)
Brenna Nelinson (*pro hac vice*)
Amy Shehan (*pro hac vice*)
jessebernstein@quinnemanuel.com
brennanelinson@quinnemanuel.com
amyshehan@quinnemanuel.com
295 5th Avenue
New York, NY 10016
Telephone: (212) 849-7000

*Attorneys for Defendants iRhythm Technologies, Inc. and Quentin Blackford*

## ATTESTATION (CIVIL LOCAL RULE 5-1(i)(3))

In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from the signatories.

Dated: March 17, 2026

*/s/ Katherine M. Sinderson*
