**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
JONATHAN D. USLANER (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3481

*Counsel for Lead Plaintiff Oklahoma Firefighters Pension and Retirement System and Lead Counsel for the Settlement Class*

[Additional counsel appear on signature page.]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GLAZING EMPLOYERS AND GLAZIERS' UNION LOCAL #27 PENSION AND RETIREMENT FUND, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>IRHYTHM TECHNOLOGIES, INC., et al.,<br><br>Defendants. | Case No. 3:24-cv-706-JSC<br><br>CLASS ACTION<br><br>**LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>Date: July 9, 2026<br>Time: 10:00 a.m.<br>Judge: Hon. Jacqueline Scott Corley<br>Courtroom: 8 |

## TABLE OF CONTENTS

**PAGE**


NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT .....1

STATEMENT OF ISSUES TO BE DECIDED .....1

MEMORANDUM OF POINTS AND AUTHORITIES .....2

I. PRELIMINARY STATEMENT .....2

II. FACTUAL BACKGROUND .....4

III. THE PROPOSED SETTLEMENT .....6

IV. THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL .....8

A. Standards Governing Approval of a Class Action Settlement .....8

B. The Court "Will Likely Be Able to" Approve the Proposed Settlement Under Rule 23(e)(2) .....9

1. The Settlement Was Reached Through Arm's-Length Negotiations Between Experienced Counsel and with the Assistance of an Experienced Mediator .....9

2. The Settlement is Within the Range of Possible Approval .....10

3. The Settlement Treats All Settlement Class Members Fairly .....13

4. Lead Plaintiff Has Identified All Agreements Made in Connection with the Settlement .....14

V. THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23 .....14

A. The Settlement Class Meets the Requirements of Rule 23(a) .....14

1. Numerosity .....14

2. Commonality .....15

3. Typicality .....16

4. Adequacy .....16

B. The Settlement Class Meets the Requirements of Rule 23(b)(3) .....17

VI. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE .....17

VII. THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR NOTICE TO THE SETTLEMENT CLASS ....20

A. Retention of Strategic Claims Services ....20

B. Proposed Form of Notice ....21

C. Proposed Notice Dissemination Procedures ....21

D. Claims Processing ....23

E. Estimated Notice and Administrative Costs ....23

VIII. ATTORNEYS' FEES AND LITIGATION EXPENSES ....24

IX. PROPOSED SCHEDULE OF EVENTS ....25

X. CONCLUSION ....25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adkins v. Facebook, Inc.*,
2020 WL 6710086 (N.D. Cal. Nov. 15, 2020) ....8

*Bhangal v. Hawaiian Elec. Indus., Inc.*,
2026 WL 587164 (N.D. Cal. Mar. 3, 2026)....22

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) ....15

*Chavez v. Converse, Inc.*,
2020 WL 4047863 (N.D. Cal. July 8, 2020)....10

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ....8, 18

*In re Cooper Cos. Inc. Sec. Litig.*,
254 F.R.D. 628 (C.D. Cal. 2009)....17

*Cullen v. RYVYL Inc.*,
2025 WL 2836651 (S.D. Cal. Aug. 20, 2025) ....9, 10

*Elliott v. Rolling Frito-Lay Sales, LP*,
2014 WL 2761316 (C.D. Cal. June 12, 2014) ....8

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011)....17

*In re Extreme Networks, Inc. Sec. Litig.*,
2019 WL 3290770 (N.D. Cal. July 22, 2019)....13

*Gonzales v. Arrow Fin. Servs. LLC*,
489 F. Supp. 2d 1140 (S.D. Cal. 2007)....16

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ....14, 16

*Hatamian v. Advanced Micro Devices, Inc.*,
2018 WL 8950656 (N.D. Cal. Mar. 2, 2018)....24

*Hefler v. Wells Fargo & Co.*,
2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ....14

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018)....8

*Hodges v. Akeena Solar, Inc.*,
274 F.R.D. 259 (N.D. Cal. 2011) ....................16

*In re LDK Solar Sec. Litig.*,
255 F.R.D. 519 (N.D. Cal. 2009) ....................17

*Lerwill v. Inflight Motion Pictures, Inc.*,
582 F.2d 507 (9th Cir. 1978) ....................16

*Leventhal v. Chegg, Inc.*,
2024 WL 6859633 (N.D. Cal. Dec. 19, 2024) ....................22

*Leventhal v. Chegg, Inc.*,
2025 WL 1481382 (N.D. Cal. May 21, 2025) ....................8

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) ....................8

*Luz Bautista-Perez v. Juul Labs, Inc.*,
2022 WL 307942 (N.D. Cal. Feb. 2, 2022) ....................9

*In re Lyft Inc. Sec. Litig.*,
2023 WL 5068504 (N.D. Cal. Aug. 7, 2023) ....................20

*Malriat v. Quantumscape Corp.*,
2022 WL 17974629 (N.D. Cal. Dec. 19, 2022) ....................15

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ....................10, 13

*Paul, Johnson, Alston & Hunt v. Graulty*,
886 F.2d 268 (9th Cir. 1989) ....................24

*In re Plantronics, Inc. Sec. Litig.*,
No. 4:19-cv-07481-JST, Order (N.D. Cal. Mar. 10, 2026) ....................19

*In re Portal Software, Inc. Sec. Litig.*,
2007 WL 1991529 (N.D. Cal. June 30, 2007) ....................23

*In re QuantumScape Sec. Class Action*,
2025 WL 353556 (N.D. Cal. Jan. 22, 2025) ....................24

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
442 F.3d 741 (9th Cir. 2006) ....................8

*Reynolds v. Direct Flow Med., Inc.*,
2019 WL 1084179 (N.D. Cal. Mar. 7, 2019) ....................10

*In re RH, Inc. Sec. Litig.*,
2019 WL 5538215 (N.D. Cal. Oct. 25, 2019) ....................22

*Satchell v. Fed. Express Corp.*,
2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) .....9

*Schleicher v. Wendt*,
618 F.3d 679 (7th Cir. 2010) .....17

*Sheet Metal Workers' Nat'l Pension Fund v. Bayer Aktiengesellschaft*,
2025 WL 3034317 (N.D. Cal. Oct. 30, 2025).....24

*In re Signet Jewelers Ltd. Sec. Litig.*,
2020 WL 4196468 (S.D.N.Y. July 21, 2020) .....14

*In re Splunk Inc. Sec. Litig.*,
2024 WL 923777 (N.D. Cal. Mar. 4, 2024).....8

*Stewart v. Applied Materials, Inc.*,
2017 WL 3670711 (N.D. Cal. Aug. 25, 2017) .....10

*Thomas v. MagnaChip Semiconductor Corp.*,
2017 WL 4750628 (N.D. Cal. Oct. 20, 2017).....14

*In re Twitter Inc. Sec. Litig.*,
326 F.R.D. 619 (N.D. Cal. 2018).....16

*In re UTStarcom, Inc. Sec. Litig.*,
2010 WL 1945737 (N.D. Cal. May 12, 2010) .....15

*Vataj v. Johnson*,
2021 WL 1550478 (N.D. Cal. Apr. 20, 2021) .....13

*In re VeriSign, Inc. Sec. Litig.*,
2005 WL 7877645 (N.D. Cal. Jan. 13, 2005) .....17

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) .....24

*In re Volkswagen "Clean Diesel" Mktg, Sales Pracs., & Prods. Liab. Litig.*,
2019 WL 2077847 (N.D. Cal. May 10, 2019) .....24

**STATUTES AND RULES**

Securities Exchange Act of 1934:

§ 10(b), 15 U.S.C. § 78j(b), and SEC .....4, 5

§ 20(a), 15 U.S.C. § 78t(a).....5

§ 21D(a)(7), 15 U.S.C. § 78u-4(a)(7) .....21

Fed. R. Civ. P.:

Rule 23 .......... 14, 22

Rule 23(a) .......... 14, 16, 17,

Rule 23(a)(1) .......... 14

Rule 23(a)(2) .......... 15

Rule 23(a)(3) .......... 16

Rule 23(a)(4) .......... 17

Rule 23(b) .......... 17

Rules 23(b)(3) .......... 14, 17, 21

Rule 23(c)(2)(B) .......... 21, 22

Rule 23(c)(3)(B) .......... 21

Rule 23(e) .......... 8

Rule 23(e)(1) .......... 2, 8, 21

Rule 23(e)(1)(B) .......... 8, 10, 22

Rule 23(e)(1)(B)(ii) .......... 14

Rule 23(e)(2) .......... 8, 9

Class Action Fairness Act of 2005:

28 U.S.C. § 1715(b) .......... 22

15 U.S.C. § 78u-4 .......... 4

Securities and Exchange Commission Rule 10b-5,.,
17 C.F.R. § 240.10b-5 .......... 4

## NOTICE OF UNOPPOSED MOTION
## FOR PRELIMINARY APPROVAL OF SETTLEMENT

PLEASE TAKE NOTICE that Lead Plaintiff Oklahoma Firefighters Pension and Retirement System hereby moves the Court on July 9, 2026, at 10:00 a.m. for an order preliminarily approving the proposed settlement pursuant to Rule 23(e)(1). The proposed order will (1) preliminarily approve the proposed Settlement; (2) approve the form and manner of giving notice to the Settlement Class; and (3) schedule a final settlement hearing before the Court to determine whether the proposed Settlement, proposed Plan of Allocation, and Lead Counsel's motion for attorneys' fees and Litigation Expenses should be approved.[1] This motion is supported by the following memorandum of points and authorities in support thereof, and the Stipulation and the exhibits thereto, which embody the terms of the proposed Settlement between the Parties.

