UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GLAZING EMPLOYERS AND
GLAZIERS UNION LOCAL #27
PENSION AND RETIREMENT FUND,

Plaintiff,

v.

IRHYTHM TECHNOLOGIES, INC., et al.,

Defendants.

Case No.  3:24-cv-00706-JSC

**ORDER RE: MOTION FOR
PRELIMINARY APPROVAL**

Re: Dkt. No. 147

Plaintiff brings this Private Securities Litigation Reform Act ("PSLRA") putative class action against iRhythm Technologies ("iRhythm") and its CEO, Quentin Blackford, for allegedly false or misleading statements regarding iRhythm's Zio AT, a device which transmits heart event data for physician monitoring.  Following briefing and the hearing of Plaintiff's motion for class certification, the parties' notified the Court they had reached a settlement and Plaintiff's motion for preliminary approval of the class action settlement is now pending before the Court.  (Dkt. No. 147.[1])  Having considered the briefing, and supplemental submission, and having had the benefit of oral argument on July 10, 2026, the Court GRANTS the motion for preliminary approval.

## BACKGROUND

The Court assumes the parties' familiarity with the factual and procedural background and incorporates its prior discussion by reference. (Dkt. No. 118 at 2-4.)

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

# THE SETTLEMENT AGREEMENT

## A.    The Settlement Class

The Agreement defines the Settlement Class as

> all persons and entities who purchased or acquired iRhythm common stock during the period from July 25, 2022 through August 9, 2024, inclusive (the "Class Period"), and were allegedly damaged thereby.

(Dkt. No. 147-1, Settlement Agreement at ¶ 1(qq).  The following individuals are excluded:

> (i) Defendants; (ii) members of the Immediate Families of Quentin Blackford or any Former Individual Defendant; (iii) any person who was an Officer or director of iRhythm (including the former Individual Defendants) during the Class Period; (iv) any firm, trust, corporation, or other entity in which any person or entity excluded in subsections (i)–(iii) has or had a controlling interest; (v) iRhythm's employee retirement and benefit plan(s), if any, and their participants or beneficiaries, to the extent they made purchases through such plan(s); and (vi) the legal representatives, heirs, successors, or assigns of any such excluded persons and entities, in their capacities as such. Payment Terms.

(*Id.*)

## B.    Payment Terms

Under the Settlement Agreement, Defendants will pay $45,000,000 ("Settlement Fund").

(*Id.* at ¶¶ 1(ss).) The following amounts may be deducted from the Settlement Fund:

1.  Notice and Administration Costs: $224,000 (*Id.* at ¶ 1(bb); Dkt. No. 147 at 31);

2.  Litigation Expenses: up to $800,000 (Dkt. No. 147-1 at ¶ 17; Dkt. No. 147 at 31);

3.  Attorneys' Fees: up to 25% of the Settlement Fund: ($11,250,000); (Dkt. No. 147 at 31);

4.  Compensatory Award for the Lead Plaintiff under 15 U.S.C. § 78u-4(a)(4) of up to $10,000 (*Id.* at 32); and

5.  Taxes which includes "(i) all federal, state and/or local taxes of any kind (including any interest or penalties thereon) on any income earned by the Settlement Fund; and (ii) the expenses and costs incurred by Lead Counsel in connection with determining the amount of, and paying any taxes owed by the Settlement Fund (including, without limitation, expenses of tax attorneys and accountants)." (Dkt. No. 147-1 at ¶¶ 1(bb), (vv).)

United States District Court
Northern District of California

The remaining amount, the "Net Settlement Amount," will be divided in pro rata shares among authorized claimants pursuant to a specified plan of allocation. (*Id.* at ¶ 1(bb).)

