**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
JONATHAN D. USLANER (Bar No. 256898)
jonathanu@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3481

*Counsel for Lead Plaintiff Oklahoma Firefighters Pension and Retirement System and Lead Counsel for the Settlement Class*

[Additional counsel appear on signature page.]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

GLAZING EMPLOYERS AND GLAZIERS' UNION LOCAL #27 PENSION AND RETIREMENT FUND, on behalf of itself and all others similarly situated,

Plaintiff,

v.

IRHYTHM TECHNOLOGIES, INC., et al.,

Defendants.

Case No. 3:24-cv-706-JSC

**LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**<u>CLASS ACTION</u>**

Date: November 5, 2026
Time: 10:00 a.m.
Judge: Hon. Jacqueline Scott Corley

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES .......... ii

NOTICE OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES .......... 1

STATEMENT OF ISSUES TO BE DECIDED .......... 1

MEMORANDUM OF POINTS AND AUTHORITIES .......... 2

PRELIMINARY STATEMENT .......... 2

ARGUMENT .......... 5

I. Lead Counsel's Request for Attorneys' Fees of 25% of the Settlement Fund Is Consistent with the "Benchmark Percentage" In this Circuit .......... 5

II. Additional Factors Considered by Courts Support Approval of the Requested Fee .......... 7

A. The Quality of the Result Achieved Supports the Fee Request .......... 7

B. The Substantial Risks of the Litigation Support the Fee Request .......... 8

C. The Skill Required and the Quality of the Work Performed Support the Fee Request .......... 11

D. The Contingent Nature of the Fee Supports the Fee Request .......... 12

E. The Reaction of the Settlement Class to Date and the Approval of Lead Plaintiff Support the Fee Request .......... 13

F. The Lodestar Cross-Check Supports the Fee Request .......... 14

III. Lead Counsel's Expenses Are Reasonable and Should Be Approved .......... 18

IV. Lead Plaintiff Should Be Awarded Its Reasonable Costs and Expenses Under 15 U.S.C. § 78u-4(a)(4) .......... 20

CONCLUSION .......... 21

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*In re AdaptHealth Corp. Sec. Litig.*, No. 2:23-cv-04104-MRP (E.D. Pa. June 10, 2026), Dkt. No. 104 .......... 17

*In re Allergan, Inc. Proxy Violation Derivatives Litig.*, 2018 WL 4959014 (C.D. Cal. Aug. 13, 2018) .......... 6

*In re Allergan, Inc. Proxy Violation Secu. Litig.*, No. 8:14-cv-02004 (C.D. Cal.) .......... 11

*In re Alphabet, Inc. Sec. Litig.*, 2024 WL 4354988 (N.D. Cal. Sept. 30, 2024) .......... 17

*In re Alphabet, Inc. Sec. Litig.*, No. 3:18-cv-06245-TLT (N.D. Cal. July 19, 2024), Dkt. No. 234-1 .......... 17

*In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865 (C.D. Cal. July 28, 2014) .......... 14

*In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) .......... 10, 14, 21

*In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) .......... 5

*In re Apollo Grp. Inc. Sec. Litig.*, 2012 WL 1378677 (D. Ariz. Apr. 20, 2012) .......... 16

*In re Apple Tree Life Sciences, Inc.*, No. 24-12177 (LSS) (Bankr. D. Del. May 22, 2026), Dkt. Nos. 707, 707-1 .......... 18

*Baker v. SeaWorld Ent., Inc.*, 2020 WL 4260712 (S.D. Cal. July 24, 2020) .......... 21

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011), *aff'd sub nom., Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) .......... 13

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015) .......... 12

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) .......... 5

*Booth v. Strategic Realty Tr., Inc.*, 2015 WL 6002919 (N.D. Cal. Oct. 15, 2015) .......... 5

*Broadmoor Lumber & Plywood Co. v. Toyota Indus. Corp.*,
2026 WL 2001158 (N.D. Cal. July 10, 2026) ... 15, 16

*Buccellato v. AT&T Operations, Inc.*,
2011 WL 3348055 (N.D. Cal. June 30, 2011) ... 15, 16

*In re Capacitors Antitrust Litig.*,
2018 WL 4790575 (N.D. Cal. Sept. 21, 2018) ... 15

*Destefano v. Zynga, Inc.*,
2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ... 11, 20

*In re Doximity, Inc. Sec. Litig.*,
2026 WL 1697594 (N.D. Cal. June 11, 2026) ... 16, 17

*In re EQT Corp. Sec. Litig.*,
No.: 2:19-cv-00754-RJC (W.D. Pa. Nov. 4, 2025), Dkt. No. 566 ... 17

*In re Equity Funding Corp. of Am. Sec. Litig.*,
438 F. Supp. 1303 (C.D. Cal. 1977) ... 11

*In re Extreme Networks, Inc. Sec. Litig.*,
2019 WL 3290770 (N.D. Cal. July 22, 2019) ... 8

*In re Firstbase.io, Inc.*,
No. 24-11647 (LGB) (Bankr. S.D.N.Y, Oct. 31, 2024), Dkt. No. 30 ... 18

*Fischel v. Equitable Life Assurance Soc'y of U.S.*,
307 F.3d 997 (9th Cir. 2002) ... 5

*Fleming v. Impax Lab'ys Inc.*,
2022 WL 2789496 (N.D. Cal. July 15, 2022) ... 7, 16, 17

*Genesee Cnty. Emps.' Ret. Sys. v. Driven Brands Holdings Inc.*,
No. 3:23-cv-00895-MOC-DCK (W.D.N.C. July 30, 2026), Dkt. No. 88 ... 17

*Glass v. UBS Fin. Servs., Inc.*,
331 F. App'x 452 (9th Cir. 2009) ... 15

*Goldman Sachs Group, Inc. v. Arkansas Teacher Ret. Sys.*,
594 U.S. 113 (2021) ... 10

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ... 5

*HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*,
2010 WL 4156342 (S.D. Cal. Oct. 15, 2010) ... 14

*Health Republic Ins. Co. v. United States*,
No. 16-259 (Fed. Cl. May 2, 2023), Dkt. Nos. 192-1, 191-2 ... 18

*Hefler v. Wells Fargo & Co.*,
No. 4:16-cv-05479 (N.D. Cal.) ....................11

*In re Heritage Bond Litig.*,
2005 WL 1594389 (C.D. Cal. June 10, 2005) ....................8

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005) ....................11, 13

*In re Hi-Crush Partners L.P. Sec. Litig.*,
2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ....................17

*Homyk v. ChemoCentryx, Inc.*,
2025 WL 4110430 (N.D. Cal. Aug. 15, 2025) ....................13

*Hopkins v. Stryker Sales Corp.*,
2013 WL 496358 (N.D. Cal. Feb. 6, 2013) ....................15

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) ....................21

*Kendall v. Odonate Therapeutics, Inc.*,
2022 WL 1997530 (S.D. Cal. June 6, 2022) ....................16

*Leventhal v. Chegg, Inc.*,
2025 WL 1481382 (N.D. Cal. May 21, 2025) ....................6

*In re Lucent Techs., Inc. Sec. Litig.*,
327 F. Supp. 2d 426 (D.N.J. 2004) ....................14

*In re Lyft, Inc. Sec. Litig.*,
2022 WL 17740302 (N.D. Cal. Dec. 16, 2022) ....................8