Because the motion is unopposed, the Parties agree that it is appropriate for decision on the papers at this time and without a hearing—should the Court so desire.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the proposed $45 million cash settlement of this Action is within the range of fairness, reasonableness, and adequacy to warrant the Court's preliminary approval and the dissemination of notice of its terms to members of the proposed Settlement Class.

2. Whether the Court will be likely to certify the Settlement Class for purposes of the Settlement.

3. Whether the proposed form of settlement notice and claim form and the manner for dissemination to the Settlement Class should be approved.

4. Whether the Court should set a date for a hearing for final approval of the proposed Settlement, the proposed Plan of Allocation, and Lead Counsel's motion for attorneys' fees and Litigation Expenses.

---

[1] Unless otherwise indicated, capitalized terms shall have their meaning as defined in the Stipulation and Agreement of Settlement, dated June 3, 2026 (the "Stipulation"), attached as Exhibit 1.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

Lead Plaintiff is pleased to report that, after more than two years of litigation, it has reached an agreement to settle this securities class action in exchange for a payment of $45 million in cash for the benefit of the Settlement Class, subject to the Court's approval. Lead Plaintiff respectfully submits this memorandum of points and authorities in support of its motion, pursuant to Federal Rule 23(e)(1), for preliminary approval of the proposed settlement (the "Settlement").

The Settlement between Lead Plaintiff Oklahoma Firefighters Pension and Retirement System ("Oklahoma Firefighters" or "Lead Plaintiff") and Defendants iRhythm Technologies, Inc. ("iRhythm" or the "Company") and Quentin Blackford ("Blackford" and, together with iRhythm, "Defendants"), is set forth in the Stipulation attached hereto as Exhibit 1. The Settlement was reached only after extended, arm's-length settlement negotiations, which included a full-day mediation session before David Murphy of Phillips ADR Enterprises, an experienced mediator of securities class actions and other complex disputes.

Lead Plaintiff submits that the proposed Settlement represents a favorable result for the Settlement Class and ultimately should be approved by this Court, given the substantial risks, costs, and delays of continued litigation, including the risks that there might be no recovery for the Settlement Class. Lead Plaintiff would have faced substantial risks in prevailing on its claims through continued litigation, including at summary judgment and trial. Specifically, Lead Plaintiff would have faced challenges in proving that Defendants' statements about iRhythm's Zio AT heart monitoring device—including its purported near real-time data transmission, appropriateness for high-risk patients, and accuracy—were false and made with scienter, and in connecting the stock price declines at issue with the alleged misstatements. For example, there was a risk that the Court or jury might find that Defendants' statements were not misleading given public disclosures of the Zio AT's transmission limits by November 2022. In addition, Lead Plaintiff also faced risks that the Court or jury might find that Defendant Blackford lacked scienter on a complete record at summary judgment or trial. There were also material risks that the Court might eliminate from recovery one or more of the alleged corrective disclosures at class

certification, summary judgment, or trial, or that the Court or a jury would find that significant portions of the price declines on the alleged corrective disclosure dates were due to factors unrelated to the alleged fraud. In light of these risks, Lead Plaintiff and Lead Counsel believe that the $45 million Settlement is a favorable outcome for the Settlement Class.

In addition, Lead Plaintiff and Lead Counsel had a well-developed understanding of the strengths and weaknesses of the claims when the Settlement was reached. Prior to reaching the Settlement, Lead Plaintiff and Lead Counsel had conducted an extensive investigation of the claims at issue, including a detailed review of publicly available information, interviews with dozens of former iRhythm employees, and consultation with a damages expert. Lead Counsel researched and prepared the Second Amended Complaint, which was filed in October 2024. Thereafter, Lead Plaintiff and Lead Counsel litigated Defendants' motion to dismiss through extensive briefing and oral argument, which resulted in the Court sustaining Lead Plaintiff's claims against iRhythm and Blackford with respect to statements regarding the Zio AT's timeliness, accuracy, and appropriateness for high-risk patients. Lead Plaintiff also successfully opposed Defendants' subsequent motion for judgment on the pleadings. After these pleading motions were resolved, the Parties engaged in extensive discovery, producing over 400,000 pages of documents and conducting seven depositions. Lead Plaintiff also fully briefed its motion for class certification. In advance of the mediation session before Mr. Murphy on April 2, 2026, the Parties also exchanged detailed mediation statements. Accordingly, Lead Plaintiff had a well-developed understanding of the strengths and weaknesses of the case when it reached the agreement to settle.

Lead Plaintiff respectfully requests that this Court enter the proposed Preliminary Approval Order attached as Exhibit A to the Stipulation and as Exhibit 2 hereto. The Preliminary Approval Order, among other things: (i) schedules a final hearing to consider the proposed Settlement, the proposed Plan of Allocation of the Net Settlement Fund, and Lead Counsel's motion for attorneys' fees and expenses (the "Settlement Hearing"); (ii) preliminarily approves the Settlement as fair, reasonable, and adequate to the Settlement Class, pending the Settlement Hearing; (iii) finds that the Court "will likely be able" to certify the Settlement Class for settlement

purposes only; (iv) approves the form and method of disseminating notice to the Settlement Class; (v) appoints the claims administrator recommended by Lead Counsel to disseminate notice and administer the Settlement; and (vi) establishes procedures and deadlines for Settlement Class Members to submit Claim Forms for payments from the Net Settlement Fund, request exclusion from the Settlement Class, or object to the terms of the Settlement, Plan of Allocation, and/or requested fees and expenses.

## II. FACTUAL BACKGROUND

On February 6, 2024, Glazing Employers and Glaziers' Union Local #27 Pension and Retirement Fund brought a putative class action, Case No. 3:24-cv-00706, against Defendants and other individual defendants, alleging violations of the Securities Exchange Act of 1934 (the "Exchange Act"). ECF No. 1. On May 15, 2024, the Court (the Honorable Jacqueline Scott Corley) appointed Oklahoma Firefighters as Lead Plaintiff for the Action and approved Bernstein Litowitz Berger & Grossmann LLP as Lead Counsel under the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4. ECF No. 23.

On October 11, 2024, Lead Plaintiff filed the Second Amended Class Action Complaint for Violations of Federal Securities Laws (the "SAC" or "Complaint"). ECF No. 43. The SAC asserted claims on behalf of all persons and entities who purchased the common stock of iRhythm from November 5, 2021 through August 9, 2024, and were damaged thereby. The SAC alleged that Defendants made materially false and misleading statements or omissions concerning iRhythm's Zio AT heart monitoring device, including its purported near real-time data transmission capabilities, its appropriateness for high-risk patients, its categorization as a mobile cardiac telemetry device ("MCT"), and the accuracy of data reported by the device. The Complaint asserted (i) claims under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder, against all Defendants and

Former Individual Defendants and (ii) claims under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a) against Blackford and the Former Individual Defendants.[2]

On December 10, 2024, Defendants moved to dismiss the Complaint asserting (among other things) that Lead Plaintiff failed to sufficiently allege any actionable misrepresentation or that Defendants acted with scienter in making any alleged misrepresentation. ECF No. 51.

On January 29, 2025, Lead Plaintiff filed its opposition to the motion to dismiss. ECF No. 66. On March 10, 2025, Defendants filed their reply. ECF No. 70. The Court held oral argument on Defendants' motion to dismiss the Complaint on April 24, 2025.

On June 3, 2025, the Court granted in part and denied in part Defendants' motion to dismiss the Complaint. ECF No. 77. The Court sustained Lead Plaintiff's Section 10(b) claims against iRhythm and Blackford with respect to statements regarding the Zio AT's timeliness, accuracy, and appropriateness for high-risk patients. The Court dismissed claims against the Former Individual Defendants, dismissed all other alleged misstatements, and dismissed Lead Plaintiff's Section 20(a) claims. *Id.*

On July 18, 2025, Defendants filed a motion for judgment on the pleadings. ECF No. 88. On August 15, 2025, Lead Plaintiff filed its opposition. ECF No. 96. On September 5, 2025, Defendants filed their reply. ECF No. 100. On November 7, 2025, the Court denied Defendants' motion for judgment on the pleadings. ECF No. 118.

On November 3, 2025, Lead Plaintiff moved for class certification. ECF No. 114. On January 5, 2026, Defendants filed their opposition. ECF No. 120. On February 9, 2026, Lead Plaintiff filed its reply. ECF No. 129. On March 2, 2026, Defendants filed a sur-reply. ECF No. 137. On February 26, 2026, the Court held a hearing on Lead Plaintiff's motion for class certification. The motion was still pending when the Parties reached their agreement to settle.