### C.     Scope of the Release

Settlement Class Members release

> any and all claims and causes of action of every nature and description, including known claims and Unknown Claims, contingent or absolute, mature or not mature, liquidated or unliquidated, accrued or not accrued, concealed or hidden, regardless of legal or equitable theory and whether arising under federal, state, common, or foreign law or any other law, rule, or regulation, whether foreign or domestic, that Lead Plaintiff or any other member of the Settlement Class (i) asserted in the Action; or (ii) could have asserted in the Action, or in any other action or in any other forum, that arise out of, are based upon, are related to, or are in consequence of both (a) the allegations, transactions, facts, matters or occurrences, representations, omissions, disclosures, non-disclosures, matters that would have been barred by res judicata had the Action been fully litigated to a final judgment, or failures to act that were involved, set forth, or referred to in the complaints filed in the Action; and (b) the purchase or acquisition of iRhythm common stock during the Class Period. This release does not cover, include, or release (i) any claims asserted in any related shareholder derivative action; (ii) any claims related to enforcement of the Settlement; or (iii) any claims of any person or entity who or which submits a request for exclusion from the Settlement Class that is accepted by the Court.

(Dkt. No. 147-1 at ¶ 1(ll).)

### D.     Notice

Plaintiff selected Strategic Claims Services (SCS) as the Settlement Administrator following a competitive bidding process.  (Dkt. No. 147 at 27; Dkt. No. 147-5, Mulholland Decl. at ¶ 6.)  SCS will provide mail notice to all those identified by iRhythm as having purchased iRhythm common stock during the Settlement Class Period as well as to brokers and other nominees who purchased or acquired iRhythm common stock on behalf of other beneficial owners.  (Dkt. No. 147 at 29; Dkt. No. 147-5, Mulholland Decl. at ¶¶ 8-10, 12.)  SCS will also publish the summary notice in *The Wall Street Journal* and over the *PR Newswire*.  (Dkt. No. 147-5 at ¶ 13.)  Finally, SCS will create a settlement website (www.iRhythmSecuritiesLitigation.com) and publish the notice and other documents there.  (*Id.* at ¶ 14.)

### E.     Objections and Requests for Exclusion

Settlement Class Members can opt-out of the settlement by timely submitting a letter to the

Settlement Administrator requesting exclusion from the settlement. (Dkt. No. 147 at 38; Dkt. No. 147-1 at 67.) Settlement Class Members can also file a written objection to any part of the settlement and/or the request for attorneys' fees and costs. (Dkt. No. 147 at 38; Dkt. No. 147-1 at 68-69.)

**DISCUSSION**

The approval of a settlement is a multi-step process. At the preliminary approval stage, the court should grant such approval only if it is justified by the parties' showing that the court will likely be able to (1) "certify the class for purposes of judgment on the proposal" and (2) "approve the proposal under Rule 23(e)(2)." Fed. R. Civ P. 23(e)(B). If the court preliminarily certifies the class and finds the settlement appropriate after "a preliminary fairness evaluation," then the class will be notified, and a final fairness hearing scheduled to determine if the settlement is fair, adequate, and reasonable pursuant to Rule 23. *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *5 (N.D. Cal. Nov. 21, 2012).

## I.    CLASS CERTIFICATION

A court may preliminarily certify a settlement class if the prerequisites of Federal Rule of Civil Procedure 23(a) have been met, and at least one of the requirements for Rule 23(b) have also been met. *See* Fed. R. Civ. P. 23.

Class actions must meet the following requirements for certification:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In addition to meeting the requirements of Rule 23(a), a putative class action must also meet one of the conditions outlined in Rule 23(b).

### A.    Rule 23(a)

The Rule 23(a) factors are satisfied.

First, the class is sufficiently numerous based on Plaintiff's expert's estimate on class certification that iRhythm averaged more than 30.5 million shares outstanding throughout the class

United States District Court
Northern District of California

United States District Court
Northern District of California

period with weekly trading averaging 1.91 million shares. (Dkt. No. 114 at 20; Dkt. No. 114-1 at ¶ 43.) *See Malriat v. QuantumScape Corp.*, No. 3:21-CV-00058-WHO, 2022 WL 17974629, at *3 (N.D. Cal. Dec. 19, 2022) ("[C]ourts may infer that, when a corporation has millions of shares trading on a national exchange, the numerosity requirement is met.").