*In re McKesson HBOC, Inc. Sec. Litig.*,
No. 5:99-cv-20743 (N.D. Cal.) ....................11

*Missouri v. Jenkins*,
491 U.S. 274 (1989) ....................16

*In re Nutanix Inc. Sec. Litig.*,
No. 19-cv-01651-WHO (N.D. Cal. Oct. 6, 2023), Dkt. No. 326 ....................6

*In re Omnicom Grp., Inc. Sec. Litig.*,
597 F.3d 501 (2d Cir. 2010) ....................13

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................... *passim*

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ....................3, 5

*In re Oracle Corp. Sec. Litig.*,
2009 WL 1709050 (N.D. Cal. June 19, 2009) ....................13

*Petersen v. CJ Am., Inc.*,
2016 WL 11783674 (S.D. Cal. Oct. 18, 2016) ....................15

*Pokorny v. Quixtar, Inc.*,
2013 WL 3790896 (N.D. Cal. July 18, 2013)....................6

*In re QuantumScape Sec. Class Action*,
2025 WL 353556 (N.D. Cal. Jan. 22, 2025)....................6

*In re Restoration Robotics, Inc. Sec. Litig.*,
2021 WL 4124089 (N.D. Cal. Sept. 9, 2021) ....................21

*Rihn v. Acadia Pharms. Inc.*,
2018 WL 513448 (S.D. Cal. Jan. 22, 2018)....................15

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ....................13

*Roberts v. Zuora, Inc.*,
2024 WL 6847397 (N.D. Cal. Jan. 16, 2024) ....................6

*In re Saga Formations, Inc.*,
No. 24-11161 (BLS) (Bankr. D. Del. Apr. 16, 2026), Dkt. No. 1171 ....................18

*In re SanDisk LLC Sec. Litig.*,
No. 3:15-cv-01455-VC (N.D. Cal. Oct. 23, 2019), Dkt. No. 284....................7

*Sayce v. Forescout Techs., Inc.*,
2025 WL 4072439 (N.D. Cal. Dec. 5, 2025) ....................6

*SEB Inv. Mgmt. AB v. Wells Fargo & Co.*,
2026 WL 1458903 (N.D. Cal. May 21, 2026) ....................6

*Sheet Metal Workers' Natl Pension Fund v. Bayer Aktiengesellschaft*,
2025 WL 3034317 (N.D. Cal. Oct. 30, 2025)....................6, 21

*In re Silver Wheaton Corp. Sec. Litig.*,
2020 WL 4581642 (C.D. Cal. Aug. 6, 2020)....................7

*In re Silvergate Capital Corp. Sec. Litig.*,
No. 3:22-cv-01936-JES-MSB (S.D. Cal. Sept. 3, 2025), Dkt. No. 149 ....................17

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ....................20

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007)....................12

*In re Turquoise Hill Resources, Ltd. Sec. Litig.*,
No. 1:20-cv-8585-LJL (S.D.N.Y. Oct. 23, 2025), Dkt. No. 493 ....................17

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
535 F. Supp. 2d 249 (D.N.H. 2007)....................14

*Vataj v. Johnson*,
2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) ....................8, 16

*Vega v. Weatherford U.S., Ltd. P'ship*,
2016 WL 7116731 (E.D. Cal. Dec. 7, 2016) ....................20

*In re VeriFone Holdings, Inc. Sec. Litig.*,
2014 WL 12646027 (N.D. Cal. Feb. 18, 2014) ....................16

*Villanueva v. Joyce*,
2025 WL 5089308 (N.D. Cal. Aug. 25, 2025) ....................16

*Vincent v. Reser*,
2013 WL 621865 (N.D. Cal. Feb. 19, 2013) ....................18

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ....................7, 11, 15, 16

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
2017 WL 1047834 (N.D. Cal. Mar. 17, 2017)....................17

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
2019 WL 2077847 (N.D. Cal. May 10, 2019)....................6

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) ....................8, 12, 16

*In re Wells Fargo & Co. Sec. Litig.*,
No. 1:20-CV-04494 (GHW) (S.D.N.Y.)....................12

*York Cnty. v. HP Inc.*,
2026 WL 479759 (N.D. Cal. Feb. 13, 2026) ....................6

**STATUTES**

15 U.S.C. § 78u-4(a)(4) .................... *passim*

Fed. R. Civ. P. 23(h) ....................1

**OTHER AUTHORITIES**

NERA ECONOMIC CONSULTING, RECENT TRENDS IN SECURITIES CLASS ACTION LITIGATION: 2025 FULL-YEAR REVIEW (2026)....................7

**NOTICE OF MOTION FOR AN AWARD OF**
**ATTORNEYS' FEES AND LITIGATION EXPENSES**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, pursuant to Rule 23(h) of the Federal Rules of Civil Procedure and the Court's Order re: Motion for Preliminary Approval (Dkt. No. 156) (the "Preliminary Approval Order"), Lead Counsel Bernstein Litowitz Berger & Grossmann LLP ("Lead Counsel" or "BLB&G") will and hereby does move the Court, before the Honorable Jacqueline Scott Corley, on November 5, 2026, at 9:00 a.m. Pacific time by Zoom videoconference, or at such other location and time as set by the Court, for an Order awarding attorneys' fees and litigation expenses incurred in the above-captioned securities class action (the "Action").

This motion is based on the following Memorandum of Points and Authorities, the accompanying Declaration of Katherine M. Sinderson in Support of Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses ("Sinderson Declaration" or "Sinderson Decl.") and its exhibits, all other prior pleadings and papers in this Action, arguments of counsel, and such additional information or argument as may be required by the Court. A proposed Order will be submitted with Lead Counsel's reply submission, after the time for any objections has passed.

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether the Court should approve as fair and reasonable Lead Counsel's application for an attorneys' fee award in the amount of 25% of the Settlement Fund (*i.e.*, the Settlement Amount, plus interest accrued thereon).

2. Whether the Court should approve Lead Counsel's request for payment of $672,934.95 in litigation expenses incurred in this Action.

3. Whether the Court should approve Lead Plaintiff's application for an award reimbursing its costs incurred in representing the Settlement Class pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(4), in the amount of $9,600.00.

## MEMORANDUM OF POINTS AND AUTHORITIES

Court-appointed Lead Counsel for the Settlement Class and counsel for Lead Plaintiff Oklahoma Firefighters Pension and Retirement System ("Oklahoma Firefighters" or "Lead Plaintiff"), Bernstein Litowitz Berger & Grossmann LLP ("Lead Counsel" or "BLB&G"), respectfully submits this memorandum of law in support of its application for (a) an award of attorneys' fees in the amount of 25% of the Settlement Fund; (b) payment of $672,934.95 in litigation expenses that were reasonably incurred by Lead Counsel in prosecuting and resolving the Action; and (c) an award of $9,600.00 to reimburse Lead Plaintiff for costs it incurred directly related to its representation of the Settlement Class, as authorized by the Private Securities Litigation Reform Act of 1995 ("PSLRA").[1]

## PRELIMINARY STATEMENT

Lead Counsel has vigorously litigated this securities class action for two and a half years on a fully contingent basis, without receiving any compensation. The litigation was hard fought, and Lead Counsel faced substantial risks from the outset that it might be unable to obtain a meaningful recovery for Lead Plaintiff and the class. As such, Lead Counsel had to—and did—dedicate very substantial efforts to the Action from its outset. Lead Counsel conducted an extensive investigation, including interviews with dozens of former iRhythm employees; prepared a detailed amended complaint based on that investigation; opposed a heavily contested motion to dismiss through briefing and oral argument; opposed Defendants' motion for judgment on the pleadings; fully briefed Lead Plaintiff's motion for class certification; and conducted substantial fact discovery, which included obtaining over 400,000 pages of documents from Defendants and non-parties and taking or defending seven depositions. In addition, Lead Counsel engaged in arm's-length settlement negotiations, which included preparing a detailed mediation statement and participating in an all-day, in-person mediation session with an experienced mediator.