Discovery in the Action commenced following the Court's June 3, 2025 partial denial of Defendants' motion to dismiss the Complaint. Through the class certification stage of the

---

[2] The "Former Individual Defendants" are Brice Bobzien, Douglas Devine, Chad Patterson, Mark Day, and Mintu Turakhia.

litigation, the Parties engaged in extensive discovery, producing over 400,000 pages of documents and conducting seven depositions in total. Lead Plaintiff and Defendants also issued document subpoenas to several non-parties.

The Parties began exploring the possibility of a settlement in early 2026. The Parties agreed to engage in private mediation and retained David Murphy of Phillips ADR Enterprises to act as mediator in the Action (the "Mediator"). On April 2, 2026, counsel for the Parties participated in a full-day mediation session before the Mediator. In advance of that session, the Parties exchanged and submitted detailed mediation statements to the Mediator.

In the weeks following the mediation, Mr. Murphy made a mediator's recommendation that the Parties settle the Action for $45,000,000, which the Parties accepted. The agreement's terms were memorialized in a term sheet executed on May 13, 2026 (the "Term Sheet"). On June 3, 2026, the Parties entered into the Stipulation, which sets forth the full terms and conditions of the Settlement. On the same day, the Parties also entered into a confidential Supplemental Agreement, which gives iRhythm the right to terminate the Settlement if the valid requests for exclusion received from persons and entities entitled to be members of the Settlement Class exceeds an amount agreed to by the Parties.

## III. THE PROPOSED SETTLEMENT

The Settlement provides that Defendants will pay or cause to be paid $45 million in cash into an interest-bearing escrow account. The Settlement Amount, plus accrued interest, after the deduction of attorneys' fees and Litigation Expenses awarded by the Court, Notice and Administration Costs, and Taxes and related expenses (the "Net Settlement Fund"), will be distributed among Settlement Class Members who submit valid Claim Forms, in accordance with a plan of allocation to be approved by the Court. The Settlement is not a claims-made settlement: if the Settlement is approved, Defendants will have no right to the return of any portion of the Settlement Fund based on the number or value of Claims submitted. *See* Stipulation ¶ 15.

<u>The Settlement Class</u>. The Parties have agreed to the certification of the Settlement Class, for settlement purposes only, consisting of all persons and entities who purchased or acquired iRhythm common stock from July 25, 2022 through August 9, 2024, inclusive (the "Class

Period"), and were allegedly damaged thereby (the "Settlement Class"). *See* Stipulation ¶ 1(qq).[3] The Settlement Class is substantively the same as the class proposed in Lead Plaintiff's pending motion for class certification. *See* ECF No. 114, at 1-2; ECF No. 114-5, at 1. The Settlement Class materially differs from the class proposed in the Complaint (ECF No. 43, at 1 and ¶ 239) only to the extent that the Class Period has been shortened from the November 5, 2021 through August 9, 2024 period proposed in the Complaint to the period from July 25, 2022 through August 9, 2024, consistent with the Court's order dismissing claims based on statements before July 2022 (ECF No. 77, at 22-24).

The Release Is Appropriate. In exchange for the payment of the Settlement Amount, Settlement Class Members will release the "Released Plaintiff's Claims." Stipulation ¶ 1(ll). The release is limited to (1) the actual claims asserted in the Action; or (2) unasserted claims that could have been brought but only if they arise out of, are based upon, or relate to "the allegations, transactions, facts, matters or occurrences, representations, omissions, . . . or failures to act that were involved, set forth, or referred to in the complaints filed in the Action;" ***and*** "the purchase or acquisition of iRhythm common stock during the Class Period." *Id.* In addition, the Settlement's release provision does not release (i) any claims asserted in any shareholder derivative action; (ii) any claims related to enforcement of the Settlement; or (iii) any claims of any person or entity who or which submits a request for exclusion from the Settlement Class that is accepted by the Court. *Id.* The Parties are not aware of any other pending cases that will be affected by the Settlement or the proposed release.

The proposed release is closely tailored to the conduct at issue in this Action and is consistent with release provisions approved by the Court and other courts in this District. *See*,

[3] Excluded from the Settlement Class are: (i) Defendants; (ii) members of the Immediate Families of Quentin Blackford or any Former Individual Defendant; (iii) any person who was an Officer or director of iRhythm (including the Former Individual Defendants) during the Class Period; (iv) any firm, trust, corporation, or other entity in which any person or entity excluded in subsections (i)–(iii) has or had a controlling interest; (v) iRhythm's employee retirement and benefit plan(s), if any, and their participants or beneficiaries, to the extent they made purchases through such plan(s); and (vi) the legal representatives, heirs, successors, or assigns of any such excluded persons and entities, in their capacities as such. *See id.*

*e.g.*, *Leventhal v. Chegg, Inc.*, 2025 WL 1481382, at *8 (N.D. Cal. May 21, 2025) (approving similar release); *In re Splunk Inc. Sec. Litig.*, 2024 WL 923777, at *3 (N.D. Cal. Mar. 4, 2024) (same); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *3 (N.D. Cal. Dec. 18, 2018) (same); *see generally Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006) (a class release may release claims not asserted in the action as long as they arise from the same set of factual allegations).

## IV. THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

### A. Standards Governing Approval of a Class Action Settlement

In the Ninth Circuit, there is a strong judicial policy in favor of voluntary settlement of litigation, and particularly so in class actions. *See, e.g.*, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Adkins v. Facebook, Inc.*, 2020 WL 6710086, at *1 (N.D. Cal. Nov. 15, 2020) ("[o]ur court of appeals maintains a strong judicial policy in favor of settlement of complex class action litigation"). Settlements of complex cases greatly contribute to the efficient utilization of scarce judicial resources and achieve the speedy resolution of justice. *See Elliott v. Rolling Frito-Lay Sales, LP*, 2014 WL 2761316, at *3 (C.D. Cal. June 12, 2014) ("judicial policy favors settlement in class actions and other complex litigation where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation").

Federal Rule of Civil Procedure 23(e) requires judicial approval of class action settlements. A district court's review of a proposed class action settlement is a two-step process. First, the court performs a preliminary review of the terms of the proposed settlement to determine whether to send notice of the proposed settlement to the class. *See* Fed. R. Civ. P. 23(e)(1). Second, after notice and a hearing, the Court determines whether to grant final approval of the settlement. *See* Fed. R. Civ. P. 23(e)(2).

A court grants preliminary approval to authorize notice to the class upon a finding that it "will likely be able" to approve the Settlement as fair, reasonable, and adequate at the final hearing. Fed. R. Civ. P. 23(e)(1)(B). This standard effectively codifies prior case law, which provided that courts should grant preliminary approval after considering whether the settlement:

(1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not grant improper preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval. *See, e.g.*, *Luz Bautista-Perez v. Juul Labs, Inc.*, 2022 WL 307942, at *6 (N.D. Cal. Feb. 2, 2022).

At final approval, the Court will determine whether the Settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In considering whether a settlement is fair, reasonable, and adequate at final approval, Rule 23(e)(2) provides that the Court should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Each of these factors supports approval of the Settlement and, thus, preliminary approval is appropriate here.

### B. The Court "Will Likely Be Able to" Approve the Proposed Settlement Under Rule 23(e)(2)

#### 1. The Settlement Was Reached Through Arm's-Length Negotiations Between Experienced Counsel and with the Assistance of an Experienced Mediator

The Settlement was reached only after arm's-length negotiations between experienced counsel who were well informed of the strengths and weaknesses of the case, and with the assistance of an experienced mediator. *See Cullen v. RYVYL Inc.*, 2025 WL 2836651, at *9 (S.D. Cal. Aug. 20, 2025) ("[t]he Ninth Circuit put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in approving a class action settlement).

Here, counsel engaged in a mediation process with an experienced mediator, David Murphy, which included the exchange of detailed mediation statements and a full-day mediation session. As courts in this District and elsewhere have found, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed.*

*Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007); *see also RYVYL*, 2025 WL 2836651, at *9; *Chavez v. Converse, Inc.*, 2020 WL 4047863, at *2 (N.D. Cal. July 8, 2020).

Courts also give considerable weight to the opinion of experienced and informed counsel who support settlement. *See Stewart v. Applied Materials, Inc.*, 2017 WL 3670711, at *6 (N.D. Cal. Aug. 25, 2017); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).

Here, Lead Plaintiff reached the agreement to settle only after conducting approximately two years of litigation, which included a thorough investigation of the claims and preparation of the Second Amended Complaint; briefing and argument on Defendants' motion to dismiss; briefing on Defendants' motion for judgment on the pleadings; briefing of Lead Plaintiff's motion for class certification, including a hearing before the Court; extensive fact discovery comprising the production of over 400,000 pages of documents and seven depositions; and extensive work with experts to assess the size and strength of the claims. In advance of the mediation, the Parties also exchanged detailed mediation statements. Thus, Lead Plaintiff and Lead Counsel had ample information to ascertain the strengths and risks of the claims asserted in the Action and for their conclusion that the $45 million Settlement is fair and reasonable.