Second, the typicality requirement is satisfied. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *A. B. v. Hawaii State Dep't of Educ.*, 30 F.4th 828, 839 (9th Cir. 2022) (cleaned up). Here, the claims of both Plaintiff and Settlement Class Members arise from the same set of factual questions—whether Defendants' alleged misstatements artificially inflated the stock price and whether they were damaged when the misstatements were corrected and the stock price declined. (Dkt. No. 147 at 23.) Plaintiff's claim is therefore predicated on the same or similar legal theories as those of the other Settlement Class Members.

Third, the commonality requirement is satisfied because there are common questions of law and fact arising out of Defendants' alleged representations. "The commonality requirement of Rule 23(a)(2) requires plaintiffs seeking class certification to show that their claims depend upon a common contention that is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *A. B.*, 30 F.4th at 839 (cleaned up).

Finally, adequacy exists because there is no evidence Lead Plaintiff and Plaintiffs' counsel have any conflicts of interest with the proposed class, or Lead Plaintiff and Plaintiffs' counsel will not vigorously prosecute the case on behalf of the class. Lead Plaintiff Oklahoma Firefighters Pension and Retirement System (Oklahoma Firefighters), the proposed class representative, and class counsel appear to be adequate representatives of the class. Oklahoma Firefighters purchased, owned, or held iRhythm common stock during the class period and its interests in demonstrating Defendants' liability and maximizing possible recovery are aligned with the absent class members. (Dkt. No. 23 at 3-4.) The Court previously found class counsel, Bernstein Litowitz, would fairly and adequately represent the class given their significant experience in litigating securities class

United States District Court
Northern District of California

actions. (*Id.* at 4.) The Court has no reason to alter this view now when considering the Rule 23(g)(1)(A) factors.

The Court also concludes, at the preliminary approval stage, the Rule 23(b)(3) requirement is satisfied. Under Rule 23(b)(3), the Court must find "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Here, the Court finds predominance is satisfied because Plaintiffs' claims arise from the same alleged misrepresentations. Further, the Court finds superiority is satisfied because the alternative method to a class action likely involves "individual claims for a small amount of ... damages," resulting in most cases involving "litigation costs [that] dwarf potential recovery." *Hanlon*, 150 F.3d at 1023.

* * *

Accordingly, the Court concludes that conditional certification of the class for settlement purposes is proper.

## II.    PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT

Federal Rule of Civil Procedure 23(e) provides "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled ... only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). So, before a district court approves a class action settlement, it must conclude the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

In determining whether a class action settlement agreement meets this standard, the court may consider some or all of the following factors:

> (1) the strength of the plaintiff's case;
> (2) the risk, expense, complexity, and likely duration of further litigation;
> (3) the risk of maintaining class action status throughout the trial;
> (4)  the amount offered in settlement;
> (5) the extent of discovery completed and the stage of the proceedings;

(6) the experience and views of counsel;
(7) the presence of a governmental participant; and
(8) the reaction of the class members to the proposed settlement.

*Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) (cleaned up). Whether a settlement agreement has been negotiated before a class has been certified or after, the court must also undertake an additional search for more "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021). The Ninth Circuit has identified three such signs:

1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;
2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and
3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (internal quotation marks and citations omitted).

Courts may preliminarily approve a settlement and notice plan to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies. *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018) (citation omitted).

### A.    Whether the Settlement is Fair, Adequate, and Reasonable

#### 1.    Settlement Process

The first factor concerns "the means by which the parties arrived at settlement." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). To approve a proposed settlement, a court must be satisfied the parties "have engaged in sufficient investigation of the facts to enable the court to intelligently make ... an appraisal of the settlement." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007). Courts thus have

"an obligation to evaluate the scope and effectiveness of the investigation plaintiffs' counsel conducted prior to reaching an agreement." *Id*. The settlement here was reached after extensive investigation, motion practice, discovery, and a full-day session with an experienced mediator.

This factor thus weighs in favor of preliminary approval.

### 2.    Lack of Preferential Treatment

The Court next considers whether the Settlement Agreement provides preferential treatment to any class member. The Ninth Circuit has instructed district courts to be "particularly vigilant" for signs counsel have allowed the "self-interests" of "certain class members to infect negotiations*." In re Bluetooth*, 654 F.3d at 947.