---

[1] Unless otherwise defined in this memorandum, all capitalized terms have the meanings defined in the Stipulation and Agreement of Settlement, dated June 3, 2026 (Dkt. No. 147-1) (the "Stipulation"), or the Sinderson Declaration. Citations to "¶ ___" in this memorandum refer to paragraphs in the Sinderson Declaration and citations to "Ex. ___" refer to exhibits to the Sinderson Declaration. Unless otherwise noted, all internal quotation marks, citations, or other punctuation are omitted, and all emphasis is added.

Through Lead Counsel's sustained litigation efforts, Lead Plaintiff was able to achieve the proposed $45 million Settlement for the benefit of the Settlement Class. The $45 million recovery represents a favorable result for the Settlement Class and provides meaningful and certain compensation to Settlement Class Members while avoiding the significant risks and delay of continued litigation, including the risk that there might be no recovery at all. Having achieved this significant monetary recovery, Lead Counsel now applies for attorneys' fees in the amount of 25% of the Settlement Fund as well as payment for the litigation expenses that Lead Counsel incurred in prosecuting the Action and reimbursement of Lead Plaintiff's costs.

The Ninth Circuit has long recognized that, in class actions resulting in a common fund like this one, a percentage award is appropriate and an award of 25% of the settlement amount is the "benchmark." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015). The requested 25% fee is consistent with this "benchmark" and is well within the range of fees awarded in comparable class action cases. The requested fee percentage is also supported by factors often considered by courts in determining the reasonableness of the fee, including the significant risks presented by this contingent fee litigation, the quality of the result achieved, the extent and quality of Lead Counsel's efforts, and the lodestar cross-check.

Lead Counsel prosecuted the Action on a contingency-fee basis and bore the risk that counsel would receive no compensation. As discussed below and in the Sinderson Declaration, there were multiple risks inherent in the Action. From the outset, Lead Plaintiff faced significant challenges in proving that Defendants' statements about iRhythm's Zio AT heart monitoring device—including its purported near real-time data transmission, appropriateness for high-risk patients, and accuracy—were false and made with scienter, and in connecting the stock price declines at issue with the alleged misstatements. For example, there was a risk that the Court or jury might find that Defendants' statements were not misleading given public disclosures of the Zio AT's transmission limits by November 2022. In addition, Lead Plaintiff also faced risks that the Court or jury might find that Defendant Blackford lacked scienter on a complete record at summary judgment or trial. There were also material risks that the Court might eliminate from recovery one or more of the alleged corrective disclosures at class certification, summary

judgment, or trial, or that the Court or a jury would find that significant portions of the price declines on the alleged corrective disclosure dates were due to factors unrelated to the alleged fraud. The riskiness of the Action was further highlighted by the fact that the Company never restated any of its financials; and there was no parallel SEC enforcement action ever brought relating to the alleged misstatements to investors. ¶ 118. Here, Lead Counsel was able to overcome these hurdles and secure a meaningful recovery for the Settlement Class. In light of these risks, Lead Plaintiff and Lead Counsel believe that the $45 million Settlement is a favorable outcome for the Settlement Class. ¶ 94.

The requested attorneys' fees are also supported by the substantial efforts that Lead Counsel dedicated to the Action to achieve the Settlement. Among other things, Lead Counsel (1) conducted an extensive investigation into the claims asserted, which included a detailed review of SEC filings and other public documents, interviewing dozens of former iRhythm employees, and consulting with experts; (2) researched and drafted a detailed Amended Complaint and a subsequent Second Amended Complaint based on this investigation; (3) researched, briefed and argued Lead Plaintiff's opposition to Defendants' motion to dismiss, which resulted in the Court sustaining Lead Plaintiff's claims against iRhythm and Blackford with respect to statements regarding the Zio AT's timeliness, accuracy, and appropriateness for high-risk patients; (4) successfully opposed Defendants' motion for judgment on the pleadings; (5) briefed and argued Lead Plaintiff's motion for class certification; (6) engaged in extensive discovery, including obtaining and reviewing over 400,000 pages of documents and conducting seven depositions; (7) worked with experts on complex issues of loss causation and damages and FDA regulation of medical devices; and (8) engaged in extensive arm's-length settlement negotiations to achieve the Settlement, including a formal mediation session. ¶¶ 3, 10-60, 106.

Lead Counsel dedicated a total of over 8,700 hours of attorney and other professional staff time over the course of litigation to bring the Action to this resolution. ¶ 110. In class actions like this one, which are prosecuted on a contingent-fee basis, courts commonly award fees representing a positive "multiplier" of counsel's lodestar of up to four times the amount of their lodestar to compensate counsel for taking the risks of non-recovery and other factors. Here, the requested fee

represents a multiplier of 1.8 of Lead Counsel's lodestar, which is well within the range of multipliers typically awarded in comparable cases. *Id.*

Lead Counsel also seeks to recover the litigation expenses that it incurred in prosecuting and resolving this litigation, which totaled $672,934.95. As discussed below, these expenses were reasonable and necessary for the prosecution and resolution of the litigation and are of the type that are routinely charged to clients in non-contingent litigation. Finally, Lead Counsel seeks an award of $9,600.00 to reimburse Lead Plaintiff for the costs it incurred in representing the Settlement Class.

For the reasons set forth herein, Lead Counsel respectfully requests that the Court award attorneys' fees in the amount of 25% of the Settlement Fund; payment of litigation expenses in the amount of $672,934.95; and a PSLRA award to Lead Plaintiff of $9,600.00.

## ARGUMENT

### I. Lead Counsel's Request for Attorneys' Fees of 25% of the Settlement Fund Is Consistent with the "Benchmark Percentage" In this Circuit

The Ninth Circuit has established that, in common-fund cases such as this one, the "benchmark" percentage attorney fee award is 25% of the settlement fund. *See, e.g.*, *Online DVD-Rental*, 779 F.3d at 949 ("in this circuit, the benchmark percentage is 25%"); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure"); *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002) ("We have established a 25 percent 'benchmark' in percentage-of-the-fund cases"); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees.").

Courts in this District have found fee awards in the amount of the 25% benchmark to be "presumptively reasonable." *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *4 (N.D. Cal. Aug. 17, 2018) ("[I]t is well established that 25% of a common fund is a presumptively reasonable amount of attorneys' fees."); *Booth v. Strategic Realty Tr., Inc.*, 2015 WL 6002919, at *7 (N.D. Cal. Oct. 15, 2015) ("[T]he 25% award requested by Class Counsel is equal to the

'benchmark' percentage for a reasonable fee award in the Ninth Circuit. Such a fee award is 'presumptively reasonable.'").