In sum, the extent of the litigation, the arm's-length nature of the negotiations, and the participation of a mediator all support a finding that the proposed Settlement is fair, reasonable, and adequate to justify notice to the Settlement Class and a hearing on final approval.

### 2. The Settlement is Within the Range of Possible Approval

At the preliminary approval stage, the Court need only determine whether it "will likely be able" to approve the Settlement, *see* Fed. R. Civ. P. 23(e)(1)(B), or, in other words, whether the Settlement "falls within the range of possible approval." *Reynolds v. Direct Flow Med., Inc.*, 2019 WL 1084179, at *4 (N.D. Cal. Mar. 7, 2019). Because the $45 million Settlement represents a favorable recovery for the Settlement Class in light of the risks of the litigation and the potential outcomes at trial, the Settlement is well within the range of possible approval.

The $45 million Settlement is a favorable result for the Settlement Class in light of the substantial risks that Lead Plaintiff and the Settlement Class would face in proving all of the elements of the asserted claims. To defeat summary judgment and prevail at trial, Lead Plaintiff

would have been required to prove not only that Defendants' statements were materially false, but that Defendants knew that their statements were false when made or were deliberately reckless in making the statements, and that the disclosures concerning Defendants' false and misleading statements caused the declines in the price of iRhythm's common stock. In addition, Lead Plaintiff would have had to establish the amount of per-share damages.

Defendants would have had substantial arguments to make concerning each of these issues. For example, Defendants have argued that their statements about the Zio AT's transmission were not false or misleading because the transmission limits were publicly disclosed no later than November 2022, and that prescribing physicians thereafter understood the Zio AT's technical limitations. Defendants also argued strenuously that the statements concerning the accuracy of the Zio AT were generic and/or aspirational and thus, may not have impacted the price of the stock. Lead Plaintiff also faced risks that the Court or jury might find that Defendant Blackford lacked scienter on a complete record at summary judgment or trial for some or all of the statements. While Lead Plaintiff believed that it had responses to these challenges, they presented significant risks at future stages of the litigation.

Lead Plaintiff faced further significant risks related to proving loss causation and damages. Specifically, there was a material risk that the Court might eliminate from recovery one or more of the alleged corrective disclosures at class certification, summary judgment, or trial. If the Court were to have eliminated certain corrective disclosures at any stage of the litigation, maximum recoverable damages would have been reduced substantially. There was also a meaningful risk that the Court or a jury would find that significant portions of the stock price declines on the alleged corrective disclosure dates were due to factors unrelated to the alleged fraud—such as revised revenue guidance, industry-wide regulatory concerns, and non-fraud related information disclosed concurrently. Accordingly, the need to "disaggregate" fraud-related damages from the overall stock price declines on the corrective disclosure dates was likely to materially lower the amounts of potential recovery in this case.

Moreover, in order to obtain any recovery, Lead Plaintiff would have to prevail at several stages—at class certification, summary judgment, trial, and on appeal. Thus, there was no

guarantee that further litigation would have resulted in a higher recovery, or any recovery at all. In light of these risks, the amount of the Settlement and the immediacy of recovery to the Settlement Class, Lead Plaintiff and Lead Counsel believe that the proposed $45,000,000 Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class.

The Settlement is also favorable to Settlement Class Members when considered in light of the maximum damages that might be established at trial. Based on the analysis of Lead Plaintiff's damages expert, Dr. Matthew Cain, the absolute maximum damages amount that could be obtained at trial on the remaining claims in the Action—assuming that Lead Plaintiff prevailed on all liability issues and obtained the maximum possible stock price declines on all corrective disclosure dates—would be approximately $698 million. *See* Declaration of Matthew Cain, attached hereto as Exhibit 3, at ¶ 18.

But there were credible risks that the maximum obtainable damages could be considerably reduced. For example, the maximum possible damages estimate above incorporates multi-day stock price declines after several corrective disclosures. If Defendants prevailed on their argument that only the stock price decline on the first trading day following each alleged corrective disclosure could be attributed to the disclosure (as opposed to multi-day windows of stock price declines), maximum damages would be reduced to approximately $591 million. Similarly, if the Court or a jury concluded, as Defendants have repeatedly argued, that the Warning Letter fully disclosed the fraud concerning the transmission limit, maximum damages would fall to $526 million. And if Defendants were to prevail in their arguments that the statements concerning the accuracy of the Zio AT were too generic and/or aspirational to have impacted the price of iRhythm's stock, or were not made with scienter, maximum damages would fall to approximately $428 million. Finally, if the Court or a jury were to credit Defendants' vigorous arguments that the entirety of the alleged fraud was disclosed in connection with the first corrective disclosure on November 1, 2022, and thus no damages could be attributable to any later disclosures, maximum damages would fall to just $34.3 million.

As discussed above, Lead Plaintiff would face serious hurdles in proving each of these issues, and would face further loss causation challenges that might further reduce any realistic recoveries at both summary judgment or trial.

Thus, the $45 million Settlement Amount represents approximately 6.4% to 10.5% of Lead Plaintiff's realistic maximum class-wide damages (ranging from $428 million to $698 million). Assuming the scenario that Defendants argue is the most realistic—that there were no recoverable damages attributable to any corrective disclosure after November 1, 2022, the settlement represents 131.2% of maximum class-wide damages of $34.3 million. This represents a favorable recovery for Settlement Class Members, especially when considered in light of the real risks of no-or-lesser recovery and the typical level of recovery in securities class actions. *See, e.g.*, *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *9 (N.D. Cal. July 22, 2019) (approving gross settlement amount equal to between "5% and 9.5% of non-disaggregated damages"); *Omnivision*, 559 F. Supp. 2d at 1042 (settlement equal to 6% to 9% of damages "higher than the median percentage of investor losses recovered in recent shareholder class action settlements"); *Vataj v. Johnson*, 2021 WL 1550478, at *9 (N.D. Cal. Apr. 20, 2021) (settlement amounting to 2% of damages was "consistent with the typical recovery in securities class action settlements").

**3. The Settlement Treats All Settlement Class Members Fairly**

The Settlement does not improperly grant preferential treatment to Lead Plaintiff or any segment of the Settlement Class. All Settlement Class Members will be eligible to receive a distribution from the Net Settlement Fund in accordance with a plan of allocation to be approved by the Court. At the final Settlement Hearing, Lead Plaintiff will ask the Court to approve the proposed Plan of Allocation, which provides a formula for the distribution of the Net Settlement Fund to Settlement Class Members demonstrating a loss on their transactions in iRhythm common stock related to the alleged fraud. As discussed further below, the Plan of Allocation was developed by Lead Counsel based on a damages analysis prepared by Lead Plaintiff's damages expert, and Lead Counsel believes that it provides a fair and equitable method for allocating the Net Settlement Fund among injured Settlement Class Members.

#### 4. Lead Plaintiff Has Identified All Agreements Made in Connection with the Settlement

In addition to the Stipulation, the Parties have entered into a confidential Supplemental Agreement that establishes the conditions under which iRhythm may terminate the Settlement if requests for exclusion ("opt-outs") exceed an agreed-upon threshold. *See* Stipulation ¶ 44. "This type of agreement is a standard provision in securities class actions and has no negative impact on the fairness of the Settlement." *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *13 (S.D.N.Y. July 21, 2020); *see also Thomas v. MagnaChip Semiconductor Corp.*, 2017 WL 4750628, at *7 (N.D. Cal. Oct. 20, 2017) (such an agreement "does not render the settlement unfair"). As is also standard in securities class actions, agreements of this kind are not made public to avoid incentivizing individuals to leverage the opt-out threshold to exact individual settlements at the class's expense. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *7 (N.D. Cal. Sept. 4, 2018) ("There are compelling reasons to keep this information confidential in order to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts."). The Supplemental Agreement is being submitted to the Court for its review *in camera* in connection with this Motion.

## V. THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23

The Ninth Circuit has long recognized that courts may certify class actions for settlement purposes only. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1018-19 (9th Cir. 1998). In connection with final approval, the Court will be asked to certify the Settlement Class, for settlement purposes only, under Rules 23(a) and 23(b)(3). At the preliminary approval stage, the Court need only determine whether it "will likely be able to" grant certification at final approval. Fed. R. Civ. P. 23(e)(1)(B)(ii). The proposed Settlement Class here readily satisfies the requirements of Rules 23(a) and 23(b)(3).

### A. The Settlement Class Meets the Requirements of Rule 23(a)

#### 1. Numerosity

Rule 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable." Courts find this standard met "if the class includes forty or more members."

*Malriat v. Quantumscape Corp.*, 2022 WL 17974629, at *3 (N.D. Cal. Dec. 19, 2022). For securities cases involving stocks traded on a national exchange, courts routinely infer numerosity when the stock has "millions of shares trading." *Id*.

Here, the proposed Settlement Class includes thousands of investors. iRhythm common stock was listed and actively traded on the NASDAQ Stock Market throughout the Class Period. During the Class Period, iRhythm averaged more than 30.5 million shares outstanding, with an average weekly trading volume of over 1.9 million shares, and over 500 different institutions held the stock at some point in the Class Period. ECF No. 114-3, ¶¶ 43, 95, 98, and Ex. 10. Accordingly, the numerosity requirement is met. *See In re UTStarcom, Inc. Sec. Litig.*, 2010 WL 1945737, at *4 (N.D. Cal. May 12, 2010).