The only preferential treatment is Plaintiff's request for up to $10,000 in a compensatory award under 15 U.S.C. § 78u-4(a)(4). (Dkt. No. 147 at 32.)  Under this section, representative plaintiffs may recover "reasonable costs and expenses (including lost wages) directly relating to the representation of the class." *See* 15 U.S.C. § 78u-4(a)(4). The Court will defer ruling on the appropriateness of this award until final approval. At this stage, there is no indication the award in general constitutes "preferential treatment" such that it would defeat preliminary approval.

### 3.    Range of Possible Approval

The third factor the Court considers is whether the settlement is within the range of possible approval. To evaluate whether the settlement amount is adequate, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Lenovo*, 2018 WL 6099948, at *8. This requires the Court to evaluate the strength of Plaintiff's case.

The Settlement Agreement provides for a Settlement Fund of $45 million.  Plaintiff contends this amount is a favorable result for the Settlement Class in light of the substantial risks Lead Plaintiff and the Settlement Class would face in proving all of the elements of the asserted claims. (Dkt. No. 147 at 17.)  According to Plaintiff's damages expert, Dr. Matthew Cain, the maximum possible damages—assuming Plaintiff prevailed on all liability issues and obtained the maximum possible stock prices declines on all corrective disclosure dates—would be approximately $698 million.  (Dkt. No. 147-3 at ¶ 18.)  But there were "credible risks" Plaintiff would have recovered much less, and in fact, if the jury were to credit Defendant's argument that

*United States District Court*
*Northern District of California*

the entirety of the alleged fraud was disclosed in connection with the first corrective disclosure on November 1, 2022 such that no damages would be attributable to later disclosures, the maximum possible damages would fall to $34.3 million. (Dkt. No. 147 at 19; Dkt. No. 147-3 at ¶ 23.)

Given the risks of continued litigation and the uncertain viability of Plaintiff's legal claims, the Court concludes this factor weighs in favor of preliminary approval.

### 4. Fairness of Supplemental Agreement

The Court must also review the fairness of the parties' confidential Supplemental Agreement. (Dkt. No. 147-1 at ¶ 44.) The existence of a termination option triggered by the number of class members who opt out of the settlement does not by itself render the settlement unfair. *See, e.g., Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *7 (N.D. Cal. Dec. 18, 2018). The parties submitted the confidential Supplemental Agreement for *in camera* review, and having reviewed it, the Court finds the termination provision does not impact the fundamental fairness of the Settlement Agreement.

### 5. Obvious Deficiencies

Finally, the Court considers whether there exist any obvious deficiencies in the settlement agreement. *Harris*, 2011 WL 1627973, at *8. This factor weighs in Plaintiff's favor as no obvious deficiencies exist on the face of the settlement agreement.

* * *

Having weighed the relevant factors, the Court preliminarily finds that the settlement agreement is fair, reasonable, and adequate, and GRANTS preliminary approval.

### III.    PROPOSED PLAN OF ALLOCATION

The Court also must preliminarily approve the Plan of Allocation. The court's review of the distribution plan is governed by the same legal standards that apply to the approval of a settlement: the plan must be fair, reasonable, and adequate. *See, e.g., In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001). "A settlement in a securities class action case can be reasonable if it fairly treats class members by awarding a pro rata share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, inter alia, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the

United States District Court
Northern District of California

securities at issue." *Hampton v. Aqua Metals, Inc.*, No. 17-CV-07142-HSG, 2021 WL 4553578, at *10 (N.D. Cal. Oct. 5, 2021) (internal quotation omitted). "[C]ourts recognize that an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Id.*

The Plan of Allocation provides the damages will be distributed in pro rata shares among the Settlement Class Members on a per share basis. (Dkt. No. 141-1 at ¶ 1(hh); Dkt. No. 147-4, Sinderson Decl. at ¶ 40 ("The Plan of Allocation treats all Settlement Class Members equitably based on the timing of the purchases, acquisitions, and sales of their iRhythm common stock.") Ms. Sinderson attests "the average recovery per affected share is approximately $1.83, before deduction of the Court-approved attorneys' fees, Litigation Expenses, and other costs." (*Id.*) Further, the Plan is "substantively similar" to that approved in other securities class actions. (*Id.*)

The Court concludes the Plan of Allocation treats the class members fairly and preliminarily approves it.