Indeed, courts have found that, "in most common fund cases, the award *exceeds* that benchmark" of 25%. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008); *see also In re Allergan, Inc. Proxy Violation Derivatives Litig.*, 2018 WL 4959014, at *1 (C.D. Cal. Aug. 13, 2018) ("The Ninth Circuit uses a 25% benchmark in common fund class actions, and 'in most common fund cases, the award exceeds that benchmark,' with a 30% award the norm 'absent extraordinary circumstances that suggest reasons to lower or increase the percentage.'"); *Pokorny v. Quixtar, Inc.*, 2013 WL 3790896, at *1 (N.D. Cal. July 18, 2013) ("The Ninth Circuit uses a 25% baseline in common fund class actions, and 'in most common fund cases, the award exceeds that benchmark,' with a 30% award the norm 'absent extraordinary circumstances that suggest reasons to lower or increase the percentage.'"). Accordingly, the fact that the 25% fee request is consistent with the Ninth Circuit benchmark supports the reasonableness of the fee.

The 25% fee requested here is also well within the range of percentage fees typically awarded in securities class actions in this District with recoveries comparable to the $45 million achieved here. *See, e.g.*, *Sayce v. Forescout Techs., Inc.*, 2025 WL 4072439, at *1 (N.D. Cal. Dec. 5, 2025) (awarding 33.3% of $45 million settlement); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2077847, at *4 (N.D. Cal. May 10, 2019) (awarding 25% of $48 million settlement); *SEB Inv. Mgmt. AB v. Wells Fargo & Co.*, 2026 WL 1458903, at *6 (N.D. Cal. May 21, 2026) (awarding 25% of $85 million settlement); *York Cnty. v. HP Inc.*, 2026 WL 479759, at *1 (N.D. Cal. Feb. 13, 2026) (awarding 30% of $39 million settlement); *Sheet Metal Workers' Natl Pension Fund v. Bayer Aktiengesellschaft*, 2025 WL 3034317, at *3 (N.D. Cal. Oct. 30, 2025) (awarding 27% of $38 million settlement, net of expenses); *Leventhal v. Chegg, Inc.*, 2025 WL 1481382, at *9 (N.D. Cal. May 21, 2025) (awarding 25% of $55 million settlement); *In re QuantumScape Sec. Class Action*, 2025 WL 353556, at *5 (N.D. Cal. Jan. 22, 2025) (awarding 30% of $47.5 million settlement); *Roberts v. Zuora, Inc.*, 2024 WL 6847397, at *1 (N.D. Cal. Jan. 16, 2024) (awarding 30% of $75.5 million settlement); *In re Nutanix Inc. Sec. Litig.*, No. 19-cv-01651-WHO, slip op. at 7 (N.D. Cal. Oct. 6, 2023), Dkt. No. 326 (Ex. 10A)

(awarding 25% of $71 million); *Fleming v. Impax Lab'ys Inc.*, 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) (awarding 30% of $33 million settlement); *In re Silver Wheaton Corp. Sec. Litig.*, 2020 WL 4581642, at *4 (C.D. Cal. Aug. 6, 2020) (awarding 30% of $41.5 million settlement); *In re SanDisk LLC Sec. Litig.*, No. 3:15-cv-01455-VC, slip op. at 2 (N.D. Cal. Oct. 23, 2019), Dkt. No. 284 (Ex. 10B) (awarding 25% of $50 million settlement).

Moreover, a statistical review of all PSLRA settlements from 2016 to 2025 reveals that the median fee award in settlements ranging from $25 million to $100 million was 25%. *See* NERA ECONOMIC CONSULTING, RECENT TRENDS IN SECURITIES CLASS ACTION LITIGATION: 2025 FULL-YEAR REVIEW, at 31 (2026) (Ex. 10C).

## II. Additional Factors Considered by Courts Support Approval of the Requested Fee

The reasonableness of Lead Counsel's 25% fee request is further confirmed by additional factors considered by courts in this Circuit, including (1) the results achieved, (2) the risks of litigation, (3) the skill required and the quality of work, (4) the contingent nature of the fee and the financial burden carried by the plaintiffs, (5) awards made in similar cases, (6) the class's reaction, and (7) a lodestar cross-check. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002); *Omnivision*, 559 F. Supp. 2d at 1046-48.

### A. The Quality of the Result Achieved Supports the Fee Request

Courts consider the results achieved in assessing a fee award request. *See Vizcaino*, 290 F.3d at 1048 ("results are a relevant" factor in awarding attorneys' fees). Lead Counsel respectfully submits that the $45 million cash settlement is a favorable result for the Settlement Class in this case, especially when considering the risk of a significantly lower recovery—or no recovery at all—if the case proceeded through summary judgment, trial, and the inevitable appeals.

The $45 million Settlement is more than four times the size of the median securities class-action settlement in the Ninth Circuit. ¶ 88. The Settlement is also favorable when considered against the risks of litigation and the range of potential damages that could be proved at trial. The $45 million Settlement represents approximately 6.4% to 10.5% of the realistic maximum damages for the Settlement Class (ranging from $428 million to an absolute maximum of $698 million). ¶ 93. Courts in this Circuit have frequently approved settlements with comparable or lower

percentage recoveries than obtained here as fair and reasonable. *See, e.g.*, *In re Lyft, Inc. Sec. Litig.*, 2022 WL 17740302, at *6 (N.D. Cal. Dec. 16, 2022) (settlement equal to 3.2% to 4.7% of estimated maximum damages was "well within the range of possible approval"); *Vataj v. Johnson*, 2021 WL 5161927, at *6 (N.D. Cal. Nov. 5, 2021) (approving settlement recovering "slightly more than 2% of [] estimated damages" and noting that it was "consistent with the 2-3% average recovery that the parties identified in other securities class action settlements"); *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *9 (N.D. Cal. July 22, 2019) (approving settlement representing between 5% and 9.5% of maximum potential damages).

Here, achieving a full recovery through trial was far from certain. Defendants advanced serious arguments regarding all elements of liability, loss causation, and damages that, if accepted, would have substantially lowered the realistic maximum damages or eliminated them entirely. ¶¶ 70-94. Given the significant risks of establishing liability and loss causation here, Lead Counsel believes this level of recovery represents a favorable result for the Settlement Class. Accordingly, Lead Counsel believes that the quality of the result achieved supports the fee requested.

**B. The Substantial Risks of the Litigation Support the Fee Request**

"The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award." *In re Heritage Bond Litig.*, 2005 WL 1594389, at *14 (C.D. Cal. June 10, 2005); *see also, e.g.*, *In re Washington Pub. Power Supply Sys. Sec. Litig.* ("*WPPSS*"), 19 F.3d 1291, 1299-1301 (9th Cir. 1994); *Omnivision*, 559 F. Supp. 2d at 1047.

Lead Counsel recognized that there were significant risks from the outset in establishing that Defendants' statements were materially false and misleading when made and were actionable under the securities laws; that Defendants knew that their statements were false when made or were deliberately reckless in making the statements; and that the declines in the price of iRhythm common stock were caused by the disclosure of Defendants' alleged misstatements. This was not a case in which iRhythm ever restated its financials, nor was there ever any parallel SEC action brought against iRhythm or any of the Defendants for the alleged fraudulent statements. ¶ 118. Lead Plaintiff would have none of those tailwinds in attempting to prove their claims. On the

contrary, Defendants had substantial arguments concerning each element of Lead Plaintiff's claims.