**2. Commonality**

The commonality requirement of Rule 23(a)(2) is satisfied where the proposed class representatives share at least one question of fact or law with the claims of the prospective class. Commonality exists even if there are varying fact situations among class members so long as the claims of the plaintiffs and other class members are based on the same liability theory. *See Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975).

The common questions of fact and law in this Action are numerous and include: (i) whether Defendants made false or misleading statements or omissions in violation of the federal securities laws; (ii) whether Defendants acted with scienter; (iii) whether Defendants' alleged misrepresentations and omissions caused the Settlement Class Members losses; and (iv) whether the members of the Settlement Class sustained damages, and the proper amount of their damages. *See* ECF No. 43, ¶ 241; ECF No. 114, at 13. Courts routinely hold that securities actions containing such common questions are prime candidates for class certification. *See, e.g.*, *UTStarcom*, 2010 WL 1945737, at *4 (finding common questions as to whether "Defendants engaged in a fraudulent scheme and omitted or misrepresented material facts," the "publicly traded securities were artificially inflated," and "class members . . . suffer[ed] economic losses").

**3. Typicality**

The typicality requirement of Rule 23(a)(3) is satisfied when the claims or defenses of the party or parties representing the class are typical of the claims or defenses of the other class members. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *In re Twitter Inc. Sec. Litig.*, 326 F.R.D. 619, 629 (N.D. Cal. 2018). Typicality exists "even if there are factual distinctions between the claims of the named plaintiffs and those of other class members." *Gonzales v. Arrow Fin. Servs. LLC,* 489 F. Supp. 2d 1140, 1155 (S.D. Cal. 2007), *aff'd*, 660 F.3d 1055 (9th Cir. 2011).

Here, Lead Plaintiff's claims arise from the same events or course of conduct that give rise to claims of other Settlement Class Members, and the claims asserted are based on the same legal theory. The claims of all Settlement Class Members derive from the same legal theories and allege the same set of operative facts. Lead Plaintiff alleges that the price of the iRhythm common stock it purchased during the Class Period was artificially inflated as a result of Defendants' alleged misstatements and that it suffered damages when the misstatements were corrected, causing iRhythm's stock price to decline. Lead Plaintiff's claims thus meet the typicality requirement. *See Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 266-67 (N.D. Cal. 2011).

**4. Adequacy**

Rule 23(a)'s adequacy requirement is met when lead plaintiff and lead counsel will fairly and adequately protect the interests of the Settlement Class. The proposed class representative must be free of interests antagonistic to the other members of the class, and counsel representing the class must be qualified, experienced and capable of conducting the litigation. *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978); *Hanlon*, 150 F.3d at 1020.

Here, Lead Plaintiff has claims that are coextensive with those of the Settlement Class. In addition, Lead Plaintiff has retained counsel that are highly experienced in securities class action litigation and who have successfully prosecuted many securities and other complex class actions. *See* Declaration of Katherine M. Sinderson, attached hereto as Exhibit 4, at ¶¶ 41-44. Thus, Lead

Plaintiff is an adequate representative of the Settlement Class, and its counsel are qualified, experienced and capable of prosecuting this Action, in satisfaction of Rule 23(a)(4).

**B. The Settlement Class Meets the Requirements of Rule 23(b)(3)**

Rule 23(b)(3) requires that common questions of law or fact predominate over individual questions, and that a class action is superior to other available methods of adjudication. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011); *In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 525 (N.D. Cal. 2009). Here, common questions of law and fact predominate over any individualized ones. As courts have repeatedly recognized, "[t]he common questions of whether misrepresentations were made and whether Defendants had the requisite scienter predominate[] over any individual questions of reliance and damages." *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 632, 642 (C.D. Cal. 2009). Issues of falsity, materiality, scienter, and loss causation "affect investors alike," and their proof "can be made on a class-wide basis" *Schleicher v. Wendt*, 618 F.3d 679, 682, 685, 687 (7th Cir. 2010).

In addition, a class action is "superior" to individual actions here because individual class members' claims are too small to maintain a separate action. Lead Plaintiff is unaware of any individual actions brought on behalf of iRhythm common stock investors based on the same allegations. In addition, the broad geographical dispersion of Settlement Class Members makes it desirable to concentrate the claims in one forum. *See In re VeriSign, Inc. Sec. Litig.*, 2005 WL 7877645, at *9 (N.D. Cal. Jan. 13, 2005) ("Class actions are particularly well-suited in the context of securities litigation, wherein geographically dispersed shareholders with relatively small holdings would [] have difficulty in challenging wealthy corporate defendants.").

In sum, the requirements of Rules 23(a) and 23(b) are satisfied, and there are no issues that would prevent the Court from certifying this Settlement Class, appointing Lead Plaintiff as class representative, and appointing Lead Counsel as counsel for the Settlement Class.

## VI. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

Lead Plaintiff also seeks preliminary approval of the proposed Plan of Allocation of the settlement proceeds, which is set forth in the Notice to be mailed to Settlement Class Members. The Court's review of the proposed Plan of Allocation is governed by the same standards of

review applicable to the settlement itself—the plan must be fair and reasonable. *See Class Plaintiffs*, 955 F.2d at 1284-85.

The Plan of Allocation, which Lead Counsel developed based on the damages analysis prepared by Lead Plaintiff's expert, provides a fair, reasonable, and equitable basis to allocate the Net Settlement Fund among Settlement Class Members who submit acceptable Claim Forms. The Net Settlement Fund is the Settlement Amount (plus interest accrued, the "Settlement Fund") less: (i) any Taxes; (ii) any Notice and Administration Costs; (iii) any Litigation Expenses awarded by the Court; (iv) any attorneys' fees awarded by the Court; and (v) any other costs or fees approved by the Court. Stipulation ¶ 1(bb).[4]

In developing the Plan of Allocation, Lead Plaintiff's damages expert calculated the estimated amount of alleged artificial inflation in the per-share price of iRhythm common stock during the Settlement Class Period that was allegedly proximately caused by Defendants' alleged materially false and misleading statements and omissions. In calculating the alleged artificial inflation, Lead Plaintiff's damages expert considered the price changes in iRhythm common stock in reaction to certain public announcements allegedly revealing the truth concerning Defendants' alleged misrepresentations and material omissions, adjusting for price changes that were attributable to market or industry forces on those days. *See* Notice ¶ 73.

The Plan of Allocation calculates a "Recognized Loss Amount" for each purchase or acquisition of iRhythm common stock during the Class Period that is listed in the Claim Form and for which adequate supporting documentation is provided. Notice ¶¶ 76-77. Under the Plan, Claimants who purchased shares during the Class Period but did not hold those shares through at least the close of trading on November 1, 2022 (when the initial alleged corrective disclosure occurred) will have no Recognized Loss Amount as to those transactions because any loss they

[4] "Taxes" means "(i) all federal, state and/or local taxes of any kind (including any interest or penalties thereon) on any income earned by the Settlement Fund; and (ii) the expenses and costs incurred by Lead Counsel in connection with determining the amount of, and paying, any taxes owed by the Settlement Fund (including, without limitation, expenses of tax attorneys and accountants)." Stipulation ¶ 1(vv). Taxes are only paid on interest income earned on the Settlement Fund (not on the principal amounts). *See* Sinderson Decl. ¶ 38.

suffered would not have been caused by the alleged fraud. *Id.* ¶ 77A. For shares sold from November 2, 2022 through the end of the Class Period, the Recognized Loss Amount will be the lesser of (i) the difference between the amount of artificial inflation on the date of purchase or acquisition and the amount of artificial inflation on the date of sale; or (ii) the difference between the purchase price and the sale price. *Id.* ¶ 77B. For shares sold during the 90-day period following the end of the Class Period or held to the end of that period, Recognized Loss Amounts will be calculated consistent with the PSLRA's 90-day look-back provision. *Id.* ¶¶ 77C, 77D.

The sum of a Claimant's Recognized Loss Amounts for all of their Class Period purchases or acquisitions will be the Claimant's "Recognized Claim." Notice ¶ 78. The Plan of Allocation also limits Claimants' Recognized Claim based on whether they had an overall market loss in their transactions in iRhythm common stock during the Class Period. *Id.* ¶¶ 85-86. The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. *Id.* ¶ 87.

One hundred percent of the Net Settlement Fund will be distributed to eligible Claimants. Moreover, if any funds remain after an initial distribution to eligible Claimants, as a result of uncashed or returned checks or other reasons, subsequent distributions will also be conducted as long as they are cost effective. *Id.* ¶ 89.