## IV.   CLASS NOTICE PLAN

For any class certified under Rule 23(b)(3), class members must be afforded "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Such notice must clearly state the following:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (cleaned up).

At the preliminary approval hearing, the Court raised three issues with the notice: 1) notice should be provided by mail and email where possible; 2) objections should be mailed to Court;

United States District Court
Northern District of California

10

and (3) the amount of attorneys' fees sought should be specified both as a dollar amount and as a percentage of the total.  In response, Plaintiff submitted a revised long form notice which addresses all of the Court's issues.  (Dkt. No. 155-1.)  The revised long-form and summary notices comply with the notice requirements under Rule 23(c).  (Dkt. No. 147-2 at 15-52.)  The revised long-from notice describes the allegations and claims in plain language, defines the Settlement Class, includes contact information for Class Counsel and the Settlement Administrator, and summarizes the settlement amount. (Dkt. No. 147-2 at 15-31.) The revised long-form notice also describes the Plan of Allocation and the options available to class members, including instructions for requesting exclusion from the settlement and filing an objection. (*Id*. at 32-38.)  The revised long-form notice informs class members that receiving a share of the class settlement will release certain claims against certain parties and informs class members they may appear at the final fairness hearing in person or through an attorney. It directs class members to a website with more information. Finally, the notice adequately advises Settlement Class Members about how they can review Class Counsel's motion for attorneys' fees and costs prior to the final approval hearing and that Lead Plaintiff will seek up to a $10,000 compensatory award under 15 U.S.C. § 78u-4(a)(4). *See In re Mercury Interactive Corp. Sec. Litig*., 618 F.3d 988, 995 (9th Cir. 2010) (holding class members must "have an opportunity to oppose class counsel's fee motion").

In sum, these procedures appear sufficient to ensure that Settlement Class Members receive adequate notice of the settlement and an opportunity to opt-out or object. Accordingly, the Notices and notice plan support preliminary approval.

## V.    ATTORNEYS' FEES AND COSTS

Rule 23(h) provides for an award of attorneys' fees and costs in a certified class action where it is "authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). However, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941. Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method to determine whether the requested fees are reasonable. *In re Mercury*, 618 F.3d at 992. The Ninth Circuit has

established a benchmark of 25 percent of the common fund for attorneys' fees calculations under the latter method. *See Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) ("We have ... established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach."). Although "[a] district court may depart from the benchmark ..., it must be made clear by the district court how it arrives at the figure ultimately awarded." *Id*. at 1256-57.

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941. The resulting figure may be adjusted upward or downward to account for several factors, "including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id*. at 941-42 (internal quotation marks and citation omitted). The party requesting fees bears the burden "of submitting billing records to establish that the number of hours it requested are reasonable," *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013), as well as "produc[ing] satisfactory evidence—in addition to the attorneys' own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," *Camancho v. Bridgeport Fin., Inc*., 523 F.3d 973, 980 (9th Cir. 2008) (internal quotation marks and citation omitted). The Ninth Circuit recommends that whether the lodestar or percentage-of-recovery method is used, the district court perform a cross-check using the other method to confirm the reasonableness of the fee (e.g., if the percentage-of-recovery method is applied, a cross-check with the lodestar method will reveal if the amount requested is unreasonable in light of the hours reasonably expended). *See Bluetooth*, 654 F.3d at 944-45.