***Falsity.*** With respect to falsity, Defendants have contended and would continue to argue that the statements about Zio AT's transmission limits were not false because those transmission limits were disclosed no later than November 2022. ¶ 73. Defendants would further argue that, even if the Court found that the transmission limits were not publicly disclosed, Lead Plaintiff could not show that the transmission limits impacted the Zio AT functionality enough to render their statements false. *Id*. Defendants would also assert that prescribing physicians understood the Zio AT's technical limitations and that their marketing claims complied with FDA regulations and were consistent with those of companies with competing mobile cardiac telemetry devices. *Id*.

Lead Plaintiff also faced risks in proving that Defendants' statements concerning the Zio AT's suitability for high-risk patients were false. Defendants would argue that these statements were not actionably false because they were vague and were qualified by express warnings that the device was not intended for use in critical care patients or patients with known history of life threatening arrhythmias. ¶ 74.

Finally, with respect to alleged misstatements about the device's accuracy, Defendants have argued, and would continue to argue, that their statements about the accuracy of the Zio monitor were literally true as far as Defendants knew at the time the statements were made, including because Defendants had evidence of periodic reports provided to Defendant Blackford reflecting accuracy rates between 98% and 99%. ¶ 75. The risk that the accuracy misstatements might not be sustained was particularly significant because, if those statements were dismissed, the Class Period would be substantially shortened and the potential damages for the class would be greatly reduced. ¶¶ 75, 91.

***Scienter***. Even if Lead Plaintiff were successful in proving that Defendants' statements were false or misleading, Lead Plaintiff would still need to demonstrate to a jury that Defendants made the misstatements with an intent to defraud or with deliberate recklessness. Here, Defendants vigorously argued that they believed their statements to be true and that they had no intent to commit fraud. ¶ 76. As in many securities fraud cases, proving Defendants' scienter was a major

risk in the Action from the outset. *See, e.g.*, *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *3 (C.D. Cal. Oct. 25, 2016) (establishing scienter in a securities case "is the most difficult element of proof and one that is rarely supported by direct evidence"). Here, Defendants' arguments with respect to falsity also would have supported their position on scienter. Defendants would have argued that the Company's disclosures about the transmission limits and their impact on the Zio AT's functionality undermine Lead Plaintiff's scienter allegations. ¶ 77. Similarly, Defendants would argue that the positive reports that Defendant Blackford received concerning the device's accuracy during the Class Period tended to establish that Defendant Blackford honestly believed his statements about the Zio AT's accuracy and, therefore, he did not act with an intent to deceive investors. *Id.*

***Loss Causation and Damages***. Lead Plaintiff and Lead Counsel also confronted additional significant challenges in establishing loss causation and damages. ¶¶ 78-83. Defendants had substantial arguments that the declines in iRhythm common stock were not caused entirely—or at all—by the alleged corrective disclosures. For example, at class certification, Defendants had argued there was a "mismatch" between their relatively generic front-end statements concerning the Zio AT's "near real time" and "timely transmission" capabilities and the subsequent detailed corrective disclosures, and thus the market reaction to those disclosures could not demonstrate the "price impact" of the alleged misstatements under the Supreme Court's decision in *Goldman Sachs Group, Inc. v. Arkansas Teacher Retirement System*, 594 U.S. 113 (2021). ¶ 79.

Defendants would have also argued that the FDA warning letter, published May 30, 2023, fully disclosed the alleged misrepresentations concerning the Zio AT's transmission limits and therefore none of the declines associated with the later alleged corrective disclosures could be recoverable as damages for those misstatements. If credited, this argument would have reduced maximum recoverable damages by nearly 25%. ¶ 80. Finally, if a Court or a jury agreed with Defendants' argument that the November 1, 2022 disclosure effectively corrected Defendants' statements concerning the "near real time" and "timely transmission" of the device, and that subsequent disclosures did not reveal new corrective information, damages would be substantially reduced. ¶ 82.

Defendants would have further argued that Lead Plaintiff could not isolate the impact of the alleged fraud from confounding information and non-fraud-related factors that may have contributed to iRhythm's stock price declines, and thus could not prove the amount of recoverable damages. ¶ 87.

All of these substantial litigation risks strongly support the award of the benchmark 25% fee requested.

### C. The Skill Required and the Quality of the Work Performed Support the Fee Request

Courts have recognized that the "'prosecution and management of a complex national class action requires unique legal skills and abilities.'" *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *17 (N.D. Cal. Feb. 11, 2016); *see also Vizcaino*, 290 F.3d at 1048. "'This is particularly true in securities cases because the Private Securities Litigation Reform Act makes it much more difficult for securities plaintiffs to get past a motion to dismiss."' *Zynga*, 2016 WL 537946, at *17 (quoting *Omnivision*, 559 F. Supp. 2d at 1047). In considering this factor, courts also consider the quality and vigor of opposing counsel. *See, e.g.*, *In re Heritage Bond Litig.*, 2005 WL 1594403, at *20 (C.D. Cal. June 10, 2005) ("the quality of opposing counsel is important in evaluating the quality of Plaintiff's counsel's work"); *In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) ("plaintiffs' attorneys in this class action have been up against established and skillful defense lawyers, and should be compensated accordingly").

Lead Counsel is among the most experienced and skilled practitioners in the securities-litigation field, and the firm has a long and successful track record in securities cases throughout the country, including within this Circuit. ¶¶ 112-14. Lead Counsel's successes in this Circuit and elsewhere include, among others, *In re McKesson HBOC, Inc. Securities Litigation*, No. 5:99-cv-20743 (N.D. Cal.), in which BLB&G recovered $1.05 billion for investors, the largest recovery in a securities class action in the Ninth Circuit; *Hefler v. Wells Fargo & Co.*, No. 4:16-cv-05479 (N.D. Cal.), in which BLB&G recovered $480 million for investors; *In re Allergan, Inc. Proxy Violation Securities Litigation*, No. 8:14-cv-02004 (C.D. Cal.), in which BLB&G recovered $250

million for investors; and *In re Wells Fargo & Co. Securities Litigation*, 1:20-CV-04494 (GHW) (S.D.N.Y.), in which BLB&G recovered $1 billion for investors. ¶¶ 113-14.

Lead Counsel's experience in complex securities cases facilitated Lead Counsel's ability to negotiate the Settlement, ultimately resulting in the $45 million recovery. Lead Counsel achieved this recovery in this Action by litigating against highly skilled and well-respected lawyers from Quinn Emanuel Urquhart & Sullivan, LLP, who vigorously advocated for their clients. ¶ 115.

As noted above, Lead Counsel's efforts throughout the litigation included (1) an extensive investigation of the claims at issue, which included FOIA requests to the FDA, interviews with 69 former iRhythm employees believed to have potential information about the alleged fraud, work with experts in damages, loss causation, and medical device regulation, and a thorough review of SEC filings, analyst reports, media filings and other public material; (2) research and preparation of the detailed Amended Complaint and subsequent Second Amended Complaint; (3) opposing Defendants' motion to dismiss and motion for judgment on the pleadings; (4) fully briefing Lead Plaintiff's motion for class certification, including an associated expert report and related depositions; (5) conducting substantial discovery, including the exchange of initial discovery, preparing detailed document requests, serving subpoenas on eight non-parties, obtaining and reviewing 400,000 pages of documents, and taking or defending seven depositions; and (6) engaging in extended settlement negotiations, including preparing a detailed mediation statement and participating in a full-day mediation with Mr. Murphy. ¶¶ 10-60, f106, 111.