The Plan of Allocation also identifies the Bluhm Legal Clinic Complex Civil Litigation and Investor Protection Center at the Northwestern Pritzker School of Law ("IPC") as the proposed *cy pres* recipient for any residual funds that may remain after all cost-effective distributions of the Net Settlement Fund to all eligible Claimants have been completed. *Id.* The IPC is a law school clinic that provides law students with the opportunity to represent clients with limited income in securities matters against stockbrokers, investment advisers, or securities firms. IPC also provides case-screening services to regulators, including FINRA, the SEC, and state regulators, as well as brokerage houses trying to identify legitimate claims. *See* https://www.law.northwestern.edu/legalclinic/investorprotection/ (last visited June 3, 2026). Lead Plaintiff believes the IPC is an appropriate *cy pres* recipient because of the nature of the securities fraud claims at issue in this Action. *See, e.g., In re Plantronics, Inc. Sec. Litig.*, No.

4:19-cv-07481-JST, Order at 4-5 (N.D. Cal. Mar. 10, 2026) (Order Approving Distribution Plan as Modified), ECF No. 263 (approving IPC as *cy pres* recipient in a similar securities class action because the "organization has a sufficient nexus to the objectives of the securities laws . . . and the interests of class members because it (1) provides law students with opportunities to represent limited-income clients in securities matters; and (2) provides services to regulators, including the Securities and Exchange Commission"); *In re Lyft Inc. Sec. Litig.*, 2023 WL 5068504, at *7 (N.D. Cal. Aug. 7, 2023) (approving IPC as *cy pres* recipient in a similar securities class action because IPC "does work that aligns with the objectives of the securities laws underlying this case and the class members' interest[s] in protecting investors" and "there is a sufficient 'driving nexus' between the class and the *cy pres* recipient"). The Parties have no relationship with the IPC.

## VII. THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR NOTICE TO THE SETTLEMENT CLASS

### A. Retention of Strategic Claims Services

Lead Plaintiff proposes that the notice and claims process be administered by Strategic Claims Services ("SCS"), an independent settlement and claims administrator with extensive experience handling the administration of securities class actions. *See* Declaration of Paul Mulholland ("Mulholland Decl."), attached hereto as Exhibit 5, at ¶ 2. A copy of SCS's firm resume is attached to the Mulholland Decl. as Exhibit A and a discussion of its data security procedures is attached thereto as Exhibit B. Lead Counsel selected SCS after a competitive bidding process in which four firms submitted proposals. *See* Sinderson Decl. ¶¶ 27-28. All of the proposals received involved comparable methods of providing notice and claims processing, including the use of first-class mail and identifying potential Settlement Class Members through brokers and nominee owners, and SCS was the lowest cost bid. *Id.* ¶ 28. Lead Counsel has engaged SCS to serve as notice or settlement administrator in two cases, excluding this one, in the past two years (as compared to a total of 19 such new engagements during the same period), or roughly 11% of those cases. *Id.* ¶ 29. Lead Counsel has found SCS to be a reliable administrator for these types of cases, with competitive pricing compared to similar firms. *Id.* ¶ 28.

**B. Proposed Form of Notice**

Lead Plaintiff respectfully submits that the Court should approve the form and content of the proposed Notice and Summary Notice. *See* Stipulation, Exs. A-1 and A-3. The Notice clearly sets out the relevant information and answers to most questions that Settlement Class Members will have. Consistent with Rules 23(c)(2)(B) and 23(e)(1), the Notice apprises all Settlement Class Members of, among other things, the nature of the Action, the definition of the Settlement Class, the claims and issues in the Action, that the Court will exclude from the Settlement Class any Settlement Class Member who requests exclusion, and the binding effect of a class judgment on Settlement Class Members under Rule 23(c)(3)(B).

The Notice also satisfies the separate disclosure requirements imposed by the PSLRA. *See* 15 U.S.C. § 78u-4(a)(7). It states the amount of the Settlement on an absolute and per-share basis; provides a statement concerning the issues about which the Parties disagree; states the amount of attorneys' fees and Litigation Expenses that Lead Counsel will seek; provides the name, address, telephone number, and email of Lead Counsel who will be available to answer questions from Settlement Class Members; and provides a brief statement explaining the reasons why the Parties are proposing the Settlement.

The Notice also meets the Northern District of California Procedural Guidance for Class Action Settlements ("N.D. Cal. Guid.") in that it includes, among other things, (1) "contact information for class counsel to answer questions"; (2) the web address for the settlement website; and (3) "instructions on how to access the case docket." N.D. Cal. Guid. ¶ 3. The Notice also sets out the procedures and deadlines for the submission of Claim Forms; for submission of objections to any aspect of the Settlement, the Plan of Allocation, or attorneys' fees and expenses; and for requests for exclusion from the Settlement Class.

**C. Proposed Notice Dissemination Procedures**

The proposed method for disseminating the notice, which is set forth in the Preliminary Approval Order submitted herewith, also readily meets the standards under the Federal Rules and due process. Rule 23(c)(2)(B) requires the court to direct to a class certified under Rule 23(b)(3) "the best notice that is practicable under the circumstances, including individual notice to all

members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1)(B) requires the court to direct notice of a class action settlement "in a reasonable manner to all class members who would be bound." Fed. R. Civ. P. 23(e)(1)(B).

If the Court preliminarily approves the Settlement, iRhythm will provide names and addresses of the record purchasers of iRhythm common stock during the Settlement Class Period, for the purpose of identifying and giving notice to the Settlement Class. SCS will mail the Notice and Claim Form (the "Notice Packet") to all such identified potential Settlement Class Members. In addition, SCS will send notice to brokers and other nominees who purchased or acquired iRhythm common stock during the Settlement Class Period on behalf of other beneficial owners. These nominee purchasers will be required to either forward the Notice Packet to their customers or provide the names and addresses of the beneficial owners to SCS, which will then promptly send the Notice Packet by first-class mail to such identified beneficial owners (or by email if provided). SCS will also cause the Summary Notice, which provides an abbreviated description of the Action and the proposed Settlement and explains how to obtain the more detailed Notice, to be published once in *The Wall Street Journal* and transmitted over the *PR Newswire*, a national business-oriented wire service, and will publish the Notice and Claim Form and other materials on a website to be developed for the Settlement.

Defendants will serve the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715 *et seq.* (2005) ("CAFA") within ten calendar days of the filing of the Stipulation with the Court. *See* 28 U.S.C. § 1715(b); Stipulation ¶ 24. The Parties are not aware of any other such required notices to government entities or others. *See* N.D. Cal. Guid. ¶ 10.

The proposed plan for providing notice is the same method that has been used in numerous other securities class actions. Courts routinely find that comparable notice programs, combining individual notice by first-class mail to all class members who can be reasonably identified, supplemented with publication notice, meet all the requirements of Rule 23 and due process. *See, e.g., Bhangal v. Hawaiian Elec. Indus., Inc.*, 2026 WL 587164, at *7 (N.D. Cal. Mar. 3, 2026) (approving similar notice plan in securities class action); *Leventhal v. Chegg, Inc.*, 2024 WL 6859633, at *3 (N.D. Cal. Dec. 19, 2024) (approving similar notice plan); *In re RH, Inc. Sec.*

*Litig.*, 2019 WL 5538215, at *2 (N.D. Cal. Oct. 25, 2019) (approving similar notice plan); *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 1991529, at *7 (N.D. Cal. June 30, 2007) ("notice by mail and publication is the 'best notice practicable under the circumstances'").

**D. Claims Processing**

The net proceeds of the Settlement will be distributed to Settlement Class Members who submit eligible Claim Forms with required documentation to SCS. This claim procedure is necessary because neither Lead Plaintiff nor Defendants possess data regarding investors' transactions in iRhythm common stock that would allow the Parties to create a claims-free process to distribute the Settlement funds. This type of claims processing is standard in securities class actions and has long been used and found effective.

SCS will review and process the claims submitted under the supervision of Lead Counsel, will provide claimants with an opportunity to cure any deficiencies in their claim(s) or request review of the denial of their claim(s) by the Court, and will then mail or wire claimants their *pro rata* share of the Net Settlement Fund (as calculated under the Plan of Allocation) upon approval of the Court. SCS estimates that a total of 28,000 Notice Packets will be mailed based on its analysis of the trading volume of iRhythm common stock during the Class Period, and that approximately 16,800 claims will be received, based on an estimated 60% response rate, which SCS finds reasonable and typical. *See* Mulholland Decl. ¶ 17.

**E. Estimated Notice and Administrative Costs**

SCS's fees for administration of the Settlement are charged on a per-claim basis and expenses will be billed separately (including expenses for printing and mailing the Notice Packet, publishing the Summary Notice, establishing and maintaining the settlement website, and establishing and operating the toll-free telephone helpline). Because the costs are highly dependent on how many Notice Packets are ultimately mailed and how many Claims are ultimately received and processed, at this time only an estimate of the total Notice and Administration Costs can be provided. Based on the estimates of the number of Notice Packets expected to be mailed and claims expected to be received discussed above, SCS estimates that the total Notice and Administration Costs for the Action, including broker and nominee

fulfillment costs, will be approximately $224,000. *See* Mulholland Decl. ¶ 24. The Notice and Administration Costs are necessary to effectuate the Settlement and are reasonable in relation to the value of the Settlement (the estimated total administrative costs represent approximately 0.5% of the total Settlement Amount). The Notice and Administration Costs will be paid from the Settlement Fund. *See* Stipulation ¶¶ 11, 16.