The Settlement Agreement provides Class Counsel will file a motion for attorneys' fees and costs, but is silent as to the amount. (Dkt. No. 147-1 at ¶ 17.) In their motion for preliminary approval, Plaintiff states they intend to seek an award of attorneys' fees of up to 25% of the Settlement Fund. (Dkt. No. 147 at 31.) The motion also indicates Plaintiff intends to "seek reimbursement of up to $800,000 for their reasonable litigation expenses." (*Id.*)

Plaintiff shall submit a motion for attorneys' fees, including declarations and detailed billing records, so the Court may determine an appropriate lodestar figure, and to allow Settlement Class Members the opportunity to object to the requested fees. *See In re Mercury*, 618 F.3d at 995 (holding that class members must "have an opportunity to oppose class counsel's fee motion" before the deadline for filing objections set forth in the class notice). Counsel shall also submit detailed information in support of their request for $800,000 in litigation expenses so the Court can determine whether such costs are reasonable expenses incurred for the benefit of the class.

## VI.   CLASS REPRESENTATIVE AWARDS

Finally, Plaintiff intends to seek up to $10,000 for Lead Plaintiff Oklahoma Firefighters under 5 U.S.C. § 78u-4(a)(4). (Dkt. No. 147 at 32.) Section § 78u-4(a)(4) awards allow a representative to recover "reasonable costs and expenses (including lost wages) directly relating to the representation of the class." *See* 15 U.S.C. § 78u-4(a)(4). Thus, any request for compensation must be supported by declarations or other evidence supporting the lost wages and any other costs as expenses.

### CONCLUSION

For the reasons stated above, the Court GRANTS preliminary approval of the class action settlement as follows:

1.   This action is provisionally certified as a class action, for settlement purposes only, pursuant to Federal Rule of Civil Procedure 23. The Court preliminarily certifies the following Settlement Class:

> all persons and entities who purchased or acquired iRhythm common stock during the period from July 25, 2022 through August 9, 2024, inclusive (the "Class Period"), and were allegedly damaged thereby.

2.   The Court preliminarily appoints Bernstein Litowitz Berger & Grossmann LLP as Class Counsel for the Settlement Class.

3.   The Court preliminarily appoints Lead Plaintiff Oklahoma Firefighters as Class Representative for the Settlement Class.

4.   The Court approves the appointment of Huntington National Bank as the Escrow

Agent to manage the Settlement Fund for the benefit of the Settlement Class.

5. The Court approves and appoints Strategic Claims Services as the Settlement Administrator to supervise and administer the notice procedure and the processing of claims, and approves the payment of reasonable administration costs to the Settlement Administrator from the proceeds of the Settlement, not to exceed $225,000 without further Court order prior to the Effective Date.

6. Within 15 days of entry of this Order, the Settlement Administrator shall:

   a. Mail and email (where possible) notice to potential Settlement Class Members at the addresses set forth in the shareholder transfer records provided by the Company, and mail notice to the Nominees in the Settlement Administrator's database.

   b. Post the Notice and Proof of Claim on the settlement website: www.iRhythmSecuritiesLitigation.com

7. Within 25 days of this Order, the Settlement Administrator shall also publish the Summary Notice in *The Wall Street Journal* and over *PR Newswire.*

8. Plaintiff shall file a copy of the Notice and Claim Form within 10 days of dissemination of notice.

9. Class Counsel shall file a motion for attorneys' fees and costs by August 20, 2026.

10. The deadline for class members to submit a Claim Form shall be October 1, 2026.

11. The deadline for class members to submit a Request for Exclusion shall be October 1, 2026.

12. The deadline for class members to object to the Settlement Agreement and/or Class Counsel's motion for attorneys' fees and costs shall October 1, 2026.

13. Plaintiff shall file their Motion for Final Approval by October 22, 2026. The motion for final approval shall address the final approval guidelines in the Northern District of California's Procedural Guidance for Class Action Settlements, available at https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/, in the order the guidelines are presented on the website. As reflected in the Guidance, the Court will require a post-

14

distribution accounting within 21 days after the distribution of settlement funds.

14. The parties shall appear before this Court for a final approval hearing on November 5, 2026 at 9:00 a.m. via Zoom video.

This Order disposes of Docket Nos. 114, 121, 128, 130, 132, 138, 139, 146, 147.

**IT IS SO ORDERED.**

Dated: July 13, 2026

JACQUELINE SCOTT CORLEY
United States District Judge

United States District Court
Northern District of California

15