### D. The Contingent Nature of the Fee Supports the Fee Request

"It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *WPPSS*, 19 F.3d at 1299; *see also Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 261 (N.D. Cal. 2015) ("when counsel takes cases on a contingency fee basis, and litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award"). The Supreme Court has emphasized that private securities actions, like this one, "provide 'a most effective weapon in the enforcement' of securities laws and are 'a necessary supplement to [SEC] action.'" *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 318-19 (2007).

As courts recognize, there have been many class actions in which plaintiffs' counsel took on the risk of pursuing claims on a contingency basis, expending thousands of hours and millions of dollars, yet received no remuneration whatsoever despite their diligence and expertise. *See, e.g.*, *Homyk v. ChemoCentryx, Inc.*, 2025 WL 4110430, at *14 (N.D. Cal. Aug. 15, 2025) (granting summary judgment on all claims in securities class action after four years of litigation); *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 504 (2d Cir. 2010) (affirming grant of summary judgment in favor of defendant on loss-causation grounds after years of litigation); *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050, at *34 (N.D. Cal. June 19, 2009) (granting summary judgment to defendants after eight years of litigation), *aff'd*, 627 F.3d 376 (9th Cir. 2010).

Even plaintiffs who get past summary judgment and succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial motion. *See, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605, at *38 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict), *aff'd sub nom., Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).

Here, Lead Counsel committed significant resources, time, and money to prosecute this Action vigorously and successfully for the Settlement Class's benefit—without any payment or any guarantee of compensation. The fee award and expense reimbursement in this Action has always been at risk in the case and contingent on this Court's discretion in awarding fees and expenses. If Lead Counsel had been unsuccessful at the motion to dismiss stage, or lost at summary judgment or at trial, they would have received nothing for their years of diligent prosecution of the claims for the benefit of the Settlement Class. This significant contingency-fee risk further supports the requested fee.

### E. The Reaction of the Settlement Class to Date and the Approval of Lead Plaintiff Support the Fee Request

The reaction of the Settlement Class to the proposed Settlement and the fee motion to date also supports approval of the fee request. *See Heritage Bond*, 2005 WL 1594403, at *21 ("The existence or absence of objectors to the requested attorneys' fee is a factor i[n] determining the

appropriate fee award.”). A total of 83,002 copies of the Notice and Claim Form have been sent to potential Settlement Class Members and their nominees, and the Court-approved Summary Notice was published in *The Wall Street Journal* and transmitted over the *PR Newswire* on August 6, 2026. *See* Evans Decl. (Ex. 3) at ¶¶ 11, 12. The Notice informed potential Settlement Class Members that Lead Counsel would apply for an award of attorneys’ fees in an amount not to exceed 25% of the Settlement Fund. *See* Notice (Evans Decl. Ex. A) at ¶¶ 5, 51. The Notice further informed Settlement Class Members of their right to object to the request for attorneys’ fees and expenses. *See id*. at p. 3 and ¶¶ 60-62. Although the deadline for filing any objections will not run until October 1, 2026, to date, no Settlement Class Member has filed an objection to the Settlement or the fees and expenses requested. Sinderson Decl. ¶¶ 101.

In addition, Lead Plaintiff, which took an active role in the litigation and closely supervised the work of Lead Counsel, supports approval of the requested fee based on the result obtained, the efforts of Lead Counsel and the risks in the Action. *See* Rankin Decl. (Ex. 1) at ¶¶ 5-6, 8. Lead Plaintiff’s endorsement of the fee request further supports its approval. *See, e.g.*, *In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d 426, 442 (D.N.J. 2004) (“Significantly, the Lead Plaintiffs, both of whom are institutional investors with great financial stakes in the outcome of the litigation, have reviewed and approved Lead Counsel’s fees and expenses request.”).

### F. The Lodestar Cross-Check Supports the Fee Request

“Although an analysis of the lodestar is not required for an award of attorneys’ fees in the Ninth Circuit, a cross-check of the fee request with a lodestar amount can demonstrate the fee request’s reasonableness.” *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016); *see also HCL Partners Ltd. P’ship v. Leap Wireless Int’l, Inc.*, 2010 WL 4156342, at *2 (S.D. Cal. Oct. 15, 2010) (“Courts have found that a lodestar analysis is not necessary when the requested fee is within the accepted benchmark.”). When the lodestar is used as a cross-check, the “focus is not on the ‘necessity and reasonableness of every hour’ of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys.” *In re Tyco Int’l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007); *see In re Am. Apparel, Inc. S’holder Litig.*, 2014 WL 10212865, at *23 (C.D. Cal. July 28, 2014)

("'In contrast to the use of the lodestar method as a primary tool for setting a fee award, the lodestar cross-check can be performed with a less exhaustive cataloging and review of counsel's hours.'"); *Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 456-57 (9th Cir. 2009).

Fee awards in class actions with contingency risks, such as this one, routinely represent positive multipliers of counsel's lodestar to account for the possibility of non-payment, as well as other factors. *See Broadmoor Lumber & Plywood Co. v. Toyota Indus. Corp.*, 2026 WL 2001158, at *9 (N.D. Cal. July 10, 2026) ("In evaluating whether a lodestar multiplier is appropriate, district courts in the Ninth Circuit analyze a number of factors, including, but not limited to: (i) the quality of the representation; (ii) the benefit obtained for the class; (iii) the complexity and novelty of the issues presented; and (iv) the risk of nonpayment."); *Rihn v. Acadia Pharms. Inc.*, 2018 WL 513448, at *6 (S.D. Cal. Jan. 22, 2018) ("Courts have 'routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases'" because, in doing so, it provides a '"financial incentive to accept contingent-fee cases which may produce nothing.'").

Courts award lodestar multipliers up to four times the counsel's lodestar, and sometimes even more. *See Vizcaino*, 290 F.3d at 1051-52 & n.6 (affirming 28% fee award representing 3.65 multiplier and finding that "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases," and that, when the lodestar is used as a cross-check, "most" multipliers were in the range of 1 to 4, but citing examples of higher multipliers); *see also In re Capacitors Antitrust Litig.*, 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21, 2018) ("a lodestar multiplier of around 4 times has frequently been awarded in common fund cases"); *Petersen v. CJ Am., Inc.*, 2016 WL 11783674, at *1 (S.D. Cal. Oct. 18, 2016) ("the majority of fee awards in the district courts in the Ninth Circuit are 1.5 to 3 times higher than lodestar"); *Hopkins v. Stryker Sales Corp.*, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases."); *Buccellato v. AT&T Operations, Inc.*, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (awarding fee representing 4.3 multiplier).

As detailed in the Sinderson Declaration, Lead Counsel spent over 8,700 hours of attorney and other professional time prosecuting the Action for the benefit of the Settlement Class through July 31, 2026. ¶ 110. Lead Counsel's lodestar, derived by multiplying the hours spent on the

litigation by each attorney or other professional by his or her current hourly rate, is $6,243,750.00. *Id*. It is well established that it is appropriate to calculate counsel's lodestar based on current, rather than historical rates, as a method of compensating for the delay in payment and the loss of interest on the funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *WPPSS*, 19 F.3d at 1305; *In re Apollo Grp. Inc. Sec. Litig.*, 2012 WL 1378677, at *7 n.2 (D. Ariz. Apr. 20, 2012).