**VIII. ATTORNEYS' FEES AND LITIGATION EXPENSES**

As explained in the Notice (¶¶ 5, 51), Lead Counsel intends to seek an award of attorneys' fees of up to 25% of the Settlement Fund (*i.e.*, 25% of the Settlement Amount, plus interest earned thereon), and payment of Litigation Expenses not to exceed $800,000. Lead Counsel will provide detailed information in support of its application in its motion for attorneys' fees and expenses, to be filed with the Court 65 days before the Settlement Hearing, and more than 35 days before objections are due.

For purposes of the Court's preliminary review in connection with this motion for preliminary approval of the Settlement, Lead Counsel notes that the maximum fee that Lead Counsel will request is the benchmark percentage for attorneys' fees in the Ninth Circuit, *see Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271-72 (9th Cir. 1989), and is well within the range of percentage fees awarded in comparable securities class actions with significant contingency fee risks. *See, e.g.*, *Sheet Metal Workers' Nat'l Pension Fund v. Bayer Aktiengesellschaft*, 2025 WL 3034317, at *3 (N.D. Cal. Oct. 30, 2025) (awarding 27% of $38 million settlement fund); *In re QuantumScape Sec. Class Action*, 2025 WL 353556, at *5 (N.D. Cal. Jan. 22, 2025) (awarding 30% of $47.5 million settlement); *In re Volkswagen "Clean Diesel" Mktg, Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2077847, at *5 (N.D. Cal. May 10, 2019) (awarding 25% of $48 million settlement); *Hatamian v. Advanced Micro Devices, Inc.*, 2018 WL 8950656, at *1 (N.D. Cal. Mar. 2, 2018) (awarding 25% of $29.5 million settlement).

Moreover, Lead Counsel has thus far devoted over 8,400 hours to this Action, with a lodestar of approximately $6 million. The requested fee will represent a multiplier of approximately 1.87 on Lead Counsel's lodestar, which is within the range typically awarded in actions like this one with substantial contingency fee risk. *See Vizcaino v. Microsoft Corp.*, 290

F.3d 1043, 1052 (9th Cir. 2002) (affirming 28% fee award representing 3.65 multiplier). If preliminary approval is granted, Lead Counsel will present detailed information on its lodestar in connection with its fee application at final approval.

Lead Counsel also intends to seek payment for Litigation Expenses in an amount not to exceed $800,000, which includes costs of retaining experts (of over $440,000), mediation fees, and online legal and factual research, among other costs. In addition, this amount may include a request for reimbursement of Lead Plaintiff's costs and expenses, as permitted under the PSLRA, in an amount not to exceed $10,000, which will be based on the value of the time dedicated to the Action by Lead Plaintiff's employees as well as reimbursement for any other costs, and will be supported by a declaration from Lead Plaintiff detailing those costs.

## IX. PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court must set a final approval hearing date, dates for mailing and publication of the Notice and Summary Notice, and deadlines for submitting claims or for objecting to the Settlement.[5] The Parties respectfully propose the schedule set forth in Appendix A, as agreed to by the Parties and set forth in the proposed Preliminary Approval Order. Lead Plaintiff requests that the Court schedule the Settlement Hearing for a date at least 120 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter. As this motion is unopposed, the Parties request the Court consider this motion for preliminary approval on the papers at this time.

## X. CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that this Court grant the unopposed motion for preliminary approval of the Settlement, approve the forms and methods of notice, and enter the proposed Preliminary Approval Order. Attached as Appendix B is a checklist demonstrating the Parties' compliance with the Northern District of California Procedural Guidance for Class Action Settlements.

---

[5] The blanks for certain deadlines currently contained in the agreed-upon form of Notice will be filled in once the Court sets those dates and prior to mailing to Settlement Class Members.

Dated: June 4, 2026

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*/s/ Katherine M. Sinderson*
JOHN J. RIZIO-HAMILTON (*pro hac vice*)
(johnr@blbglaw.com)
KATHERINE M. SINDERSON (*pro hac vice*)
(katiem@blbglaw.com)
ALEC T. COQUIN (*pro hac vice*)
(alec.coquin@blbglaw.com)
THOMAS Z. SPERBER (*pro hac vice*)
(thomas.sperber@blbglaw.com)
ABBY KRITTA (*pro hac vice*)
(abygail.kritta@blbglaw.com)
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444

JONATHAN D. USLANER (Bar No. 256898)
jonathanu@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3481

***Counsel for Lead Plaintiff and***
***Lead Counsel for the Settlement Class***

## Appendix A

### Proposed Schedule of Settlement Events

| **Event** | **Time for Compliance** | **Example Dates**[6] |
|---|---|---|
| Deadline to mail Notice and Claim Form to the potential Settlement Class Members identified by iRhythm and to brokers and nominees ("Notice Date") | 15 business days after entry of Preliminary Approval Order (Preliminary Approval Order ¶ 7(b)) | July 30, 2026 |
| Deadline for publishing Summary Notice | 10 business days after Notice Date (*Id.* ¶ 7(d)) | August 13, 2026 |
| Deadline for filing final approval papers | 65 calendar days prior to Settlement Hearing (*Id.* ¶ 26) | September 2, 2026 |
| Deadline for submitting Claim Forms | 28 calendar days prior to Settlement Hearing (*Id.* ¶ 10) | October 9, 2026 |
| Deadline for exclusion requests and objections | 28 calendar days prior to Settlement Hearing (*Id.* ¶¶ 13, 16, 17) | October 9, 2026 |
| Deadline for filing reply papers | 14 calendar days prior to Settlement Hearing (*Id.* ¶ 26) | October 23, 2026 |
| Settlement Hearing | 120 days after entry of Preliminary Approval Order, or at the Court's earliest convenience thereafter (*Id.* ¶ 5) | November 6, 2026 |

[6] The "Example Dates" are representative dates that would apply if the Court entered the Preliminary Approval Order on July 9, 2026 and set the Settlement Hearing for November 6, 2026.

## Appendix B

| N.D. Cal. Procedural Guidance for Class Action Settlements<br>Items to Address at Preliminary Approval | Where Procedural Guidance is Addressed in Papers |
|---|---|
| **(1) INFORMATION ABOUT THE SETTLEMENT—The motion for preliminary approval should state, where applicable:** | |
| 1. Any differences between the settlement class and the class proposed in the operative complaint (or, if a class has been certified, the certified class) and an explanation as to why the differences are appropriate. | **Motion at 7:2-8** |
| 2. Any differences between the claims to be released and the claims in the operative complaint (or, if a class has been certified, the claims certified for class treatment) and an explanation as to why the differences are appropriate. | **Motion at 7:9 – 8:6** |
| 3. The class recovery under the settlement (including details about and the value of injunctive relief), the potential class recovery if plaintiffs had fully prevailed on each of their claims, claim by claim, and a justification of the discount applied to the claims. | **Motion at 6:18-25, 10:20 – 13:16;**<br><br>**Proposed Notice at 1, ¶¶ 2, 25-29** |
| 4. Any other cases that will be affected by the settlement, an explanation of what claims will be released in those cases if the settlement is approved, the class definitions in those cases, their procedural posture, whether plaintiffs' counsel in those cases participated in the settlement negotiations, a brief history of plaintiffs' counsel's discussions with counsel for plaintiffs in those other cases before and during the settlement negotiations, an explanation of the level of coordination between the two groups of plaintiffs' counsel, and an explanation of the significance of those factors on settlement approval. If there are no such cases, counsel should so state. | **Motion at 7:19-20; 17:15-17** |
| 5. The proposed allocation plan for the settlement fund. | **Motion at 17:25 – 20:10;**<br><br>**Proposed Notice Appx. A** |
| 6. If there is a claim form, an estimate of the expected claim rate in light of the experience of the selected claims administrator and/or counsel based on comparable settlements, the identity of the examples used for the estimate, and the reason for the selection of those examples. | **Motion at 23:15-18;**<br><br>**Sinderson Decl. (Motion Ex. 4), at Ex. B;**<br><br>**Mulholland Decl. (Motion Ex. 5), ¶ 17** |