The requested fee of 25% of the Settlement Fund is $11,250,000 (plus interest) and, therefore, represents a multiplier of 1.8 on Lead Counsel's lodestar. ¶ 110. This multiplier falls well within the range of multipliers awarded in cases like this with substantial contingency fee risks. *See, e.g., Vizcaino*, 290 F.3d at 1051 (a 3.65 multiplier was "within the range of multipliers applied in common fund cases"); *Broadmoor Lumber*, 2026 WL 2001158, at *9 (approving 2.94 multiplier); *In re Doximity, Inc. Sec. Litig.*, 2026 WL 1697594, at *1-2 (N.D. Cal. June 11, 2026) (2.4 multiplier); *Villanueva v. Joyce*, 2025 WL 5089308, at *8 (N.D. Cal. Aug. 25, 2025) (2.25 multiplier); *Impax*, 2022 WL 2789496, at *9 (2.6 multiplier); *Kendall v. Odonate Therapeutics, Inc.*, 2022 WL 1997530, at *7 (S.D. Cal. June 6, 2022) (finding that a 2.36 multiplier supported the "reasonableness of the requested attorneys' fees award"); *Vataj*, 2021 WL 5161927, at *9 (approving 2.5 multiplier); *In re VeriFone Holdings, Inc. Sec. Litig.*, 2014 WL 12646027, at *2 (N.D. Cal. Feb. 18, 2014) (approving 4.3 multiplier).

Consistent with the Northern District of California Procedural Guidance for Class Action Settlements, the Sinderson Declaration includes a breakdown of the hours that each attorney and other professional of Lead Counsel devoted to the litigation into 16 major tasks undertaken over the course of the litigation. *See* ¶ 111 and Ex. 5. In addition, as the Court requested in the Preliminary Approval Order, Lead Counsel's detailed contemporaneous daily time records have also been submitted with the application. Ex. 6. Lead Counsel has not included in the fee application any time expended preparing the motion for fees and expenses. ¶ 111. The amount of hours Lead Counsel dedicated to the Action were reasonable and necessary to obtain the result achieved in the face of Defendants' Counsel's zealous opposition.

The hourly rates used to calculate Lead Counsel's lodestar are also reasonable. The hourly rates for Lead Counsel range from $1,100 to $1,800 for partners and senior counsel; $425 to $875

for associates, $425 to $525 for staff attorneys and senior staff attorneys, and $450 for case managers. *See* Ex. 4. Lead Counsel's rates have been repeatedly accepted for use in the lodestar crosscheck in other similar class actions in this District and elsewhere. *See, e.g.*, *Doximity*, 2026 WL 1697594, at *1-2 (approving fee based on lodestar cross-check using BLB&G's current rates); *Genesee Cnty. Emps' Ret. Sys. v. Driven Brands Holdings Inc.*, No. 3:23-cv-00895-MOC-DCK (W.D.N.C. July 30, 2026), Dkt. No. 88 (same); *In re AdaptHealth Corp. Sec. Litig.*, No. 2:23-cv-04104-MRP (E.D. Pa. June 10, 2026), Dkt. No. 104 (same); *see also In re EQT Corp. Sec. Litig.*, No.: 2:19-cv-00754-RJC (W.D. Pa. Nov. 4, 2025), Dkt. No. 566 (approving fee based on lodestar cross-check using BLB&G's 2025 rates); *In re Turquoise Hill Resources, Ltd. Sec. Litig.*, No. 1:20-cv-8585-LJL (S.D.N.Y. Oct. 23, 2025), Dkt. No. 493 (same); *In re Silvergate Capital Corp. Sec. Litig.*, No. 3:22-cv-01936-JES-MSB (S.D. Cal. Sept. 3, 2025), Dkt. No. 149 (same).

Lead Counsel's rates are within the range of reasonable fees for attorneys working on sophisticated class action litigation in this District. *See, e.g.*, *In re Alphabet, Inc. Sec. Litig.*, 2024 WL 4354988, at *7 (N.D. Cal. Sept. 30, 2024) (finding that "the rates charged are reasonable and commensurate with those charged by attorneys with similar experience in the market" where class counsel's 2024 rates ranged from $785 to $1,400 for partners, $480 to $1,135 for of counsel, $375 to $700 for associates, $450 to $475 for staff attorneys);[2] *Impax*, 2022 WL 2789496, at *9 (approving as reasonable class counsel's 2022 hourly rates, which ranged from $760 to $1,325 for partners, $895 to $1,150 for counsel, and up to $520 for associates); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving fee award following lodestar cross-check with hourly rates ranging up to $1,600 for partners and up to $790 for associates).

The reasonableness of Lead Counsel's rates is further underscored by the significantly higher rates charged by Quinn Emanuel, Defendants' Counsel in this case. *See In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *14 (S.D.N.Y. Dec. 19, 2014) (approving as

[2] Rates for class counsel in *Alphabet* were set forth in Declaration of Michael Albert at Ex. A, *In re Alphabet, Inc. Sec. Litig.*, No. 3:18-cv-06245-TLT (N.D. Cal. July 19, 2024), Dkt. No. 234-1 (Ex. 10D).

reasonable hourly rates in securities action that were "comparable to . . . defense-side law firms litigating matters of similar magnitude"). For example, in a 2024 bankruptcy filing, Quinn Emanuel informed the court that the rates it would bill on that matter from October 2024 through September 2025 were $1,645 to $2,410 for partners; $940 to $2,410 for associates, counsel, and other attorneys; and $595 to $645 for law clerks and legal assistants. *See* Debtor's Application for Entry of an Order Authorizing Retention and Employment of Quinn Emanuel, *In re Firstbase.io, Inc.*, No. 24-11647 (LGB) (Bankr. S.D.N.Y, Oct. 31, 2024), Dkt. No. 30 (Ex. 10E). Other fee applications from Quinn Emanuel reflect similar hourly rates. *See, e.g.*, Summary of First Interim Application at Ex. A, *In re Apple Tree Life Sciences, Inc.*, No. 24-12177 (LSS) (Bankr. D. Del. May 22, 2026), Dkt. Nos. 707, 707-1 (Ex. 10F) (reflecting partner rates ranging from $1,825 to $2,130; counsel rates ranging from $1,670 to $1,765; associate rates range from $1,055 to $1,555; and paralegal rates ranging from $510 to $570, with a blended rate of $1,462 for all attorneys and $1,375 for all timekeepers); Sixth & Final Fee Application of Quinn Emanuel at 6, *In re Saga Formations, Inc.*, No. 24-11161 (BLS) (Bankr. D. Del. Apr. 16, 2026), Dkt. No. 1171 (Ex. 10G) (blended hourly rate billed for all timekeepers in Quinn Emanuel's U.S. offices on non-bankruptcy matters in 2025 was $1,469); Declaration of Adam B. Wolfson at Ex. A, *Health Republic Ins. Co. v. United States*, No. 16-259 (Fed. Cl. May 2, 2023), Dkt. No. 192-1, 191-2 (Ex. 10H) (individual timekeepers' hourly rates were redacted but totals indicate that the blended rates for all Quinn Emanuel timekeepers in the matter using 2023 rates was $1,670 per hour).