| **N.D. Cal. Procedural Guidance for Class Action Settlements Items to Address at Preliminary Approval** | **Where Procedural Guidance is Addressed in Papers** |
|---|---|
| 7. In light of Ninth Circuit case law disfavoring reversions, whether and under what circumstances money originally designated for class recovery will revert to any defendant, the expected and potential amount of any such reversion, and an explanation as to why a reversion is appropriate. | **Motion at 6:23-25;**<br><br>**Stipulation ¶ 15** |
| **(2) SETTLEMENT ADMINISTRATION—The parties are expected to get multiple competing bids from potential settlement administrators. In the motion for preliminary approval, the parties should:** | |
| 1. Identify the proposed settlement administrator, the settlement administrator selection process, how many settlement administrators submitted proposals, what methods of notice and claims payment were proposed, and the lead class counsel's firms' history of engagements with the settlement administrator over the last two years. | **Motion at 20:14-27;**<br><br>**Sinderson Decl. ¶¶ 27-29;**<br><br>**Mulholland Decl. ¶¶ 2, 6** |
| 2. Address the settlement administrator's procedures for securely handling class member data (including technical, administrative, and physical controls; retention; destruction; audits; crisis response; etc.), the settlement administrator's acceptance of responsibility and maintenance of insurance in case of errors, the anticipated administrative costs, the reasonableness of those costs in relation to the value of the settlement, and who will pay the costs. | **Motion at 20:17-19; 23:20 – 24:5;**<br><br>**Mulholland Decl. ¶¶ 3-5, 24-25 & Ex. B** |
| **(3) NOTICE—The parties should ensure that the class notice is easily understandable, in light of the class members' communication patterns, education levels, and language needs. The notice should include the following information:** | |
| 1. Contact information for class counsel to answer questions. | **Proposed Notice ¶¶ 6, 69;**<br><br>**Proposed Summary Notice at 3** |
| 2. The address for a website, maintained by the claims administrator or class counsel, that lists key deadlines and has links to the notice, a claim form (if any), preliminary approval order, motions for preliminary and final approval and for attorneys' fees, and any other important documents in the case. | ***See generally* Proposed notices** |
| 3. Instructions on how to access the case docket via PACER or in person at any of the court's locations. | **Proposed Notice ¶ 68** |

| N.D. Cal. Procedural Guidance for Class Action Settlements Items to Address at Preliminary Approval | Where Procedural Guidance is Addressed in Papers |
|---|---|
| 4. The date and time of the final approval hearing, clearly stating that the date may change without further notice to the class. | **Proposed Notice at 4, ¶¶ 58-59;**<br><br>**Proposed Summary Notice at 2** |
| 5. A note to advise class members to check the settlement website or the Court's PACER site to confirm that the date has not been changed. | **Proposed Notice at 4, ¶ 58;**<br><br>**Proposed Summary Notice at 2** |
| The parties should explain how the notice distribution plan is effective. Class counsel should consider the following ways to increase notice to class members: identification of potential class members through third-party data sources; use of text messages and social media to provide notice to class members; hiring a marketing specialist; providing a settlement website that estimates claim amounts for each specific class member and updating the website periodically to provide accurate claim amounts based on the number of participating class members; and distributions to class members via direct deposit. The notice distribution plan should rely on U.S. mail, email, and/or social media as appropriate to achieve the best notice that is practicable under the circumstances, consistent with Federal Rule of Civil Procedure 23(c)(2). | **Motion at 21:25 – 23:3;**<br><br>**Mulholland Decl. ¶¶ 7-15** |
| If U.S. mail is part of notice distribution plan, notice envelope should be designed to enhance the chance that it will be opened. | **Mulholland Decl. ¶ 9** |
| Below is suggested language for inclusion in class notices:<br><br>This notice summarizes the proposed settlement. For the precise terms of the settlement, please see the settlement agreement available at www.__________.com, by contacting class counsel at ____________, by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California,[insert appropriate Court location here], between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.<br><br>PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS. | **Proposed Notice ¶¶ 68-69** |

| N.D. Cal. Procedural Guidance for Class Action Settlements<br>Items to Address at Preliminary Approval | Where Procedural Guidance is Addressed in Papers |
|---|---|
| **(4). OPT-OUTS** | |
| The notice should instruct class members who wish to opt out of the settlement to send a letter, setting forth their name and information needed to be properly identified and to opt out of the settlement, to the settlement administrator and/or the person or entity designated to receive opt outs. It should require only the information needed to opt out of the settlement and no extraneous information or hurdles. The notice should clearly advise class members of the deadline, methods to opt out, and the consequences of opting out. | **Proposed Notice ¶¶ 53-55** |
| **(5) OBJECTIONS** | |
| Objections must comply with Federal Rule of Civil Procedure 23(e)(5). | **Proposed Notice ¶ 62** |
| The notice should instruct class members who wish to object to the settlement to send their written objections only to the court. All objections will be scanned into the electronic case docket, and the parties will receive electronic notices of filings. The notice should make clear that the court can only approve or deny the settlement and cannot change the terms of the settlement. The notice should clearly advise class members of the deadline for submission of any objections. | **Proposed Notice ¶¶ 61-62** |
| Below is suggested language for inclusion in class notices:<br><br>"You can ask the Court to deny approval by filing an objection. You can't ask the Court to order a different settlement; the Court can only approve or reject the settlement. If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue. If that is what you want to happen, you should object.<br><br>Any objection to the proposed settlement must be in writing. If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney. All written objections and supporting papers must (a) clearly identify the case name and number ( __________ v. ___________, Case No. _________), (b) be submitted to the Court either by filing them electronically or in person at any location of the United States District Court for the Northern District of California or by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, [insert appropriate Court location here], and (c) be filed or postmarked on or before ____________." | **Proposed Notice ¶¶ 60-61** |

| N.D. Cal. Procedural Guidance for Class Action Settlements<br>Items to Address at Preliminary Approval | Where Procedural Guidance is Addressed in Papers |
|---|---|
| **(6) ATTORNEYS' FEES AND COSTS** | |
| Although attorneys' fee requests will not be approved until the final approval hearing, Class Counsel should include information about the fees and costs (including expert fees) they intend to request, their lodestar calculation (including total hours), and resulting multiplier. | **Motion at 24:7 – 25:10;**<br><br>**Proposed Notice ¶¶ 5, 51-52;**<br><br>**Proposed Summary Notice at 2** |
| In a common fund case, the parties should include information about the relationship between the amount of the common fund, the requested fee, and the lodestar. | **Motion at 24:25-28** |
| To the extent counsel base their fee request on having obtained injunctive relief and/or other non-monetary relief for the class, counsel should discuss the benefit conferred on the class. | **N/A** |
| **(7) SERVICE AWARDS** | |
| Although service award requests will not be approved until the final approval hearing, the parties should include information about the service awards they intend to request as well as a summary of the evidence supporting the awards. The parties should ensure that neither the size nor any conditions placed on the incentive awards undermine the adequacy of the named plaintiffs or class representatives. | **Motion at 25:6-10** |
| **(8) CY PRES AWARDEES** | |
| If the settlement contemplates a cy pres award, the parties should identify their chosen cy pres recipients, if any, and how those recipients are related to the subject matter of the lawsuit and the class members' claims. | **Motion at 19:18 – 20:10;**<br><br>**Proposed Notice ¶ 89** |
| The parties should also identify any relationship they or their counsel have with the proposed cy pres recipients. | **Motion at 20:10** |
| **(9) TIMELINE** | |
| The parties should ensure that class members have at least thirty-five days to opt out or object to the settlement and the motion for attorney's fees and costs. | **Motion at 24:9-12 and Motion Appendix A** |

| | |
|---|---|
| **(10) CLASS ACTION FAIRNESS ACT (CAFA) AND SIMILAR REQUIREMENTS** | |
| The parties should address whether CAFA notice is required and, if so, when it will be given. | **Motion at 22:18-20** |
| In addition, the parties should address substantive compliance with CAFA. For example, if the settlement includes coupons, the parties should explain how the settlement complies with 28 U.S.C. § 1712 | **N/A** |
| In addition, the parties should address whether any other required notices to government entities or others have been provided, such as notice to the Labor & Workforce Development Agency (LWDA) pursuant to the Private Attorneys General Act (PAGA). | **Motion at 22:20-21** |
| **(11) COMPARABLE OUTCOMES** | |
| Lead class counsel should provide information about comparable cases, including settlements and litigation outcomes. Lead counsel should provide the following information for as many as feasible (and at least one) comparable class settlement (i.e. settlements involving the same or similar claims, parties, issues):<br><br>1. The claims being released, the total settlement fund, the total number of class members, the total number of class members to whom notice was sent, the method(s) of notice, the number and percentage of claim forms submitted, the average recovery per class member or claimant, the amounts distributed to cy pres recipients, the administrative costs, the attorneys' fees and costs, the total exposure if the plaintiffs had prevailed on every claim.<br><br>2. Where class members are entitled to non-monetary relief, such as discount coupons or debit cards or similar instruments, the number of class members availing themselves of such relief and the aggregate value redeemed by the class members and/or by any assignees or transferees of the class members' interests.<br><br>3. Where injunctive and/or other non-monetary relief has been obtained, discuss the benefit conferred on the class.<br><br>Counsel should summarize this information in easy-to-read charts that allow for quick comparisons with other cases, supported by analysis in the text of the motion. | **Sinderson Decl. ¶ 46 & Ex. B** |
| **(12) ELECTRONIC VERSIONS** | |
| Electronic versions (Microsoft Word or WordPerfect) of all proposed orders and notices should be submitted to the presiding judge's Proposed Order (PO) email address when filed. Most judges in this district used Microsoft Word, but counsel should check with the individual judge's Courtroom Deputy. | **Per Judge Corley's preferences, no electronic version will be submitted unless requested.** |

| (13) OVERLAPPING CASES | |
|---|---|
| Within one day of filing of the preliminary approval motion, the defendants should serve a copy on counsel for any plaintiffs with pending litigation, whether at the trial court or appellate court level, whether active or stayed, asserting claims on a representative (e.g., class, collective, PAGA, etc.) basis that defendants believe may be released by virtue of the settlement. | **N/A** |