These rates are substantially higher at all levels than the rates used by Lead Counsel to calculate its lodestar. For example, Lead Counsel's blended hourly rate for all timekeepers in this Action is $714, roughly **half** of Quinn Emanuel's blended hourly rates cited in *Apple Tree* ($1,375), *Saga Formations* ($1,469), and *Health Republic* ($1,670).

## III. Lead Counsel's Expenses Are Reasonable and Should Be Approved

"Attorneys who create a common fund are entitled to the reimbursement of expenses they advanced for the benefit of the class." *Vincent v. Reser*, 2013 WL 621865, at *5 (N.D. Cal. Feb. 19, 2013). In assessing whether counsel's expenses are compensable in a common fund case, courts look to whether the particular costs are of the type typically billed by attorneys to paying

clients in the marketplace. *See Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.").

The expenses sought are of the type that are charged to hourly paying clients and were required to prosecute the litigation. These expense items were incurred separately by Lead Counsel and are not duplicated in the firm's hourly rates. From the beginning of the case, Lead Counsel was aware that it might not recover any of its expenses and would not recover anything unless and until the Action was successfully resolved. Lead Counsel also understood that, even assuming that the case was ultimately successful, an award of expenses would not compensate it for the lost use of the funds advanced to prosecute the Action. Thus, Lead Counsel was motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the Action. ¶ 122.

As discussed in detail in the Sinderson Declaration, Lead Counsel incurred a total of $672,934.95 in litigation expenses in litigating the Action. ¶ 123. The expenses for which payment is sought were reasonable and necessary for the prosecution and resolution of the litigation and are of the types that are routinely charged to clients in non-contingent litigation. These include expert fees, mediation fees, factual and legal research, court fees, and postage expenses. ¶¶ 124-28.

Of the total expenses, Lead Counsel incurred $450,926.25, or approximately 67% of the total litigation expenses, on retention of experts and consultants, including its experts in financial economics, including damages and loss causation, and expert consultants on FDA regulation of medical devices. ¶ 125. The combined costs for legal and factual research amounted to $76,543.15, or approximately 11% of the total expenses. ¶ 126. Lead Plaintiff's share of the mediation costs paid to Phillips ADR for the services of Mr. Murphy totaled $55,950.00, or 8% of Lead Counsel's Litigation Expenses. ¶ 127. The other expenses are also the types of expenses that are necessarily incurred in litigation and routinely charged to clients. These expenses included court fees, service of process, court reporting, and travel. ¶ 128. A complete breakdown by category of the expenses incurred by Lead Counsel is set forth in Exhibit 8 to the Sinderson Declaration, and a full list of all expenses is set forth in Exhibit 9.

Courts routinely approve litigation expenses such as these. *See, e.g.*, *Vega v. Weatherford U.S., Ltd. P'ship*, 2016 WL 7116731, at *17 (E.D. Cal. Dec. 7, 2016) ("legal research expenses, copying costs, mediation fees, postage, federal express charges, expert fees, . . . and travel expenses," among others, were all categories of expenses "routinely reimbursed" in class actions); *Zynga*, 2016 WL 537946, at *22 ("courts throughout the Ninth Circuit regularly award litigation costs and expenses—including photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses—in securities class actions, as attorneys routinely bill private clients for such expenses in non-contingent litigation").

The Notice provided to potential Settlement Class Members informed them that Lead Counsel intended to apply for the payment of litigation expenses in an amount not to exceed $800,000. Notice ¶¶ 5, 51. The total amount of Litigation Expenses requested, $682,534.95—which includes Lead Counsel's request for $672,934.95 and Lead Plaintiff's request for $9,600.00 under the PSLRA, as discussed below—is less than the amount stated in the Notice. The deadline for objecting to the fee and expense application is October 1, 2026. To date, there have been no objections to the request for attorneys' fees or the maximum litigation expenses set out in the Notice.

## IV. Lead Plaintiff Should Be Awarded Its Reasonable Costs and Expenses Under 15 U.S.C. § 78u-4(a)(4)

The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4); *see also Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (holding that named plaintiffs are eligible for "reasonable" payments as part of class-action settlement). When evaluating the reasonableness of a lead plaintiff reimbursement request, courts may consider factors such as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation," among others. *Id.*

As detailed in the declaration from the Executive Director of the Oklahoma Firefighters, attached as Exhibit 1 to the Sinderson Declaration, Lead Plaintiff is seeking an award of $9,600.00 in reimbursement for the value of the time that its Executive Director dedicated to the Action. Here, Lead Plaintiff took an active role in the litigation and has been fully committed to pursuing the class's claims. *See* Rankin Decl. ¶¶ 5-6. These efforts included numerous communications with Lead Counsel throughout the Action, reviewing pleadings and briefs filed in the Action, searching for and producing documents in response to Defendants' document requests, attending the Court's hearing on the motion to dismiss the Complaint and the April 2026 the mediation session, sitting for deposition by Defendants, and consulting with Lead Counsel regarding the settlement negotiations. *Id*. These efforts required Mr. Rankin to dedicate 80 hours to the Action that he would otherwise have devoted to his regular duties for Oklahoma Firefighters, and thus represented a cost to Oklahoma Firefighters. *See id.* ¶¶ 11-12.

The amount requested is reasonable in light of the amount of time that Mr. Rankin dedicated to the representation of the Settlement Class. *See, e.g.*, *Bayer Aktiengesellschaft*, 2025 WL 3034317, at *3-4 (awarding $31,485.14 to class representatives in PSLRA action); *In re Restoration Robotics, Inc. Sec. Litig.*, 2021 WL 4124089, at *1 (N.D. Cal. Sept. 9, 2021) (awarding $15,000 to lead plaintiff); *Baker v. SeaWorld Ent., Inc.*, 2020 WL 4260712, at *12 (S.D. Cal. July 24, 2020) (awarding $10,569 and $60,000 to lead plaintiffs); *Amgen*, 2016 WL 10571773, at *10 (awarding $30,983.99 in expenses related to lead plaintiff's participation in the litigation); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1173-74 (S.D. Cal. 2007) (approving $40,000 reimbursement to lead plaintiff).

**CONCLUSION**

For all the foregoing reasons, Lead Counsel respectfully requests that the Court award attorneys' fees of 25% of the Settlement Fund, $672,934.95 in payment of the Lead Counsel's Litigation Expenses; and $9,600.00 in reimbursement of Lead Plaintiff's costs incurred in representing the Settlement Class in the Action.

Dated: August 20, 2026

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

/s/ *Katherine M. Sinderson*
JOHN J. RIZIO-HAMILTON (*pro hac vice*)
(johnr@blbglaw.com)
KATHERINE M. SINDERSON (*pro hac vice*)
(katiem@blbglaw.com)
ALEC T. COQUIN (*pro hac vice*)
(alec.coquin@blbglaw.com)
THOMAS Z. SPERBER (*pro hac vice*)
(thomas.sperber@blbglaw.com)
ABBY KRITTA (*pro hac vice*)
(abygail.kritta@blbglaw.com)
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444

JONATHAN D. USLANER (Bar No. 256898)
jonathanu@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3481

***Counsel for Lead Plaintiff Oklahoma Firefighters Pension and Retirement System and Lead Counsel for the Settlement Class***